**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

_____

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. |
| | ) |
| AMEREN MISSOURI, | ) |
| | ) |
| Defendant. | ) |
_____)

**COMPLAINT**

The United States of America ("United States"), by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), alleges as follows:

**NATURE OF THE ACTION**

1.      This is a civil action against Ameren Missouri ("Defendant" or "Ameren") for violations of the Clean Air Act ("CAA" or  "the Act"), 42 U.S.C. §§ 7401 *et seq.*, at the Rush Island Plant in Festus, Missouri.  Pursuant to Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, the United States seeks injunctive relief and civil penalties for violations of: (a) the New Source Review ("NSR"), Prevention of Significant Deterioration ("PSD") provisions of the CAA, 42 U.S.C. §§ 7470-92 and applicable implementing regulations; (b) the federally approved and enforceable Missouri State Implementation Plan ("Missouri SIP");

1

(c) Title V of the Act, 42 U.S.C. §§ 7661-7661f; (d) federal regulations implementing Title V of the Act at 40 C.F.R. Part 70; and (e) Missouri's federally approved Title V program, 10 C.S.R. 10-6.065.

2.      Ameren performed major modifications of the Rush Island Plant in violation of the CAA.  Ameren failed to obtain the required permits for these multi-million dollar modifications.  Nor did Ameren install and operate state-of-the-art air pollution controls, as the law requires, including the best available control technology ("BACT") to reduce emissions of sulfur dioxide ("$SO_2$").

3.      As a result of Ameren's operation of the Rush Island Plant following these unlawful modifications, significant amounts of $SO_2$ pollution have been, and continue to be, released into the air.  The Rush Island Plant ranks among the largest sources of air pollution in Missouri and the nation, emitting tens of thousands of tons of $SO_2$ each year.  These emissions harm public health and the environment, contributing to premature mortality, asthma attacks, acid rain and other adverse effects in downwind communities and natural areas.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1395(a).

5.      Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) because the violations which constitute the basis of this Complaint occurred in this District and the Rush Island Plant is operated by Defendant in this District.

2

## NOTICES

6.     On October 14, 2010, U.S. EPA issued an amended Notice of Violation ("NOV") to Defendant pursuant to Section 113(a)(1) and (b)(1) of the Act, 42 U.S.C. §§ 7413(a)(1) and (b)(1), and provided a copy of the amended NOV to the State of Missouri.  U.S. EPA previously issued the original NOV to Defendant on January 26, 2010 and provided a copy of this original NOV to the State of Missouri.

7.     The 30-day period between issuance of the NOV and commencement of a civil action, required under CAA Section 113, 42 U.S.C. § 7413, has elapsed.

8.     The United States has provided notice of the commencement of this action to the State of Missouri, pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## AUTHORITY

9.     Authority to bring this action is vested in the Attorney General of the United States by CAA Section 305, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

## DEFENDANT

10.     Defendant Ameren is a Missouri corporation.

11.     As a corporate entity, Ameren is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e), and 10 C.S.R. 10-6.020(2).

12.     Ameren is the owner and/or operator of the Rush Island Plant in Festus, Jefferson County, Missouri.

3

## STATUTORY AND REGULATORY BACKGROUND

13.     The Clean Air Act is designed to protect and enhance the quality of the nation's air so as to promote the public health and welfare and the productive capacity of its population. Section 101(b)(1) of the Act, 42 U.S.C. § 7401(b)(1).

### A. The National Ambient Air Quality Standards

14.     Section 109 of the Act, 42 U.S.C. § 7409, requires the Administrator of U.S. EPA to promulgate regulations establishing primary and secondary national ambient air quality standards ("NAAQS" or "ambient air quality standards") for those air pollutants ("criteria pollutants") for which air quality criteria have been issued pursuant to Section 108 of the Act, 42 U.S.C. § 7408. The primary ambient air quality standards are to be adequate to protect the public health with an adequate margin of safety, and the secondary ambient air quality standards are to be adequate to protect the public welfare from any known or anticipated adverse effects associated with the presence of the air pollutant in the ambient air.

15.     Pursuant to Sections 108 and 109, 42 U.S.C. §§ 7408 and 7409, U.S. EPA has identified $SO_2$ as a criteria pollutant and has promulgated NAAQS for this pollutant. 40 C.F.R. §§ 50.4, 50.5. Emissions of $SO_2$ contribute to the formation of another air pollutant, particulate matter smaller than 2.5 microns ("$PM_{2.5}$" or "PM"). U.S. EPA has designated $PM_{2.5}$ as a criteria pollutant and established an annual and daily NAAQS for it. 40 C.F.R. §§ 50.7, 50.13. Effective July 15, 2008, $SO_2$ is regulated as a precursor to $PM_{2.5}$. 73 Fed. Reg. 28,321, 28,327-28 (May 16, 2008).

16.     Under Section 107(d) of the Act, 42 U.S.C. § 7407(d), each state is required to designate those areas within its boundaries where the air quality is better or worse than the

NAAQS for each criteria pollutant, or where the air quality cannot be classified due to insufficient data.  An area that meets the NAAQS for a particular pollutant is termed an "attainment" area with respect to such pollutant.  An area that does not meet the NAAQS for a particular pollutant is termed a "nonattainment" area with respect to such pollutant.  An area that cannot be classified as either "attainment" or "nonattainment" with respect to a particular pollutant due to insufficient data is termed "unclassifiable" with respect to such pollutant.

17.    The Rush Island Plant is located in Jefferson County, Missouri.  At all times relevant to this Complaint, Jefferson County has been classified as attainment for $SO_2$.  40 C.F.R. § 81.326.  Jefferson County is currently designated as nonattainment for the annual NAAQS for $PM_{2.5}$.  40 C.F.R. § 81.326.

B.  The Prevention of Significant Deterioration Requirements

18.    Part C of Title I of the Act, 42 U.S.C. §§ 7470-7492, sets forth requirements for the prevention of significant deterioration of air quality in those areas designated as either attainment or unclassifiable for purposes of meeting the NAAQS standards.  These requirements are designed to protect public health and welfare, to assure that economic growth will occur in a manner consistent with the preservation of existing clean air resources, and to assure that any decision to permit increased air pollution is made only after careful evaluation of all the consequences of such a decision and after public participation in the decision making process.  42 U.S.C. § 7470.  These provisions are referred to herein as the "PSD program."

19.    As part of the PSD program, Section 165(a) of the Act, 42 U.S.C. § 7475(a), among other things, prohibits the "construction" of a "major emitting facility" in an area designated as attainment or unclassifiable unless a permit has been issued that comports with the

requirements of Section 165 and the facility employs the "Best Available Control Technology" ("BACT") for each pollutant subject to regulation under the Act that is emitted from the facility.

20.     Section 169(2)(c) of the Act, 42 U.S.C. § 7479(2)(c), defines "construction" as including "modification" (as defined in CAA Section 111(a)).  "Modification" is defined in CAA Section 111(a), 42 U.S.C. § 7411(a), to be "any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted."

21.     Section 169(1) of the Act, 42 U.S.C. § 7479(1), designates fossil-fuel fired steam electric plants of more than 250 million British thermal units per hour heat input that emit or have the potential to emit 100 tons per year or more of any air pollutant to be "major emitting facilities."

22.     Section 169(3) of the Act, 42 U.S.C. § 7479(3) defines BACT, in pertinent part, as "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation under this chapter emitted from or which results from any major emitting facility which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility . . . .  In no event shall application of 'best available control technology' result in emissions of any pollutants which will exceed the emissions allowed by any applicable standard established pursuant to section 7411 . . . of this title."

23.     Pursuant to CAA Section 110(j), 42 U.S.C. § 7410(j), governing permits issued under Title I of the Act, "the owner or operator of each . . . modified stationary source which is required to obtain such a  permit must show . . . that the technological system of continuous

emission reduction which is to be used will enable such source to comply with the standards of performance which are to apply to such source and that the construction or modification and operation of such source will be in compliance with all other requirements of this chapter." CAA Section 165(a)(3), 42 U.S.C. § 7475(a)(3), allows issuance of a PSD permit only if "the owner or operator of such facility demonstrates, as required pursuant to section 7410(j) of this title, that emissions from construction or operation of such facility" will not compromise compliance with applicable air quality standards.

24.     Pursuant to CAA Section 110, 42 U.S.C. § 7410, each State must adopt and submit to U.S. EPA for approval a State Implementation Plan ("SIP") that includes, among other things, regulations to prevent the significant deterioration of air quality under CAA Sections 161-165, 42 U.S.C. §§ 7471-7475.  Section 161 of the Act, 42 U.S.C. § 7471, requires that each applicable SIP contain a PSD program.

25.     Pursuant to CAA Section 302(q), 42 U.S.C. § 7602(q), an applicable implementation plan is the implementation plan, or most recent revision thereof, which has been approved by U.S. EPA pursuant to CAA Section 110, 42 U.S.C. § 7410, or promulgated by U.S. EPA pursuant to CAA Section 110(c), 42 U.S.C. § 7410(c), and which implements the relevant requirements of the Act.  Upon U.S. EPA approval, SIP requirements are federally enforceable under Section 113 of the Act, 42 U.S.C. § 7413, and 40 C.F.R. § 52.23.

26.     A state may comply with CAA Section 161, 42 U.S.C. § 7471, by having its own PSD regulations approved by U.S. EPA as part of its SIP, which must be at least as stringent as those set forth at 40 C.F.R. § 51.166.  If a state does not have a PSD program that has been approved by U.S. EPA and incorporated into the SIP, then the U.S. EPA federal PSD regulations

7

set forth at 40 C.F.R. § 52.21 shall  be incorporated by reference into the SIP.  40 C.F.R.

§ 52.21(a).

27.     The state of Missouri's PSD program is part of Missouri Rule 10 C.S.R. 10-6.060.

 On June 22, 1982, U.S. EPA fully approved the Missouri Department of Natural Resources'

("MDNR" or "Missouri") PSD program as a revision to Missouri's SIP.  47 Fed. Reg. 26,833.

Since then, the Missouri SIP, including 10 C.S.R. 10-6.060, has been amended and approved by

U.S. EPA on several occasions.  51 Fed. Reg. 4,916 (Feb. 10, 1986); 54 Fed. Reg. 31,524 (July

31, 1989); 56 Fed. Reg. 9,172 (Mar. 5, 1991); 61 Fed. Reg. 7,714 (Feb. 29, 1996); 63 Fed. Reg.

70,665 (Dec. 22, 1998); 71 Fed. Reg. 36,486 (June 27, 2006).  The citations below refer to the

version of 10 C.S.R. 10-6.060 in effect and approved by U.S. EPA in the Missouri SIP at the

time the alleged violations began.  *See* 63 Fed. Reg. 70,665 (Dec. 22, 1998).

28.     The Missouri PSD program, as codified in the SIP, has required PSD permits for

"major modification" to major sources of air pollution. 10 C.S.R. 10-6.060(8).  The major

sources of air pollution include certain "installations" listed in the Missouri PSD program such

as fossil-fuel fired steam electric plants of more than 250 million British thermal units per hour

heat input that have the potential to emit 100 tons per year or more of any air pollutant.

10 C.S.R. 10-6.060(8) (4/30/1999);10 C.S.R. 10-6.020(3)(B), Table 2 (4/30/1999).

29.     The Missouri PSD program, as codified in the SIP, has defined "major

modification" as "[a]ny physical change or change in the method of operation . . . that would

result in a significant net emissions increase of any pollutant."  10 C.S.R. 10-6.020(2)(M)3

(4/30/1999).

30.     The Missouri PSD program, as codified in the SIP, has defined a "net emissions

increase" as "[a] condition when the increases in pollutant emissions at an installation exceed the decreases of the same pollutant."  10 C.S.R. 10-6.020(2)(N)2 (4/30/1999).  The definition of "net emission increase" further explained that "[i]n determining whether a net emissions increase has occurred, all creditable increases and decreases of actual emissions shall be included . . . ."  *Id.* "Actual emissions" are to be calculated in "tons per year" based on "actual operating hours, production rates and types of materials processed, stored or combusted . . . ."  10 C.S.R. 10-6.020(2)(A)4 (4/30/1999).

31.   The Missouri PSD program, as codified in the SIP, has defined a "significant" net emission increase as a net emissions increase "equal to or exceeding" certain "*de minimis* levels."  10 C.S.R. 10-6.020(2)(S)10 (4/30/1999).  The *de minimis* level for $SO_2$ is 40 "tons per year."  10 C.S.R. 10-6.020(2)(D)4 (4/30/1999); 10 C.S.R. 10-6.020(3)(A), Table 1 (4/30/1999).

32.   The Missouri PSD program, as codified in the SIP, has provided that BACT "shall apply" to the air pollutants triggering PSD review as "major modifications."  In addition, each application for a permit for construction or major modification must include, among other things, an analysis of ambient air quality and the impact of the construction or major modification on air quality, visibility, soils and vegetation.  10 C.S.R. 10-6.060(8)(B), (C) (4/30/1999).

33.   Missouri's SIP has expressly prohibited "operation" of sources that have undergone a major modification unless that modification was properly permitted under the PSD program, providing, in pertinent part:   "Construction/Operation Prohibited: No owner or operator shall commence construction or modification of any installation subject to this rule, begin operation after that construction or modification, or begin operation of any installation

which has been shut down longer than five (5) years without first obtaining a permit from the permitting authority under this rule."   10 C.S.R. 10-6.060(1)(C) (4/30/1999).

### C. Title V Permit Program

34.     Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources, including "major sources" and any source required to have a PSD permit. 42 U.S.C. § 7661a(a).   A "major source" for purposes of Title V is defined, among other things, as a source with a potential to emit greater than 100 tons per year of any criteria pollutant.  42 U.S.C. § 7661(2); *id.* § 7602.

35.     The purpose of Title V is to ensure that all "applicable requirements" for compliance with the Act, including PSD and SIP requirements, are collected in one place.

36.     Pursuant to Section 502(b) of the Act, 42 U.S.C. § 7661a(b), on July 21, 1992, U.S. EPA promulgated regulations implementing the requirements of Title V and establishing the minimum elements of a major source operating permit program to be administered by any air pollution control agency.  57 Fed. Reg. 32,250 (July 21, 1992).  These regulations are codified at 40 C.F.R. Part 70.

37.     Missouri's operating permit program under Title V of the CAA was granted final approval by U.S. EPA on May 14, 1997.  62 Fed. Reg. 26,405 (May 14, 1997).  These regulations are codified at 10 C.S.R. 10-6.065.

38.     The regulations at 10 C.S.R. 10-6.065 apply to "existing, modified, reconstructed and new installations, whether part 70, intermediate or basic state, throughout Missouri." 10 C.S.R. 10-6.065(3)(A) (3/31/1998).  A "part 70 installation" is defined as, *inter alia*, a source which emits or has the potential to emit one hundred (100) tons per year or more of any air

10

pollutant.  10 C.S.R. 10-6.065(1)(D)2 (3/31/1998).

39.    Missouri's Title V regulations require that no person shall operate a Part 70 installation except in compliance with an operating permit issued by the permitting authority. 10 C.S.R. 10-6.065(2)(A) (3/31/1998).  Section 502(a) of the CAA and federal regulations implementing Title V of the Act similarly provide that no source may operate without a Title V permit after the effective date of any permit program approved or promulgated under Title V of the Act.  42 U.S.C. § 7661a(a); 40 C.F.R. § 70.7(b).

40.    Section 503(c) of the Act, federal regulations implementing Title V of the Act, and Missouri's Title V regulations approved by U.S. EPA, require a source to submit a timely, accurate, and complete application for a permit, including, among other things:  the citations and descriptions of all requirements applicable to the source (including any requirement to comply with an emission rate that meets BACT pursuant to PSD); a description of, and compliance plan for, requirements for which the source is not in compliance; and a certification by a responsible official of the truth, accuracy, and completeness of the application.  42 U.S.C. § 7661b(c); 40 C.F.R. § 70.5(a) and (c); 10 C.S.R. 10-6.065(6)(B) (3/31/1998).

41.    Section 504(a) of the Act, federal regulations implementing Title V of the Act and Missouri's Title V regulations approved by U.S. EPA require that each Title V operating permit include, among other things, enforceable emissions limitations and standards and such other conditions as are necessary to assure compliance with applicable requirements of the Act and the requirements of the Missouri SIP, including any applicable PSD requirement to comply with an emission rate that meets BACT.  42 U.S.C. § 7661c(a); 40 C.F.R. § 70.6; 10 C.S.R. 10-6.065(6) (3/31/1998).

11

42.     Federal regulations implementing Title V of the Act and Missouri's Title V regulations approved by U.S. EPA require that all Part 70 installations have a permit to operate that contains operational requirements or limitations necessary to assure compliance with all applicable requirements.  40 C.F.R. § 70.1; 10 C.S.R. 10-6.065(6)(B) (3/31/1998).

43.     Federal regulations implementing Title V of the Act and Missouri's Title V regulations approved by U.S. EPA define "applicable requirement" to include any standard or requirement provided for in the implementation plan approved or promulgated by EPA through rulemaking under Title I of the Act that implements the relevant requirements, including any revisions to that plan promulgated in 40 C.F.R. part 52.  10 C.S.R. 10-6.020(2)(A)27 (4/30/1999); 40 C.F.R. § 70.2.

44.     Federal regulations implementing Title V of the Act and Missouri's Title V regulations approved by U.S. EPA provide that any applicant who fails to submit any relevant facts or who has submitted incorrect information in a permit application shall, upon becoming aware of such failure or incorrect submittal, promptly submit such supplementary facts or corrected information.  10 C.S.R. 10-6.065(6) (3/31/1998); 40 C.F.R. § 70.5(b).

45.     Federal regulations implementing Title V of the Act and Missouri's Title V regulations approved by U.S. EPA provide that each Title V operating permit must include requirements for annual certification to U.S. EPA and the permitting authority of compliance with the terms and conditions contained in the permit that are federally enforceable, including emissions limitations, standards or work practices.  40 C.F.R. 70.6; 10 C.S.R. 10-6.065(6)(C)3 (3/31/1998).

46.     The MDNR issued Title V Operating Permit Number OP2000061 to Defendant

for operation of its Rush Island Plant.  Title V Operating Permit Number OP2000061 became

effective on May 18, 2000 and remained in effect until MDNR issued Ameren Missouri Title V

Operating Permit Number OP2010-047 for the Rush Island Plant.  Title V Operating Permit

Number OP2010-047 became effective on August 30, 2010.

47.     At all times relevant to this Complaint, the Title V Operating Permits for

Defendant's Rush Island Plant have provided that Defendant shall not change a permitted

installation without a permit revision, if that change is subject to, *inter alia*, the PSD regulations

under the Missouri SIP.  *See* 10 C.S.R. 10-6.065(6)(C)9 (3/31/1998).

48.     At all times relevant to this Complaint, the Title V Operating Permits for

Defendant's Rush Island Plant have provided that Defendant shall not commence a major

modification of any installation subject to 10 C.S.R. 10-6.060 or begin operation after that

construction without first obtaining a permit from the permitting authority.

49.     At all times relevant to this Complaint, the Title V Operating Permits for

Defendant's Rush Island Plant have provided that Ameren shall annually certify that it is in

compliance with all of the federally enforceable terms and conditions contained in those permits.

*See* 10 C.S.R. 10-6.065(6)(C)3 (3/31/1998).

50.     Federal regulations implementing Title V of the Act and Missouri's Title V

regulations approved by U.S. EPA each provide that all terms and conditions of any Title V

operating permit are enforceable by, *inter alia*, U.S. EPA.  40 C.F.R. §70.6(b); 10 C.S.R. 10-

6.065(6)(C)2 (3/31/1998).

## ENFORCEMENT PROVISIONS

51.     Sections 113(a)(1) and (3) of the Act, 42 U.S.C. §§ 7413(a)(1) and (3), provide

13

that the Administrator may bring a civil action in accordance with Section 113(b) of the Act, 42 U.S.C. § 7413(b), whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of, *inter alia*, the PSD requirements of Section 165(a) of the Act, 42 U.S.C. § 7475(a); Title V of the Act, 42 U.S.C. §§ 7661-7661f, or any rule or permit issued thereunder; or the provisions of any approved SIP or any permit issued thereunder.

52.     Section 113(b) of the Act, 42 U.S.C. § 7413(b), authorizes the Administrator to initiate a judicial enforcement action against "the owner or operator of an affected source, a major emitting facility, or a major stationary source" or "any other person" for a permanent or temporary injunction, and/or for a civil penalty of up to $25,000 per day for each violation occurring on or before January 30, 1997; up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; and up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4, whenever such person has violated, or is in violation of, *inter alia,* the requirements or prohibitions described in the preceding paragraph.

53.     40 C.F.R. § 52.23 provides, *inter alia*, that any failure by a person to comply with any provision of 40 C.F.R. Part 52, or with any approved regulatory provision of a SIP, shall render such person in violation of the applicable SIP, and subject to enforcement action pursuant to Section 113 of the Act, 42 U.S.C. §7413.

54.     Section 167 of the Act, 42 U.S.C. § 7477, authorizes the Administrator to initiate

14

an action for injunctive relief, as necessary to prevent the construction, modification or operation of a major emitting facility which does not conform to the PSD requirements in Part C of the Act.

## GENERAL ALLEGATIONS

55.     At all times relevant to this Complaint, Defendant was and is the owner and/or operator of the Rush Island Plant.

56.     At all times relevant to this Complaint, the Rush Island Plant has had the potential to emit more than 100 tons per year of pollutants subject to regulation under the Act, including, but not limited to, $SO_2$.

57.     At all times relevant to this Complaint, the Rush Island Plant was and is a fossil-fuel-fired steam electric plant of more than 250 million British thermal units (BTU) per hour heat input.

58.     At all times relevant to this Complaint, the Rush Island Plant was and is a "major stationary source" within the meaning of 42 U.S.C. § 7479(1) and a "major stationary source" within the meaning of 40 C.F.R. § 52.21(b)(1)(i)(a).

59.     At all times relevant to this Complaint, the Rush Island Plant was and is an "installation" subject to the requirements of Missouri's PSD program.  10 C.S.R. 10-6.060(6) and (8).

60.     At all times relevant to this Complaint, the Rush Island Plant was and is a "major source" within the meaning of Title V of the Act and the federal Title V regulations.  42 U.S.C. § 7661(2); 40 C.F.R. § 70.2.

61.     At all times pertinent to this Complaint, the Rush Island Plant was and is a "Part

15

70 installation" within the meaning of the Missouri Title V regulations.  10 C.S.R.

10-6.065(2)(D).

  62. U.S. EPA is charged with CAA oversight and enforcement for thousands of major

sources of air pollution in the nation.  PSD is a permitting regime where the agency depends on

sources to follow the law in the first instance.  Here, Ameren did not disclose to U.S. EPA the

major modifications of Rush Island that are at issue.  On the contrary, Ameren filed annual

statements with Missouri and U.S. EPA that certified compliance with the CAA.  The facts

giving rise to the alleged violations only came to light in 2008 during a U.S. EPA enforcement

investigation of Ameren.  The company's response to that investigation highlights why U.S.

EPA did not learn of the alleged violations earlier.   For example, Ameren asserted that the

documents relating to the alleged violations were "confidential business information" ("CBI"), a

designation reserved for trade secrets and other matters not known by the public.    40 C.F.R. §

2.201(e).

## FIRST CLAIM FOR RELIEF

### (PSD Violations at Rush Island Unit 1)

  63. Paragraphs 1 through 62 are realleged and incorporated herein by reference.

  64. Rush Island Unit 1 began operating in 1976.

  65. From approximately September 2001 to February 2002, Defendant began actual

construction and operation of one or more "major modifications", as defined in the CAA and the

Missouri SIP, on Rush Island Unit 1.  These major modifications included one or more physical

changes and/or changes in the method of operation at Rush Island Unit 1, including, but not

limited to:  a project to replace the complete primary superheater with a modified and expanded

16

component, as well as associated turbine replacements.   These multi-million dollar modifications were described in the notices of violation dated January 26, 2010 and October 14, 2010.  These physical changes and/or changes in the method of operation resulted in a significant net emissions increase of $SO_2$, as defined in the Missouri SIP.

66.   Defendant did not comply with the PSD requirements in the Act and the Missouri SIP with respect to the major modifications and subsequent operations at Rush Island Unit 1. Among other things, Defendant: (i) undertook such major modifications without first obtaining a PSD permit for the construction and operation of the modified unit; (ii) undertook such major modifications without undergoing a BACT determination in connection with the major modifications; (iii) undertook such major modifications without installing BACT for control of $SO_2$ emissions; (iv) has failed to operate BACT for control of $SO_2$ emissions pursuant to a BACT determination; (v) has failed to operate in compliance with BACT emission limitations, including limitations that are no less stringent than applicable standards under Section 111 of the CAA; and (vi) operated after undergoing an unpermitted major modification, despite the express prohibition in the Missouri SIP against operating an unlawfully modified source.

67.   Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD regulations contained in the federally enforceable Missouri SIP. Unless restrained by an order of this Court, these violations will continue.

68.   As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such

violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF

(PSD Violations at Rush Island Unit 2)

69.     Paragraphs 1 through 68 are realleged and incorporated herein by reference.

70.     Rush Island Unit 2 began operating in 1977.

71.     From November, 2003 to January, 2004, Defendant began actual construction and operation of one or more "major modifications," as defined in the CAA and Missouri SIP, on Rush Island Unit 2.  These major modifications included one or more physical changes and/or changes in the method of operation at Rush Island Unit 2, including, but not limited to: a project to replace the complete primary superheater with a modified and expanded component, as well as associated turbine replacements.   These multi-million dollar modifications were described in the notices of violation dated January 26, 2010 and October 14, 2010.  These physical changes and/or changes in the method of operation resulted in a significant net emissions increase of $SO_2$, as defined in the Missouri SIP.

72.     Defendant did not comply with the PSD requirements in the Act and the Missouri SIP with respect to the major modifications and subsequent operations at Rush Island Unit 2. Among other things, Defendant: (i) undertook such major modifications without first obtaining a PSD permit for the construction and operation of the modified unit; (ii) undertook such major modifications without undergoing a BACT determination in connection with the major

18

modifications; (iii) undertook such major modifications without installing BACT for control of SO$_2$ emissions; (iv) has failed to operate BACT for control of SO$_2$ emissions pursuant to a BACT determination; (v) has failed to operate in compliance with BACT emission limitations, including limitations that are no less stringent than applicable standards under Section 111 of the CAA; and (vi) operated the unit after undergoing an unpermitted major modification, despite the express prohibition in the Missouri SIP against operating an unlawfully modified source.

73.     Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD regulations contained in the federally enforceable Missouri SIP. Unless restrained by an order of this Court, these violations will continue.

74.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

### THIRD CLAIM FOR RELIEF

(Title V Violations at Rush Island Unit 1)

75.     Paragraphs 1 through 74 are realleged and incorporated herein by reference.

76.     As set forth above, Defendant commenced construction of one or more major modifications at Rush Island Unit 1. As a result, these major modifications triggered the

requirements to, *inter alia*, undergo a BACT determination, obtain a PSD permit establishing

emissions limitations that meet BACT requirements pursuant to such a determination, and

operate in compliance with such limitations.  Defendant has failed to satisfy these requirements.

77.     Subsequently, Defendant failed to submit an accurate and complete Title V permit

application for Rush Island Unit 1 that identifies all applicable requirements, accurately certifies

compliance with such requirements, contains a compliance plan for all applicable requirements

for which the source was not in compliance, including the requirement to meet BACT pursuant

to a determination under PSD, and other specific information that may be necessary to

implement and enforce the applicable requirements of the Act and/or Missouri's Title V

regulations or determine the applicability of such requirements.  Defendant also failed to

supplement or correct the Title V permit applications containing such information for Rush

Island Unit 1.

78.     Defendant has failed to obtain a proper or adequate Title V operating permit for

Rush Island Unit 1 that contains one or more emissions limitations for $SO_2$ that meet BACT.

Defendant has thereafter operated Rush Island Unit 1 without meeting such limitations and

without having an adequate operating permit that requires compliance with such limitations or

that contains a compliance plan for all applicable requirements for which the source is not in

compliance.

79.     Defendant has violated its Title V Operating Permit applicable to Rush Island

Unit 1 during the times relevant to this Complaint by failing to accurately certify compliance

with all of the federally enforceable terms and conditions contained in the permit.

80.     Defendant has violated its Title V Operating Permit applicable to Rush Island

Unit 1 during the times relevant to this Complaint by commencing one or more major modifications of Rush Island Unit 1 and by operating Rush Island Unit 1 after the major modification(s) without obtaining a permit from the permitting authority under 10 C.S.R. 10-6.060.

81.     Defendant's conduct has violated and continues to violate Sections 502(a), 503(c) and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V implementing regulations including 40 C.F.R. §§ 70.5-70.6, and 10 C.S.R. 10-6.065.

82.     Unless restrained by an order of this Court, these violations of the Act will continue.

83.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

**FOURTH CLAIM FOR RELIEF**

(Title V Violations at Rush Island Unit 2)

84.     Paragraphs 1 through 83 are realleged and incorporated herein by reference.

85.     As set forth above, Defendant commenced construction of one or more major modifications at Rush Island Unit 2.  As a result, these major modifications triggered the

21

requirements to, *inter alia*, undergo a BACT determination, obtain a PSD permit establishing emissions limitations that meet BACT requirements pursuant to such a determination, and operate in compliance with such limitations. Defendant has failed to satisfy these requirements.

86.     Subsequently, Defendant failed to submit an accurate and complete Title V permit application for Rush Island Unit 2 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance, including the requirement to meet BACT pursuant to a determination under PSD, and other specific information that may be necessary to implement and enforce the applicable requirements of the Act and/or Missouri's Title V regulations or determine the applicability of such requirements. Defendant also failed to supplement or correct the Title V permit applications containing such information for Rush Island Unit 2.

87.     Defendant has failed to obtain a proper or adequate Title V operating permit for Rush Island Unit 2 that contains one or more emissions limitations for $SO_2$ that meet BACT. Defendant has thereafter operated Rush Island Unit 2 without meeting such limitations and without having an adequate operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the source is not in compliance.

88.     Defendant has violated its Title V Operating Permit applicable to Rush Island Unit 2 during the times relevant to this Complaint by failing to accurately certify compliance with all of the federally enforceable terms and conditions contained in the permit.

89.     Defendant has violated its Title V Operating Permit applicable to Rush Island

22

Unit 2 during the times relevant to this Complaint by commencing one or more major modifications at Rush Island Unit 2 and by operating Rush Island Unit 2 after the major modification(s) without obtaining a permit from the permitting authority under 10 C.S.R. 10-6.060.

90.     Defendant's conduct has violated and continues to violate Sections 502(a), 503(c) and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V implementing regulations including 40 C.F.R. §§ 70.5-70.6, and 10 C.S.R. 10-6.065.

91.     Unless restrained by an order of this Court, these violations of the Act will continue.

92.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $27,500 per day for each such violation occurring on or after January 31, 1997 and up to and including March 15, 2004; up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 92 above, the United States requests that this Court:

1.     Permanently enjoin the Defendant from operating the Rush Island Plant except in accordance with the CAA and any applicable regulatory requirements;

23

2.     Order the Defendant to apply for and comply with permits for the Rush Island Plant that are in conformity with the requirements of the PSD program, the Missouri SIP, and with the federal and Missouri Title V programs;

3.     Order the Defendant to remedy its past and ongoing violations by, among other things, requiring Defendant to install and operate BACT at the Rush Island Plant to control emissions of $SO_2$;

4.     Order Defendant to conduct audits of their operations to determine if any additional modifications have occurred which would require them to meet the requirements of PSD and report the results of these audits to the United States;

5.     Order Defendant to surrender emission allowances or credits to offset and mitigate its illegal emissions;

6.     Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged above;

7.     Assess a civil penalty against Defendant of up to $32,500 per day for each such violation occurring on or after March 15, 2004 and within the statute of limitations period; and up to $37,500 per day for each such violation occurring on or after January 13, 2009;

8.     Award the United States its costs of this action; and,

9.     Grant such other relief as the Court deems just and proper.

Respectfully Submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JUSTIN A. SAVAGE
Senior Counsel
ANDREW C. HANSON
BRADFORD T. MCLANE
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone:  (202) 514-5293
Facsimile:  (202) 514-0097
E-mail: Justin.Savage@usdoj.gov

RICHARD G. CALLAHAN
United States Attorney for the
Eastern District of Missouri

Suzanne Moore
Assistant United States Attorney
United States Attorney's Office
Eastern District of Missouri
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone: (314) 539-2547
Facsimile: (314) 539-2309
E-mail: Suzanne.Moore@usdoj.gov

OF COUNSEL:

ILANA SALTZBART
Attorney-Advisor
U.S. EPA, Air Enforcement Division
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

ALEX CHEN
Senior Counsel
Office of Regional Counsel
U.S. EPA, Region 7
901 North 5th Street
Kansas City, Kansas 66101