**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **AMEREN MISSOURI,** ) <br> ) <br> Defendant. ) <br> ) | Case No. 4:11-CV-00077-RWS <br><br> Judge Rodney W. Sippel |

**AMEREN MISSOURI'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS RULE 12(b)(6) MOTION TO DISMISS**

Ameren Missouri ("Ameren") respectfully submits the following reply brief in support of its Motion to Dismiss Pursuant to Rule 12(b)(6).

Like the Complaint, Plaintiff's Opposition lacks the legal and factual substance to support the bold conclusions it makes. Plaintiff does not identify any allegations that are not mere incantations of the regulatory language – the very "labels and conclusions" prohibited by *Twombly* and 8th Circuit precedent. Indeed, Plaintiff calls Ameren "off-base" for wanting to know the facts of what it is accused of doing. And in a contorted effort to excuse its pleading failure, Plaintiff argues that it did not plead any facts because they are both confidential *and* publicly available.

Just as lacking in substance are Plaintiff's arguments that the statute of limitations does not bar Plaintiff's claims for civil penalties. In an unavailing effort to avoid controlling Eighth Circuit precedent – which holds that Prevention of Significant Deterioration ("PSD") program violations occur only at the time of construction – Plaintiff ignores the plain language of the Missouri SIP and tries to sidestep the Missouri statute that prevents SIP rules from being

construed more stringently than their federal Clean Air Act counterparts. Plaintiff is left to make an unsupported comparison to inapposite regulations from Tennessee. These arguments are meritless. The Complaint should be dismissed in its entirety for failing to plead any facts regarding the Projects. Failing that, the Complaint's PSD and certain of its Title V claims for civil penalties should be dismissed as time-barred.

### A. The Complaint Should Be Dismissed.

Plaintiff does not dispute that the Complaint's allegations are verbatim recitations of the applicable regulations and statutes. Nor does Plaintiff dispute that as to the claim that the Projects were "major modifications," the Complaint offers no facts other than their date and cost, facts that are not sufficient to state a claim for a violation of the Clean Air Act. Because all of the alleged violations in the Complaint are predicated on the Complaint's legal conclusions that the Projects are "major modifications," the Complaint fails to state a claim and should be dismissed.

Moreover, Plaintiff makes a request to amend its Complaint, (ECF No. 18 at 15) but fails to attach a proposed amended complaint or to proffer the substance of the amendment, as required under Eighth Circuit precedent. "Leave to amend generally is inappropriate, however, where the plaintiff has not indicated how it would make the complaint viable, either by submitting a proposed amendment or indicating somewhere in its court filings what an amended complaint would have contained." *Pet Quarters, Inc. v. Depository Trust and Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009); *In re Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 883-84 (8th Cir. 2009) (affirming denial of leave to amend where, as here, plaintiff's only such request was set forth at the end of its brief in opposition to the motion to dismiss); *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985).

Plaintiff offers a host of makeweight arguments in an effort to excuse its failure to plead any facts.  First, Plaintiff says that "public information" Plaintiff omitted from the Complaint should have put Ameren on notice and satisfies *Twombly* and *Iqbal*.  (ECF No. 18 at 7.)  This argument finds no support in Rule 8, and Plaintiff cites no other authority in support of this argument.  Even in the Opposition, Plaintiff merely discusses the generalities of the NSR litigation initiative.  On the issue that matters – factual allegations that show how the Projects were "major modifications" – Plaintiff does not identify any facts in the public domain.

Plaintiff next suggests that Ameren's designation of certain information as confidential business information, a procedure which the Clean Air Act expressly provides, somehow prevented Plaintiff from including any facts in the Complaint.  But Plaintiff does not identify any facts it would have included but did not because of the confidentiality designations, and does not offer any authority that excuses a plaintiff from pleading any facts by claiming that some of those facts are confidential.[1]  And even if some material was protected, all Plaintiff had to do to satisfy its obligations under Rule 8 and *Twombly* was to file a redacted complaint.

If, as Plaintiff says in its Opposition, the "real issue" is "whether Ameren should have expected a net emissions increase of more than 40 tons per year of $SO_2$ from the projects at each unit," (ECF No. 18 at 6), one would expect the Complaint to allege such facts.  But it does not do so. The Complaint lacks any allegations that Ameren expected, or should have expected, such an emissions increase.  (The words "expected" and "expect" do not appear in the Complaint.)  Nor does Plaintiff allege *why* or *how* such an increase should have been expected from these Projects. If this is Plaintiff's theory, Ameren is entitled to know the facts Plaintiff claims supports that

---

[1] Plaintiff could have asked Ameren to waive confidentiality as to the specific facts it was allegedly prohibited from including in the Complaint.  *See* 40 C.F.R. § 2.209(f).  Plaintiff made no such request.

3

theory, because the conclusion offered is far from obvious. As noted in Ameren's opening brief, half of the Projects are turbine replacements that improve efficiency, generating the same power with less fuel – which, all else equal, generates fewer emissions.

This Motion is not an academic exercise. Plaintiff does not dispute that these NSR cases are enormous undertakings, usually spanning many years, involving vast amounts of discovery and motion practice. For example, a decade before Plaintiff brought this case, it sued the Alabama Power Company in January, 2001 for claimed NSR violations. The case proceeded through burdensome discovery, motion practice, mediation, interlocutory appeal to the 11th Circuit, and multiple rounds of summary judgment briefing until just weeks ago, when the district court – on its own motion – dismissed all of Plaintiff's claims because they were based on a flawed theory of how emissions allegedly "increased." *United States v. Alabama Power Co.*, No. 2:01-cv-152, 2011 WL 1158020, at *1 (N.D. Ala. Mar. 14, 2011) (for accompanying mem. opins. see 2011 WL 1158037 and 2011 WL 1158252); *see also United States v. Cinergy Corp.*, 623 F.3d 455, 461 (7th Cir. 2010) (reversing jury verdict in an 11-year-old case, and remanding with instructions that judgment be entered for the defendant, because of Plaintiff's same flawed emissions theory).

The facts supporting Plaintiff's theory of the increased emissions allegedly caused by the Projects are just some of the allegations noticeably absent from the Complaint here. (ECF No. 13 at 5-7.) On that point, Plaintiff states (in its brief, not the Complaint) that "the nature, cost, and extent of the projects, the capacity of these units, and the already massive $SO_2$ emissions at the Rush Island Plant make it more than plausible that the projects would be expected to result in large emissions increases." But just saying it does not make it so. The Complaint does not allege any facts about the "nature" or "extent" of the Projects. Nor does it allege why capacity or

4

current emissions would cause, or would be expected to cause, an emissions increase.  Plaintiff calls these "technical calculations" (ECF No. 18 at 6), but again, that is simply incorrect – what is missing is the Plaintiff's entire emissions *theory* and the facts supporting it.  Indeed, Plaintiff's arguments seem to show that it has a theory of liability, but has chosen not to state it or any facts supporting it in the Complaint.  That is impermissible.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 634 (8th Cir. 2010).

If Plaintiff's case is premised on the same theory Plaintiff used in *Alabama Power* and *Cinergy*, Plaintiff should say so, and allege the facts relevant to that theory.  If Plaintiff has some other theory, it should allege that too, so that Ameren can prepare its defense and potentially challenge that theory early, before engaging in years of unnecessary litigation.

The burden of complying with the pleading rules is light, yet Plaintiff steadfastly refuses to provide any facts, suggesting "that's what discovery is for." (ECF No. 18 at 6.)  But this is not a case where discovery will put some "flesh" on the "bones" of a Complaint that, while factually thin, is technically sufficient.  Here, there are no bones to begin with.  The avoidance of unnecessary discovery in large complex cases is one of the key motives behind the Supreme Court's holding in *Twombly* that, particularly in the context of such high-cost litigation, plaintiffs do not state a claim by stating legal conclusions as if they were facts.  *Twombly*, 550 U.S. at 557-58.  That reasoning applies with equal force here.

### B.  The Statute of Limitations Bars the Penalty Claims.

The parties' briefs have narrowed the points in dispute regarding Ameren's motion to dismiss the PSD penalty claims and certain of the Title V penalty claims.  Specifically, Plaintiff does not dispute that the five-year statute of limitations in 28 U.S.C. § 2462 applies to these

5

claims, and does not dispute that construction on the Projects began and ended well over five years before the Complaint was filed.  Thus, the only issue that remains in dispute is whether the alleged PSD and Title V permit term violations are ongoing during operation or instead occurred, if at all, only at the time of construction.

The Eighth Circuit held in *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008 (8th Cir. 2010) that under the plain language of the federal PSD statute and regulations, a claim that a plant operator failed to obtain a PSD permit does not present a continuing violation.  Any such violation, if it occurs at all, occurs just once – prior to construction – and for statute of limitations purposes, the claim accrues at that time.  Thus, under the Clean Air Act and U.S. EPA's regulations, the point is settled in Ameren's favor.

Plaintiff thus turns to the Missouri SIP and tries to show that it imposes a continuing duty to obtain a construction permit after construction has begun.  But, as shown below, the plain language of the Missouri SIP regulations shows Plaintiff's argument to be incorrect.  If there were any doubt on the subject, it is resolved by Missouri law, which specifically prohibits the adoption of environmental regulations more stringent than their federal counterparts.  Mo. Rev. Stat. § 643.055.1 (2010) ("The standards and guidelines so established shall not be any stricter than those required under the provisions of the federal Clean Air Act, as amended . . . .").

Lacking a cogent response to the express limitations imposed by Section 643.055.1, Plaintiff tries to dismiss it in a footnote, making arguments that are beside the point.  (ECF No. 18 at 11 n.8 (arguing the irrelevant point that Section 643.055.1 "does not limit EPA's authority to approve any provision of the SIP").)  But Plaintiff cannot and does not dispute that the Eighth Circuit has held that the federal PSD program does not give rise to ongoing liability, and the Missouri PSD regulations can be no more stringent than "those required under the provisions of

6

the federal Clean Air Act." Mo. Rev. Stat. § 643.055.1; *Missouri Hosp. Assoc. v. Air Conservation Comm'n*, 874 S.W.2d 380, 396 (Mo. Ct. App. 1994) (interpreting § 643.055 to mean that "if Congress has spoken on a particular issue in the federal Clean Air Act, the Commission is prohibited from adopting rules or regulations on that issue that are either stricter than federal law or enforceable sooner"); *Friends of Agric. for Reform of Missouri Envtl. Regulations v. Zimmerman*, 51 S.W.3d 64, 79 (Mo. Ct. App. 2001) ("where there is affirmative regulation under the Clean Air Act, Congress has directly spoken as to the specific topic of that particular regulation, and § 643.055.1 is triggered.").

These points demonstrate that any violation for failing to obtain a PSD permit occurred, if at all, only at the time of construction. The PSD penalty claims, and those Title V claims based on the failure to obtain a PSD permit before construction, are time-barred. The Court should grant Ameren's Motion on these bases alone.

    **C.**    <u>**Ameren's Motion Is Procedurally Proper.**</u>

Plaintiff initially argues that Ameren's Motion is procedurally flawed because it is addressed only to certain relief sought by the Complaint, as opposed to entire "claims." (ECF No. 18 at 8-9.) Plaintiff is incorrect. Again, Plaintiff cites no case authority for its argument. (*Id.*) Plaintiff's only support, a quotation of Rule 12(b)(6), omits the portion of Rule 12(b) stating that "a party may assert the following defenses" to "a claim *for relief*." Fed.R.Civ.P.12(b)(6) (emphasis added). Ameren's motion is procedurally proper. *See, e.g., Stark v. Healthy Alliance Life Ins. Co.*, No. 4:10-CV-1141, 2010 WL 4320339, at *3 (E.D. Mo. Oct. 22, 2010) (Sippel, J.) (granting Rule 12(b)(6) motion to dismiss claim for pain and suffering damages in Count V, but permitting claim for attorneys' fees in Count V to stand).

Indeed, specifically in the NSR context, courts have properly granted motions to dismiss directed specifically to civil penalties (the same relief requested by Ameren's motion) while

7

allowing claims for injunctive relief to stand for the same counts.  *See, e.g., United States v. Midwest Generation, LLC*, 694 F. Supp. 2d 999, 1008-09 (N.D. Ill. 2010); *New York v. Niagara Mohawk Power Corp.*, 263 F.Supp.2d 650, 663 (W.D.N.Y. 2003); *United States v. Westvaco Corp.*, 144 F. Supp. 2d 439, 445 (D. Md. 2001).[2]

> D. **Plaintiff's Reading of the Missouri SIP's "Begin Operation" Language is Contrary to Its Plain Meaning.**

Plaintiff fishes in the Missouri SIP in a search for language that gives rise to an ongoing obligation.  Plaintiff first turns to 10 C.S.R. § 10-6.060(1)(C), which states:

> No owner or operator shall commence construction or modification of any installation subject to this rule, <u>begin operation after that construction or modification</u>, or begin operation of any installation which has been shut down longer than five (5) years without first obtaining a permit from the permitting authority under this rule.

*Id.* (emphasis added).  Plaintiff also relies on similar language contained in Ameren's Title V permit.  (ECF No. 18 at 10-11 and Ex. D at 28 ("The permittee shall not…begin operation after [a] . . . major modification . . . without first obtaining a permit.").)

Plaintiff's argument asks this Court to ignore the plain language of the Missouri SIP. Plaintiff construes the phrase "begin operation after that construction or modification" as if the word "begin" was absent and that the phrase instead means "*operate at any time* after that construction or modification."  The plain English meaning of the phrase "begin operation after that construction or modification" means to re-start operation once the modification is completed (because operation is halted for construction).  Plaintiff's argument writes the word "begin" out

---

[2] Apparently, Ameren would have satisfied Plaintiff's reading of Rule 12 if it had moved to dismiss Plaintiff's claims for injunctive relief in addition to those for civil penalties.  Thus, Plaintiff's reading of Rule 12 would require Ameren to move on and brief an issue it did not wish to assert (consuming Court and party resources addressing that irrelevant issue) or else be prevented from filing any motion to dismiss at all.  Plaintiff's interpretation is counterintuitive.

8

of the rule.[3]

Indeed, the entire provision speaks to action at the time of construction. In addition to the clause underlined above, upon which Plaintiff relies, both the preceding and subsequent clauses speak to "commenc[ing]" construction and "begin[ning] operation" after a shutdown for construction. (*Id.*) (Plaintiff omitted the subsequent clause from its quotation of this provision, *see* ECF No. 18 at 10.) There can be no valid argument that the phrase means "operate" instead of what it says: "begin operation." This is obvious from a plain reading of the clause on which Plaintiff's argument depends, but is even more apparent when the provision is read as a whole. Moreover, in its opening brief, Ameren demonstrated that the Missouri SIP's PSD provisions impose obligations that are due only at the time of construction. (ECF No. 13 at 9-10.)

The temporal limitation created by words like "begin" or "commence" has been critical to the court decisions addressing whether alleged PSD violations occur only at the time of construction. For example, in *Otter Tail*, the Eighth Circuit construed similar language from the federal PSD regulations, and rejected an argument that the language imposed an ongoing duty. The portion of the regulations at issue read: "any owner or operator of a source or modification subject to this section who *commences construction* . . . without applying for and receiving approval hereunder, shall be subject to appropriate enforcement action." *Otter Tail*, 615 F.3d at 1016 (quoting 40 C.F.R. § 52.21(r)(1)) (emphasis added). The Eighth Circuit interpreted this

---

[3] The Fifth Circuit has considered an analogous argument with respect to the meaning of the phrases "construct" and "begin construction" in a different part of the Clean Air Act. In *Sierra Club, Inc. v. Sandy Creek Energy Assoc., L.P.*, 627 F.3d 134, 141 (5th Cir. 2010), the court analyzed a statute that contained the prohibition "no person may construct." *Id.* The defendant argued that the statute should be construed to mean "no person may begin construction." *Id.* The Fifth Circuit rejected that argument and distinguished between "the act of construction itself" and "the commencement thereof," finding that the plain meaning of the word "construct" covered any construction, regardless of when it began. *Id.* Here, Plaintiff is arguing the converse proposition – that "no person may begin operation" really means "no person may operate," but just like the defendant in *Sandy Creek*, Plaintiff is impermissibly trying to change the plain meaning of the regulatory language at issue.

9

provision as creating a single violation "by failing to apply for PSD permits in the *first place*" but rejected any interpretation that a source could "continue to" violate § 52.21(r)(1) after failing to obtain a PSD permit prior to "commenc[ing] construction."  *Id.* (emphasis added); *see also Sierra Club v. Duke Energy Indiana, Inc.*, No. 1:08-cv-437, 2010 WL 3667002, at *7-8 (S.D. Ind. Sept. 14, 2010); *United States v. Louisiana-Pacific Corp.*, 682 F. Supp. 1122, 1130 (D. Colo. 1987).  Similarly, the word "begin" in "begin operation" under the Missouri construction permit rules can only create an obligation to obtain a construction permit prior to operation, not while operating thereafter.  *See* 10 C.S.R. § 10-6.6060(1)(C).

        E.        **The "Contemporaneous Notice" Provision Does Not Create an Ongoing Violation.**

Plaintiff next turns to a provision in the Missouri SIP that requires an operator to provide "contemporaneous" notice of a major modification:  "The permittee must provide contemporaneous written notice of the change to the permitting authority and to the administrator no later than the next annual emissions report."  (ECF No. 18-3, Ex. B at 10 C.S.R. § 10-6.065(6)(C)9.B; EFC No. 18-5, Ex. D at 40 (Title V permit, reflecting same language).)  But this provision does not create an ongoing duty any more than does the requirement to obtain a PSD permit at the time of construction.  The only action it requires is a notification that is "contemporaneous" with the alleged major modification – or sent no later than the "next annual emissions report."  In other words, it requires a single notification at the same time the alleged major modification occurs, or shortly thereafter.  Plaintiff does not dispute that all the Projects took place considerably more than five years before the Complaint was filed.  Thus, any violation of a "contemporaneous notification" requirement occurred, if at all, only once – and over five years ago.  (*See* ECF No. 13 at 15 n.8.)  It, too, is time-barred by the statute of limitations.

10

Plaintiff then argues that the above "notification" provision is "directly analogous" to a provision in Tennessee's SIP that specifically and expressly provides for issuance of a construction permit after construction has concluded. (ECF No. 18 at 13.) Respectfully, there is simply no basis in the language of the regulations (or logic) for that *ipse dixit* assertion, as shown below. The Tennessee rule cited by Plaintiff says that:

> In the case where a source or modification was constructed without first obtaining a construction permit, a construction permit may be issued to the source or modification to establish as conditions of the permit, the necessary emission limits and requirements to assure that these regulatory requirements are met. The appropriate enforcement action shall be pursued to insure that ambient air quality standards and other regulatory requirements will be met.

Tenn. Comp. R. & Regs. 1200-3-9-.01(1)(e).

The Tennessee provision is fundamentally different from the Missouri provision. The latter speaks to a one-time obligation to send a notice, the former provides for what the Eighth Circuit in *Otter Tail* called a "postconstruction permitting process." *Otter Tail*, 615 F.3d at 1017. The Eighth Circuit distinguished the Tennessee provision from SIPs that do "not provide a way for a party who had undertaken a modification to obtain . . . a determination [of BACT limits] outside the preconstruction permitting process." *Id.* (citing *Nat'l Parks & Conservation Assoc., Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1325 (11th Cir. 2007)).

The Eleventh Circuit has considered and rejected the same argument Plaintiff now makes. In *Nat'l Parks & Conservation Assoc., Inc. v. Tennessee Valley Authority*, 502 F.3d 1316, 1325 (11th Cir. 2007), the plaintiff argued that the Alabama SIP was analogous to the Tennessee rule. The Eleventh Circuit rejected that argument because "[u]nlike Tennessee, Alabama limited the obligation to apply [BACT] to proposed modifications, with no caveat continuing the obligation for the operating life of the source if it was not met during the

11

construction phase." *Id.* at 1325. Absent from the Alabama SIP was a requirement imposing a post-construction duty to obtain a PSD permit on a party who had undertaken a modification. "[W]ithout a provision imposing an ongoing duty to meet preconstruction requirements that were not met at the time of construction, there is no basis [ ] to conclude that [the] . . . New Source Review allegations in this case are timely." *Id.* at 1325 n.2.

Like the rules at issue in the *Otter Tail* and 11th Circuit *TVA* decisions, the Missouri regulation says nothing at all about post-construction permitting, and does not impose any obligation to obtain a construction permit after the construction is complete. 10 C.S.R. § 10-6.065(6)(C)9.B. Plaintiff identifies no provisions of the Missouri SIP that create an ongoing or post-construction duty to obtain a pre-construction permit – because no such provisions exist. Plaintiff's argument is, again, belied by the plain language of the regulation.

Plaintiff next suggests that "based on that notice," EPA might have determined that PSD is an "applicable requirement." (ECF No. 18 at 12.) As an initial matter, the suggestion that EPA might have re-opened Ameren's Title V permit based on receipt of a notice is conjecture – Plaintiff offers no authority for that assertion, and as already demonstrated, there is no post-construction permitting procedure in Missouri to determine "applicable requirements." But even if that flawed premise is credited, this argument fails for the same reason as the others. An obligation to provide a one-time notice does not create an ongoing obligation. And any such notice would have been required, if at all, "contemporaneous[ly]" with the alleged modification. Thus, regardless of what U.S. EPA might have done upon a receiving such a notice, a claim for a failure to give notice accrues at the time of the modification, and so is time-barred, just like the claim for failing to obtain a PSD permit.

Plaintiff argues that if the Court finds this language to be ambiguous, it should defer to

Plaintiff's own litigation interpretation. (ECF No. 18 at 11-12.) But the language is unambiguous – it simply does not create any ongoing duty to obtain a pre-construction permit after construction; nor is there any mechanism to do so. There is no basis to defer to Plaintiff's interpretation. *See In re Old Fashioned Enters., Inc.*, 236 F.3d 422, 425 (8th Cir. 2001) ("Under *Chevron*, if from the plain meaning of the statute Congressional intent is clear . . . that is the end of the matter.") (quoting *Chevron USA, Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984)).

Even if the language were ambiguous, any deference would be due to MDNR (the state agency that promulgated the Missouri SIP), not Plaintiff. *See Brewster v. Sullivan*, 972 F.2d 898, 901 (8th Cir. 1992) ("as a general rule an agency's interpretation of its own regulation is entitled to great deference"); *Missouri Limestone Producers Assoc., Inc. v. Browner*, 165 F.3d 619, 622 (8th Cir. 1999); *In re American Elec. Power Serv. Corp.*, No. VI-2008-01 (EPA Dec. 15, 2009).

In any event, Plaintiff does not identify any U.S. EPA "interpretation" of these regulations that existed before Plaintiff's Opposition brief was filed, and "[d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212-13 (1988); *see also Sullivan*, 972 F.2d at 901.

### F. The Compliance Certification Requirement Does Not Create an Ongoing Violation.

Last, Plaintiff argues that Ameren's allegedly inaccurate certification of compliance with federally-enforceable terms and conditions of its Title V permit is an ongoing violation. (ECF No. 18 at 14-15.) The Complaint alleges that Ameren's certifications were inaccurate because, again, Ameren did not obtain a pre-construction PSD permit and "beg[a]n operation" after the

alleged major modification. (Compl. ¶ 49.) As already demonstrated, these are both one-time obligations due at the time of the alleged modification, and so any non-compliance occurred once, at the time of the Projects.

Thus, in claiming this is an ongoing violation, Plaintiff reads the compliance certification requirement to mean that every time Ameren submits a certification, it is required to identify any instances of non-compliance that occurred not just during the period of time since its last certification (which is the natural reading), but, apparently, throughout the history of the Rush Island plant. That is not what the regulation says and it would make no sense to impose such a burden. Addressing this specific point, Ameren showed in its opening brief that the regulation only requires certification of its "current" compliance status:

> The compliance certification [shall] include the following: (b) The permittee's <u>current</u> compliance status, as shown by monitoring data and other information reasonably available to the permittee.

10 C.S.R. § 10-6.065(6)(C)3.E.(III)(b) (emphasis added); (*see also* ECF No. 18-4, Ex. C at 32; ECF No. 18-5, Ex. D at 39.) Plaintiff's interpretation once again reads relevant language out of the Missouri regulations – this time, the word "current." Ameren cited several cases in which courts have held similar reporting obligations to constitute discrete events. (ECF No. 13 at 15 n.8.) Plaintiff argues that these cases are distinct merely because they did not deal with the Missouri regulation at issue, but offers no reason why the analysis in those cases – with which it does not disagree – does not apply here. (ECF No. 18 at 15.) Nor does Plaintiff offer any authority in support of its reading of the regulation – a reading which is contrary to common sense and the regulation's plain language.

The plain language of the regulation requires a report of Ameren's "current" compliance status. Because any non-compliance allegedly caused by a failure to obtain a PSD permit occurred long ago, an obligation to report current compliance status does not require the

14

reporting of that alleged violation.  *Otter Tail,* 615 F.3d 1016-18.  If read the way Plaintiff proposes, the failure to report any historical non-compliance, no matter how long ago it occurred or how trivial it may have been, would constitute an ongoing violation that would trigger civil penalties.  That makes no sense and effectively renders the statute of limitations meaningless.  Plaintiff's interpretation of the regulation is incorrect and should be rejected.

## CONCLUSION

For these reasons, and the reasons stated in Ameren's opening brief, the Court should grant Ameren's Rule 12(b)(6) Partial Motion to Dismiss.


Dated:   April 11, 2011                           Respectfully submitted,

/s/ Patricia Brown Holmes_____

Ronald S. Safer (pro hac vice)
Patricia Brown Holmes (pro hac vice)
Renee Cipriano (pro hac vice)
Steven J. Bonebrake (pro hac vice)
Matthew B. Mock (pro hac vice)
SCHIFF HARDIN LLP
233 South Wacker Drive Suite 6600
Chicago, Illinois 60606
(312) 258-5500
Fax:  (312) 258-5600

James J. Virtel
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard Suite 1800
St. Louis, Missouri  63105
(314) 621-5070
Fax: (314) 612-2298
jvirtel@armstrongteasdale.com

*Counsel for Defendant Ameren Missouri*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 11, 2011, I electronically filed the foregoing **Reply Memorandum in Support of Rule 12(b)(6) Motion to Dismiss** with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

>Justin A. Savage
>Andrew C. Hanson
>Bradford T. McLane
>Trial Attorneys
>Environmental Enforcement Section
>Environment and Natural Resources Division
>U.S. Department of Justice
>P.O. Box 7611
>Washington, DC  20044-7611
>Telephone:  (202) 514-5293
>Facsimile:  (202) 514-0097

>/s/ Patricia Brown Holmes
>Patricia Brown Holmes