# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 4:11-CV-00077-RWS |
| **v.** ) | |
| ) | Judge Rodney W. Sippel |
| **AMEREN MISSOURI,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## UNITED STATES' OPPOSITION TO
## AMEREN MISSOURI'S MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)

**INTRODUCTION**

Defendant Ameren Missouri's ("Ameren's") Rule 12(b)(1) motion to dismiss for a purported lack of subject matter jurisdiction misconstrues key provisions of the Clean Air Act ("CAA" or "the Act") and implementing regulations, and is contrary to the clear weight of the case law.  CAA Section 113 authorizes the United States to bring an action for injunctive relief and the assessment of civil penalties for violation of any requirement under Title V of the Act, and vests jurisdiction over such an action in this Court. *See, e.g.,* 42 U.S.C. § 7413; *see also* 28 U.S.C. §§ 1331, 1345, 1355.

Ameren ignores these statutory provisions, as well as the numerous cases confirming that the United States may bring enforcement actions for CAA Title V violations exactly like those alleged here. Instead, Ameren makes a brazen argument that runs counter to basic principles of jurisprudence: that even if it did violate the Prevention of Significant Deterioration ("PSD") requirements, and is thus operating without a Title V operating permit that incorporates such requirements, it should be immune from penalties for its illegal operation of the Rush Island Plant because of its *own failure* to ask the permitting authority to make a "Best Available Control Technology" ("BACT") determination under PSD.  This Court should reject Ameren's invitation to reward the company for its violations. Such a result cannot be squared with Title V of the CAA, the federal and state Title V regulations, the case law, or the remedial purposes of the Act. Ameren's years of illegal operations in violation of Title V, which continue to this day, cannot simply be wiped away. The Court should follow the statute, the regulations, and the clear weight of the case law and deny Ameren's motion to dismiss the United States' Title V claims.[1]

---

[1]  As with its previous motion to dismiss under Rule 12(b)(6), Ameren has again requested a hearing on its motion.  (Doc. 24.)  The United States does not oppose Ameren's request for a hearing.

1

## STATUTORY AND REGULATORY FRAMEWORK

**A. Missouri's Clean Air Act Title V Permitting Program.**

Added by the CAA Amendments of 1990, Title V established a comprehensive operating permit program to enable permitting authorities to better ensure that major sources of air pollution comply with the various substantive requirements imposed by the Act, including the PSD requirements contained in CAA Title I. *See* 42 U.S.C. §§ 7661-7661f (CAA Title V); 40 C.F.R. Part 70 (EPA Title V regulations). Title V ensures that all "applicable requirements" are collected in one place. *See, e.g., Sierra Club v. Otter Tail Power Co. ("Otter Tail")*, 615 F.3d 1008, 1012 (8th Cir. 2010). While Title V generally does not impose new substantive requirements, Title V permits may impose additional monitoring, recordkeeping and reporting requirements. *See, e.g.,* 42 U.S.C. § 7661c(a); Mo. Code Regs. Ann. tit. ("C.S.R.") 10 §§ 10-6.065(6)(C)1.C (1998) (monitoring, recordkeeping and reporting), 10-6.065(6)(C)9.A & B (requiring contemporaneous notice of changes to the facility's operations).[2]

States may implement the Title V program after securing EPA approval. *See* 57 Fed. Reg. 32,250 (July 21, 1992). EPA approved Missouri's program, codified at 10 C.S.R. § 10-6.065. *See* 62 Fed. Reg. 26,405 (May 14, 1997).[3] Consistent with the CAA and federal regulations at 40 C.F.R. Part 70, Missouri's Title V program places the burden squarely on the permit applicant to secure a permit containing "all applicable requirements." 10 C.S.R. § 10-6.065(6)(C)1.A; 42 U.S.C. §§ 7661 - 7661c(a). The applicant's burden also includes the obligation to submit a detailed application containing "all information needed to determine applicable requirements."

---

[2] For the Court's ease of reference, all citations to the Missouri Title V regulations and Missouri State Implementation Plan ("SIP") provisions contained in this brief can be found in Exhibits A and B to the United States' Opposition to Ameren's Rule 12(b)(6) Motion to Dismiss. (Doc. 18, Exs. A and B.)

[3] With limited exceptions not applicable here, Missouri's Title V regulations are also part of the federally-approved Missouri SIP. *See* 66 Fed. Reg. 16,137, 16,139 (March 23, 2001).

2

10 C.S.R. § 10-6.065(6)(B)3. The term "applicable requirement" is defined to include: "A. Any standard or requirement provided for in the implementation plan approved or promulgated by EPA through rulemaking under Title I of the Act that implements the relevant requirements. . ."; and, "B. Any term or condition of any pre-construction permit issued pursuant to regulations approved or promulgated through rulemaking under Title I, including parts C [PSD] or D [Nonattainment New Source Review] of the Act." 10 C.S.R. § 10-6.020(2)(A)27.  A "responsible official" must then certify that after a "reasonable inquiry" the applicant has submitted a complete application identifying all applicable requirements. 10 C.S.R. § 10-6.065(6)(B)4. Also, an applicant who "fails to submit any relevant facts, or who has submitted incorrect information in a permit application, upon becoming aware of this failure or incorrect submittal, shall promptly submit supplementary facts or corrected information." 10 C.S.R. § 10-6.065(6)(B)2.

The CAA provides EPA with broad authority under Section 113 to commence a civil action for injunctive relief and civil penalties for violation of "any…requirement or prohibition" of Title V.  42 U.S.C. §§ 7413(a)(3), (b)(2); *see also id.* § 7413(a)(1). The only limited exception to this broad authority is where a Title V permit contains a "permit shield," which protects the operator from enforcement only if those applicable requirements are "included and specifically identified in the permit[.]" *See* 42 U.S.C. §7661c(f); 10 C.S.R. § 10-6.065(6)(C)6. Ameren does not argue that the permit shield applies to protect it from the United States' claims here.

### B.  The Title V Claims.

The United States alleges that Ameren is operating Rush Island Units 1 and 2 in violation of the express terms of 42 U.S.C. § 7661a. (Compl. ¶¶ 75 – 92.) The Complaint specifically alleges that Ameren has operated and continues to operate Rush Island Units 1 and 2 without a

3

Title V operating permit that incorporates all applicable requirements. (Compl. ¶¶ 78, 87.) These Title V claims also assert that Ameren failed to comply with the procedural permitting requirements by, *inter alia*, failing to submit an accurate and complete Title V permit application, failing to accurately certify compliance, and failing to provide a compliance plan that would provide a pathway for the application of BACT. (Compl. ¶¶ 77, 79, 86, 88.)  Thus, Ameren failed to "obtain a proper or adequate Title V operating permit . . . that contains one or more emissions limitations for $SO_2$ that meet BACT." (Compl. ¶¶ 78, 87.) Ameren cannot dispute that it has not disclosed the alleged PSD "applicable requirements" in its Title V permit, and that it has neither sought nor secured a schedule of compliance to install and operate BACT.

### STANDARD

The "same standard governs motions to dismiss under both Rules 12(b)(1) and 12(b)(6)." *Arnold v. Hoelscher*, No. 1:10-cv-187-SNJ, 2011 WL 1226901, at *1 (E.D. Mo. Mar. 30, 2011); *Vankempen v. McDonnell Douglas Corp.,* 923 F. Supp. 146, 147 (E.D. Mo. 1996). In ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court is to "accept as true all factual allegations in the complaint and view them in the light most favorable to the Plaintiff." *Zumwalt v. City of Wentzville*, 4:10-CV-561-RWS, 2010 WL 2710496, at *2 (E.D. Mo. July 7, 2010).

When construing the CAA and its implementing regulations, this Court must apply familiar standards of deference to EPA. Because EPA is charged with administering the Clean Air Act, this Court "is obliged to accept the agency's position if Congress has not previously spoken to the point at issue and the agency's interpretation is reasonable." *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001). To the extent the regulations are ambiguous, the Court is to defer to EPA's construction unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *Navistar Int'l Transp. Corp. v. EPA*, 858 F.2d 282, 286-88

4

(6th Cir. 1988) (deferring to EPA's construction of federally approved regulations).

## ARGUMENT

This Court has jurisdiction to consider the United States' Title V claims. The Clean Air Act requires Title V permit applicants to identify all "applicable requirements," including any relevant PSD and pollution control requirements and to secure Title V permits that incorporate all such requirements. This statutory construct requires the source, which has the greatest access to information about its operations, to fully report the details of those operations to ensure that the Title V permit is accurate and complete. Ameren's Rush Island Title V permit application – and consequently the permit – does not identify all applicable requirements for Rush Island Units 1 and 2. (Compl. ¶¶ 77 – 79, 86 -88.)  Ameren's past and ongoing operations without a Title V permit that includes these requirements are violations of CAA Title V subject to an enforcement action for injunctive relief and civil penalties under CAA Section 113. 42 U.S.C. § 7413.

In a transparent attempt to avoid liability for years of illegal operation of Rush Island Units 1 and 2 in violation of PSD, Ameren argues that BACT does not currently exist for Rush Island Units 1 and 2 and thus the United States' Title V claims for Ameren's illegal operation of the Rush Island Plant are purely "hypothetical" and thus unripe. (Doc. 23 at 8-9). Ameren's cavalier argument should be rejected. Whether BACT has yet been established for these units is irrelevant to the United States' claim that BACT is an applicable requirement that should have been included in the Rush Island Title V permit after the major modifications at Units 1 and 2. Indeed, the only reason BACT is not yet "in effect" is due to *Ameren's own failure to comply with PSD*.  Accepting Ameren's so-called ripeness argument would effectively reward its failure to comply with PSD and its subsequent operation of the Rush Island Plant in violation of Title V.

5

Ameren misreads the Eighth Circuit's *Otter Tail* decision to assert that the United States' Title V claims are not ripe (Doc. 23 at 9). There, the court held that citizen plaintiffs must seek judicial review of invalid Title V permits under CAA Section 307 rather than through a citizen suit under Section 304. 42 U.S.C. §§ 7607, 7604.  Ameren omits that the Eighth Circuit recognized that "the considerations underlying our decision would not necessarily be present…in EPA enforcement actions[.]" *Otter Tail*, 615 F.3d at 1023 *citing Citizens Against Ruining the Environment v. EPA* ("*CARE*"), 535 F.3d 670, 678 (7th Cir. 2008) (EPA's broad enforcement authority "reinforces our belief that Congress did not intend the EPA to fully investigate and resolve all allegations in the permitting context"). With this opinion, the Eighth Circuit joined other courts recognizing EPA's broad enforcement authority under CAA Section 113 to pursue violations of Title V for operation in violation of applicable requirements. EPA has properly exercised that authority here, and this Court has jurisdiction to hear the United States' claims.

**A. EPA Has Broad Authority to Bring this Civil Enforcement Action Stemming from Ameren's Illegal Operation of Rush Island Units 1 and 2 Without a Title V Permit That Includes Emissions Limits Based on Best Available Control Technology.**

Congress delegated broad authority to EPA in CAA Section 113 and Title V to enforce any Title V violation. *See* 42 U.S.C. §§ 7413, 7661a(a), 7661b, 7661c. Here, the United States alleges that Ameren is operating the emissions units at issue in violation of the express terms of CAA Section 502, 42 U.S.C. § 7661a, which provides that it is "unlawful for any person to … operate . . . a major source [or] any other source required to have a permit under parts C [PSD] or D of subchapter I of this chapter . . . except in compliance" with a Title V operating permit. 42 U.S.C. § 7661a(a); 10 C.S.R. § 10-6.065(2)(A). Operation of Rush Island Units 1 and 2, as modified, is operation of a major source without a valid Title V permit because the CAA explicitly requires such permits to "include enforceable emission limitations … and such other

conditions as are necessary to assure compliance with applicable requirements," including any applicable PSD requirements. *See* 42 U.S.C. § 7661c(a); 10 C.S.R. § 10-6.065(6)(C)1.A (requiring operator to have Title V permit containing all applicable requirements); *id.* at § 10-6.020(2)(A)27 (defining applicable requirements). CAA Section 503(d) also requires sources to submit timely and complete applications. *See* 42 U.S.C. § 7661b(d); 10 C.S.R. § 10-6.065(6)(B).

The CAA's broad enforcement provisions authorize civil judicial enforcement against any person who violates "any . . . requirement or prohibition" of Title V.  42 U.S.C. § 7413(a)(3), (b)(2); *see also id*. at § 7413(a)(1). In light of EPA's broad enforcement authority, courts have routinely rejected similar attempts to limit EPA's enforcement of Title V.  For example, in *United States v. East Ky. Power Coop., Inc.("EKPC")*, 498 F. Supp. 2d 1010 (E.D. Ky. 2007), the court affirmed EPA's authority to bring a CAA Section 113 enforcement action for Title V violations similar to this case:

> The CAA grants very broad enforcement authority to EPA . . . . 42 U.S.C. § 7413(3)(C).  The Part 70 rules are similarly broad in terms of the EPA's enforcement authority. *See* 40 C.F.R. § 70.11.
>
> The EPA's Part 70 regulations provide that if the EPA determines that "the permit contains a material mistake or that inaccurate statements were made in establishing the emissions standards or other terms or conditions of the permit[,]" 40 C.F.R. § 70.7(f)(1)(iii), the "permit shall be reopened and revised . . . ." *Id.* EKPC argues that this is the only remedy available to the EPA for an alleged deficient permit application.  However, the Court does not read the Part 70 rules to limit the EPA's authority in this matter, particularly in light of the very broad authority granted to the EPA in the actual language of the CAA itself.  Further, the permit shield does not help EKPC in these circumstances.

*Id.* at 1018.

Likewise, in *New York v. Niagara Mohawk Power Corp.*, the court specifically allowed plaintiff to bring Title V claims similar to those alleged here. No. 02-cv-24S, 2003 WL 23356447 (W.D.N.Y. Dec. 31, 2003). The court rejected Niagara Mohawk's argument - similar

7

to the one pressed here - that the State of New York could not bring Title V claims based on a failure to comply with BACT requirements triggered by a prior modification. In so holding, the court confirmed that although it had previously held that PSD violations were not ongoing, the State's separate claims for operation without a valid Title V permit would survive. *Id.* at *2-3. Further, whether Niagara Mohawk had submitted a "timely and complete permit application" under Title V required the resolution of factual issues not proper for consideration at the pleading stage. *Id.* at * 3-4.

Other courts have rejected challenges to similar Title V claims. *See United States v. CEMEX, Inc.*, No. 09-cv-00019-MSK-MEH, 2010 WL 1348769, at *1-2, 4, fn. 4 (D. Colo. Mar. 31, 2010) (denying rule 12(b)(6) motion to dismiss raising similar arguments, and noting that whether the Title V permit includes all applicable requirements is "particularly ill-suited to resolution on a non-evidentiary basis via a Rule 12 motion."); *see also Commonwealth of Pennsylvania v. Allegheny Energy, Inc.*, No. Civ.A. 05-885, 2006 WL 1509061, at *7-8 (W.D. Pa. Apr. 19, 2006) (rejecting defendant's argument that plaintiffs' Title V claims were barred as a collateral attack on defendant's Title V permit); *United States v. Murphy Oil USA, Inc.*, 143 F. Supp.2d 1054, 1094 (W.D. Wis. 2001) (denying summary judgment where validity of Title V permit "hinged upon a factual determination of the accuracy of the information defendant provided" to the permitting authority). Likewise, this Court should reject Ameren's argument that EPA must wait until its PSD claims are resolved before bringing its Title V claims.

Ameren can find no support for its argument in the case law addressing EPA's final decisions not to object to proposed state-issued Title V permits for failure to include applicable requirements. Ameren buries its discussion of this line of cases in a footnote (Doc. 23 at 13, fn. 6), implying that these cases are somehow helpful to its cause. Those cases actually *affirm*

8

EPA's broad authority to enforce Title V violations through enforcement actions under CAA Section 113. As the Seventh Circuit explained, a judicial action often presents the best forum for EPA to remedy a source's illegal operation under a deficient Title V permit:

> The existence of EPA's broad enforcement authority reinforces our belief that Congress did not intend the EPA to fully investigate and resolve all allegations in the permitting context. *** Moreover, Title V itself reserves the EPA's ability to bring an enforcement action for violations of the CAA unless an express "shield" on the face of the permit bars the action. This provision would hardly be necessary if the EPA was supposed to resolve all alleged violations of the CAA in the permitting process. In addition, unlike the permitting process, the enforcement process allows for discovery, hearings, cross-examination of witnesses, and expert testimony – mechanisms designed to resolve disputed claims. It is reasonable to interpret Title V to complement, not to limit, the EPA's enforcement authority.

*CARE*, 535 F.3d at 678 (citations omitted); *see also Sierra Club v. Johnson*, 541 F.3d 1257, 1266 (11th Cir. 2008) (denying petition by Sierra Club to force EPA to object to a Title V permit, and noting that "it makes sense Congress did not attempt to impose a one-size-fits-all approach and instead elected to afford the agency some discretion in evaluating the merits of permitting disputes"); *Sierra Club v. EPA*, 557 F.3d 401 (6th Cir. 2009). These cases make clear that EPA is not limited to the permitting process and can use its authority under CAA Section 113 to correct Title V permits that fail to incorporate applicable requirements. Such an approach makes sense, particularly in light of the fact-intensive nature of these cases and time it takes to adjudicate them, a point which Ameren acknowledges. (Doc. 21 at 4.)

Finally, Ameren leans heavily on two district court opinions in *United States v. Midwest Generation LLC* that are inapplicable to this case and, in any event, contrary to the clear weight of the foregoing authorities. (Doc. 23 at 9, 10, 12); 694 F.Supp. 2d 999 (N.D. Ill. 2010); No. 09-cv-5277, 2011 WL 1003916 (N.D. Ill. March 16, 2011). In the first opinion, the court held that the federal PSD provisions did not impose ongoing obligations; the court did not address, let

9

alone dismiss, EPA's claim that Midwest Generation submitted deficient Title V permit applications. *Midwest* Generation, 694 F.Supp. 2d at 1007. For the second opinion, Ameren's piecemeal quotes omit the court's *actual holding*: Midwest Generation was not a successor liable under Title V for operating a source that was allegedly modified by the prior owner, Commonwealth Edison. *Midwest Generation*, 2011 WL 1003916, at *12 ("To the extent Plaintiffs' Title V claims are based on any alleged failure to obtain a permit for ComEd's PSD violations, those claims are dismissed."). Given that the court's first holding did not address Title V and the second holding was limited to successor liability, neither opinion helps Ameren's cause.

In summary, Ameren's ripeness argument incorrectly assumes that EPA has no authority to bring a CAA Section 113 action for a source's illegal operation under a Title V permit that fails to incorporate BACT. Such an assumption is inconsistent with the text of the CAA and EPA's reasonable construction of the statute and Missouri's Title V regulations. Once Ameren's misapplication of the Act and regulations is dispelled, its ripeness argument collapses.

### B. The Eighth Circuit's Decision in *Otter Tail* Does Not Support Ameren's Challenge to The United States' Title V Claims.

In arguing that it cannot be held liable for illegally operating the Rush Island Plant without a valid Title V permit, Ameren relies heavily on the Eighth Circuit's opinion in *Otter Tail*. (Doc. 23 at 9, 14.) But *Otter Tail* does not support Ameren's Title V arguments. That case involved a *citizen suit* brought under CAA Section 304, 42 U.S.C. § 7604. There, the Court held that, despite the absence of a permit shield in Otter Tail's Title V permit, Sierra Club could not pursue its claims for operation under a Title V permit that did not include New Source Performance Standards ("NSPS") as an applicable requirement. Instead, the court found that on the facts of that case Sierra Club was limited to pursuing those claims by petitioning EPA to

10

object to Otter Tail's Title V permit, and then seeking judicial review under CAA Section 307 of any decision by EPA not to object. *See Otter Tail*, 615 F.3d at 1022-1023, *citing* 42 U.S.C. § 7607. But Ameren neglects to mention that the Eighth Circuit also recognized that EPA has broader enforcement authority than citizen plaintiffs, and expressly limited its holding: "While we decline to delve into other contexts in which the permit shield may play a role, we note that the considerations underlying our decision would not necessarily be present, for example, in EPA enforcement actions[.]" *Otter Tail*, 615 F.3d at 1023 (*citing CARE,* 535 F.3d at 678). Importantly, in the *CARE* opinion cited by the *Otter Tail* court, the Seventh Circuit explained that "EPA's broad enforcement authority reinforces our belief that Congress did not intend the EPA to fully investigate and resolve all allegations in the permitting context." *CARE*, 535 F.3d at 678. *Otter Tail* simply had nothing to do with ripeness or EPA's authority to enforce Title V violations and it is clear that the Eighth Circuit did not foreclose EPA's Title V claims here. *See Otter Tail*, 615 F.3d at 1023.

Moreover, the United States' Title V claims for Ameren's illegal operations under an invalid Title V permit in no way present a "hypothetical" dispute. Ameren acknowledges that the United States' PSD claims are ripe, including the failure to apply BACT at the time of Ameren's major modifications. (Doc. 23 at 12; Compl. ¶¶ 66-72.) Ameren also acknowledges that the Rush Island Title V permits do not include BACT to reduce $SO_2$ emissions at either unit. (Doc. 23 at 5, 9.) The appropriate BACT limits that should have applied to Rush Island Units 1 and 2 after the projects can be established from facts gathered in discovery. *United States v. Cinergy Corp.*, 618 F. Supp. 2d 942 (S.D. Ind. 2009) *rev'd on other grounds by* 623 F.3d 455 (7th Cir. 2010). Indeed, BACT for these units, if it had been included in the Title V permits, undoubtedly would have required substantial and ongoing reductions in $SO_2$ emissions

11

continuing to this day. *Cinergy Corp.*, 618 F. Supp. 2d at 955 (finding that "BACT would require a scrubber that removed 99% of the $SO_2$"); *United States v. Cinergy*, 1:99-cv-1693-LJM-JMS, 2009 WL 94515, at *1 (S.D. Ind. Jan. 7, 2009) (noting that defendant conceded that BACT for $SO_2$ should involve a 95% reduction). In addition, discovery will reveal the excess emissions and consequent environmental harm that resulted from Ameren's illegal operation without a Title V permit that incorporated BACT, as well as facts relating to the appropriate civil penalties for Ameren's ongoing violations. *See* 42 U.S.C. § 7413(e) (penalty assessment criteria). Thus, Ameren's major modifications, appropriate BACT, Ameren's subsequent illegal operation under the Title V permits without BACT, and excess emissions can be determined through the discovery process. *Cinergy Corp.*, 618 F. Supp. 2d at 942. Thus, the United States' Title V claims are squarely presented and ripe for adjudication at this time by this Court.

    **C. Where an Operator has Violated PSD and Failed to Secure a Construction Permit, BACT is an "Applicable Requirement" That Must Be Included In the Operator's Title V Permit.**

Ameren also argues that there is no Title V violation to enforce at this time because there "is no obligation outside of the PSD permit process, including under Title V, to determine or apply BACT," and thus BACT for the units does not currently exist. (Doc. 23 at 2, 5, 9). Ameren's argument "conveniently ignores the fact that the permitting authority never had the opportunity to determine BACT for the [Rush Island Plant] because [Ameren] failed to follow the proper preconstruction procedures" in the Act. *Niagara Mohawk*, 263 F. Supp.2d at 663.[4] Thus, Ameren's construction of Title V requirements "would ignore, or worse reward,

---

[4] Although the court in *Niagara Mohawk* addressed whether the plaintiff could bring a citizen suit under CAA Section 304 for defendant's failure to comply with BACT after a major modification, the defendant in that case makes essentially the same argument that Ameren makes here: that BACT is not in effect because it has not yet been determined. *Niagara Mohawk*, 263 F. Supp.2d at 663. The court's reasons for rejecting the defendant's argument concerning the purportedly "hypothetical" nature of BACT in that case apply with equally persuasive force here.

12

[Ameren's] own failure to comply with" PSD. *Id.* That failure should not now work in Ameren's favor by allowing it to avoid liability for its Title V violations. *Id.*

Ameren also asserts that its obligation to secure Title V coverage of "all applicable requirements" only extends to requirements of which it is "aware" in its initial Title V permit application. (Doc. 23 at 5.) But Ameren must conduct a reasonable inquiry to identify all obligations, 10 C.S.R. § 10-6.065(6)(B)4, and Ameren is then obligated to supplement or correct its application if it becomes aware of omissions or errors, *see* 10 CSR § 10.6.065(6)(B)2. Even if Ameren could show that it met these requirements, which depends on facts not appropriate for resolution at the pleading stage, the Act imposes strict liability for Ameren's operation with an invalid Title V permit that does not incorporate all applicable requirements. *See Families for Asbestos Compliance, Testing and Safety v. City of St. Louis,* No. 4:05-cv-719, 2008 WL 4279569, at *20, 27 (E.D. Mo. Sept. 15, 2008) (strict liability under the CAA for improper asbestos removal); *Sierra Club v. Morgan*, No. 07-C-251-S, 2007 WL 3287850, at *8 (W.D. Wis. Nov. 7, 2007) ("[T]he CAA imposes strict liability when applied,…'regardless of how minimal the [party's] responsibilities or knowledge [concerning the violation] may actually have been.'") (quotation omitted); *United States v. Anthony Dell'Aquilla, Enterprises and Subsidiaries*, 150 F.3d 329, 332 (3d Cir. 1998) ("The CAA imposes strict liability upon owners and operators who violate the Act"); *United States v. B&W Inv. Properties*, 38 F.3d 362, 367 (7th Cir. 1994) (same).

Ameren's suggestion that there is no "look-back" requirement under Title V is also incorrect. (Doc. 23 at 14-15.) Ameren's past and current Title V permits require Ameren to report changes to the plant's permitted operations to EPA, even after they have occurred. (Doc. 23-1 at 32; Doc. 23-2 at 40 (requiring that notice is to be provided "no later than the next annual

13

emissions report.")). The Title V permits require Ameren to "describe each change, including the date, any change in emissions, pollutants emitted, and any applicable requirement that would apply as a result of the change." *Id*. If upon receiving notice EPA determines that PSD applies, then the permit may be re-opened and modified to include PSD requirements after the change occurred. (Doc. 23-1 at 28; Doc. 23-2 at 41.)  Ameren did not notify EPA of changes at the Rush Island Plant, and it continually certified that it was in compliance with the PSD requirements.[5] (Compl. ¶¶ 62, 79, 88.)

Ameren's selective quotation from EPA guidance documents is also unavailing. (Doc. 23 at 14-15.)  For example, Ameren quotes a "White Paper" on Title V, but omitted the following:

> Companies remain subject to enforcement actions for any past noncompliance with requirements to obtain a permit or meet air pollution control obligations.  In addition, the part 70 permit shield is not available for noncompliance with applicable requirements that occurred prior to or continues after submission of the application.

U.S. EPA *White Paper for Streamlined Development of Part 70 Permit Applications* (July 10, 1995), at 25-26 (Attached as Exhibit A). The other 1999 guidance document quoted by Ameren requires that "[a]ll sources subject to Title V must have a permit to operate that 'assures compliance by the source with all applicable requirements,'" including PSD.  *See Letter from John S. Seitz, Director, Office of Air Quality Planning and Standards, U.S. EPA to Mr. Hodanbosi and Mr. Lagges, STAPPA/ALAPCO*, Enclosure A (May 20, 1999) at 2 (Attached as

---

[5]   Ameren's suggestion that it should not be held liable for its illegal operation because EPA has twice passed on Ameren's Title V permits without objection is factually and legally incorrect. (Doc. 23 at 14.)  First, although EPA reviews individual Title V permits issued by states under CAA Section 505(b)(2), 42 U.S.C. § 7661d(b)(2), a decision by EPA to not object is in no way an "approval" of the permit.  Second, Ameren's initial Title V permit was issued in May 18, 2000, *before* Ameren's illegal modifications took place.  Surely Ameren would not suggest that EPA should object to a Title V permit based on illegal modifications that have not yet occurred.  Ameren's second Title V permit was issued on August 30, 2010, 8 months after EPA's initial Notice of Violation was issued to Ameren and approximately one and a half months before EPA's Amended NOV in October of 2010.  As Ameren knows, EPA is not limited to correcting Ameren's invalid Title V permit through the permitting process. *Otter Tail*, 615 F.3d at 1023; *Sierra Club (6th Cir.)*, 557 F.3d at 407; *CARE*, 535 F.3d at 678-679; *Sierra Club (11th Cir.)*, 541 F.3d at 1269.

Exhibit B).  These guidance documents support the United States' position here, and by no means absolve Ameren of its strict liability for operating the Rush Island Plant without a Title V permit that incorporates PSD requirements.

> **D. This Court Should Reject Ameren's Invitation to Issue a Ruling That Would Reward PSD Violators by Absolving Them of Any Liability Under Title V Stemming From Those Violations.**

Contrary to Ameren's suggestion that the United States seeks no more than an "advisory opinion" as relief for its Title V claims (Doc. 23 at 8-9), the United States seeks specific relief for Ameren's Title V violations stemming its illegal operation, including civil penalties. While it is no surprise that Ameren now seeks to have this Court insulate it from any liability for penalties, such a ruling would only reward Ameren's economic bottomline for its years of illegal operation in violation of PSD and Title V requirements.  BACT at the time of the projects for Rush Island Units 1 and 2 would have imposed (and still imposes) a considerable cost, reducing the tens of thousands of tons of $SO_2$ collectively emitted per year by these units by up to 99%.[6] But absent the threat of substantial civil penalties, Ameren has every economic incentive to avoid these costs and to continue to delay compliance with PSD and Title V requirements.

## CONCLUSION

In summary, Ameren is in violation of Title V at Rush Island Units 1 and 2; EPA has authority to enforce these violations; and the United States' Title V claims are ripe.  The relief the United States seeks to remedy these violations will greatly benefit public health and the environment, and these claims should proceed without delay.

---

[6] EPA Clean Air Markets Division ("CAMD") Data and maps, *available at* http://camddataandmaps.epa.gov/gdm/index.cfm.

United States' Opposition to Ameren's Rule 12(b)(1) Motion to Dismiss, *United States v. Ameren Missouri*, 4:11CV00077-RWS (E.D. Mo.)

Dated: April 21, 2011               Respectfully Submitted,

IGNACIA S. MORENO
Assistant Attorney General


s/ Andrew C. Hanson
Justin A. Savage
Andrew C. Hanson
Bradford T. McLane
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone:  (202) 514-9859
Facsimile:  (202) 616-6584
E-mail: andrew.hanson2@usdoj.gov

Suzanne Moore
Assistant United States Attorney
United States Attorney's Office
Eastern District of Missouri
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone:  (314) 539-2547
Facsimile:  (314) 539-2309
E-mail: Suzanne.Moore@usdoj.gov

## CERTIFICATE OF SERVICE

  I hereby certify that on April 21, 2011, I electronically filed the foregoing United States' Opposition to Ameren's Rule 12(b)(1) Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

    Ronald S. Safer (pro hac vice)
    Patricia Brown Holmes (pro hac vice)
    Renee Cipriano (pro hac vice)
    Steven J. Bonebrake (pro hac vice)
    Matthew B. Mock (pro hac vice)
    Schiff Hardin LLP
    233 South Wacker Drive Suite 6600
    Chicago, Illinois 60606
    Phone: (312) 258-5500
    Fax: (312) 258-5600

    James J. Virtel
    Armstrong Teasdale LLP
    7700 Forsyth Boulevard Suite 1800
    St. Louis, Missouri  63105
    Phone: (314) 621-5070
    Fax: (314) 612-2298
    jvirtel@armstrongteasdale.com

    *Counsel for Defendant Ameren Missouri*

                s/Andrew C. Hanson
                ANDREW C. HANSON