**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 4:11-cv-00077-RWS |
| AMEREN MISSOURI, | ) ) ) | |
| Defendant. | ) ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR LEAVE**
**TO SUBMIT SUPPLEMENTAL AUTHORITY**

In a Motion for Leave to Submit Supplemental Authority, Ameren brought to this Court's attention a recent decision in *United States et al v. DTE Energy Company et al*, No. 10-13101 (E.D. Mich.), which addresses recordkeeping and reporting requirements of the Clean Air Act's New Source Review ("NSR") Reform Rules promulgated by EPA on December 31, 2002. Putting aside that the United States respectfully disagrees with the holding of the *DTE* decision, Ameren's citation to this case is of no value to the Court because Ameren does not claim in any of its several motions to date that it has complied with these requirements.

The 2002 NSR rules require that, before beginning construction of any project at an electric generating unit such as Rush Island Units 1 or 2, the source must keep a record of: 1) a description of the project; 2) identification of the emissions unit (i.e. the boiler) whose emissions could be affected by the project; and 3) a description of the applicability test used to determine that the project is not a major modification under the NSR regulations. 40 C.F.R. § 52.21(r)(6)(i)

(2011).[1]  With some limited exceptions, the source must report this information to the permitting authority.  40 C.F.R. § 52.21(r)(6)(ii).  In addition, a source must also annually report its emissions to EPA for several years after the project. 40 C.F.R. § 52.21(r)(6)(iii) and (iv).[2]

Unlike the utility in the *DTE* case, Ameren does not claim in any of its motions that it complied with these recordkeeping and reporting requirements in the 2002 NSR rules.  In fact, unlike the utility in *DTE* which gave notice the day before it began actual construction, Ameren failed to notify EPA or the Missouri Department of Natural Resources ("DNR") prior to commencing construction of the 2001, 2003, 2007 and 2010 multi-million dollar major modifications at Rush Island Units 1 and 2. (Am. Compl. ¶ 64).  Thus, if the *DTE* decision has any relevance here, it shines a spotlight on Ameren's failure to provide *any* notice of the projects, either under the NSR regulations or, as explained in the United States Opposition to Ameren's Rule 12(b)(6) motion, the Title V regulations and operating permits applicable to the Rush Island Plant.  (*See* Doc. 44, 12-14).

In another important contrast to the claims in *DTE*, here enough time has elapsed to show that Ameren's actual emissions of sulfur dioxide ("$SO_2$") *increased dramatically* after each project. This court can take judicial notice of Ameren's publicly available emissions data, which is "not subject to reasonable dispute" and "whose accuracy cannot reasonably be questioned" given that Ameren, itself, reported that data to EPA.[3]  Fed. R. Evid. 201(b).  The table below

---

[1]  With some exceptions not applicable here, the 2002 rules are incorporated by reference in the federally enforceable Missouri State Implementation Plan ("SIP").  *See* 71 Fed. Reg. 36,486 (June 27, 2006); 10 C.S.R. 10-6.060(8)(A).

[2]  For the 2001 and 2003 projects, which occurred before EPA approved the 2002 NSR rules in the Missouri SIP, a similar recordkeeping and reporting requirement applied to Ameren's projects based on the regulations in effect at that time. *See* 40 C.F.R. 52.21(b)(21)(v) codified at  57 Fed. Reg. 32314, 32325 (July 21, 1992).

[3]  In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court is "not precluded in [its] review of the complaint from taking notice of items in the public record." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).  Likewise, in ruling on a 12(b)(6) motion, this Court may consider "materials that do not

2

shows that Ameren's actual emissions increases have vastly exceeded the 40 ton per year threshold for $SO_2$ set forth in the NSR rules.  *See* 40 C.F.R. § 52.21(b)(23) (setting the significance threshold for $SO_2$).

| Project in Amended Complaint | Pre-Project Actual emissions[4] (Tons of $SO_2$) | Post-Project Actual Emissions[5] (Tons of $SO_2$) | Actual Emissions Increase[6] (Tons of $SO_2$) |
|---|---|---|---|
| Rush Island Unit 1 AC ¶ 67 2001 Project | **14,130 tons** 2-Year Baseline Period: Mar-99 to Feb-01 | **15,355 tons** (Feb-05 to Jan-06) | **1,226 tons** |
| Rush Island Unit 2 AC ¶ 73 2003 Project | **13,957 tons** 2-Year Baseline Period: Nov-98 to Oct-00 | **14,673 tons** (Oct-04 to Sep-05) | **717 tons** |
| Rush Island Unit 1 AC ¶ 77 2007 Project | **14,875 tons** 2-Year Baseline Period: Feb-05 to Jan-07 | **15,539 tons** (Feb-08 to Jan-09) | **665 tons** |
| Rush Island Unit 2 AC ¶ 83 2010 Project | **14,287 tons** 2-Year Baseline Period: Apr-05 to Mar-07 | **16,459 tons** (May-10 to Apr-11) | **2,172 tons** |

---

contradict the complaint, or materials that are necessarily embraced by the pleadings." *Noble Systems Corp. v. Alorica Central*, LLC, 543 F.3d 978, 982 (8th Cir. 2008) (internal quotation omitted).

[4]     EPA's current NSR regulations allow a utility to select, as a baseline for its emission calculations, the "average rate, in tons per year, at which the unit actually emitted the pollutant during any consecutive 24-month period selected by the owner or operator within the 5-year period immediately preceding" the project. 40 C.F.R. § 52.21(b)(48)(i).  Here, using simple arithmetic and Ameren's publicly available emissions data, EPA calculated the average annual emissions of $SO_2$ for the highest 2 consecutive years of emissions in the 5 years before each project, which is the baseline period most favorable to Ameren.

[5]     As allowed by the NSR regulations, this table compares each Rush Island unit's baseline actual emissions of $SO_2$ to the highest year of actual $SO_2$ emissions in the 5 years following the project. 40 C.F.R. 52.21(b)(41)(i).

[6]     This is the difference between Pre-Project Actual Emissions and Post-Project Actual Emissions.  Even if Ameren disputes the precise amount of emissions before or after the projects, there can be no dispute that the actual emissions increases are well above the 40 ton per year significance threshold.

3

Although not the exclusive means of establishing liability for NSR violations, these substantial increases in actual $SO_2$ emissions after the projects, which are a matter of public record, further show that the United States has stated claims upon which relief can be granted. Under the NSR rules, a source is subject to an enforcement action if actual emissions increased as the result of a project - even if the source had projected that emissions would not increase. *See* 40 C.F.R. § 52.21(r)(1), (6); 57 Fed. Reg. 32314, 32325 ("If…the reviewing authority determines that that the source's emissions have in fact increased significantly over baseline levels as a result of the change, the source would become subject to NSR requirements at that time."). These post-project actual emissions increases should have alerted Ameren of the need to secure a permit or, at the very least, disclose its projects to EPA and the Missouri DNR in accordance with the NSR rules and the requirements of the Title V regulations and Rush Island Title V operating permits. Instead, Ameren failed to provide the required notice before undertaking the projects and then waited to be discovered by EPA. And, at a minimum, the magnitude of the actual emissions increases highlights the gravity of Ameren's alleged NSR violations and the resulting harm to public health from the alleged excess emissions of $SO_2$. (Am. Compl. ¶ 3).

Based on the foregoing, the *DTE* decision is neither binding nor persuasive authority in this case. The Court should deny Ameren's pending motions to dismiss and allow this case to proceed expeditiously to resolution on the merits.

4

Dated: September 1, 2011

Respectfully Submitted,

IGNACIA S. MORENO
Assistant Attorney General

s/Andrew C. Hanson
Justin A. Savage
Andrew C. Hanson
Bradford T. McLane
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone:  (202) 514-9859
Facsimile:  (202) 616-6584
Andrew.hanson2@usdoj.gov

Suzanne Moore
Assistant United States Attorney
United States Attorney's Office
Eastern District of Missouri
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone:  (314) 539-2547
Facsimile:  (314) 539-2309
E-mail: Suzanne.Moore@usdoj.gov

## CERTIFICATE OF SERVICE

   I hereby certify that on September 1, 2011, I electronically filed the foregoing United States' Response to Ameren's Motion for Leave to Submit Supplemental Authority with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

        Ronald S. Safer (pro hac vice)
        Patricia Brown Holmes (pro hac vice)
        Renee Cipriano (pro hac vice)
        Steven J. Bonebrake (pro hac vice)
        Matthew B. Mock (pro hac vice)
        Schiff Hardin LLP
        233 South Wacker Drive Suite 6600
        Chicago, Illinois 60606
        Phone: (312) 258-5500
        Fax: (312) 258-5600

        James J. Virtel
        Armstrong Teasdale LLP
        7700 Forsyth Boulevard Suite 1800
        St. Louis, Missouri  63105
        Phone: (314) 621-5070
        Fax: (314) 612-2298
        jvirtel@armstrongteasdale.com

        *Counsel for Defendant Ameren Missouri*