UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:11 CV 77 RWS |
| v. | ) | |
| | ) | |
| AMEREN MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The United States of America, acting at the request of the Administrator of the United States Environmental Protection Agency, filed this lawsuit against Ameren Missouri. The EPA alleges Ameren committed various violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq*., the Missouri State Implementation Plan, and Ameren's Rush Island Plant Title V Permit when it allegedly undertook major modifications at the Rush Island Plant in Festus, Missouri. The EPA seeks both injunctive relief and civil penalties. This matter is before me on two motions by Ameren to dismiss this case. Ameren seeks to dismiss the Amended Complaint under Rule 12(b)(1), arguing I am without subject matter jurisdiction [#41] and under Rule 12(b)(6) for failure to state a claim [#39]. For the reasons stated below, I decline to find that I am without subject-matter jurisdiction and I will grant in part and deny in part Ameren's motion to dismiss for failure to state a claim.

I.     **Background**

    A.     **Statutory and Regulatory Background**

The factual allegations underlying this lawsuit arise out of the CAA and the related regulations. The United States Court of Appeals for the Eighth Circuit has exhaustively

examined the applicable statutory and regulatory framework.

Congress enacted the Clean Air Act Amendments of 1970 seeking to guarantee the prompt attainment and maintenance of specified air quality standards.  To that end, it directed EPA to devise National Ambient Air Quality Standards (NAAQS) limiting various pollutants, which the States were obliged to implement and enforce.

A central part of the CAA's regulatory scheme was the New Source Performance Standards (NSPS) program, which required EPA to develop "technology-based performance standards" designed to limit emissions from major new sources of pollution. "New sources" include both newly constructed facilities and those that have been modified such that their emissions increase.  It is unlawful for any owner or operator of any new source to operate such source in violation of applicable performance standards.

The Supreme Court has pointed out that the NSPS program did too little to achieve the ambitious goals of the 1970 amendments.  Merely setting emissions limits failed to improve air quality in those areas that had already attained the minimum standards of the NAAQS because polluters had no incentive to diminish emissions below the established limits. Congress therefore amended the CAA again in 1977 to add the "Prevention of Significant Deterioration" (PSD) program, which seeks to ensure that the "air quality floor" established by the NAAQS does not in effect become a ceiling.

Under the PSD program, no major emitting facility ... may be constructed or modified unless it meets certain preconditions. Among the preconditions relevant here are that the facility must obtain a permit setting forth applicable emission limitations, and that it must be subject to "best available control technology" (BACT).  BACT, despite what the term implies, is not a particular type of technology.  Rather, it is an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for the facility in question.

The PSD program is primarily implemented by the states

> through "state implementation plans" (SIPs).  States have broad
> discretion in designing their SIPs, but the plans must include
> certain federal standards and are subject to EPA review and
> approval.

Sierra Club v. Otter Tail Power Co., 615 F.3d 1008, 1011-12 (8th Cir. 2010) (internal citations

and quotations omitted).

The State of Missouri's PSD program was approved by the EPA and is part of Missouri

Rule 10 C.S.R.10-6.060.  47 Fed.Reg. 26,833.  At the time of the alleged violations, the Missouri

PSD program required a PSD permit for major modification to major sources of air pollution.  10

C.S.R. 10-6.060(8).  The Missouri PSD program also provided that BACT "shall apply" to major

modifications.  10 C.S.R. 10-6.060(8)(B), (C).

> In 1990 Congress again amended the CAA to require each
> covered facility to obtain a comprehensive operating permit
> setting forth all CAA standards applicable to that facility.  These
> "Title V" permits do not generally impose any new emission
> limits, but are simply intended to incorporate into a single
> document all of the CAA requirements governing a facility.
> Similar to other CAA programs, Title V is implemented primarily
> by the states under EPA oversight.  In states with EPA approved
> programs, Title V permits are issued by the state permitting
> authority, but are subject to EPA review and veto.

Sierra Club, 615 F.3d at 1012 (internal citations and quotations omitted).

Missouri's operating permit program under Title V of the CAA was approved by the EPA

and is codified at 10 C.S.R. 10-6.065 and is incorporated into the Missouri SIP.

**B.     Factual Allegations**

The EPA filed this lawsuit against Ameren asserting various violations of the Clean Air

Act ("CAA"), Title V of the CAA, the Missouri SIP, and Ameren's Title V permit for its Rush

ISland Plant. The EPA seeks both injunctive relief and civil penalties.

The EPA makes the following factual allegations in its Amended Complaint.

Coal-fired electric units utilize boilers that burn coal to generate heat that coverts water into steam and the steam in turn spins a generator to produce electricity.  Major components of a coal-fired boiler include the superheater, economizer, reheater, lower slope tubes, and air preheater.  When a major component breaks down, it causes the unit to be taken out of service for repairs (known as a "forced outage").  Forced outages prevent the unit for generating electricity.  Replacing worn-out major components that cause forced outages improve the unit's availability to operate for more hours, increase capacity and/or efficiency and cost-effectiveness to operate.  As a result, increased amounts of coal are burned and more annual pollution is emitted from the unit's smokestack.

Units 1 and 2 of the Rush Island Plant are baseload coal-fired electric generating units that operate nearly continuously when available.  The EPA alleges Ameren performed one or more major modifications on Unit 1 from approximately September 2001 to February 2002 ("2001 Project") and one or more major modifications on Unit 1 from approximately February 2007 to May 2007 ("2007 Project").  The EPA also alleges Ameren performed one or more major modifications on Unit 2 from approximately November 2003 to January 2004 ("2003 Project") and January 2010 to April 2010 ("2010 Project").

The EPA asserts violations of PSD requirements for each of the Projects.[1]  The EPA alleges each major modification enabled and caused the affected Unit to burn more coal and release greater amounts of $SO_2$ by increasing the capacity of the Unit to burn more coal per hour

---

[1]PSD violations for 2001 Project are asserted in Count I, 2003 Project are asserted in Count II, 2007 Project are asserted in Count III, and 2010 Project are asserted in Count IV.

-4-

of operation, increasing the availability of the Unit to operate for more hours, and/or increasing

the cost-effectiveness of operating for more hours.  The EPA alleges, for each Project, that

Ameren violated the PSD requirements in the CAA and Missouri SIP because it (1) did not

obtain a PSD permit for construction and operation of the modified unit; (2) did not undergo a

BACT determination; (3) did not install BACT for control of $SO_2$ emissions; (4) failed to operate

BACT for control of $SO_2$ emissions; (5) failed to operate in compliance with BACT emissions

limitations; and (6) operated the Units after undergoing an unpermitted major modification.

The EPA also alleges Ameren violated Title V of the CAA.[2]  The EPA alleges the major

modifications performed at Units 1 and 2 triggered the requirement for Ameren to undergo a

BACT determination, obtain a PSD permit establishing emissions limitation pursuant to a BACT

determination, and operate in compliance with the limitations.  The EPA alleges Ameren failed

to submit an accurate and complete Title V permit and violated its Rush Island Title V permit by

commencing major modifications at Units 1 and 2 without obtaining a Title V permit.

## II.    Legal Standards

The purpose of a Federal Rule of Civil Procedure 12(b)(1) motion is to allow the court to

address the threshold question of jurisdiction, as "judicial economy demands that the issue be

decided at the outset rather than deferring it until trial." <u>Osborn v. United States</u>, 918 F.2d 724,

729 (8th Cir.1990). Rule 12(b)(1) requires me to dismiss a claim if I lack subject matter

jurisdiction over the claim.

In ruling on a motion to dismiss, I must accept as true all factual allegations in the

---

[2]The Title V claims for Unit 1 are asserted in Count V and the Title V claims for Unit 2 are asserted in Count VI.

complaint and view them in the light most favorable to Plaintiff. Fed.R.Civ.P. 12(b)(6); Erickson v. Pardus, 551 U.S. 89, 94 (2007). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formalistic recitation of elements of a cause of action will not do." Id. (internal quotations omitted). To survive a motion to dismiss a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 555.

## III. Discussion

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction Under 12(b)(1)

I must address jurisdictional issues before I assess the merits of the EPA's claims. Federal jurisdiction is limited to the power authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto.  Zanders v. Swanson, 573 F.3d 591, 593 (8th Cir. 2009) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)).  "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471, (1982).  The doctrines of standing, ripeness, and mootness must be employed to determine if a case if justiciable.  Zanders, 573 F.3d at 593 (quoting Schanou v. Lancaster County Sch. Dist. No. 160, 62 F.3d 1040, 1042 (8th Cir. 1995)).  If a claim is not ripe, I do not have subject matter jurisdiction to hear the case.

Ameren filed a Motion to Dismiss for Lack of Jurisdiction under Rule 12(b)(1) arguing portions of Counts V and VI must be dismissed because the claims are not ripe.  At issue in the

-6-

current Motion is the EPA's claim that Ameren failed to obtain a proper Title V permit for Unit 1 (Count V) and Unit 2 (Count VI) that contains applicable requirements, including emissions limitations that meet BACT. This claim arises from the EPA's argument that the alleged major modifications Ameren undertook at Units 1 and 2 triggered the requirement for Ameren to (1) under go a BACT determination; (2) obtain a PSD permit; and (3) obtain a Title V permit that contains emissions limitations that comply with BACT ("Omitted BACT Claims"). Ameren argues I lack subject matter jurisdiction over the Omitted BACT Claims because they are not ripe.

"Ripeness is peculiarly a question of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." Thomas v. Union Carbide Agr. Products Co., 473 U.S. 568, 580 (1985) (citations and alternations omitted). "[T]he fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration must inform any analysis of ripeness." Id. A court must decline to exercise jurisdiction if "the issue is so premature that the court would have to speculate as to the presence of a real injury." Meadows of W. Memphis v. City of W. Memphis, Ark., 800 F.2d 212, 214 (8th. Cir. 1986).

First, Ameren argues the Omitted BACT Claims are not ripe because there has been no determination that Ameren was required to obtain a PSD permit for the alleged major modifications. Essentially, Ameren argues that the Omitted BACT Claims should not be litigated until it is determined whether Ameren should have obtained PSD permits for the alleged major modifications. Ameren's argument is unpersuasive. The litigation of the current matter will determine whether PSD permits were required for the alleged major modifications. As a

-7-

result, this litigation can determine whether Ameren was required to undergo a BACT determination and include BACT compliant emissions limitations in a Title V Permit. Ameren does not assert a persuasive argument why the parties should not concurrently litigate these claims.

Next, Ameren unpersuasively argues the Omitted BACT Claims are not ripe because (1) a BACT determination for Units 1 and 2 has not been completed at this time; (2) any BACT determination must take place in the future; (3) even if BACT parameters are determined, the claims will remain unripe until Ameren fails to include the parameters in its Title V permit or, after including them, fails to abide by the parameters; and (4) the EPA cannot now articulate the results of the BACT determination.

Ameren's argument proves too much. The EPA argues the parties will be able to determine through discovery the results of the BACT determination Ameren should have undergone. Ameren does not refute this assertion. Further, the inquiry presented is not whether Ameren will update or abide by their Title V Permit in the future. Instead, the EPA alleges Ameren has already failed to do so. The EPA alleges the Projects were major modifications, the major modifications triggered a requirement for Ameren to obtain a PSD permit and undergo a BACT determination, and required Ameren to update its Title V Permit with emissions limitations that comply with BACT. Ameren acknowledges that it failed to obtain a PSD permit, failed to undergo a BACT determination, and did not include BACT compliant emissions limitations in its Title V Permit for the Projects.

Further, the Omitted BACT Claims do not depend upon the occurrence of future events. Either the Projects were major modifications or they were not. If the Projects were major

-8-

modifications, Ameren should have undergone a BACT determination and obtained a PSD permit.  The EPA indicates the parties will be able to determine through discovery the results of the BACT determination Ameren should have undergone.  As a result, it will become evident whether Ameren should have included emissions limitations that comply with BACT in its Title V.  None of the required analysis relies upon the occurrence of future events.

Ameren lastly argues the Omitted BACT Claims are not ripe because they are not an "applicable requirement" that must be included in its Title V Permit.  The parties agree that whether the Omitted BACT Claims are applicable requirements is a matter of first impression.  I decline to reach this issue.  On the record before me, Ameren's argument that the Omitted BACT Claims are not an applicable requirement does not present an argument properly considered in a 12(b)(1) motion.[3]  As a result, I will deny Ameren's Motion to Dismiss under Rule 12(b)(1).

**B.**      **Motion to Dismiss for Failure to State a Claim Under 12(b)(6)**

Because I have determined that I have subject matter jurisdiction, I now turn to Ameren's second Motion to Dismiss.  Ameren asserts two arguments in its Motion to Dismiss under Rule 12(b)(6).  First, Ameren argues the EPA's Amended Complaint should be dismissed in its entirety for failing to satisfy the applicable pleading standard.  Alternatively, Ameren argues that certain of the civil penalties the EPA seeks must be dismissed because the statute of limitations to assert the claims has expired.

**1.**      **Amended Complaint Meets Rule 8(a) Pleading Standard**

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim

---

[3]Instead, Ameren appears to be making an argument that the EPA asserts a claim for which relief cannot be granted.

showing that the pleader is entitled to relief." Although Rule 8 does not require "detailed factual

allegations," it does require more than a "formulaic recitation of the elements of a cause of

action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The Supreme Court

expounded on Twombly in its Iqbal decision:

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to "state a claim to relief that is
> plausible on its face."  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the alleged
> misconduct.  While legal conclusions can provide the framework
> of a complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly
> give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 1950 (2009) (internal citations omitted).

The EPA's Amended Complaint satisfies the pleading standards of Rule 8(a).  The

Amended Complaint is more than a "[t]hreadbare recital[]" of elements.  See Iqbal, 129 S.Ct. at

1949 (citation omitted).  In the Amended Complaint, the EPA specifically alleges that Units 1

and 2 of Ameren's Rush Island Plant are coal-fired electric generating units.  The EPA alleges

Units 1 and 2 operate "nearly continuously" when available and that modifications to the Units

repairing broken down components increases their availability.  This results in an increase in coal

burned and $SO_2$ emitted.

The EPA also alleges that Ameren undertook a major modification in Unit 1 from

approximately September 2001 to February 2002 and in Unit 2 from November 2003 to January

2004 to replace each Unit's primary superheater.  These modifications are alleged to have caused

Units 1 and 2 to burn more coal because the modifications increased the capacity, availability,

and/or the cost-effectiveness of the Units to operate more hours, burn more coal, and emit greater amounts of $SO_2$.

The EPA also alleges Ameren undertook a major modification on Unit 1 from February 2007 to May 2007 and on Unit 2 from January 2010 to April 2010 that included replacing each Unit's economizer, reheater and air preheater.  These major modifications are alleged to have increased the availability of the Units to operate for more hours, burn more coal, and emit more $SO_2$.  Finally, the EPA alleges Ameren failed to comply with the PSD requirements of the CAA, the Missouri SIP, and Ameren's Title V Permits for the Rush Island Plant with respect to the major modifications and subsequent operation of Units 1 and 2.

Applying the proper standards, it is at least facially plausible that Ameren is liable for the alleged misconduct. As a result, I find that the Amended Complaint satisfies the pleading standards of Rule 8(a) and I will not dismiss the Amended Complaint.

## 2.    The Statute of Limitations has Expired for Certain Civil Penalties

Ameren next argues the EPA's claims for statutory penalties arising under the 2001 and 2003 Projects should be dismissed because the Projects took place outside of the applicable five year statute of limitations.  In Counts I and II, the EPA seeks injunctive relief and civil penalties for Ameren's alleged failure to obtain PSD permits and comply with the Missouri SIP for the 2001 and 2003 Projects.  In Counts V and VI, the EPA seeks injunctive relief and civil penalties for Ameren's alleged violation of its Title V Permits regarding PSD and compliance certification for the alleged major modifications.

Ameren seeks the dismissal of the EPA's civil penalty claims for alleged violations of the PSD permitting program and provisions of Ameren's Title V Permit regarding PSD and

compliance certification for the 2001 and 2003 Projects.[4]

The parties agree the five year statute of limitations set out in 28 U.S.C. § 2462 is applicable to the EPA civil penalties claims for the 2001 and 2003 Projects.  "[A]n action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued...."  28 U.S.C. § 2462.   A claim first accrues "as soon as the right to institute and maintain a suit arises."  Konecny v. United States, 388 F.2d 59, 65 (8th Cir. 1967).

### A.     Permitting Claims

The EPA alleges Unit 1 underwent a major modification from September 2001 to February 2002 and that Unit 2 underwent a major modification from November 2003 to January 2004.  This lawsuit was filed in 2011.  As a result, the EPA's civil penalty claims are barred by Section 2462 "unless it can identify a wrongful act that took place within five years of its filing." Sierra Club, 615 F.3d at 1014.

The EPA alleges Ameren "has continued to violate the Missouri SIP's prohibition on operating an installation after a modification without first obtaining a construction permit throughout the limitations period" for the 2001 and 2003 Projects.  The EPA also alleges Ameren violated its Title V Operating Permit by commencing major modifications at Units 1 and 2 and operating Units 1 and 2 after the major modifications without obtaining a Title V permit. Ameren seeks the dismissal of these claims for the 2001 and 2003 Projects, arguing the statute of limitations to assert such a claim has expired.  The EPA alleges the statute of limitations has not

---

[4]Ameren does not seek dismissal of the statutory penalties sought for the 2007 Project at Unit 1 and the 2010 Project at Unit 2.

expired because the MO SIP and Title V create an ongoing violation because both prohibit the operation of a major modification without a permit.

The United States Court of Appeals for the Eighth Circuit recently considered the same question under the South Dakota SIP. Id. at 1008.  In that case, the Eighth Circuit considered whether the following language from the South Dakota SIP created on ongoing violation: "no major emitting facility...may be constructed without meeting the PSD requirements." Id. at 1014. (internal quotations omitted).  In construing the plain language of the statute and regulations, the Eigth Circuit found the South Dakota SIP did not create an ongoing violation.  The plain language of the South Dakota SIP prohibited *construction* of a major emitting facility without a PSD permit, but did not prohibit *operation* without a permit. As a result, the claims were dismissed as time-barred.

In this case, the relevant Missouri SIP provision provides:

> Construction/Operation Prohibited. No owner or operator shall commence construction or modification of any installation subject to this rule, *begin operation* after that construction or modification, or begin operation of any installation which has been shut down longer than five (5) years *without first obtaining a permit* from the permitting authority under this rule.

10 C.S.R. 10-6.060(1)(c).

The relevant portion of Ameren's Title V permit provides:

> Construction Permits Required: The permittee shall not commence construction, modification, or major modification of any installation subject to this rule, *begin operation* after that construction, modification or major modification, or begin operation of any installation which has been shut down longer than five (5) years *without first obtaining a permit* from a permitting authority.

-13-

Permit to Operate, ECF No. 18-4 at 24; Part 70 Operating Permit, ECF No. 18-5 at 28. (emphasis added).

The parties agree that Ameren did not obtain a PSD permit prior to or after the 2001 and 2003 Projects.  The Missouri SIP and Ameren's Title V permit prohibit the commencement of a major modification or "begin[ning] operation after [a] major modification."  The EPA argues I should interpret the Missouri SIP and Ameren's Title V permit's use of "begin operation" to prohibit any operation of a major modification without first obtaining a PSD permit.  The EPA argues the provisions are intended to prohibit ongoing operation because "'beginning' operation is part of the act of operating, and such operation is prohibited under the Missouri SIP without first obtaining a PSD permit."  The EPA then suggests that Ameren continues to violate the Missouri SIP and Title V permit to this day because it has never obtained a permit for the 2001 and 2003 Projects.

The EPA's argument is not supported by the plain language of the Missouri SIP or Ameren's Title V permit.  The plain meaning of "begin operation" indicates that it is a violation to *begin* operation without obtaining a permit.  The plain meaning of the Missouri SIP and Ameren's Title V permit does not support the conclusion that ongoing operation is a violation.  I find that the applicable provisions of the Missouri SIP and Ameren's Title V permit prohibit construction and beginning operation without a permit but do not prohibit ongoing operation without a permit into perpetuity.

The EPA has failed to identify a wrongful act concerning the 2001 and 2003 Projects take took place within five years of filing this lawsuit.  As a result, I will dismiss the EPA's the civil penalty claims asserted in Counts I and II for failure to comply with the Missouri SIP and CAA's

-14-

PSD requirements and the civil penalty claims asserted in Counts V and VI for failure to comply

with the Title V Permit's PSD requirements for the 2001 and 2003 Projects.

### 2.     Failure to Undergo BACT Determination

In Counts I and II, the EPA alleges Ameren violated PSD requirements in the CAA and

the Missouri SIP when it failed to undergo a BACT determination and failed to operate in

compliance with BACT limitations that would have resulted from the determination for the 2001

and 2003 Projects.  Ameren argues the five year statute of limitations has expired to assert these

claims.

"BACT is not a free standing requirement.  Rather it is tied specifically to the

construction process."  Sierra Club, 615 F.3d. at 1017.  BACT limits are incorporated into a

facility's construction plans and PSD permits, and do not establish an ongoing duty to apply

BACT independent of the permitting process.  Id.  Further, "BACT limits are tailored to each

facility 'on a case-by-case basis' during the PSD permitting process."  Id. (citing  42 U.S.C. §

7479(3)).  Once it has been determined there is no ongoing duty to obtain a PSD permit, "it

would make little sense to conclude that [Ameren] must nevertheless abide by the BACT limits

which are a product of such permits."  Id.  "The duty to obtain a PSD permit and the duty to

apply BACT are most sensibly construed as going hand in hand."  Id.

Earlier in this Memorandum I determined that the statute of limitations has expired to

assert civil penalty claims for Ameren's failure to obtain a PSD permit for the 2001 and 2003

Projects.  As a result, the statute of limitations has also expired for the claims regarding

Ameren's failure to undergo a BACT determination and apply BACT for the 2001 and 2003

Projects.  Accordingly, I will dismiss the EPA's claims for civil penalties in Counts I and II

arising from Ameren's failure to undergo a BACT determination or operate in compliance with BACT are barred by the statute of limitations.

### 3.    Compliance Certification

The EPA also asserts claims for civil penalties for Ameren's failure to accurately certify its compliance with all the federally enforceable terms and conditions in its Title V Permit for the 2001 and 2003 Projects in violation of Ameren's Title V Operating Permit.

The Title V Operating Permit requires Ameren to provide post-construction notice of any change to the Rush Island Plant "no later than the next annual emissions report."  Permit to Operate, ECF No. 18-4 at 32.  The Missouri SIP also indicates "the permittee must provide contemporaneous written notice of the change to the permitting authority."10 C.S.R. 10-6.065

Ameren argues that the claims that it failed to comply with the notification provisions in its Title V permit and the Missouri SIP for the 2001 and 2003 Projects must be dismissed because the five year statute of limitations has expired.

The Missouri SIP and Ameren's Title V permit include language that identify a specific time in which Ameren must provide notification of the change.  Under the Rush Island Title V permit, the notification must be made "by the next annual emissions report."  The EPA's claims for Ameren's violation of its Title V Permit for failure to certify compliance as a result of the 2001 and 2003 Projects accrued at the time of the next annual emissions report.  The 2001 Project was completed in 2002 and, as result, the latest the claim could have accrued was in 2003, outside the statute of limitations. The 2003 Project was completed in 2004 and, as a result, the latest the claim could have accrued was in 2005, also outside the five year statute of limitations.

-16-

Similarly, the Missouri SIP requires contemporaneous notification.  10 C.S.R. 10-6.065  The EPA's claims regarding Ameren's failure to certify under the Missouri SIP for the 2001 and 2003 Projects accrued contemporaneous with the changes, outside of the five year statute of limitations period.

As a result, the civil penalty claims in Counts V and VI for Ameren's failure to certify compliance with federal enforceable terms and conditions of its Title V Permit for the 2001 and 2003 Projects must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED that** Defendant Ameren Missouri's Rule 12(b)(6) Motion to Dismiss [#39] is **GRANTED in part and DENIED in part**.  The civil penalty claims asserted in Counts I and II for failure to comply with the Missouri SIP and CAA's PSD requirements and failure to undergo a BACT determination or operate in compliance with BACT are **DISMISSED**.  The civil penalties asserted in Counts V and VI for failure to comply with the Title V Permit's PSD requirements and requirement to certify compliance with the Title V Permit for the 2001 and 2003 Projects are **DISMISSED**.

**IT IS FURTHER ORDERED that** Defendant Ameren Missouri's Rule 12(b)(1) Motion to Dismiss [#42] is **DENIED**.

**IT IS FURTHER ORDERED that** Plaintiff's Motion for Leave to Submit Supplemental Authority [#63] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of January, 2011.

-17-