**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 4:11-cv-00077-RWS |
| **AMEREN MISSOURI,** | ) ) ) | |
| Defendant. | ) ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO STRIKE CERTAIN OF AMEREN'S AFFIRMATIVE DEFENSES**

**SUMMARY OF ARGUMENT**

Pursuant to Federal Rule of Civil Procedure 12(f), Plaintiff United States, on behalf of the U.S. Environmental Protection Agency ("EPA"), respectfully moves this Court to strike 13 of Defendant Ameren Missouri's ("Ameren's") 34 Affirmative Defenses as legally insufficient, immaterial, and inapplicable here.[1]  (*See* Ameren Ans., ECF No. 74.)  First, Ameren raises equitable defenses that should be stricken as immaterial and without merit, including under controlling Supreme Court and Eighth Circuit precedent.  *See*, *e.g.*, *Pan-American Petroleum & Transport Co. v. United States*, 273 U.S. 456, 506 (1927) (finding that equitable defenses shall not be asserted against the United States to "frustrate the purpose of its laws or to thwart public policy"); *Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285 (8th Cir. 1990) (finding

---

[1] The 13 Affirmative Defenses subject to this motion are the Fifth, Ninth, Eleventh, Twelfth, Fifteenth, Sixteenth, Seventeenth, Twenty-Third, Twenty-Fourth, Twenty-Fifth, Twenty-Seventh, Twenty-Ninth and Thirty-Fourth Defenses.

laches unavailable against the Government); *Harrod v. Glickman*, 206 F.3d 783 (8th Cir. 2000) (broadly rejecting estoppel defense asserted against the Government).  Second, Ameren brings a series of defenses—which the United States collectively refers to here as "rulemaking defenses"—that constitute challenges to the applicable regulations that are jurisdictionally foreclosed here by Clean Air Act Section 307(b).  42 U.S.C. § 7607(b).  Finally, one of these rulemaking defenses is not only barred by CAA Section 307(b), but also raises a constitutional law challenge to EPA's construction of its regulations under the nondelegation doctrine that is wholly without merit. Therefore, the United States respectfully asks this Court to strike these 13 Affirmative Defenses in order to streamline discovery, motion practice, and jury instructions.

## FACTUAL BACKGROUND

This is a civil judicial enforcement action for injunctive relief and civil penalties brought by EPA to enforce the Clean Air Act ("CAA") at Ameren's Rush Island coal-fired power plant in Festus, Missouri.  In the Amended Complaint ("AC"), the United States alleges, among other things, that Ameren violated the Prevention of Significant Deterioration ("PSD") requirements of the CAA, 42 U.S.C. §§ 7475-7490, and the EPA-approved, federally-enforceable Missouri State Implementation Plan ("SIP"), when it undertook multi-million dollar capital improvement projects at Units 1 and 2 of its Rush Island power plant.  These projects resulted in "significant net emissions increases" of sulfur dioxide ("$SO_2$"), a harmful air pollutant that contributes to premature mortality, asthma attacks, acid rain and other adverse effects in downwind communities and natural areas.  (AC ¶ 3).  Ameren undertook these massive projects without first installing and operating Best Available Control Technology ("BACT") to reduce its emissions and without obtaining the required construction and operating permits required by the Missouri SIP and the CAA to ensure that air quality would not deteriorate as a result of the

1

increase in $SO_2$ emissions from the Rush Island plant.  On January 27, 2012, this Court denied, in part, Ameren's motions to dismiss the Amended Complaint.  (ECF No. 73.)  On February 9, 2012, Ameren answered the Amended Complaint and asserted no less than 34 separate affirmative defenses. (ECF No. 74.)  Here the United States asks this Court to strike 13 of those defenses.

## STANDARD

Federal Rule of Civil Procedure 12(f) grants broad authority to strike affirmative defenses that are insufficient or immaterial.  *United States v. Lot 65 Pine Meadow*, 976 F.2d 1155, 1157 (8th Cir. 1992).  An affirmative defense "is insufficient if, as a matter of law, the defense cannot succeed under any circumstances," *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953), while a defense is "immaterial" if it "bears no essential or important relationship to the primary claim for relief," *Federal Savings and Loan Ins. Corp. v. Burdette*, 696 F. Supp. 1183, 1186 (E.D. Tenn. 1988).  While motions to strike are "viewed with disfavor and infrequently granted," *Starr Indem. & Liability Co. v. Continental Cement Co. L.L.C.*, No. 4:11-cv-809-RWS, 2011 WL 4862765, *1 (E.D. Mo. Oct. 13, 2011) (citing *Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)), district courts are afforded broad discretion in ruling on a motion to strike, *Nationwide Ins. Co. v. Cent. Mo. Elec. Co-op.*, 278 F.3d 742, 748 (8th Cir. 2001).  The striking of insufficient defenses functions "to avoid the expenditure of time and money that must arise from litigating spurious issues." *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986) (citation omitted).  In this way, a court forces the parties to focus on the essential issues, removing "unnecessary clutter" from the case and expediting its resolution.  *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).  This Court has noted that a motion to strike "should be granted if it may have the effect of

making the trial of the action less complicated, or [it] may have the effect of otherwise streamlining the ultimate resolution of the action." *Gannon v. Yamaha Motor Corp., U.S.A.*, No. 4:07-cv-1845-RWS, 2008 WL 2401587, *1 (E.D. Mo. June 10, 2008) (internal quotations and citations omitted).

## ARGUMENT

I.  **AMEREN'S EQUITABLE DEFENSES FAIL IN THIS ACTION BROUGHT BY THE UNITED STATES UNDER THE CLEAN AIR ACT TO PROTECT PUBLIC HEALTH AND THE ENVIRONMENT.**

Ameren's equitable defenses are insufficient as a matter of law and immaterial to this proceeding. Those defenses here consist of laches (Fifth Defense); estoppel, waiver and acquiescence (Ninth Defense); unclean hands (Twenty-Fifth Defense); balance of equities (Twenty-Third Defense); and a defense based on Greenhouse Gas guidance developed by EPA and the Department of Energy ("DOE") (Twenty-Seventh Defense). Such equitable defenses are not available to bar claims brought by the United States to enforce federal law and protect the public interest. The Supreme Court has explained that, while "general principles of equity are applicable in a suit by the United States to secure the cancellation of a conveyance or the rescission of a contract . . . they will not be applied to frustrate the purpose of its laws or to thwart public policy." *Pan-American Petroleum & Transport Co.*, 273 U.S. at 506 (citations omitted).

   A.  **Laches Cannot be Asserted Against the United States as an Affirmative Defense in this Action.**

Ameren claims, in its Fifth Defense, that Plaintiff's claims are "barred, in whole or in part, by laches." (ECF No. 74 at 34.) Ameren's laches defense, however, conflicts with controlling circuit law and Supreme Court precedent.

3

The Eighth Circuit follows the "long standing rule that laches does not apply in actions brought by the United States." *Bostwick Irrigation Dist. v. United States*, 900 F.2d 1285, 1291 (8th Cir. 1990). Applying this broad Eighth Circuit holding, a number of district courts in this circuit have likewise rejected laches defenses asserted against the United States. *See United States v. Sheyenne Tooling & Mfg. Co., Inc.*, 952 F. Supp. 1414, 1419 (D. N.D. 1996) (finding defense of laches unavailable in Clean Water Act enforcement action); *United States v. Geraldson*, 882 F. Supp. 911, 913 (D. S.D. 1995) (finding laches unavailable in action to foreclose Farmers' Home Administration mortgage); *same United States v. Warren Brown & Sons Farms*, 868 F. Supp. 1129 (E.D. Ark. 1994).

Similarly, the Supreme Court has ruled that laches does not apply to actions, such as this one, that are brought by the United States to protect a public interest or to enforce a public right. *See Nevada v. United States*, 463 U.S. 110, 141 (1983). The Clean Air Act violations at issue concern harmful air pollution that contributes to premature mortality, asthma attacks, acid rain and other adverse effects in downwind communities and natural areas. (AC ¶ 3.) A number of courts have found that, in bringing CAA enforcement actions, the United States is "acting in its sovereign capacity to enforce and protect the public interest in a clean environment" and thus that "the defense of laches may not be asserted against it." *United States v. Louisiana-Pacific Corp.*, 682 F. Supp. 1122, 1138 (D. Colo. 1987); *same United States v. American Electric Power Service, Corp.*, 136 F. Supp. 2d 808, 811 (S.D. Ohio 2001). This is so because clean air "is of paramount importance to the American citizenry" and "the public should not be punished for any alleged negligence on the part of EPA." *United States v. Chevron U.S.A. Inc.*, 757 F. Supp. 512, 515 (E.D. Pa. 1990); *see also New York v. American Electric Power*, No. 2:0v-cv-1098, 2006 WL 1331543, *9-10 (S.D. Ohio, March 21, 2006); *New Jersey v. RRI Energy Mid-Atlantic*

4

*Power Holdings*, Civ. No. 07-cv-5298, 2010 WL 3958777, *9 (E.D. Pa. Sept. 30, 2010) (citations omitted).

      **B.**      **Ameren's Estoppel, Waiver and Acquiescence Defense Fails Here.**

Despite that the United States alleges in the Amended Complaint that Ameren failed to disclose the projects at issue to EPA (AC ¶ 64), in its Ninth Affirmative Defense, Ameren claims that the relief sought by the United States is "barred, in whole or in part, by the doctrines of estoppel, waiver and acquiescence" because Ameren "reasonably relied upon affirmative conduct and representations" by U.S. EPA and/or the Missouri Department of Natural Resources ("Missouri DNR"). (ECF No. 74, at 34-35.) This defense should fail as a matter of law in this enforcement action under the Clean Air Act. *See Pan-American Petroleum & Transport Co.*, 273 U.S. at 506; *see also New York v. American Elec. Power Service Corp.*, 2006 WL 1331543, *10 (S.D. Ohio, 2006) (striking defenses of "laches, estoppel, waiver and equitable considerations" in similar CAA enforcement action); *United States v. Southern Indiana Gas and Elec. Co.*, No. IP99-1692-CM/F, 2002 WL 1760699 (S.D. Ind., July 26, 2002) (finding that state's prior determination that project did not trigger any CAA requirements did not bar the United States' enforcement action, and rejecting defense of estoppel).

Even if it were otherwise available, as pled here, Ameren's estoppel defense must fail because Ameren did not allege that EPA engaged in any affirmative misconduct. (*See* ECF No. 74 at 34-35.) The Supreme Court has explained that "it is well settled that the government may not be estopped on the same terms as any other litigant." *Heckler v. Community Health Services of Crawford*, 467 U.S. 51, 60 (1984). In *Office of Personnel Mngmt. v. Richmond*, 496 U.S. 414 (1990), the Court explained that if estoppel were available against the government based on government officials' erroneous advice, it would empower government agencies – in violation of

5

the Constitution – to "vest authority in these agents that Congress would be powerless to constrain." *Id.* at 429.  While the *Richmond* Court stopped short of ruling that estoppel may never lie against the government in any case on any set of facts, it made clear that if ever a case could be made for estoppel against the United States, "affirmative misconduct" would be required.  *Id* at 422-423.  The Court also noted that it had reversed "every finding of estoppel" against the government it had ever reviewed.  *Id.* at 422.

The Eighth Circuit has likewise held that "not even the temptations of a hard case . . . justify applying an estoppel defense" against the government.  *Harrod v. Glickman*, 206 F.3d at 793 (quoting *Conforti v. United States*, 74 F.3d 838, 841 (8th Cir. 1996)).  In *Harrod* the Eighth Circuit held that even where a government attorney orally asserted that the government would not seek reimbursement of disaster relief payments made to farmers, estoppel did not bar the Department of Agriculture from nevertheless doing just that.  206 F.3d at 793-793; *see also Heckler*, 467 U.S. at 60 at 60-64 (finding that government agent's erroneous statement did not support estoppel defense); *Bostwick*, 900 F.2d at 1291 (rejecting defense of estoppel against the government); *United States ex rel. Williams v. Renal Care Group*, No. 4:05-cv-985-DJS, 2008 WL 5233028, at *1-2 (E.D. Mo. Dec. 12, 2008) (granting government's motion to strike defenses of estoppel, waiver and laches).

Similarly, Ameren's waiver and acquiescence defense is effectively just another variation of its laches and estoppel defenses that must fail for the same reasons.  In *United States v. Chevron*, which was also a CAA enforcement action, the district court analyzed the defenses of waiver, laches, and estoppel together and rejected the waiver defense for the same reasons it rejected estoppel and laches.  757 F. Supp. at 515.  Similarly, in *United States v. Amoco Oil Co.*, 580 F. Supp. 1042 (W.D. Mo. 1984), the district court rejected the defenses of estoppel, waiver

and laches in a Clean Water Act enforcement action, finding that perceived inaction by the government could not amount to waiver since "generally speaking public officers have no power or authority to waive the enforcement of the law on behalf of the public." *Id.* at 1050; *same United States v. City of Menominee*, 727 F. Supp. 1110, 1121 (W.D. Mich. 1989). In short, as with laches and estoppel, public officials have no authority to waive enforcement or to "acquiesce" to violations of the law. Thus Ameren's waiver and acquiescence defense should be stricken.

        C.        **Ameren's Defense of "Unclean Hands" Also Fails Here.**

This Court should also strike Ameren's Twenty-Fifth Affirmative Defense of "unclean hands" (*see* ECF No. 74 at 37), because the compelling public interest in clean air simply leaves no room for this defense. The Supreme Court has noted that the defense of "unclean hands . . . has not been applied where Congress authorizes broad equitable relief to serve important national policies." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360 (1995). Thus, numerous courts have stricken or otherwise rejected this defense in actions by the federal government. *See Hernandez, Kroone and Assoc, Inc. v. United States*, 95 Fed. Cl. 395 (Fed. Cl. 2010) (striking equitable defenses, including unclean hands); *United States v. Philip Morris*, 300 F. Supp. 2d 61, 75 (D.D.C. 2004) (holding that unclean hands is not a valid defense against the government acting in the public interest); *United States v. Western Processing Co.*, 734 F. Supp. 930 (W.D. Wash. 1990) (unclean hands unavailable against the government in hazardous waste case under CERCLA, 42 U.S.C. § 9607); *United States v. Southern Motor Carriers Rate Conference*, 439 F. Supp. 29, 52 (N.D. Ga. 1977) (striking unclean hands defense as unavailable in actions under federal antitrust laws); *SEC v. Follick*, No. 00-Civ-4385, 2002 WL 31833868, at *8 (S.D.N.Y. Dec, 18, 2002) (finding "unclean hands may not be invoked against a government

7

agency which is attempting to enforce a congressional mandate in the public interest); EEOC *v. Recruit U.S.A., Inc.*, 939 F.2d 746, 752-755 (9th Cir. 1991) (upholding district court decision to not apply the defense of unclean hands in EEOC case because its application would have disserved the public interest in eliminating discrimination).

Likewise, the defense of "unclean hands" is simply not proper in this action to enforce the Clean Air Act. *See United States v. American Electric Power Service Corp*, 218 F. Supp. 2d. 931, 938 (S.D. Ohio, 2002) (striking defendant's "unclean hands" defense in similar Clean Air Act New Source Review enforcement action against electric utility). Congress created the Clean Air Act to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). Recognizing the important public purpose to be served by the Act, Congress gave EPA a sweeping mandate to seek equitable relief "as necessary" to prevent violations of the Act. 42 U.S.C. § 7477. Thus, this defense is properly stricken at the outset of this proceeding. This Court should not allow the important public interest in clean air to be delayed while Ameren pursues wide-ranging discovery in search of evidence to support an "unclean hands" defense.

**D.      The "Balance of the Equities" is Likewise Not a Defense to Clean Air Act Violations.**

As its Twenty-Third defense, Ameren asserts that "claims for injunctive relief are barred, in whole or in part, because the equities of this matter weigh heavily against relief." (ECF No. 74 at 37.) This defense is redundant of Ameren's other, improper equitable defenses; and, to the extent that it is not redundant, it is without merit. The "balance of the equities" is not a defense to violations of the Clean Air Act:  Congress has already balanced the equities in the statute. *See U.S. v. Wheeling-Pittsburgh Steel Corp*, 818 F.2d 1077, 1088 (3d Cir. 1987) (in fashioning relief to address CAA violations, district court "was not authorized to impose its own balancing of

policy over that of Congress"); *see also INS v. Pangilinan*, 486 U.S. 875, 883 (1988) ("[c]ourts of equity can no more disregard statutory and constitutional requirements than can courts of law") (citation omitted).  Striking this defense avoids risks of overbroad discovery, unnecessary motions practice, and juror confusion.

> **E.    Ameren's Defense Based on Federal Guidance Respecting Greenhouse Gases is Unavailable and Immaterial in This Case.**

In its Twenty-Seventh Defense, Ameren asserts that "[s]ome or all of the Projects at issue increased the efficiency of Rush Island's boilers and turbines, as recommended by U.S. EPA's and the Department of Energy's own guidance on greenhouse gases." (ECF No. 74 at 37.)  To the extent that Ameren is invoking these documents as creating an equitable defense, Ameren's defense based on greenhouse gas guidance is infirm for many of the same reasons that the other equitable defenses discussed above fail as a matter of law.

Striking this defense is particularly appropriate here because it is irrelevant and represents the kind of "unnecessary clutter" that threatens to confuse the issues and burden the parties with unnecessary discovery on an issue – greenhouse gases – that is not a defense to any claim in this matter.  *See Heller Financial, Inc.*, 883 F.2d at 1294.  EPA and DOE guidance and regulation on greenhouse gases have absolutely no bearing on Ameren's liability for violating the New Source Review requirements of the Clean Air Act stemming from its emissions of other forms of air pollution.  The United States thus asks this Court to strike this defense in order to avoid a potential avenue into burdensome and wholly irrelevant discovery in this proceeding.

**II.    AMEREN'S RULEMAKING DEFENSES ARE BARRED BY SECTION 307(B) OF THE CLEAN AIR ACT.**

Ameren's Rulemaking Defenses present eight variations upon the same impermissible theme.  In its Eleventh, Twelfth, Fifteenth, Sixteenth, Seventeenth, Twenty-Fourth, Twenty-

9

Ninth and Thirty-Fourth Defenses, Ameren attempts to challenge the rules that govern this action, particularly the federally-enforceable Missouri SIP. These rule challenges are jurisdictionally precluded here by CAA Section 307(b), 42 U.S.C. § 7607(b).[2]

CAA Section 307(b) governs judicial review of, among other things, any final action taken by EPA under the Act, including a decision of the agency to approve a state implementation plan. *See*, *e.g.*, *Union Elec. Co. v. EPA*, 515 F.3d 206 (8th Cir. 1975). Under Section 307(b)(1), the Court of Appeals for the appropriate circuit is vested with exclusive jurisdiction to review challenges to rules and other "final" agency action taken pursuant to the Clean Air Act.[3] Under Section 307(b)(2), challenges to final agency actions taken by EPA under the CAA "shall not be subject to judicial review in civil or criminal proceedings for enforcement," such as this action, in which review could have been obtained under Section 307(b)(1). 42 U.S.C. § 7607(b)(2). Therefore, Defendant's various challenges to the Missouri SIP in this action, and multiple contentions that the claims brought by Plaintiffs amount to new rules or regulations adopted without notice and comment rulemaking, are all jurisdictionally barred. Ameren cannot raise these claims in the context of this enforcement proceeding under

---

[2] Through other affirmative defenses not challenged here, Ameren also attempts to advance a number of misinterpretations of the regulations at issue. In determining the meaning of the regulations, this Court is to defer to EPA's constructions unless "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997); *see also Am. Cyanamid Co. v. EPA*, 810 F.2d 493, 498 (5th Cir. 1987) (deferring to EPA interpretation of Louisiana SIP); *Navistar Int'l Transp. Corp. v. EPA*, 858 F.2d 282, 286-88 (6th Cir. 1988) (deferring to EPA interpretation of Ohio SIP). In future motions practice, or at trial, the United States will explain the rules and why Ameren's misreading of them must be rejected.

[3] Section 307(b)(1) also provides generally that the United States Circuit Court of Appeals for the District of Columbia is vested with exclusive jurisdiction if such final action is "based on a determination of national scope or effect." 42 U.S.C. § 7607(b)(1). Any final action "which is locally or regionally applicable may be filed only in the Court of Appeals for the appropriate circuit." *Id.* Any petition for review must be filed within 60 days from the date of notice of the final action at issue. *Id.*

the express language of Section 307(b)(1) and (2).  Rather, Ameren would have had to challenge EPA's approval of the Missouri SIP provisions or adoption of federal regulations at issue in the appropriate Circuit Court within 60 days of EPA's approval or adoption.  Ameren did not do so.

Indeed, the Supreme Court has held that the statute means precisely what it says—that all *final* agency actions taken under the Act are reviewable only in the Court of Appeals.  *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 587-89 (1980).  In *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561(2007), the Supreme Court upheld EPA's interpretation of its New Source Review regulations, and in overturning the Fourth Circuit's contrary reading, noted that the circuit court's ruling rose to the level of an "implicit invalidation" of the EPA regulations "implicating the provisions of § 307(b)[.]" *Id.* at 581.  Likewise, Ameren improperly seeks to use this action to raise various challenges to the EPA's regulations, including the Missouri SIP, that would effectively invalidate the regulations.  *See Wisconsin Elec. Power Co. v. Reilly*, 893 F.3d 901, 914 n. 6 (7th Cir. 1990) (noting that while it did not have jurisdiction to "review the propriety" of the Clean Air Act regulations at issue in that case, the court did have jurisdiction to consider whether EPA "properly applied these regulations").

Courts have repeatedly rejected such rulemaking defenses in Clean Air Act enforcement cases.  For example, a similar argument was soundly rejected by the United States District Court for the Western District of Missouri in *United States v. Ford Motor Co.*, 736 F. Supp. 1539 (W.D. Mo. 1990).  In that CAA enforcement case, the defendant asserted in a counterclaim that EPA had "adopted a national litigation strategy that has the force and effect of a regulation," without being enacted pursuant to requirements of the Administrative Procedure Act.  *Id*. at 1552.  The court held that it was without jurisdiction to entertain this counterclaim against EPA since the "allegations, taken as true, present an attack on final agency action", which must be

11

presented in the Court of Appeals.  *Id.  See also United States v. American Elec. Power Service Corp.*, 218 F. Supp. 2d at 948; *New Jersey v. RRI Energy Mid-Atlantic Power Holdings*, LLC, 2010 WL 3958777, *13-15 (E.D. Pa. Sept. 30, 2010); *New York v. American Elec. Power Service Corp.*, 2006 WL 1331543, *14 (S.D. Ohio 2006); *United States v. Southern Indiana Gas and Elec. Co.*, No. IP 99-1692-C-M/F, 2003 WL 446280, *6 (S.D. Ind. Feb. 18, 2003).

In short, Ameren's rulemaking defenses go too far, improperly challenging the validity of the applicable regulations through the vehicle of this enforcement action.  These defenses are not available here in the district court years after the Missouri SIP provisions at issue were approved by EPA and are properly stricken by this Court.

### III. AMEREN'S TWENTY-FOURTH AFFIRMATIVE DEFENSE ALSO PRESENTS A CONSTITUTIONAL LAW CHALLENGE THAT IS WHOLLY WITHOUT MERIT.

Ameren's Twenty-Fourth Defense is not only barred by CAA Section 307(b), but also raises a constitutional law challenge to EPA's construction of its regulations under the nondelegation doctrine that is wholly without merit.  In this defense Ameren asserts that EPA's interpretation of the Missouri SIP and other CAA implementing regulations "effects an unconstitutional delegation of legislative power or authority."  (ECF No. 74 at 37.)

Ameren's attempt to trundle out the heavy artillery of constitutional law misses the mark. The nondelegation doctrine places a constitutional limit on the delegation of lawmaking authority from the legislative to the executive branch, and thus only applies to acts of Congress (not to acts of regulatory agencies), and only where a statute delegates lawmaking power to the executive branch without any "intelligible principle" to guide its application.  *See Whitman v. American Trucking Associations*, 531 U.S. 457 (2001) (finding that challenged provision of the Clean Air Act did not violate the nondelegation doctrine).  Indeed, the Supreme Court has not

upheld the invalidation of any statute on these grounds since two decisions in 1935 overturning provisions of Franklin Delano Roosevelt's New Deal. *Id.* at 474.

## CONCLUSION

In conclusion, Ameren's equitable and rulemaking defenses are without merit and would invariably create discovery and other burdens that would serve no purpose here. The United States respectfully requests that this Court strike these defenses, bar the use of evidence relating to them at trial, and grant such further relief as the Court deems just and proper.

Dated: February 28, 2012  Respectfully Submitted,

IGNACIA S. MORENO
Assistant Attorney General

 s/ Bradford T. McLane
Justin A. Savage
Andrew C. Hanson
Bradford T. McLane
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 305-0544
Facsimile: (202) 616-2427
E-mail: Bradford.McLane@usdoj.gov

Andrew J. Lay
Suzanne Moore
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Missouri
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone: (314) 539-2200
Facsimile: (314) 539-2777

**CERTIFICATE OF SERVICE**

   I hereby certify that on February 28, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

        Ronald S. Safer (pro hac vice)
        Patricia Brown Holmes (pro hac vice)
        Renee Cipriano (pro hac vice)
        Steven J. Bonebrake (pro hac vice)
        Matthew B. Mock (pro hac vice)
        Schiff Hardin LLP
        233 South Wacker Drive Suite 6600
        Chicago, Illinois 60606
        Phone: (312) 258-5500
        Fax: (312) 258-5600

        James J. Virtel
        Armstrong Teasdale LLP
        7700 Forsyth Boulevard Suite 1800
        St. Louis, Missouri  63105
        Phone: (314) 621-5070
        Fax: (314) 612-2298
        jvirtel@armstrongteasdale.com

        *Counsel for Defendant Ameren Missouri*

           s/ Bradford T. McLane