UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:11-CV-00077-RWS |
| ) | |
| **AMEREN MISSOURI,** ) | Judge Rodney W. Sippel |
| ) | |
| **Defendant.** ) | |
| ) | |

**AMEREN MISSOURI'S MEMORANDUM IN SUPPORT OF ITS
MOTION TO COMPEL DISCOVERY**

I.      **INTRODUCTION**

Ameren Missouri ("Ameren") moves to compel the production of two categories of documents that the United States refuses to produce: (1) paper documents regarding EPA's interpretation, application and understanding of the New Source Review ("NSR")[1] regulations that are held at EPA's Regional Offices (the "EPA Regional Documents") and dated between January 1, 2002 and June 28, 2011; and (2) a narrow set of documents held by the Department of Energy ("DOE") and the Federal Energy Regulatory Commission ("FERC") that are relevant to this case (the "DOE-FERC Documents").  The United States admits both categories of documents are responsive.  It refuses to produce them because it claims production would be too burdensome.

In a prior NSR lawsuit, the United States likewise refused to produce documents from all EPA Regional Offices, again raising claims of burden and refusing to produce the EPA Regional Documents.  The court in that case rejected the United States' burden claims and ordered production.  *See United States v. Illinois Power Co.*, No. 99-833-MJR, Doc. No. 91, at 4 (S.D. Ill. Jan. 10, 2001) (Ex. A).  The United States refuses to produce the EPA Regional Documents even though it relies on documents created by Regional Offices as support for its claims in this case.  The law prohibits the United States from "picking and choosing" the documents it wishes to produce.

The United States' claims of burden with respect to the DOE-FERC Documents are also without merit.  Ameren has propounded just six[2] requests for production that are narrowly

---

[1] NSR, as that term is used in this memorandum, refers to the NSR permitting program which consists of the prevention of significant deterioration ("PSD") and Non-Attainment NSR (not at issue in this case) permitting programs.  *See* 42 U.S.C. §§ 7470-7492, 7501-7515.

[2] Requests numbered 1 and 5 in Exhibit F seek the same information.

1

tailored to limit any burden while still getting Ameren the documents it needs for its defense.

The Court should grant this Motion and order the United States to produce the EPA Regional Documents and DOE-FERC Documents as set forth below.

## II.     FACTUAL BACKGROUND

The United States alleges that Ameren violated the Clean Air Act ("CAA") when it conducted routine maintenance at its Rush Island plant without obtaining a PSD permit.  Ameren vigorously disputes that a permit was needed in the first place.

### A.     EPA Regional Offices Possess Information Responsive to Ameren's Discovery Requests.

The EPA is, of course, a nationwide agency; it has nationwide responsibility for interpreting and implementing the CAA and numerous other environmental laws and regulations. EPA carries out this role through its Washington, D.C. headquarters and ten Regional Offices through the country.  (*See* EPA Regional Map, Ex. B.)  Its mission is directed at "all Americans" and carried out via "national efforts" to protect human health and the environment.  U.S. EPA, Our Mission and What We Do, http://www.epa.gov/aboutepa/whatwedo.html.  Accordingly, EPA's NSR permitting program is a regulatory scheme that is national in scope, and is interpreted and enforced by all ten Regional Offices.  *See* 40 C.F.R. § 1.5(a).  Indeed, the United States has identified approximately 600 EPA personnel from across the country whose responsibilities include or have included interpretation or application of the NSR regulations. (*See* Supp. Resp. to Ameren's Second Set of Interrogatories, Ex. C, at No. 18.)  Over 400 of those individuals work in EPA Regional Offices other than Region 7, the only Regional Office from which the United States has agreed to produce paper documents.  Moreover, the United States has recognized that EPA holds relevant information on a national basis, and has thus agreed to "canvas EPA's nationwide knowledge in response to interrogatories and depositions

where appropriate." (Ex. D, at 3.)  Yet the United States still refuses to produce the EPA Regional Documents.

As the Court knows from earlier motion practice in this case, a key area of dispute in this matter is the applicable law.  The United States claims that the applicable law is set forth in its interpretations of the NSR regulations, which it claims are entitled to deference.  Ameren believes that discovery will demonstrate that EPA's interpretations have been inconsistent or created expressly for litigation.  To make its case on the deference inquiry, Ameren needs discovery regarding EPA's historical practices, interpretations and application of the NSR regulations.  Ameren seeks, among other things, paper documents related to the following key issues:

- EPA's historic interpretation and application of statutory and regulatory NSR terms (e.g., "routine maintenance, repair and replacement" and "significant net emissions increase");
- Correspondence between EPA and state environmental agencies regarding the proper interpretation or application of the NSR regulations;
- EPA's emissions forecasting methods applied to electricity generating units other than the Rush Island units at issue here;[3]
- EPA's interpretation of what sort of changes to industrial boilers – both at power plants and in other types of industries subject to NSR regulations – constitute a "major modification";
- EPA's interpretation and application of what it calls its "aggregation" doctrine – combining more than one activity for NSR purposes; and

---

[3] Over the course of the parties' months-long discovery negotiations, the United States has, at times, objected to the production of responsive documents related to major sources other than coal-fired electricity generating units ("EGU"s). Ameren's understanding of the United States' current position is that the United States, in accord with Ameren's Requests, will provide responsive documents related to coal-fired EGUs, other non coal-fired EGUs, and other major sources in other industries.  Such documents are not limited to applicability determinations and Title V petition orders, rather per Ameren's Request Instructions, these documents include internal memoranda, communications, and all other forms of documents.  To the extent the United States' position differs from Ameren's understanding, this category of documents is included in the instant motion to compel.

3

- EPA's oversight of states' proper implementation and application of NSR regulations.

(*See e.g.*, Ameren's First, Second and Third Sets of Requests for Production, Ex. E, at Nos. 6, 10-14, 16-19, 24, 30-32, 34-36, 41-42, 45, 47, 52-58, 62, 66, 67 and 72.)[4]

### B. Ameren's Request for Discovery From DOE and FERC

Ameren also seeks a limited number of documents on six discrete topics from DOE and FERC. (*See* Ex. F.) The DOE-FERC Documents relate to those agencies' evaluations, reports or assessments of energy generating units' efficiency and cost-effectiveness, the demand for electricity throughout the country, and the impact of the NSR permitting program on the energy generation industry. (*Id.*) The United States has put these topics (and documents relating to them) at issue by making the counterintuitive claim that certain projects would increase emissions, even though those projects increased the efficiency and cost-effectiveness of the unit – meaning the unit would need *less* coal to generate the same amount of electricity. (Am. Compl. at ¶¶ 67, 73, 78, 83; Supp. Resp. to Ameren's First Set of Interrogatories, Ex. G, at No. 2(a).) The United States has refused to produce the DOE-FERC Documents, claiming that collection and production would be too burdensome. (*See* Ex. H.)

### C. Ameren's Efforts to Reduce the United States' Already-Limited Burden

Ameren has undertaken considerable efforts to cooperate with the United States to narrow its requests and reduce the United States' burden.

First and foremost, Ameren agreed to accept from the United States a hard drive containing a "canned" set of documents that it collected as part of different NSR litigation in the

---

[4] The United States has agreed to produce some responsive electronically-stored information ("ESI") from a subset of relevant custodians located in the Regional Offices. The United States has not yet produced any documents from this search, so Ameren is presently unable to assess the merits of that production, and reserves its rights to take issue with it in the future.

early 2000s and has not updated since 2004 (the "Legacy Hard Drive"). The Legacy Hard Drive consists of paper documents from all ten EPA Regions and EPA Headquarters created prior to January 1, 2002, and electronic documents created up to and through 2004. (*See* Ex. I; *see also, e.g.*, Ex. G, at Objection to Definitions No. 1 and 4.) The Legacy Hard Drive has presented Ameren with considerable technical difficulties that have prevented Ameren from making much use of those documents to date. Even assuming Ameren can resolve those technical difficulties, the documents are not organized in any way that permits a productive review: they are not organized as they were kept in the usual course of business, labeled to correspond to the categories in Ameren's Requests, or coded or indexed in any other useful way. Nonetheless, Ameren has agreed to accept the Legacy Hard Drive solely in an effort to cooperate and to reduce the United States' burden. Because the United States was merely re-producing documents it gathered and produced long ago, this imposed essentially no burden on it.

Second, Ameren agreed to narrow its Request Nos. 10, 13, 14, 17, 18 and 31 with respect to geographic and temporal scope. (*See* Ex. J.) Finally, Ameren narrowed its Requests for documents from DOE and FERC. (*See* Ex. F.)

### III. APPLICABLE LEGAL STANDARDS

After the proponent of discovery makes a threshold showing of relevance, "the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Cincinnati Ins. Co. v. Fine Home Managers, Inc.*, No. 90-234, 2010 WL 2990118, at *1 (E.D. Mo. July 27, 2010). An objection merely asserting that providing discovery "will require the objecting party to expend considerable time, effort and expense" is not sufficient. *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 297 (E.D. Pa. 1980). A request is unduly burdensome only if its burden outweighs "the information's relevancy and utility" to the requesting party.

5

*Lyoch v. Anheuser-Busch Cos.*, 164 F.R.D. 62, 66 (E.D. Mo. 1995).

## IV.  ARGUMENT

### A.  The Information's Relevance Outweighs EPA's Claims of Burden.

The United States agrees that the EPA Regional Documents are responsive to Ameren's Requests and does not argue that they are irrelevant; it just argues that any relevance is outweighed by the burden imposed by production.

The United States made the same argument in another NSR case and lost. The court in *United States v. Illinois Power Co.* held that the defendant was "entitled to production of responsive documents from all ten Regions of EPA, insofar as these offices are involved in the enforcement of the Clean Air Act." *Id.*, No. 99-833-MJR, Doc. No. 91, at 4 (S.D. Ill. Jan. 10, 2001) (Ex. A). Ameren is entitled to that same production here, for several reasons.

First, as shown above, the NSR program is national in scope, and all Regions have equal authority to interpret and apply it. The United States' attempt to limit its production geographically has no valid basis. *See Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 611 (D. Neb. 2001) (granting motion to compel production of documents because a party cannot "unilaterally limit the scope [of discovery] by imposing geographical boundaries on the information it will provide"). The actions of EPA's Regional Offices in interpreting and applying the NSR regulations are highly relevant to Ameren's defenses. *See Ohio Dep't of Human Servs. v. U.S. Dep't of Health & Human Servs.*, 862 F.2d 1228, 1235 (6th Cir. 1988) (an expression of opinion by agency personnel considered "highly relevant and material" to the agency's general understanding of regulatory provisions). Additionally, the United States has agreed to "canvas EPA's nationwide knowledge" where necessary to respond to interrogatories and in depositions. (Ex. D.) In order for Ameren to properly investigate and assess the veracity of statements based on the knowledge of the entire agency, it follows that Ameren needs access to those documents

to conduct its own review. Ameren also needs these documents to prepare for depositions of EPA personnel from the Regional Offices and EPA Headquarters who will have access to "EPA's nationwide knowledge." Ameren merely seeks the level playing field envisioned by the Federal Rules.

Second, even though the United States seeks to limit its production to Region 7 and EPA Headquarters, it nonetheless seeks to use interpretations from other Regions in this case. For example, in response to Ameren's Interrogatory No. 9, which sought the United States' legal basis for its position on the routine maintenance, repair and replacement provisions of the NSR regulations, the United States identified seven documents. (*See* Ex. C, at No. 9.) Six of those seven documents were from Regions 5 and 9; only one pertained to Region 7. Likewise, the United States identified documents from both Region 3 and Region 8 in response to Ameren's Interrogatory No. 12, which sought the documents the United States contends are relevant to fair notice. (*See* Ex. C, at No. 12(e).) In other NSR cases, moreover, the United States has relied on statements and determinations made by multiple EPA Regions other than the Region where the subject utility was located. (*See, e.g.*, Detroit Edison Applicability Determination Detailed Analysis at 15-16, Ex. K; Initial Brief of EPA Enforcement filed in *In re TVA*, CAA Docket No. 00-6, before the Envt'l Appeals Board, dated June 15, 2000, at 20, 23-5, Ex. L.)

The United States cannot pick and choose the documents it finds relevant. *See Aqua Prods., Inc. v. Aquaquality Pool & Spa, Inc.*, CV 05-2538-DRH, 2006 WL 2884913, at *1 (E.D.N.Y. Oct. 10, 2006) (compelling production of documents on finding that defense counsel "cannot pick and choose those documents that they believe satisfies the request; rather, they must provide the plaintiff with all non-privileged responsive documents in their client's possession"); *see also EEOC v. Quick Shop Mkts., Inc.*, 396 F. Supp. 133, 136 (E.D. Mo. 1975) (enforcing

7

subpoena *duces tecum*, and admonishing producing party that "[a]ll pertinent records must be made available" and that "[i]t is not for respondents to pick and choose" from among the relevant documents).

Third, the EPA Regional Documents are relevant to the issue of whether any deference is due the United States' interpretation of the NSR regulations. The United States claims that its interpretation of several key legal issues, including its emissions calculation method and the routine exclusion, are entitled to deference. The United States is only entitled to deference for an interpretation or position it takes in litigation, or otherwise, if the administrative agency's interpretation is consistent and long-standing. *See, e.g.*, *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) ("deference is likewise unwarranted … when it appears that the interpretation is nothing more than a convenient litigating position") (internal quotations omitted). This Court has acknowledged that Ameren is allowed to "present challenges to EPA's interpretation of the regulations at issue in this matter." (Mem. and Order regarding EPA's Motion to Strike Ameren's Affirmative Defenses, ECF No. 92, at 4.) Ameren needs discovery from all Regional Offices so that it can determine whether EPA's interpretations have or have not been consistent or long-standing. For example, if Region 8 has a different interpretation of a key legal issue than Region 3, that variance is centrally relevant. Thus, a request seeking documents which relate to EPA's past interpretation and implementation of the NSR permitting program is reasonably calculated to lead to the discovery of admissible evidence. The United States is subject to the Federal Rules in the same way as any other litigant – it is not entitled to any special treatment. *See, e.g.*, *In re Mo. Dep't of Natural Res.*, 105 F.3d 434, 436 (8th Cir. 1997).

    **B.**    <u>**Ameren is Entitled to Discovery From DOE and FERC.**</u>

The DOE-FERC Documents relate to the impact that the NSR permitting program has

8

had on the electrical industry.  (*See* Ex. F.)  Ameren believes that EPA, DOE and FERC discussed and analyzed how the NSR permitting program would impact implementation of energy efficiency improvements across the electrical industry in light of the rising demand for electricity in Missouri and throughout the country.  Thus, Ameren expects that the DOE-FERC Documents will demonstrate that the United States encouraged industry to undertake efficiency and reliability improvements at its plants, like the turbine improvement projects performed at Rush Island, because the United States considered such projects to have a *positive* impact on emissions – directly contrary to the litigation theory now put forward by the United States.

In addition, DOE and FERC oversee, among other things, the sale and transmission of electricity and the reliability and infrastructure of the electrical industry.  As such, these agencies are uniquely situated to possess information related to the growth in demand for electricity throughout the country – information that is relevant to Ameren's ability to demonstrate that any emission increases following the routine maintenance projects at issue were the result of increases in electrical demand and not the result of the Projects themselves.  (*See, e.g.*, EPA, New Source Review: Report to the President, June 2000, Ex. M, at 2, 6.)

Accordingly, the Court should compel the United States to produce the DOE-FERC Documents.  *See, e.g.*, *Trane Co. v. Klutznick*, 87 F.R.D. 473, 477 (W.D. Wis. 1980) (holding that the President was required to respond to interrogatories with information from the State and Treasury Departments); *United States v. AT & T*, 461 F. Supp. 1314, 1330-37 (D.D.C. 1978) (holding that "defendants will need access to the records of many government agencies, and that fairness to them requires that such access be as unencumbered as the Federal Rules allow," and rejecting claim of undue burden by the United States).

### C. The United States' Claims of Burden Are Outweighed by the Information's Relevance.

The United States does not argue that the documents Ameren seeks are irrelevant or non-responsive; it argues that they are of minor relevance and duplicative of other productions and that therefore, the burden of identification and collection beyond Region 7 or EPA Headquarters is on balance too great. (*See, e.g.*, Ex. G, at General Objection No. 6 and Objection to Definition 1.) The United States also claims undue burden with respect to the DOE-FERC Documents. (Ex. H.)

To substantiate its burden argument, the United States must provide "specific explanations or factual support to show how each discovery request is improper." *Cincinnati Ins. Co.*, 2010 WL 2990118, at *1; *see also Resnick v. Am. Dental Assoc.*, 90 F.R.D. 530, 542 (N.D. Ill. 1981) (rejecting claim of undue burden where party objecting to discovery presented only conclusory statements of burden). Here, any claims of burden are meritless. During the meet-and-confer process, the United States proposed making the EPA Regional Documents available for review and selection through a "production in place" at each Regional Office – i.e., where Ameren personnel would travel around the country to each office and review EPA's documents for responsiveness. The parties even negotiated and agreed to a proposed agreement under Fed R. Evid. 502(d) so that the United States would not have to concern itself with a pre-production privilege review, but need only review the documents selected by Ameren. Ameren agreed to this proposal, thereby shifting to itself the vast majority of the burden associated with this production. Under the schedule that the parties agreed to, the production in place reviews would have been complete by November 20. Nonetheless, the United States recently retracted its proposal, but the fact that it was made in the first place shows that its burden concerns are unfounded, particularly in light of the documents' relevance. *See, e.g.*, *Lyoch v. Anheuser-Busch*

10

*Cos.*, 164 F.R.D. 62, 66 (E.D. Mo. 1995) (ordering production, finding that relevance "outweighs the burden"); *Brown Bear v. Cuna Mut. Group*, 266 F.R.D. 310, 320 (D.S.D. 2009) (rejecting claim of undue burden, finding that where "discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable"); *Metavante Corp. v. Emigrant Sav. Bank*, 05-CV-1221, 2008 WL 4722336, at *3 (E.D. Wis. Oct. 24, 2008) (granting motion to compel, concluding that "the burden on [plaintiff] does not outweigh the value of the material sought," after "viewing the totality of the circumstances, including the amount in controversy in this case, the parties resources, and the issues at stake"). The relevance and utility of legal issues that are central to the determination of this case outweighs any claim of undue burden. *Lyoch*, 164 F.R.D. at 66.

## V. CONCLUSION

Ameren respectfully requests that the Court grant its Motion to Compel.

Dated:  October 22, 2012            Respectfully submitted,

/s/ Matthew B. Mock

Ronald S. Safer (*pro hac vice*)
Patricia Brown Holmes (*pro hac vice*)
Renee Cipriano (*pro hac vice*)
Steven J. Bonebrake (*pro hac vice*)
Matthew B. Mock (*pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500
Fax:  (312) 258-5600

James J. Virtel
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard Suite 1800
St. Louis, Missouri  63105
(314) 621-5070
Fax: (314) 612-2298
jvirtel@armstrongteasdale.com
*Counsel for Defendant Ameren Missouri*

11

# **CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2012, I electronically filed the foregoing **Ameren Missouri's Memorandum in Support of its Motion Compel Discovery** with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

>Andrew C. Hanson
>Justin A. Savage
>Bradford T. McLane
>U.S. Department of Justice
>Environment and Natural Resources Division
>P.O. Box 7611
>Ben Franklin Station
>Washington, DC  20044-7611
>Telephone:  (202) 514-5293
>Facsimile:  (202) 616-6584
>andrew.hanson2@usdoj.gov
>justin.savage@usdoj.gov
>bradford.mclane@usdoj.gov
>
>Andrew J. Lay
>Suzanne J. Moore
>Office of the U.S. Attorney
>111 S. Tenth Street, 20th Floor
>St. Louis, MO 63102
>Telephone:  (314) 539-2200
>Facsimile:  (314) 539-2777
>andrew.lay@usdoj.gov
>suzanne.moore@usdoj.gov
>
>Nigel B. Cooney
>U.S. Department of Justice
>Environmental Defense Section
>601 D. Street, N.W., Suite 8000
>Washington, DC 20004
>Telephone:  (202) 514-3145
>Facsimile:  (202) 616-6584
>nigel.cooney@usdoj.gov

>/s/ Matthew B. Mock