**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:11-CV-00077-RWS |
| ) | |
| **AMEREN MISSOURI,** ) | Judge Rodney W. Sippel |
| ) | |
| Defendant. ) | |
| ) | |

### AMEREN MISSOURI'S MOTION TO COMPEL
### PRODUCTION OF SPECIFIC DOCUMENTS FROM OTHER EPA REGIONS

EPA claims that maintenance projects at Ameren's Rush Island facility were "major modifications" and required permits because, according to EPA's litigation theory, Ameren should have expected that each of those projects did not qualify as routine maintenance repair and replacement ("RMRR") and would cause increases in emissions, despite the fact that after half of them, actual emissions decreased substantially. EPA has conceded that no statute or regulation sets forth the "regained hours" emissions test EPA now seeks to use as the basis for its contentions in this litigation. Similarly, no statute or regulation has ever defined RMRR.[1]

Ameren expects EPA to challenge the reasonableness of Ameren's conclusions that the projects at issue in this case did not need a permit. Discovery has shown that environmental regulators in numerous states, including Missouri, Texas, Wisconsin, Indiana, Washington, North Dakota, and others, have found that projects like those at issue here did not need a permit

---

[1] In 2004, EPA proposed regulations instituting a bright line test that would have defined Ameren's projects as routine and exempted them from permitting. But EPA's bright line test ultimately was not accepted by the Courts.

because they would not be expected to increase emissions or because they qualified as RMRR. That evidence directly supports Ameren's similar conclusions. Ameren has taken discovery of the relevant information from Missouri, and has sought and obtained third-party discovery from other states, but also needs the documents in EPA's possession, including those documents in EPA regional offices.

As the Court is aware, Ameren previously sought discovery from EPA regions other than Region 7, where Ameren is located. (ECF # 100). The Court denied that motion, but in doing so invited Ameren to "come back with a narrowly tailored request" if discovery showed that relevant information existed in other EPA regions:

> [A]fter you look at all of [the documents] and you've got documentation produced from the headquarters that suggests there's been a discussion in Region 1 or Region 9 or Region 3 about whether boilers or other tubes are routine, then come back with a narrowly tailored request, because you now have some suggestion in another region that there's been a discussion about it. . . . Once . . . you've got some suggestion that these discussion have taken place in other regions, then we'll open the door to go there. . .
>
> [I]f you find anything at the headquarters of the EPA in discussions about these topics and all these documents you either have gotten or are about to get, . . . come back and show it to me and we will open the door in those regions to pursue it. . .
>
> [C]ome back with . . . a specific document request. You're going to cite that, cite the statement, cite the employee, or cite the document that they are relying on, and then ask for all the documents from that region about that project or that event, and I will grant that.

(Tr. of Dec. 19, 2012 Mot. Hearing at 50:17-51:1, 52:11-15 & 52:22-53:1.)

Ameren has propounded such narrowly tailored requests, as shown below. EPA has refused to produce several of these documents. Ameren expects that there are less than 50 documents sought through this motion.

2

### A.     Ameren's Requests Seek Highly Relevant Information.

Ameren seeks production of documents in EPA's possession—including documents in EPA regional offices—related to seven specific documents identified in Ameren's Request for Production Nos. 81, 82, 87, 88, 96, 97, and 110 (Exhibit A.)  Specifically, Ameren seeks correspondence to or from EPA, or non-privileged notes or memoranda or other EPA internal documents regarding the documents below:

- Request No. 81 seeks documents related to Exhibit B, a 1998 letter from North Dakota's Division of Environmental Engineering, to Cooperative Power, stating that North Dakota determined that Cooperative Power's turbine "upgrade" to its Coal Creek power plant qualified as RMRR and did not need a PSD permit, even though the replacement was expected to "increase unit output from 595 [megawatts] to 607 [megawatts]."  Cooperative Power's turbine project appears to be similar to those challenged by EPA in this case.  State regulatory agencies like North Dakota's often confer with EPA regional offices regarding these sorts of documents and determinations.  North Dakota is in EPA Region 8.

- Request No. 97 seeks documents related to Exhibit C, a 2001 letter from the EPA Region 10's Acting Manager, Federal and Delegated Air Programs, to the Washington State Department of Ecology.  Washington State determined that Boise Cascade's $3.9 million replacement of its economizer constituted RMRR, and thus did not need a permit.  In this case, EPA argues that Ameren's replacement of the economizers at Rush Island was not RMRR.  Washington is in EPA Region 9.

- Request No. 87 seeks documents related to Exhibit D, a 1999 letter from Wisconsin's Bureau of Air Management, to the Director of Environmental Affairs, Consolidated Papers, Inc., discussing whether Consolidated's replacement of boiler tubes required a permit.  Wisconsin's regulators stated that they "ha[d] not treated the repair or replacement of boiler steam tubes as projects that would require an air permit."  Wisconsin is in EPA Region 5.

- Request No. 88 seeks documents related to Exhibit E, a 2000 letter from the Texas Natural Resource Conservation Commission, to the Environmental Permitting Manager of TXU Business Services.  Texas determined that nine turbine replacement projects performed by TXU at four different electric power plants did not need a New Source Review permit.  The turbine replacement projects appear to be similar to those at issue in this case.  EPA was copied on Texas's determination.  Texas is in EPA Region 6.

- Request No. 96 seeks documents related to Exhibit F, a 1998 letter from Indiana's Department of Environmental Management, to counsel for Southern Indiana Gas

3

and Electric. Indiana's environmental regulators determined that Southern Indiana's replacement of steam tubes and turbine blades did not need a PSD permit because they qualified as RMRR and were like-kind replacements. Indiana is in EPA Region 5.

- Request No. 82 seeks documents related to Exhibit G, a letter from Richard Long, Director, Air & Radiation Program, EPA Region 8, to Dana Mount, Director, Division of Environmental Engineering, North Dakota Department of Health, dated Dec. 7, 1998, addressing EPA Region 8's interpretation of the applicability of the WEPCO Rule to turbine upgrades and replacements.

- Request No. 110 seeks documents related to Exhibit H, an EPA Inspection Report of Northern States Power – Riverside Generating Station in Minnesota. Exhibit M shows that EPA's inspector observed Northern States performing a $50 million project consisting of "major work aimed at upgrading and extending the operating life of the boilers" and "installation of a new turbine with a higher generating capacity…." It appears from EPA's production documents and other sources that EPA did not object to the performance of these projects or require Northern States Power to obtain a PSD permit. Minnesota is in EPA Region 8, but the EPA inspector (David Schultz) is located in EPA Region 5.

Ameren believes it is likely that the EPA regional offices (other than Region 7) will possess documents related to the seven determinations identified above. EPA has refused to conduct searches to locate those documents.

### B.  Ameren Has Conferred With EPA In An Effort To Avoid Motion Practice.

The parties held a discovery teleconference on August 9, to discuss these documents and other similar documents sought by Ameren. While the issues in dispute were narrowed, the parties were unable to reach an accord on the documents sought through this Motion. Ameren certifies its efforts to resolve this issue pursuant to Local Rule 3.04.

### CONCLUSION

Ameren respectfully requests that the Court grant its Motion to Compel.


Dated:  August 16, 2013                         Respectfully submitted,

                                                /s/ Matthew B. Mock

4

Ronald S. Safer (*pro hac vice*)
Patricia Brown Holmes (*pro hac vice*)
Renee Cipriano (*pro hac vice*)
Steven J. Bonebrake (*pro hac vice*)
Matthew B. Mock (*pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500
Fax:  (312) 258-5600

James J. Virtel
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard Suite 1800
St. Louis, Missouri  63105
(314) 621-5070
Fax: (314) 612-2298
jvirtel@armstrongteasdale.com
*Counsel for Defendant Ameren Missouri*

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2013, I electronically filed the foregoing **Ameren Missouri's Motion to Compel** with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

>Andrew C. Hanson
>Justin A. Savage
>Bradford T. McLane
>U.S. Department of Justice
>Environment and Natural Resources Division
>P.O. Box 7611
>Ben Franklin Station
>Washington, DC  20044-7611
>Telephone:  (202) 514-5293
>Facsimile:  (202) 616-6584
>andrew.hanson2@usdoj.gov
>justin.savage@usdoj.gov
>bradford.mclane@usdoj.gov
>
>Andrew J. Lay
>Suzanne J. Moore
>Office of the U.S. Attorney
>111 S. Tenth Street, 20th Floor
>St. Louis, MO 63102
>Telephone:  (314) 539-2200
>Facsimile:  (314) 539-2777
>andrew.lay@usdoj.gov
>suzanne.moore@usdoj.gov
>
>Nigel B. Cooney
>U.S. Department of Justice
>Environmental Defense Section
>601 D. Street, N.W., Suite 8000
>Washington, DC 20004
>Telephone:  (202) 514-3145
>Facsimile:  (202) 616-6584
>nigel.cooney@usdoj.gov

>>/s/ Matthew B. Mock