# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 4:11-CV-00077-RWS |
| ) | |
| **AMEREN MISSOURI,** ) | Judge Rodney W. Sippel |
| ) | |
| **Defendant.** ) | |
| ) | |

# AMEREN MISSOURI'S OPPOSITION TO PLAINTIFF'S
# MOTION TO EXCEED THIS COURT'S 25-DEPOSITION LIMIT

**I.     INTRODUCTION**

Rule 1 of the Federal Rules of Civil Procedure states that "[t]hese rules . . . should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding."  Fed. R. Civ. P. 1.

> There probably is no provision in the federal rules that is more important than this philosophical mandate.  It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted during the more than sixty years that they have been in effect.
>
> \*      \*      \*
>
> [I]t should be noted that Rule 1 places the objectives of "speedy" and "inexpensive" on a plane of equality with "just."

4 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1029 (3d ed.)

The question raised by EPA's Motion to Compel is whether, in light of Rule 1's philosophical mandate, the 25-deposition limit in this case should be upheld or cast aside.  If circumstances were as simple as EPA describes them — if Ameren had actually made a "belated addition of more than a dozen new witnesses" to its initial disclosures (ECF # 256 at 1) — then EPA might have an argument for exceeding 25 depositions.  But, as usual, the devil is in the details.  Most of the individuals that Ameren added to its initial disclosures in April had already been deposed by EPA earlier in the case either in their individual capacity or as Rule 30(b)(6) witnesses.  The others were added to address EPA's new "increased capacity" theory recently asserted in its Third Amended Complaint.  All of these individuals, and their significance to the issues in this case, were known to EPA through extensive prior written, document, and deposition discovery and EPA's own four-year pre-suit investigation.  Indeed, all of the individuals who are the subject of the Motion to Compel were among the custodians whose documents EPA asked Ameren to search in summer 2012.  (*See* Ex. A hereto, Corresp. from A. Hanson to M. Mock, July 21, 2012, at 2-4.)  These individuals were neither "new" nor "belatedly

1

added." So EPA cannot plausibly claim "unfair surprise," its primary excuse for requesting seven more depositions, for a grand total of 32. The truth is, EPA has had every opportunity to depose any of the individuals on Ameren's Rule 26 disclosures, in any order, without exceeding the limit of 25. EPA made its own choices about how to prioritize its depositions. Now it wants to be relieved of those choices.

EPA's request is especially egregious in light of context that its Motion omits. First, EPA takes the inconsistent and unprincipled position that, regardless of the 25-deposition limit, it should be permitted to depose each individual on Ameren's Rule 26 disclosures *in addition to* any other individual who EPA believes "has relevant facts." Ameren narrowed its disclosures at EPA's request in order to address this very issue of the 25-deposition limit, yet EPA still has insisted on deposing individuals who either were removed or omitted from Ameren's disclosures or whom Ameren limited to prior Rule 30(b)(6) testimony. EPA cannot have its cake and eat it too.

Second, while EPA criticizes "Ameren's flawed reading of the durational limits for depositions under Rule 30" (ECF # 256 at 1), its own interpretation based on separate 1993 and 2000 Advisory Committee Notes leads to the absurd proposition that it may pursue endless Rule 30(b)(6) deposition testimony from Ameren. Actually, but for the parties' good faith cooperation in allowing each other to take multiple Rule 30(b)(6) depositions, EPA was required to obtain leave of court before taking its second and third Rule 30(b)(6) depositions of Ameren, and EPA must obtain leave before taking its proposed fourth and fifth, which it recently noticed. Having taken advantage of Ameren's good faith to circumvent Rule 30's leave of court requirement, it is disingenuous for EPA now to argue that Advisory Committee Notes impose additional requirements on Ameren and allow EPA endless Rule 30(b)(6) testimony.

<u>Third</u>, EPA recently has used deposition after deposition to fish for any support whatsoever for its new "increased capacity" theory.  This theory is fundamentally flawed as a matter of engineering principles:  the projects that remain in the case did not increase the size of the boilers at Rush Island Units 1 and 2 or reduce the thermal performance of the boiler components. Therefore, the projects at issue (unlike the voluntarily dismissed turbine projects), could not have increased the Units' capacity to generate electricity.  Deponent after deponent has explained this, but EPA persists in fishing for support for its theory.  EPA added this theory at the eleventh hour and has unsuccessfully attempted to support it through several depositions.  EPA should not be given seven more chances to chase this fundamentally flawed theory.

In short, this Motion is not about "belated" disclosures or EPA's desire to depose witnesses who Ameren might call at trial.  EPA has long been aware of these witnesses and has made its own strategic decisions on who to depose.  Because EPA cannot justify to the Court why it needs 32 fact witness depositions to prepare this case for trial, or why Ameren should have to bear that additional expense, EPA attempts to shift the burden by blaming Ameren.

Ameren has produced hundreds of thousands of documents and 90 gigabytes of electronic data, given over 120 pages' worth of interrogatory answers, responded to 296 requests for admission, and will have presented witnesses in 25 depositions, including numerous days of Rule 30(b)(6) deposition testimony — and that is just the fact discovery.  All of this has cost Ameren millions of dollars and imposed immense burdens on its employees.  Discovery must have an end; 25 depositions are enough.  EPA's request for more does not withstand scrutiny and should be denied.

## II.     ARGUMENT

Balancing the breadth of this case and the goal of efficiency, this Court expanded the 10 deposition limit set by Fed. R. Civ. P. 30(a)(2)(A)(i), allowing the parties to take 25 depositions per side.  (ECF # 89, ¶ 4.d.)  Ameren, which EPA notes originally requested 40 depositions per side, has strategically prioritized its depositions to remain within the limitation set by this Court. EPA should be held to the same standard.

### A.     EPA Cannot Claim "Unfair Surprise":  Ameren Promptly Supplemented Its Initial Disclosures After EPA Materially Changed Its Claims.

EPA bases its Motion on the fact that Ameren supplemented its disclosures, arguing that Ameren did so "belatedly."  That is incorrect.  As required by the Rules, Ameren supplemented its initial disclosures when it became aware of new information after EPA made two major changes to the scope of its claims.  First, in fall 2013, EPA amended its complaint to dismiss half of its case (claims related to the 2001 and 2003 projects).  Second, EPA again amended its complaint this spring to add its new theory of liability based on "increased capacity."  It was EPA that was "late" in changing the case so significantly three years after it was filed.  Ameren promptly supplemented its initial disclosures in response to EPA's shift.

EPA claims that because Ameren added 14 witnesses to its initial disclosures, EPA does not have enough depositions to take all of Ameren's possible trial witnesses.  That, too, is simply incorrect.  At the start of discovery, Ameren identified 16 witnesses in its original initial disclosures.  (Ex. B hereto, Ameren's Rule 26(a)(1)(A) Disclosures.)  The Court granted each side 25 depositions.  Thus, EPA had the ability to depose every one of the individuals Ameren disclosed, plus nine additional witnesses.  And that was before EPA cut this case in half by voluntarily dismissing its claims related to the 2001 and 2003 projects.

4

After EPA's amendments, Ameren supplemented its disclosures. (Ex. C hereto, Ameren's Second Supp. Rule 26(a)(1)(A) Disclosures.) Ameren removed four individuals relevant to the voluntarily dismissed claims; named eight individuals whose depositions EPA had already taken,[1] and added four individuals (Laura Moore, Charles Naslund, Jeff Shelton, and Joseph Sind). (*See* Exhibit D hereto for a summary.) EPA cannot plausibly claim that Ameren's addition of eight witnesses whom EPA had already deposed was in any way "new," untimely, or prejudicial. And because Ameren removed the same number of individuals that it added (four), the total number of individuals remained the same: 16. That was still nine fewer than the 25 depositions EPA had to use as it saw fit.

Even as to the four individuals that Ameren added, they were hardly "new." Ameren told EPA of their significance at the beginning of discovery, identified them as potential witnesses with relevant information in interrogatory responses, and produced hundreds of documents related to them:

1. Laura Moore

    - In July 2012, Ameren identified Ms. Moore as a witness who would have information relevant to the case and proposed her as one of the original set of Ameren witnesses to be searched as part of document discovery. EPA agreed. (Ex. A hereto, at 2.)
    - In November 2013, she testified at a Rule 30(b)(6) deposition on Routine Maintenance, Repair, and Replacement, among other things, explaining her accounting responsibilities and experience.

---

[1] EPA deposed Mark Birk, Steven Nehrkorn, Fred Pope, Greg Vasel, Andrew Williamson, Matthew Michels, and Scott Anderson (the latter two as Rule 30(b)(6) witnesses) before these witnesses appeared on Ameren's initial disclosures. Additionally, EPA noticed Michael Hutcheson's deposition prior to Ameren's supplemental disclosures. Ameren included these witnesses because, having gone through the effort of producing them for depositions, Ameren did not want to be precluded from calling them at trial if necessary, based on another hyper-technical reading of the rules by EPA.

5

- Ameren has produced over 600 documents from Ms. Moore's custodial files or bearing her name.

2. Charles Naslund

    - Mr. Naslund also was one of the agreed document custodians identified in July 2012.  (Ex. A hereto, at 2.)
    - Mr. Naslund was the Senior Vice President of Power Operations, meaning he was in charge of the department responsible for implementing the outages at issue.

3. Jeff Shelton

    - Mr. Shelton also was one of the agreed document custodians identified in July 2012.  (Ex. A hereto, at 2.)
    - In July and August 2012, Ameren disclosed him as having knowledge as to why the projects at issue would not cause an emissions increase and why they would increase the units' efficiency. (Ex. E hereto, Ameren's Supp. Resp. to Interrog. No. 16 and Ex. F hereto, Ameren's Resp. to Interrog. No. 27.)
    - Ameren has produced over 7,000 documents from Mr. Shelton's custodial files or bearing his name.

4. Joseph Sind

    - Mr. Sind also was one of the agreed document custodians identified in July 2012. (Ex. A hereto, at 2.)
    - In August 2012, Ameren disclosed him as having knowledge on why the projects would increase the units' efficiency.  (Ex. F hereto.)
    - Ameren has produced over 9,000 documents from Mr. Sind's custodial files or bearing his name.

Although EPA was aware of these individuals and their significance to key issues in the case as early as two years ago, it now claims that it needs additional depositions so that it can avoid an "ambush at trial."  (ECF # 256 at 6, 13.)  EPA's own actions, however, reveal that something else is really going on here.  If EPA was so concerned about an "ambush at trial," then why did it choose to use so many depositions on witnesses who had not been disclosed by Ameren?  The first six depositions that EPA took were of witnesses who were not identified on Ameren's Rule 26 disclosures; since then, EPA has taken or noticed more depositions of

6

individuals who do not appear on Ameren's disclosures (*e.g.*, James Bosch, Michael Meyer, and Scott Anderson).

In the last several weeks, as the parties have discussed EPA's deposition requests, EPA asked Ameren to narrow its initial disclosures by removing individuals or limiting them to prior testimony given during Rule 30(b)(6) depositions. EPA represented to Ameren that it would no longer need to take the depositions of witnesses Ameren removed or limited:

> The main issue is that we need to depose the Ameren witnesses who you say have information that you may rely on at trial to support your defenses. Apart from the two Rule 30(b)(6) notices we issued and the notice for Mr. Bosch, at this point we just need to get through your Rule 26(a) disclosures in order to wrap up our deposition discovery. So, if there are other witnesses you can remove, that would move the ball forward.

(Ex. G hereto, E-mail from A. Hanson to J. More, May 22, 2014.)

Relying in good faith on that proposal, and in the interest of reaching a compromise, Ameren removed Michael Meyer from its disclosures and agreed to limit Scott Anderson to his prior Rule 30(b)(6) deposition testimony. Yet, in response to Ameren doing precisely what EPA requested in order to address the very 25-deposition limit issue presented now, EPA takes the inconsistent and unprincipled position that it should be able to fully depose the individuals Ameren has removed and limited (Mr. Meyer and Mr. Anderson), while *also* deposing every individual remaining on Ameren's initial disclosures. In other words, EPA believes that it should be able to have its cake and eat it too.

Although it is EPA's prerogative to use its 25 depositions as it chooses, it cannot have it both ways and it cannot blame Ameren for the way in which EPA has chosen to strategically prioritize depositions. EPA has always had sufficient depositions to take all of the individuals

7

disclosed by Ameren.  Ameren should not be penalized — and put to great additional expense — for EPA's decisions to use those depositions on other witnesses.

### B.      EPA Has Already Reached the 25-Deposition Limit.

EPA has already taken or scheduled 25 depositions, and therefore reached the limit set by the Court.  As an initial matter, EPA repeatedly asserts — incorrectly — that Ameren has "refused to produce" Mr. Naslund for deposition (ECF # 256 at 1, 4.)  That is not true.  Ameren specifically told EPA that Ameren has always been, and remains, willing to produce any of the witnesses EPA seeks to depose, including Mr. Naslund, up to the 25-deposition limit.  (*See* Ex H hereto, Email from M. Mock to A. Hanson, June 5, 2014, at 1.)  EPA has consciously chosen to depose other witnesses in place of Mr. Naslund.  Its statement that Ameren has "refused to produce" him is simply false.

EPA has taken the following Rule 30(b)(6) depositions of Ameren to date:  Emissions, Modeling, and Routine Maintenance, Repair, and Replacement.  These depositions required the preparation of seven different witnesses for eight different deposition sessions and took 23 hours of actual deposition time.  (Ex. I hereto, Summary of EPA 30(b)(6) Deposition Time.)  The Emissions and Modeling depositions themselves have required preparation of six different Ameren witnesses and over 18 hours of actual deposition time, and on top of that EPA still has two additional Rule 30(b)(6) depositions on Modeling to take, meaning three to five hours of deposition beyond what EPA has already taken.  (*See id.*)  Rule 30 would have required EPA to obtain leave of court before proceeding with multiple Rule 30(b)(6) depositions.  *See, e.g.*, *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001).  But Ameren has cooperated in good faith with EPA's requests for multiple Rule 30(b)(6)

8

depositions.[2] Ameren has identified the witnesses with the most knowledge based on the topics requested by EPA and spent substantial time preparing them to testify. Ameren's employees have devoted dozens and dozens of hours to preparing for these depositions and testifying, taking valuable time away from their jobs and daily lives.

Now EPA strings together two separate Advisory Committee Notes from 1993 and 2000 to conclude that the Rule 30(b)(6) depositions of six Ameren witnesses already spanning over 18 hours — with three to five more hours to come — count as only two depositions. (ECF # 256 at 4-5.) By contrast, Ameren's count is straightforward and fair: 18+ hours of deposition time for Modeling and Emissions counts as three depositions; plus the RMRR deposition makes four total. Indeed, when Ameren took Rule 30(b)(6) depositions of EPA, EPA strictly applied the seven-hour deposition limit and halted the deposition mid-stream. (Ex. J hereto, Lloyd 30(b)(6) (RMRR) Dep. at 300:3-18; *see also* Ex. K hereto, Hekking Dep. at 317-320 ("Yeah, we're done. Your seven hours are over.").)

In other words, while EPA is more than happy to ignore Rule 30's leave of court requirement for multiple 30(b)(6) depositions and take advantage of Ameren's good faith cooperation in that regard, when there is an advantage to be had, EPA is quick to cherry-pick unrelated Advisory Committee Notes and assert a hyper-technical argument with the goal of reducing its deposition count from 25 to 24. This is inconsistent and self-serving. Elsewhere, Rule 26's Advisory Committee Notes state that "Rule 26(b)(1) has been amended . . . to deal with the problem of over-discovery. The objective is to guard against redundant or disproportionate discovery by giving the court authority to reduce the amount of discovery that

---

[2] The parties both have cooperated in good faith in this regard, as Ameren also has taken multiple Rule 30(b)(6) depositions of EPA.

9

may be directed to matters that are otherwise proper subjects of inquiry." Fed. R. Civ. P. 26, Advisory Committee Notes (1983). EPA's Motion presents a classic example of "over-discovery."

EPA's argument is not based on the language of Rule 30 itself, defies common sense — its logical conclusion would be virtually endless Rule 30(b)(6) deposition testimony — and disregards the number of witnesses and the actual time and effort exhausted for the multiple Rule 30(b)(6) depositions that EPA has already taken. Nevertheless, in the interest of reaching a reasonable compromise, Ameren is reluctantly willing to allow EPA to take one additional deposition limited to a single day of seven hours — but no more than one. Any additional depositions exceeding the limit of 25 (accepting EPA's count as a compromise) would impose an unreasonable burden on Ameren and reward EPA for mismanaging its discovery strategy.[3]

## C. EPA Has Failed to Justify Its Request for Seven Additional Depositions.

Setting aside the issue of whether EPA has taken 24 or 25 depositions, EPA's purported basis for its Motion — supposed "unfair surprise" — is unfounded. And EPA makes no further showing as to why it needs 32 depositions to prepare for trial. What is EPA really asking for?

---

[3] EPA also argues that it was "Ameren's idea" to depose Boll, Finnell, Whitworth, Shelton and Moore in their individual capacities separately from their Rule 30(b)(6) depositions. (ECF # 256 at 12.) That is incorrect – EPA could not make up its mind about how it wanted to structure the depositions. The parties had discussed combining Rule 30(b)(6) depositions with individual depositions, but agreed to proceed with the 30(b)(6) depositions at *EPA's* request. Then, on November 5, just two weeks before the depositions, EPA changed course and asked to take both the individual and 30(b)(6) depositions of all of the witnesses Ameren had identified as 30(b)(6) witnesses. Ameren said it would be willing to do so, but would need to postpone the depositions, because it could not reasonably prepare all those witnesses for 30(b)(6) testimony on 43 topics *and* prepare them for their individual depositions in two weeks' time. Because EPA's expert deadline was just weeks away, EPA chose to proceed with the 30(b)(6) depositions only, to keep those dates. While it is correct that Ameren was willing to do the individual portions of the depositions later, that did not mean that Ameren agreed to depositions in excess of 25.

10

On top of deposing all of Ameren's 16 potential witnesses, and on top of the four representative depositions it has taken, and on top of the five additional depositions it has taken or will take under the Court's current order, EPA wants seven more depositions of individuals that it could have taken any time during discovery but chose not to. That is the request that EPA should justify to the Court.

EPA has not — and cannot — articulate a reasonable argument for why it needs that additional discovery after a four-year pre-filing investigation and two-and-a-half years of fact discovery. EPA has made clear that its case will depend primarily on its expert witnesses, so it insisted that the vast majority of relevant fact discovery be completed before EPA served its expert reports.

EPA has plumbed the depths of every topic that has any bit of relevance to this case. The Rule 30(b)(6) depositions that it has taken to date have spanned 50 different topics. All of the individual depositions that EPA takes are full-day events — usually beginning at 8:30 a.m. and not finishing until 6:00 p.m. in the evening. Ameren has produced over a million pages of documents, 90 additional gigabytes of electronic files, over 120 pages of interrogatory answers, and responses to 296 requests for admission. At some point, discovery must come to an end.

Already, EPA's discovery efforts are straying well outside even the generous limits of relevance under the Federal Rules. For example:

- EPA seeks discovery on the specific bonuses paid out every year, for a decade, to over 20 Ameren employees. It also seeks discovery of every rate case Ameren has filed with the Missouri Public Service Commission over the last seven years.

- EPA has recently devoted depositions to fishing for any support whatsoever for its new "increased capacity" theory. As Ameren's witnesses have repeatedly testified, this theory is fatally flawed based on fundamental engineering principles because the projects that remain in the case did not increase the size of the boilers at Rush Island Units 1 and 2 or change the thermal performance of the boiler components. Therefore, the projects at issue (unlike the voluntarily dismissed

11

      turbine projects), could not have increased the Units' capacity to generate electricity.

- EPA has spent hours of deposition time with over half a dozen witnesses pursuing discovery on a document that related to a never-completed project. Why? Because EPA plucked it out of Ameren's productions based on its name ("Critical Assumptions") and then had its expert witnesses rely on it, even though they know nothing about the document. (*See* Ex. J hereto, Expert Report of Dr. Ranajit Sahu; Ex. K hereto, Sahu Dep. at 204-209, 264-265; Ex. L hereto, Expert Report of Robert H. Koppe at 84; Ex. M hereto, Koppe Dep. at 462-466. Much of the discovery since EPA's expert reports has been spent in a fishing expedition, trying to clean up its experts' missteps or trying to belatedly create a foundation where none existed in the first place.

EPA's discovery has already moved well past the point of diminishing returns, and EPA still has several depositions to go before it gets to 25 – then it seeks seven more depositions on top of that. The benefit of whatever additional minor fact might be learned in the 27th or 31st deposition is outweighed by the cost and burden to Ameren of preparing for those depositions. EPA is already engaged in "over-discovery," and it seeks even more. The Court should not allow this.

## II. CONCLUSION

For the reasons set forth above, Ameren respectfully requests that the Court deny EPA's Motion to Compel. As noted above, in the interest of compromise, Ameren is willing to allow EPA to take one additional deposition limited to a single day of seven hours. However, Ameren opposes expanding the 25-deposition limit and/or extending the discovery cut-off. Because EPA has additional Rule 30(b)(6) topics upcoming, and has noticed two additional 30(b)(6) depositions, Ameren would also appreciate the Court's guidance on the rules to be applied to those depositions going forward.

Dated: June 26, 2014                          Respectfully submitted,

                                                              /s/ Matthew B. Mock

Ronald S. Safer (*pro hac vice*)
Patricia Brown Holmes (*pro hac vice*)
Renee Cipriano (*pro hac vice*)
Steven J. Bonebrake (*pro hac vice*)
Matthew B. Mock (*pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500
Fax:  (312) 258-5600

James J. Virtel
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard Suite 1800
St. Louis, Missouri  63105
(314) 621-5070
Fax: (314) 612-2298
jvirtel@armstrongteasdale.com
*Counsel for Defendant Ameren Missouri*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

>Andrew C. Hanson
>Bradford T. McLane
>Nigel B. Cooney
>Environmental Enforcement Section
>Environment and Natural Resources Division
>U.S. Department of Justice
>P.O. Box 7611
>Washington, DC  20044-7611
>Telephone:  (202) 305-0544
>Facsimile:  (202) 616-6584
>andrew.hanson2@usdoj.gov
>bradford.mclane@usdoj.gov
>nigel.cooney@usdoj.gov

>Suzanne J. Moore
>Andrew J. Lay
>United States Attorney's Office
>Eastern District of Missouri
>Thomas Eagleton U.S. Courthouse
>111 South 10th Street, 20th Floor
>St. Louis, MO 63102
>Telephone:  (314) 539-2547
>Facsimile:  (314) 539-2309
>suzanne.moore@usdoj.gov
>andrew.lay@usdoj.gov

/s/ Matthew B. Mock_____