**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 4:11-cv-00077-RWS |
| AMEREN MISSOURI, | ) ) | Honorable Rodney W. Sippel |
| Defendant. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION
TO COMPEL PRODUCTION OF COMMUNICATIONS BETWEEN AMEREN AND
THIRD PARTY UTILITY INDUSTRY ASSOCIATIONS**

Plaintiff, the United States of America, acting on behalf of the United States Environmental Protection Agency ("EPA"), pursuant to Fed. R. Civ. P. 37 and Eastern District Local Rule 37-3.04, respectfully moves for an order compelling Defendant Ameren Missouri ("Ameren") to produce communications between third party electric utility industry associations, including Utility Air Regulatory Group ("UARG")[1], and Ameren related to the operation, interpretation, implementation, or enforcement of EPA's New Source Review ("NSR") and Prevention of Significant Deterioration ("PSD") regulations, between 2002 and 2011.[2]

---

[1] Although this motion seeks the production of communications between Ameren and various third party electric utility industry associations, including UARG, Edison Electric Institute and Electric Power Research Institute, for the sake of simplicity, the United States refers throughout this motion only to communications between Ameren and UARG.

[2] In accordance with Local Rule 37-3.04, the United States has conferred with counsel for Ameren in a good faith attempt to resolve this dispute. *See* Exhibit A, Email Communication between Jeannice Williams and Andrew Hanson.  Counsel for the United States attempted to discuss this matter further with Ameren's counsel, Ms. Williams, by telephone on September 26, 2014, but received Ms. Williams' voicemail. Further efforts to discuss via telephone were unsuccessful.

1

In its Answer and throughout discovery in this case, Ameren has continually placed its own understanding of the meaning of EPA's NSR program at the heart of its defensive strategy and case development. But Ameren has refused to collect, review, produce, or log[3] communications from UARG – a power plant industry group that has been actively disseminating information regarding the NSR program for decades. According to Ameren, such information is not relevant to the instant litigation, and thus it believes it need not search for, let alone produce, such documents. *See* Exhibit A, Email Correspondence between Jeannice Williams and Andrew Hanson, at 3. To the contrary, communications between Ameren and UARG are clearly relevant because Ameren has claimed, as a defense, that it lacked "fair notice" of the meaning of EPA's NSR regulations. Having attempted to make its purported lack of notice of NSR regulatory requirements a central part of its defensive strategy in this case, it cannot now claim that documents that may rebut that defense are irrelevant. If UARG's publications or communications contradict Ameren's claims that it lacked knowledge of NSR requirements, it would undermine the Company's central assertion that it lacked fair notice regarding the NSR Rules. Such evidence would also be relevant to rebutting the company's claim that EPA is supposedly relying on regulatory interpretations that were somehow developed for this litigation. Of course, the fact that documents could undermine Ameren's own defense is not a sufficient reason to refuse relevant discovery.

---

[3] Ameren may claim that it included its communications with UARG in a categorical privilege log. However, the United States never agreed that such documents could be categorically logged. Absent such an agreement, the United States is entitled to a description of the nature of each withheld document in a manner that will enable it to assess Ameren's privilege claims. *See* Fed. R. Civ. P. 26(b)(5). The United States has repeatedly requested that Ameren produce these documents, or produce a privilege log identifying privileged documents, to no avail. *See* Exhibit A, Email Communications between Jeannice Williams and Andrew Hanson.

Ameren's backstop argument—professed later during meet and confer discussions—is but a conclusory privilege assertion aimed at shoring up its original relevance objection. Ameren claims that communications with UARG are protected under the "common-interest" rule, but to date Ameren has provided no basis for the application of any privilege, nor has it met the Eighth Circuit's standard for assertion of the common-interest rule. Therefore, the United States respectfully requests that this Court grant the United States' motion to compel Ameren to produce all communications between Ameren and UARG related to the operation, interpretation, implementation, or enforcement of EPA's NSR regulations from 2002 until 2011.

## I.  INTRODUCTION

This is an action to enforce Ameren's obligation to obtain PSD permits under the Clean Air Act ("CAA") and to install the best available control technology ("BACT") at units 1 and 2 of its Rush Island coal-fired power plant in Festus, Missouri. In 2007 and 2010, Ameren spent millions of dollars on two immense renovation projects at these units; each such renovation constituted a "major modification," triggering Ameren's statutory obligation under the CAA to obtain PSD permits and to install and operate state-of-the-art pollution control technologies. 42 U.S.C. § 7475(a)(4); 40 C.F.R. § 51.166(a)(7)(i), (b)(2); Missouri Rule 10.C.S.R. 10-6.060.

After decades of Federal Register publications, applicability determinations, and federal caselaw, Ameren now claims, after completing these massive construction projects without securing a PSD permit and installing BACT, that it did not have fair notice of, or understand, the applicable PSD law and regulations and that, therefore, it should not have been expected to have complied with them.[4] *See* ECF No. 74, Ameren's Thirteenth Defenses (fair notice); Eighteenth

---

[4] The United States disagrees that Ameren's fair notice arguments are relevant at all in determining the Company's liability. The Clean Air Act imposes strict liability on violators. *See Pound v. Airosol Co.*, 498 F.3d 1089, 1097 (10th Cir. 2007) ("The [Clean Air] Act imposes strict liability upon owners and operators who violate the Act."). In contrast, the fair notice doctrine is an administrative law principle that echoes

3

Defense (routine maintenance); Twenty-Sixth Defense (demand growth); and Thirty-Third Defense (litigation interpretation of NSR regulations). In simpler terms, Ameren alleges that it did not know that, under EPA's interpretation of NSR regulations, it should have obtained a PSD permit and installed BACT. Thus, Ameren has made its own knowledge of EPA's regulations – and whether it understood those regulations – the centerpiece of its defense. As such, the United States is entitled to discovery on communications between Ameren and UARG regarding their understanding and interpretation of EPA's PSD regulations and PSD applicability to the major modifications Ameren performed at Rush Island in 2007 and 2010.

## II. BACKGROUND

A. UARG Documents Discuss the Meaning of EPA's Regulations.

UARG is a utility industry association of individual electric utilities and utility trade associations. UARG is a primary facilitator of intra-industry communications about the Clean Air Act and related NSR regulations. It was founded as a voluntary association of electrical companies and related trade associations to advance the interest of its members regarding air quality regulation. *See United States v. Duke Energy Corp.*, 214 F.R.D. 383, 389-91 (M.D.N.C.

---

constitutional due process protections, and that addresses the fairness of *imposing a penalty* in a specific case. *See Howmet Corp. v. EPA*, 614 F.3d 544, 553 (D.C. Cir. 2010) (fair notice "preclude[s] an agency from penalizing a private party for violating a rule without first providing adequate notice" of its substance" (quotations omitted)); *see also Trinity Broad. of Florida v. FCC*, 211 F.3d 618, 628 (D.C. Cir. 2000); *Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1328–29 (D.C. Cir. 1995). The doctrine inherently concerns the propriety of the punishment, not that of the law itself or its operation. *See Trinity Broad.*, 211 F.3d at 628 (defendant's fair notice argument considered only because "the Commission imposed a severe penalty"); *Gen. Elec.*, 53 F.3d at 1331 (deferring to EPA's regulatory interpretation, but considering defendant's fair notice argument "because the agency imposed a fine"); *see also United States v. S. Ind. Gas & Elec. Co.*, 245 F. Supp. 2d 994, 1023 & n.21 (S.D. Ind. 2003) (discussing *Rollins Envtl. Servs. Inc. v. EPA*, 937 F.2d 649 (D.C. Cir. 1991)). However, Ameren has made fair notice and its claims of EPA's "litigation interpretations" a central part of its liability defense in this case and taken extensive discovery on these issues; the United States should be allowed to develop its case in parallel. The United States reserves its right to file appropriate motions *in limine* to exclude testimony regarding Ameren's purported fair notice defense.

4

2003).  Ameren concedes that it "has been a member of UARG since before 1996." Exhibit B, Ameren's Interrogatory Response No. 23.

More specifically, UARG convenes meetings and disseminates general information to its members (like Ameren) as well as other utilities and interested parties about the general applicability of the PSD requirements of the Clean Air Act to modifications performed at power plants.  For example, in the past, UARG has distributed memoranda that summarize information on "EPA's present policy regarding interpretation of PSD and NSPS regulations." *See* Exhibit C, Dairyland Memorandum, at 2.  That memorandum discusses UARG's understanding of EPA's interpretation of the routine maintenance, repair and replacement exemption to NSR, and contains an analysis of the specific factors that, according to UARG, could trigger the routine maintenance exemption. *Id*.  UARG discussed these factors, in order "to illustrate how the present EPA policy may work in a given situation." *Id*. at 7.  Likewise, UARG circulated a PSD "modification analysis" outline that provided general advice on the meaning of PSD modification requirements to utility projects.  *See* Exhibit D, Modification Outline.  These memoranda, obtained through other sources, show that UARG understood EPA's interpretation of the NSR regulations and communicated its understanding to its membership.  Additional information distributed by UARG, and communications between UARG and Ameren, withheld by Ameren in this litigation, may demonstrate that, contrary to Ameren's defenses in this litigation, Ameren was well aware that its 2007 and 2010 projects would trigger PSD.  *See generally United States v. Hoechst Celanese Corp.*, 128 F.3d 216 (4th Cir. 1997) (fair notice defense is not available where defendant had actual notice of EPA's interpretation).

5

B.  EPA's Request for UARG Documents.

In May of 2012, within the first few months of discovery in this matter, the United States requested various documents related to NSR in Ameren's custody or control. For example, the United States requested:

> All Documents relating to assessing whether the construction or modification of an electricity generating unit, or the replacement or upgrading of components at an electricity generating unit may constitute a "modification," "major modification," "change in the method of operation," or "routine maintenance, repair or replacement," or may increase emissions within the meaning of the Clean Air Act, NSR regulations, or Missouri SIP.

*See* Exhibit E, United States' Second Set of Requests for Production (RFP No. 27); *See also* Requests Nos. 24-26, 28-30. Ameren posed several objections to this request, namely, that the request is "overly broad and unduly burdensome," and that it seeks "documents that are neither relevant to the subject matter of this action, nor reasonably calculated to lead to the production of admissible evidence," but only to the extent that it calls for "documents relating to the *construction* of an electricity generating unit." *See* Exhibit F, Ameren's Response to The United States' Second Set of Requests for Production (RFP No. 27) (emphasis added). Notably, Ameren did not object to the relevance of the request for documents pertaining to the *modification* of those units. *Id*. Subject to and without waiving its objections, Ameren agreed to produce responsive documents.[5]

Notwithstanding its earlier commitment to produce these documents—and contrary to its obligations under F.R.C.P. 26(b)(1) and (5)— Ameren has now refused to do so. Instead, Ameren has summarily stated that the United States has not established the relevancy of the

---

[5] Ameren also objected on the basis that the Request seeks "[a]ll [d]ocuments" and contains no time limitation; the term "assessing" is vague and ambiguous in this context; the request may seek information that is subject to the attorney-client or attorney work-product privileges. *See* Exhibit F, Ameren's Response to The United States' Second Set of Requests for Production (RFP No. 27).

requested documents.[6]  *See* Exhibit A, Email Correspondence between Jeannice Williams and Andrew Hanson.  Ameren also summarily asserts "all applicable privileges, including the common interest privilege, over the UARG [] documents and communications." *Id*.  Beyond these cursory statements, Ameren has offered no justification for its refusal to produce the requested discovery, and has provided no specific substantiation of its claim of privilege over these documents.[7]  Ameren continues to refuse to collect and log these documents, despite the fact that it is required to do so under Federal Rule of Civil Procedure 26(b)(1) and (5).

### III.    ARGUMENT

#### A.  UARG Communications Are Relevant Under Rule 26.

The United States seeks discovery to shed light on Ameren's defense that it could not have expected that the 2007 and 2010 Overhauls would trigger the requirements of the NSR regulations based on its understanding of how those requirements applied.  In order to understand those defenses, the United States is entitled to have access to communications between Ameren and UARG that shed light on how Ameren and the industry believed NSR applied.  Thus, the discovery sought is clearly relevant.  Several courts that have specifically addressed the United States' requests for communications between UARG and other utilities have agreed that "there is no question that the[se] documents are relevant."  *United States v. Duke Energy Corp. et al.*, 232 F.R.D. 1, at * 3 (D.D.C. Jan. 3, 2005); *see also United States v.*

---

[6] Despite Ameren's repeated attempts to place the burden of establishing relevancy on the United States, the party resisting discovery must carry the burden of showing that the requested discovery is not relevant to the issues in the case.  *See Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc*., No. 1:11-cv-19 (CEJ), 2011 WL 5178154, at *1 (E.D. Mo. Nov. 1, 2011).

[7] The United States recently learned that one document, identified on Ameren's Privilege Log as ADRE1000348824, may consist of communications between Ameren and UARG. The appearance of this document on Ameren's privilege log belies Ameren's attempt to assert that none of the documents reflecting exchanges with UARG are relevant to this action. Ameren's counsel did not respond to the United States' request to confirm that this document is, in fact, correspondence between Ameren and UARG of the type sought through this motion.

7

*Duke Energy Corp.*, 214 F.R.D. 383 (M.D.N.C. 2003), *aff'd*, No. 1:00cv1262, 2012 WL 1565228 (M.D.N.C., April 30 2012).

### 1. Rule 26 Defines Relevance Broadly.

The scope of discovery under the Federal Rules of Civil Procedure is broad. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *Kamper v. Gray*, 182 F.R.D. 597, 599 (E.D. Mo. 1998). "Relevancy is broadly construed, and 'a request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party.'" *LDM Group, LLC v. Akers*, No. 4:12-cv-812-JAR, 2013 WL 1316420, at *9 (E.D. Mo. Mar. 29, 2013) quoting *Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, No. 1:11-cv-19 (CEJ), 2011 WL 5178154, at *1 (E.D. Mo. Nov. 1, 2011) (citation omitted). The party resisting discovery must carry the burden of showing that the requested discovery is not relevant to the issues in the case. *See Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.,* No. 1:11-cv-19 (CEJ), 2011 WL 5178154, at *1 (E.D. Mo. Nov. 1, 2011). "[B]are assertions that discovery requested is overly broad, unduly burdensome, oppressive, irrelevant are ordinarily insufficient to bar production." *Id.*

### 2. Discovery Sought Is Relevant Because Ameren Has Put Its Knowledge and Understanding of the Regulations At Issue In This Case.

Communications between Ameren and UARG describing their understanding of the precise regulations at issue here are unquestionably relevant to the claims and defenses in this case. Ameren cannot reasonably contend otherwise. These communications are relevant to what Ameren knew about NSR requirements that are generally applicable to multi-million dollar

8

renovations at coal fired power plants, such as the projects at issue in this case.  The Dairyland Memorandum, Exhibit C, and the Modification Outline, Exhibit D, discussed above, are just two documents, obtained from other sources, which show that the utility industry understood EPA's interpretation of NSR regulations and related guidance before Ameren commenced the 2007 and 2010 major modifications.  Similar communications are therefore relevant to the "fair notice" defense raised by Ameren and its related assertion that EPA's interpretation of the NSR regulations is a "litigation position" newly created for this enforcement action.

Indeed, Ameren has repeatedly asserted that the projects at issue in this case are exempt from NSR, and that EPA's interpretation of the NSR regulations was unknown (and unknowable) to Ameren and others in the industry.  *See e.g.*, ECF No. 74 at 35 (Thirteenth Defense (fair notice)); at 36 (Eighteenth Defense (routine maintenance)); at 37 (Twenty-Sixth Defense (demand growth)); at 38 (Thirty-Third Defense (litigation interpretation of NSR regulations).  The United States believes that communications between Ameren and UARG may establish the contrary – that Ameren knew of and understood EPA's position and yet proceeded with the 2007 and 2010 modifications to the Rush Island Plant anyway.  Thus, the United States is entitled to review Ameren's non-privileged NSR documents to determine what Ameren knew and understood about the NSR regulations and EPA's guidance, and to discover whether there is a factual basis for Ameren's defenses.

Other courts that have squarely addressed this issue have found that communications between a defendant resisting NSR applicability and UARG are relevant. *United States et al v. Duke Energy Corp. et al.*, 214 F.R.D. 383 (M.D.N.C. 2003)*; compare United States v. Duke Energy Corp. et al.*, 232 F.R.D. 1, at * 3 (D.D.C. Jan. 3, 2005), *with United States v. Duke Energy Corp. et al.*, No. 1:00 CV 1262, C2-99-1181, IP99-1692-C-M/F, IP99-1693-C-M/S 1:00

9

CV, C2-99-1182; C2-99-1250, 2006 WL 2547986 (Aug. 31, 2006) (finding UARG documents to be relevant, but later, after *in camera* review, declining to order production of the majority of the non-privileged documents sought on burden grounds, not present in this case).[8] In the two *Duke Energy* cases,[9] like in the present case, the United States sought to enforce Duke Energy's obligation to obtain pre-construction permits and install pollution controls. As in this case, the United States sought discovery regarding Duke Energy's participation in and communications with UARG. Duke Energy unsuccessfully argued that the documents requested, including communications between UARG and Duke, were irrelevant to its defenses, namely its fair notice defense. Both courts were unpersuaded and found that "there is no question that the documents are relevant" and that "discussions of the pertinent regulations by the UARG could be relevant to or lead to relevant information about the fair notice defense and whether Duke Energy had actual or constructive notice and/or understanding of the interpretation which is at issue in this case prior to or during the renovations." *United States v. Duke Energy Corp. et al.*, 232 F.R.D. 1, at * 3 (D.D.C. Jan. 3, 2005); *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 385 (M.D.N.C. 2003), aff'd *United States v. Duke Energy Corp.*, No. 1 1:00cv1262, 2012 WL 1565228 (M.D.N.C., April 30 2012).

---

[8] Ameren may attempt to cite *United States v. Ill. Power Co.,* Civ. No. 99-83-MJR, 2003 WL 25593221 (S.D.Ill. April 24, 2003) or *United States v. Ohio Edison Co.*, No. C2-991181, 2002 WL 1585597 (S.D. Ohio July 11, 2002), in support of its position that communications between UARG and Ameren should not be released. However, as the Middle District of North Carolina determined, "[t]hose cases are inapposite because there, the EPA argued that the utilities intended to rely on subjective evidence concerning how the regulations were understood and that this position opened discovery into any advice received by the utilities from counsel….before this Court, plaintiff has altered its strategy and presents alternative arguments…that it can defeat Duke's fair notice defense by showing that Duke Energy had actual notice of [EPAs] interpretation." Here, like in *Duke Energy*, the United States is entitled to discovery of non-privileged documents in order to show that Ameren had actual notice of EPA's interpretation. *Id.* Additionally, in this case, unlike in *Illinois Power* and *Ohio Edison*, Ameren has failed to even attempt to justify its privilege claim over communications between Ameren and UARG.

[9] Note that, while the *Duke Energy* cases share the same caption, they were procedurally different cases, decided by different courts, addressing different sets of documents.

Ameren has relied on conclusory assertions that communications between Ameren and UARG regarding NSR applicability are irrelevant.  For example, Ameren states only "we do not believe that documents and communications with UARG [] are relevant to the subject matter of this action," and offers no further explanation or justification. Exhibit A, Email Communication Between Jeannice Williams and Andrew Hanson, at 2.  Moreover, Ameren has attempted to shift the burden to establish relevance to the United States.  This attempt is made in contravention of the unambiguous case law that requires the party resisting discovery to carry the heavy burden of establishing the irrelevance of the material sought.  *See Am. Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, No. 1:11-cv-19 (CEJ), 2011 WL 5178154, at *1 (E.D. Mo. Nov. 1, 2011).  In response to Ameren's perfunctory assertions, the United States has clearly explained that the communications are responsive and relevant to Ameren's understanding of NSR applicability in the industry and Ameren's litigation position in this case.  Exhibit A, Email Communication Between Jeannice Williams and Andrew Hanson, at 4.  The United States has, therefore, thoroughly explained the relevance of the discovery it seeks and Ameren has failed to offer any substantive explanation in support of its cursory claims that the discovery is irrelevant.

### B.  Communications Between Ameren and UARG Are Not Privileged.

#### 1.  Ameren's Claim that the Common-Interest Rule Applies Must Fail because Ameren has Failed to Substantiate any Privilege.

The common-interest rule is not a stand-alone privilege.  Rather, it is a narrow exception to the waiver rule that privileged documents lose their privileged status if such information is disseminated to third parties. *See generally In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910 (8th Cir. 1997).  In order to qualify for the common interest rule, the proponent must first establish that an attorney-client privilege exists, if not for the waiver. *See Bowman v. Brush Wellman, Inc.*, No. 00 C 50264 2001 WL 1098056 at *2 (N.D.Ill. Sept. 13, 2001).  The

11

proponent must then show that the attorney-client privilege stands, notwithstanding the disclosure to third parties, because the information was shared only with a third party that is involved in a joint defense effort or litigation strategy. *See Ayers Oil Co. v. American Business Brokers, Inc.*, No. 2:09cv02 DDN 2009, WL 4725297 (E.D. Mo. Dec. 2, 2009). The party claiming a privilege "has the burden of establishing the right to invoke its protection." *Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir. 1985).

Here, Ameren has failed to meet the threshold requirement. It has not met its burden to establish that an attorney-client privilege exists to protect these documents from disclosure. As discussed above, Ameren has not produced a privilege log, and has offered only conclusory statements that "we hereby assert all applicable privileges including the common interest privilege, over the UARG [] documents and communications…" Exhibit A, Email Communications between Jeannice Williams and Andrew Hanson, at 3. Where a party withholds information otherwise discoverable, it must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that … will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). Ameren has made no such attempt to describe the alleged privilege with any particularity or in any manner that would allow the United States to assess its claims. Without this information, any protection offered by the common interest doctrine, or any other privilege, cannot be confirmed.

> 2. *Any Attempt to Substantiate a Privilege Must Fail Because the United States is Not Seeking Privileged Communications.*

Even if Ameren were to produce a privilege log in an attempt to justify its refusal to produce the requested discovery, such a log would not shield Ameren from production because

12

the communications the United States seeks are not privileged.[10] As discussed herein, the United States is seeking non-privilege documents, like the Dairyland Memorandum, Exhibit C, and the Modification Outline, Exhibit D, which disseminate general information regarding EPA's NSR regulations to UARG members (including Ameren), the broader utility industry, and to the public.

Such documents are not privileged merely because they may have been prepared by UARG, or UARG's counsel, Hunton and Williams. In fact the relationship between Hunton and Williams and UARG members is unlike the typical attorney-client relationship in which a client with a specific legal problem seeks out an attorney for advice.[11] The nature of many such communications is likely no different than the non-privileged information one would expect to be presented at trade association meetings, continuing legal education seminars, or business development meetings. Memoranda of this kind, including legal memoranda, which simply summarize the law without containing confidential client information are not privileged. *See e.g.*, *Republican Party of N.C. v. Martin*, 136 F.R.D. 421, 427 (E.D.N.C. 1991) and *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C. 1986).

---

[10] Even if these communications were subject to the attorney-client privilege, that privilege is waived where it is disclosed to third parties, including other UARG members. The common-interest rule cannot apply to shield Ameren from its clear obligation to produce relevant discovery. Here, Ameren cannot establish that Ameren and UARG shared an "identical…legal interest" and have "assert[ed] common claims against a common adversary in the same litigation," as has been required to prevail in a common interest rule claim in the Eighth Circuit. *Ayers Oil Co. v. American Business Brokers, Inc.*, No. 2:09cv02 DDN, 2009 WL 4725297, *2 (E.D. Mo. Dec. 2, 2009)*; See also United States v. Duke Energy Corp.*, 214 F.R.D. 383, 390 (finding that the common-interest rule does not apply because Duke Energy "has not shown that the UARG members have agreed to proceed together to prosecute or defend a shared, specific litigation in interest"); *In re Grand Jury Subpoena*, 902 F.2d 244, 249 (4th Cir. 1990) (noting that the rational for the common interest privilege is to allow communications between persons who share a common interest in litigation.").

[11] UARG has conceded that an attorney-client relationship does not exist between UARG's law firm, UARG, and its member organizations. *See* Exhibit G, Transcript of Motions Hearing, *United States v. Duke Energy Corp.*, Civil No 02-0480, at 55 (UARG's law firm "does not represent any of the companies in their individual capacity through their membership in UARG…that relationship is clearly set out in the UARG Bylaws.").

13

Ameren's attempts to rely on the attorney-client privilege, and the common interest exemption to the waiver of that privilege, are futile because the communications the United States seeks are not protected by any such privilege.

## IV.     CONCLUSION

For the foregoing reasons, this Court should grant the United States' motion to compel production of communications between Ameren and UARG related to the operation, interpretation, implementation, or enforcement of EPA's NSR regulations from 2002 until 2011.

Dated: September 30, 2014          SAM HIRSCH
                                   Acting Assistant Attorney General

                                   s/Andrew C. Hanson
                                   Andrew C. Hanson
                                   Bradford T. McLane
                                   Anna Cross
                                   Nigel B. Cooney
                                   Trial Attorneys
                                   Environmental Enforcement Section
                                   Environment and Natural Resources Division
                                   U.S. Department of Justice
                                   P.O. Box 7611
                                   Washington, DC  20044-7611
                                   Telephone:  (202) 305-0544
                                   Facsimile:  (202) 616-6584
                                   E-mail:  Bradford.mclane@usdoj.gov

                                   Suzanne Moore
                                   Andrew Lay
                                   Assistant United States Attorneys
                                   United States Attorney's Office
                                   Eastern District of Missouri
                                   Thomas Eagleton U.S. Courthouse
                                   111 South 10th Street, 20th Floor
                                   St. Louis, Missouri 63102
                                   Telephone:  (314) 539-2547
                                   Facsimile:  (314) 539-2309
                                   E-mail: Suzanne.Moore@usdoj.gov

OF COUNSEL:
SEEMA KAKADE
SARA FROIKIN
Attorney-Advisors
U.S. EPA, Air Enforcement Division
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

ALEX CHEN
Senior Counsel
SARA HERTZ WU
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA, Region 7
11201 Renner Blvd.
Lenexa, KS 66219

## CERTIFICATE OF SERVICE

       I hereby certify that on September 30, 2014, I served the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

>Ronald S. Safer (pro hac vice)
>Patricia Brown Holmes (pro hac vice)
>Renee Cipriano (pro hac vice)
>Steven J. Bonebrake (pro hac vice)
>Matthew B. Mock (pro hac vice)
>Schiff Hardin LLP
>233 South Wacker Drive Suite 6600
>Chicago, Illinois 60606
>Phone: (312) 258-5500
>Fax: (312) 258-5600
>
>James J. Virtel
>Armstrong Teasdale LLP
>7700 Forsyth Boulevard Suite 1800
>St. Louis, Missouri  63105
>Phone: (314) 621-5070
>Fax: (314) 612-2298
>jvirtel@armstrongteasdale.com
>
>*Counsel for Defendant Ameren Missouri*

       s/Andrew C. Hanson