**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 4:11-cv-00077-RWS |
| | ) |
| AMEREN MISSOURI, | )   Honorable Rodney W. Sippel |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION**
**TO COMPEL PRODUCTION OF COMMUNICATIONS BETWEEN AMEREN AND**
**THIRD PARTY UTILITY INDUSTRY ASSOCIATIONS**

# EXHIBIT F

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 4:11-cv-00077-RWS |
| | ) |
| AMEREN MISSOURI, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**AMEREN MISSOURI'S RESPONSES AND OBJECTIONS**
**TO PLAINTIFF'S SECOND SET OF REQUESTS**
**FOR PRODUCTION OF DOCUMENTS**

Ameren Missouri ("Ameren") hereby responds to Plaintiff's Second Set of Requests for Production of Documents.

**GENERAL OBJECTIONS**

1.      Ameren incorporates its General Objections to Plaintiff's First Set of Requests for Production of Documents and its General Objections to Plaintiff's First Set of Interrogatories as and for its General Objections hereto.

2.      Ameren and Plaintiff are currently in the process of conferring in an attempt to define specific criteria for collection and production of ESI that are narrower than what the Federal Rules of Civil Procedure provide.  Ameren's production will be in conformance with that agreement, if one is reached.

3.      Ameren reserves the right to reasonably supplement or amend its Responses to these Requests as a result of further investigation, discovery, or otherwise.

## SPECIFIC OBJECTIONS AND RESPONSES

**REQUEST NO. 24:**

All training materials, internal policy memoranda, manuals, and guidances related to the NSR requirements of the Clean Air Act and related regulations, including but limited to the Missouri SIP.  This request includes but is not limited to all manuals and guidance regarding evaluation of projects, maintenance or modifications to determine applicability of or compliance with such provisions, and the required reporting of "off permit changes" to an emissions source under the Clean Air Act's Title V provisions and regulations, Missouri's Title V regulations, and the Missouri SIP.

**RESPONSE TO REQUEST NO. 24:**

Ameren objects to Request No. 24 on the grounds that it is overly broad and unduly burdensome in that it contains no time limitation.  Ameren further objects to Request No. 24 on the grounds that the phrase "off permit changes" is vague and ambiguous in this context. Ameren further objects to Request No. 24 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 24.

**REQUEST NO. 25:**

All Documents that related in any way to Defendant's communications with any person, including any of Defendant's employees or consultants, EPA, or any person at the State of Missouri, regarding the following information pertaining to the electrical generating units at the Rush Island Plant:

a.   Whether Defendant may need to obtain, should obtain, or had to obtain, a PSD or nonattainment NSR permit;

b.   Whether Defendant should obtain, or had to obtain a construction permit pursuant to Missouri law or regulation; and

c.   Whether Defendant should register a modification pursuant to those provisions, including whether Defendant should report any Projects at issue as "off permit changes."

2

**RESPONSE TO REQUEST NO. 25:**

Ameren objects to Request No. 25 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further objects to Request No. 25 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence to the extent that it seeks documents relating to projects not identified in the Amended Complaint or calls for communications with entities other than the Clean Air Act permitting authorities. Ameren further objects to Request No. 25 on the grounds that it is overly broad in its request for information beyond that required by Federal Rules of Civil Procedure 26(b)(4) and (5). Ameren further objects to Request No. 25 to the extent that it seeks documents not in Ameren's possession, custody or control.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 25.

**REQUEST NO. 26:**

All Documents discussing, describing or relating in any way to Defendant's understanding of the meaning of the following terms in federal regulations and the Missouri SIP: "major modification"; "physical change or change in the method of operation"; "routine maintenance, repair, and replacement"; "an increase in the hours of operation or in the production rate"; "emission unit"; "actual emissions" or "projected actual emissions"; "representative actual annual emissions"; "net emissions increase"; "baseline actual emissions"; "reasonable possibility"; "best available control technology"; "potential to emit"; "emissions unit"; and "installation"; "aggregation"; "demand growth exclusion"; and "capable of accommodating".

**RESPONSE TO REQUEST NO. 26:**

Ameren objects to Request No. 26 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further

3

objects to Request No. 26 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 26.

**REQUEST NO. 27:**

All Documents relating to assessing whether the construction or modification of an electricity generating unit, or the replacement or upgrading of components at an electricity generating unit may constitute a "modification," "major modification," "change in the method of operation," or "routine maintenance, repair or replacement," or may increase emissions within the meaning of the Clean Air Act, NSR regulations, or Missouri SIP.

**RESPONSE TO REQUEST NO. 27:**

Ameren objects to Request No. 27 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further objects to Request No. 27 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence to the extent it calls for documents relating to the construction of an electricity generating unit. Ameren further objects to Request No. 27 on the grounds that the term "assessing" is vague and ambiguous in this context. Ameren further objects to Request No. 27 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 27.

**REQUEST NO. 28:**

All Documents in your possession relating to or discussing the federal court decision in *Wisconsin Electric Power Company v. Reilly*, 893 F.2d 901 (7th Cir. 1990) ("WEPCO")

and its applicability to, impact on, or implementation by Defendant.  Included in this request are all Documents pertaining to the implications of the *WEPCO* decision and related administrative determinations, and deliberations and plans for responding to the decision.

## RESPONSE TO REQUEST NO. 28:

Ameren objects to Request No. 28 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation.  Ameren further objects to Request No. 28 on the grounds that the term "implementation" is vague and ambiguous in this context.  Ameren further objects to Request No. 28 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 28.

## REQUEST NO. 29:

All Documents in your possession relating to or discussing the administrative applicability determination contained in the May 23, 2000 letter from Francis Lyons, EPA to Henry Nickel, Hunton & Williams ("Detroit Edison letter"), available at http://www.epa.gov/region07/air/nsr/nsrmemos/detedisn.pdf, and its applicability to, impact on, or implementation by Defendant.  Included in this request are all documents pertaining to the implications of the *Detroit Edison letter* and related administrative determinations, and deliberations and plans for responding to the Detroit Edison letter.

## RESPONSE TO REQUEST NO. 29:

Ameren objects to Request No. 29 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation.  Ameren further objects to Request No. 29 on the grounds that the term "implementation" is vague and ambiguous in this context.  Ameren further objects to Request No. 29 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 29.

**REQUEST NO. 30:**

All Documents in your possession relating to or discussing the administrative applicability determination contained in the June 17, 1993 Memorandum from John Rasnic, EPA, to George Czerniak, EPA, concerning Applicability of New Source Review Circumvention Guidance to 3M-Maplewood, Minnesota, ("3M-Maplewood Memorandum") available at www.epa.gov/region07/air/nsrmemos/maplwood.pdf, and its applicability to, impact on, or implementation by Defendant. Included in this request are all documents pertaining to the implications of the EM-Maplewood Memorandum and related administrative determinations, and deliberations and plans for responding to the EM-Maplewood Memorandum.

**RESPONSE TO REQUEST NO. 30:**

Ameren objects to Request No. 30 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further objects to Request No. 30 on the grounds that the term "implementation" is vague and ambiguous in this context. Ameren further objects to Request No. 30 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 30.

**REQUEST NO. 31:**

All Documents relating to any communication, oral or written, between Defendant and the Edison Electric Institute, Utility Air Regulatory Group, Electric Power Research Institute, and any other utility industry trade associations (including the agents and attorneys thereof), and all information provided to Defendant by any such institutes, groups, or associations, pertaining to:

a.   the meaning, interpretation, or application of the routine maintenance, repair or replacement provisions in federal and state regulations implementing the

NSR requirements of the Clean Air Act, including but not limited to interpretations by EPA, states, and utilities;

b.  the method by which emissions calculations must be performed under NSR regulations for determining whether there has been a "net emissions increase," "significant emissions increase" or "significant net emissions increase" associated with a construction project;

c.  the definition of "major modification" under the NSR regulations; *Wisconsin Electric Power Company v. Reilly*, 893 F.2d 901 (7th Cir. 1990) and the administrative determinations that were the subject of that case;

d.  obtaining determinations from EPA or a state concerning whether a maintenance, repair, or replacement activity is a "major modification" under federal or state regulations implementing the NSR provisions of the Clean Air Act; or

e.  the provisions of 40 C.F.R. § 52.21(r)(6), incorporated by reference in the Missouri SIP at 10 C.S.R. 10-6.060(8)(A).

## RESPONSE TO REQUEST NO. 31:

Ameren objects to Request No. 31 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further objects to Request No. 31 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 31.

## REQUEST NO. 32:

All annual reports to Your stockholders and Securities and Exchange Commission 10-K reports.

## RESPONSE TO REQUEST NO. 32:

In addition to the General Objections, Ameren objects to Request No. 32 on the grounds that it is overly broad and unduly burdensome in that it contains no time limitation. Ameren further objects to Request No. 32 on the grounds that the information sought is accessible in the

public domain and thus the burden to obtain the requested information is the same for both parties.

**REQUEST NO. 33:**

All Documents relied upon in responding to the Plaintiff's First Set of Interrogatories.

**RESPONSE TO REQUEST NO. 33:**

Ameren incorporates its objections and responses to Plaintiff's First Set of Interrogatories as and for its objections and response to Request No. 33.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 33.

**REQUEST NO. 34:**

All Documents describing the maximum gross and net megawatt ratings of each Unit at the Rush Island Plant from 1996 to the present, and all documents which state or describe actual operation at or above any designed, permitted, or described megawatt ratings for those units and/or boilers during any time of their operation since 1990. This request includes but is not limited to:

    a.   All long term and short term ratings (all deratings lasting more than 30 days), seasonal ratings, vendor ratings, reported regulatory ratings, permitted ratings, ratings described in permits, maximum ratings due to a restriction from another component (e.g. bottleneck at the turbine) or on a component in isolation, and any other maximum megawatt ratings;

    b.   All Documents which relate to, state, describe, or otherwise denote a change in any of those megawatt ratings, their definitions, or the design guarantees of the megawatt ratings;

    c.   All Documents related in any way to a change in the maximum designed, permitted or described megawatt ratings, including any attempt to change how such ratings are included, conditioned, or described in any state operating permit, permit issued under Title V of the Clean Air Act, or any other permit; and

    d.   All engineering notes and calculations relating to any documents responsive to this request, including all underlying calculations used to generate any data in such Documents.

8

**RESPONSE TO REQUEST NO. 34:**

With respect to the portion of the Request seeking "all [d]ocuments which state or describe actual operation at or above any designed, permitted, or described megawatt ratings for those units and/or boilers during any time of their operation since 1990," and its subparts Ameren objects to Request No. 34, in addition to the General Objections, on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "all documents." Ameren further objects to Request No. 34 and its subparts on the grounds that the phrase "described megawatt ratings" is vague and ambiguous in this context. Ameren further objects to Request No. 34 and its subparts on the grounds that many of the phrases in subparts (a) and (c) are vague and ambiguous in this context. Ameren objects to producing documents responsive to this portion of the Request.

With respect to the portion of the Request seeking "[a]ll [d]ocuments describing the maximum gross and net megawatt ratings of each Unit at the Rush Island Plant from 1996 to the present," Ameren objects to Request No. 34 on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "[a]ll [documents." Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to this portion of Request No. 34 that were created between January 1, 2000 and June 28, 2011.

**REQUEST NO. 35:**

All Documents describing the maximum steam production capacity (pounds per hour) of each Boiler at the Rush Island Plant, and all Documents which state or describe actual operation at or above any maximum designed, permitted, or described steam production capacity for each Boiler during any time from 1996 to the present (including any change in outlet steam temperature, pressure or both from the superheater, reheater or both). This request includes but is not limited to:

9

a. All long term and short term maximum capacities lasting more than 30 days, seasonal capacities, vendor design capacities, reported regulatory capacities, permitted capacities, capacities described in permits, and any other maximum steam production capacity not included in this list;

b. All Documents which relate to, state, describe, or otherwise denote a change in the maximum steam production capacity;

c. All Documents related to any attempt to change the maximum designed, permitted, actual achievable, or described steam production capacity, including any attempt to change how such capacity is included, conditioned, or described in any state operating permit, permit issued under Title V of the Clean Air Act, or any other permit; and

d. All engineering notes and calculations used to determine steam production capacity and all notes and calculations relating to or used to generate any Documents responsive to this request.

## RESPONSE TO REQUEST NO. 35:

With respect to the portion of the Request seeking "all [d]ocuments which state or describe actual operation at or above any maximum designed, permitted, or described steam production capacity for each Boiler during any time from 1996 to the present," and its subparts, Ameren objects to Request No. 35, in addition to the General Objections, on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "all documents." Ameren further objects to Request No. 35 and its subparts on the grounds that many of the phrases in subparts (a) and (c) are vague and ambiguous in this context. Ameren objects to producing documents responsive to this portion of the Request.

With respect to the portion of the Request seeking "[a]ll [d]ocuments describing the maximum steam production capacity (pounds per hour) of each Boiler at the Rush Island Plant," Ameren objects to Request No. 35 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Subject to and without waiving these objections and the General Objections, Ameren will produce documents

10

responsive to this portion of Request No. 35 that were created between January 1, 2000 and June 28, 2011.

**REQUEST NO. 36:**

> All Documents describing the maximum heat input rate (million British thermal units per hour) for each Unit, and all Documents which relate to operation at or above any such maximum design heat rate, permitted heat input rate, or heat input rate used to describe Rush Island Unit 1 and Rush Island Unit 2 in any permit.  This request includes but is not limited to:
>
> a.   All long term and short term rates lasting more than 30 days, seasonal rates, vendor design rates, reported regulatory rates, permitted rates, rates described in permits, and any other maximum designed, permitted, or described heat input rate not included in this list;
>
> b.   All Documents which relate to, state, describe, or otherwise denote a change in the maximum designed, permitted, or described heat input rate;
>
> c.   All Documents related to any attempt to change the maximum designed, permitted, actual achievable, or described heat input rate, including any attempt to change how such a rate is included, conditioned, or described in any state operating permit, permit issued under Title V of the Clean Air Act, or any other permit; and
>
> d.   All engineering notes and calculations used to determine the maximum heat input rate or used to generate any Documents responsive to this request.

**RESPONSE TO REQUEST NO. 36:**

With respect to the portion of the Request seeking "all [d]ocuments which relate to operation at or above any such maximum design heat rate, permitted heat input rate, or heat input rate used to describe Rush Island Unit 1 and Rush Island Unit 2 in any permit," and its subparts, Ameren objects to Request No. 36, in addition to the General Objections, on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation.  Ameren further objects to Request No. 36 and its subparts on the grounds that the phrase "heat input rate used to describe Rush Island Unit 1 and Rush Island Unit 2 in any permit"

and many of the other phrases in subparts (a) and (c) are vague and ambiguous in this context. Ameren objects to producing documents responsive to this portion of the Request.

With respect to the portion of the Request seeking "[a]ll [d]ocuments describing the maximum heat input rate . . . for each Unit," Ameren objects to Request No. 36 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation.  Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to this portion of Request No. 36 that were created between January 1, 2000 and June 28, 2011.

**REQUEST NO. 37:**

All Documents describing the instantaneous capacity (ACFM) of all fans, including primary and secondary fans (forced draft) and induced draft fans, at the Rush Island Plant, and all documents which state or describe actual operation at or above any maximum designed, permitted or described fan capacity at the Rush Island Plant during any time from 1996 to the present.  This request includes but is not limited to:

a.   All long term and short term capacities lasting more than 30 days, seasonal capacities, vendor design capacities, reported regulatory capacities, permitted capacities, capacities described in permits, and any other designed, permitted, or described air flow capacities not included in this list;

b.   All Documents which relate to, state, describe, or otherwise denote a change in the instantaneous capacity;

c.   All Documents related to any attempt to change the designed, permitted, or described instantaneous capacity, including any attempt to change how such capacity is included, conditioned, or described in any state operating permit, permit issued under Title V of the Clean Air Act, or any other permit; and

d.   All engineering notes and calculations used to determine instantaneous capacity and all notes and calculations relating to or used to generate any Documents responsive to this request.

**RESPONSE TO REQUEST NO. 37:**

With respect to the portion of the Request seeking "all documents which state or describe actual operation at or above any maximum designed, permitted, or described fan capacity at the

Rush Island Plant during any time from 1996 to the present," and its subparts, Ameren objects to Request No. 37, in addition to the General Objections, on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "all documents." Ameren further objects to Request No. 37 and its subparts on the grounds that many of the phrases in subparts (a) and (c) are vague and ambiguous in this context. Ameren objects to producing documents responsive to this portion of the Request.

With respect to the portion of the Request seeking "[a]ll [d]ocuments describing the instantaneous capacity (ACFM) of all fans . . . at the Rush Island Plant," Ameren objects to Request No. 37 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to this portion of Request No. 37 that were created between January 1, 2000 and June 28, 2011.

**REQUEST NO. 38:**

All Documents describing the maximum feedwater pump capacity and/or combined heating capacity of the feedwater heaters at the Rush Island Plant, and all documents which state or describe actual operation at or above any such maximum designed, permitted, or described feedwater pump capacity at the Rush Island Plant from 1996 to present. This request includes but is not limited to:

a.  All long term and short term capacities lasting more than 30 days, seasonal capacities, vendor design capacities, reported regulatory capacities, permitted capacities, capacities described in permits, and any other designed, permitted, or described feedwater pump capacities not included in this list;

b.  All Documents which relate to, state, describe, or otherwise denote a change in such capacity;

c.  All Documents related to any attempt to change the designed, permitted, or described feedwater pump capacity, including any attempt to change how such capacity is included, conditioned, or described in any state operating permit, permit issued under Title V of the Clean Air Act, or any other permit; and

13

d.  All engineering notes and calculations used to determine feedwater pump capacity and all notes and calculations relating to or used to generate any Documents responsive to this request.

**RESPONSE TO REQUEST NO. 38:**

With respect to the portion of the Request seeking "all documents which state or describe actual operation at or above any maximum designed, permitted, or described feedwater pump capacity at the Rush Island Plant from 1996 to the present," and its subparts, Ameren objects to Request No. 38, in addition to the General Objections, on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "[a]ll [d]ocuments." Ameren further objects to Request No. 38 and its subparts on the grounds that many of the phrases in subparts (a) and (c) are vague and ambiguous in this context.  Ameren objects to producing documents responsive to this portion of the Request.

With respect to the portion of the Request seeking "[a]ll [d]ocuments describing the maximum feedwater pump capacity and/or combined heating capacity of the feedwater heaters at the Rush Island Plant," Ameren objects to Request No. 38 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to this portion of Request No. 38 that were created between January 1, 2000 and June 28, 2011.

**REQUEST NO. 39:**

All Documents describing the maximum coal feeder feed rate and/or coal mill coal pulverization rate at the Rush Island Plant, and all Documents which relate to operation at or above any such maximum designed, permitted, or described rate at the Rush Island Plant from 1996 to present.  This request includes but is not limited to:

a.  All long term and short term rates lasting more than 30 days, seasonal rates, vendor design rates, reported regulatory rates, permitted rates, rates described

in permits, and any other designed, permitted or described rate not included in this list;

b.   All Documents which relate to, state, describe, or otherwise denote a change in the maximum designed, permitted, or described coal feeder feed rate, coal mill flow rates, and coal pulverizer flow rates;

c.   All Documents related to any attempt to change the maximum designed, permitted, or described coal feeder feed rate, coal mill flow rates, and coal pulverizer flow rates, including any attempt to change how such capacity is included, conditioned or described in any state operating permit, permit issued under Title V of the Clean Air Act, or any other permit; and

d.   All engineering notes and calculations used to determine maximum coal feeder feed rate, coal mill flow rates, and coal pulverizer flow rates and all notes and calculations relating to or used to generate any Documents responsive to this request.

## RESPONSE TO REQUEST NO. 39:

With respect to the portion of the Request seeking "all [d]ocuments which relate to operation at or above any such maximum designed, permitted, or described rate at the Rush Island Plant from 1996 to the present," and its subparts, Ameren objects to Request No. 39, in addition to the General Objections, on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "all [d]ocuments." Ameren further objects to Request No. 39 and its subparts on the grounds that many of the phrases in subparts (a) and (c) are vague and ambiguous in this context. Ameren objects to producing documents responsive to this portion of the Request.

With respect to the portion of the Request seeking "[a]ll [d]ocuments describing the maximum coal feeder feed rate and/or coal mill coal pulverization at Rush Island Plant," Ameren objects to Request No. 39 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to this portion of Request No. 39 that were created between January 1, 2000 and June 28, 2011.

15

**REQUEST NO. 40:**

All Documents, including but not limited to electronically stored information, related to Ameren's Project Justification Guiding Principles.

**RESPONSE TO REQUEST NO. 40:**

Ameren objects to Request No. 40 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further objects to Request No. 40 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 40.


**REQUEST NO. 41:**

All Documents, including but not limited to electronically stored information, used to prepare each Project Justification Data Table produced in response to Request No. 1, including but not limited to Documents used to prepare the data contained in tables titled, or similarly titled, "Annual Value of a 1% Efficiency Improvement", "Forced Outage Cost - $/day of Forced Outage" and "Load Reduction Costs, $/mwh of Outage."

**RESPONSE TO REQUEST NO. 41:**

Ameren objects to Request No. 41 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 41.


**REQUEST NO. 42:**

All Documents, from 1996 to the present, containing, summarizing, or pertaining to the annual emission inventory reports submitted by Defendant to Missouri DNR or Missouri PSC for the Rush Island Plant. Included in this request are all documents indicating how such emissions calculations were made in the annual emission inventory reports.

**RESPONSE TO REQUEST NO. 42:**

Ameren objects to Request No. 42 on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "all documents." Ameren further objects to Request No. 42 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges. Ameren further objects to Request No. 42 on the grounds that much of the information sought is accessible in the public domain and thus the burden to obtain the requested information is the same for both parties.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 42.

**REQUEST NO. 43:**

All Documents related to the installation, start up, operation and non-operation of any permanent or temporary/experimental air pollution control equipment to reduce $SO_2$ emissions at the Rush Island Plant, including but not limited to dry sorbent injection, and including Documents sufficient to indicate the dates of installation, start up, and continued operation of such equipment.

**RESPONSE TO REQUEST NO. 43:**

In addition to the General Objections, Ameren objects to Request No. 43 on the grounds that it is premature because it seeks information relevant only to potential remedies. Ameren further objects to Request No. 43 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence.

**REQUEST NO. 44:**

All air emissions testing reports, for the Rush Island Plant, including but not limited to reports for tests conducted using EPA Reference Methods, as well as all related correspondence and memoranda for the Rush Island Plant. This request includes all such tests, regardless of whether they were completed or used for any purpose.

17

**RESPONSE TO REQUEST NO. 44:**

Ameren objects to Request No. 44 on the grounds that it is overly broad and unduly burdensome in that it contains no time limitation. Ameren further objects to Request No. 44 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence to the extent it seeks testing information other than $SO_2$ testing. Ameren further objects to Request No. 44 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 44.

**REQUEST NO. 45:**

All hourly and quarterly flue gas emissions data tabulated from continuous emission monitoring instrumentation submitted to the Missouri DNR in relation to the Rush Island Plant from 1996 to the present, including electronically stored information to the extent that it contains information that is not included in hard copy documents provided in the response.

**RESPONSE TO REQUEST NO. 45:**

Ameren objects to Request No. 45 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence to the extent it seeks testing information other than $SO_2$ testing. Ameren further objects to Request No. 45 on the grounds that the information sought is accessible in the public domain and thus the burden to obtain the requested information is the same for both parties.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 45.

**REQUEST NO. 46:**

Any and all Documents reflecting communications regarding any of the Rush Island Projects:

a.  between Defendant and any person employed by EPA at the time of the communication;

b.  between Defendant and any person employed by the Missouri PSC at the time of the communication; and

c.  between Defendant and any person employed by the State of Missouri at the time of the communication.

**RESPONSE TO REQUEST NO. 46:**

Ameren objects to Request No. 46 on the grounds that it is overly broad and unduly burdensome because it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further objects to Request No. 46 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence to the extent it seeks communications by persons employed by the State of Missouri other than those employed by the Missouri Department of Natural Resources.  Ameren further objects to Request No. 46 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 46.

**REQUEST NO. 47:**

All Documents relating to every PSD permit, NNSR permit, PSD permit application, and NNSR permit application prepared, sought or obtained by Defendant from the State of Missouri.

**RESPONSE TO REQUEST NO. 47:**

Ameren objects to Request No. 47 on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "all documents." Ameren further objects to Request No. 47 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 47.

**REQUEST NO. 48:**

For the Rush Island Plant, the original and most recent version of the manufacturer's maintenance manuals, Defendant's maintenance manuals, employee training manuals and maintenance newsletters for the following components:

a.   economizer;

b.   all superheaters;

c.   all reheaters;

d.   feedwater heater;

e.   air preheaters;

f.   burners;

g.   furnace floors;

h.   condenser;

i.   waterwall tubing (furnace walls);

j.   all fans;

k.   turbine;

l.   bottom ash hopper;

m.   coal bunkers;

n.   pulverizers

o.   coal feeders

p.   boiler control systems

q.   soot blowers

r.   steam drum

s.   electro-static precipitators, low NOx burners, baghouses, and other boiler emission control equipment or related systems, e.g., ammonia injection systems;

t.   boiler feed pumps;

u.   coal mills; and

v.   any of the other components replaced in the course of the Rush Island Projects.

## RESPONSE TO REQUEST NO. 48:

Ameren objects to Request No. 48 on the grounds that it is overly broad in that it contains no time limitation. Ameren further objects to Request No. 48 on the grounds that it is unduly burdensome as to the volume of potentially responsive documents requested. Ameren further objects to Request No. 48 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence to the extent it seeks documents related to components not identified in the Amended Complaint.

Subject to and without waiving these objections and the General Objections, Ameren will produce EMPRV documents that relate to the components at issue in the Amended Complaint and which describe the available manuals.

## REQUEST NO. 49:

All local, state, and federal judicial or administrative testimony filed by Defendant or any of its officers, agents, or employees and related opinions, orders, decisions, and stipulations discussing, analyzing, or relating to any of Defendant's Life Extension Projects, Life Extension Studies, or any Rush Island Project. This request includes all

21

Documents relating to any proceedings before the Missouri PSC and/or Missouri DNR, including all memoranda, work papers, studies, accounting data, spreadsheets, testimony and correspondence between Defendant and the Missouri PSC and/or Missouri DNR, between Defendant and its consultants, and internal memoranda of Defendant.

**RESPONSE TO REQUEST NO. 49:**

Ameren objects to Request No. 49 on the grounds that it is overly broad and unduly burdensome with respect to time and to the extent that it seeks "all documents." Ameren further objects to Request No. 49 on the grounds that the terms "Life Extension Project" and "Life Extension Study" are argumentative and assume facts not in evidence. Ameren further objects to Request No. 49 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 49.

**REQUEST NO. 50:**

All Documents pertaining to Life Extension Studies and Life Extension Projects considered or implemented at the Rush Island Plant.

**RESPONSE TO REQUEST NO. 50:**

Ameren objects to Request No. 50 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll documents" and contains no time limitation. Ameren further objects to Request No. 50 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 50.

**REQUEST NO. 51:**

All Documents, including electronically stored information, that describe or specify the expected useful economic life, depreciation period, and the planned or projected

22

retirement date for the boiler, turbine, and generator of each electricity generating unit at the Rush Island Plant. Included in this request are all financial and engineering analyses pertaining to the anticipated retirement of a boiler or electricity generating unit at the Plant, and all Documents discussing accounting practices related to the expected lifetime of the Rush Island Plant or any of its generating units or boilers for depreciation purposes.

## RESPONSE TO REQUEST NO. 51:

Ameren objects to Request No. 51 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll documents" and contains no time limitation. Ameren further objects to Request No. 51 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 51.

## REQUEST NO. 52:

All Documents which indicate or describe when a given activity is to be expensed or capitalized in Defendant's accounting records. This request includes, but is not limited to Defendant's internal capitalization and expense policies, including all changes and modifications thereto, as well as all internal company documents, manuals, policies and procedures describing the capital budget and maintenance expense budget processes that pertain to, or have been in use at or for the Rush Island Plant. This request also includes a copy of the procedures for the approval of projects involving capital expenditures at the Rush Island Plant, and, if different, a copy of such approval procedures applicable when the Rush Island projects were approved.

## RESPONSE TO REQUEST NO. 52:

Ameren objects to Request No. 52 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren further objects to Request No. 52 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 52.

**REQUEST NO. 53:**

      The complete property record for the Rush Island Plant (including each of the Rush Island units), whether in paper form or in an electronic file, from original placement in service to the present, which You are required to maintain in accordance with FERC General Instruction 12, and FERC Electric Plant Instruction 11 (Work Order and Property System Required) and FERC Definition 8 (Continuing Plant Inventory Record).

**RESPONSE TO REQUEST NO. 53:**

      In addition to the General Objections, Ameren objects to Request No. 53 on the grounds that it is unduly burdensome as to the volume and accessibility of potentially responsive documents. Ameren further objects to Request No. 53 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence. Ameren will meet and confer with Plaintiff in an attempt to narrow this Request in a reasonable fashion.

**REQUEST NO. 54:**

      All correspondence between You and either FERC or any other regulatory agency concerning the proper accounting and exceptions thereto for retirement units (as that term is used in FERC Electric Plant Instruction 10), minor items of property (as that term is used in FERC Electric Plant Instruction 10), life extension projects, extraordinary items of maintenance expense (as that term is used in FERC General Instruction 7), and plant service lives (as that term is used in FERC Definition 35).

**RESPONSE TO REQUEST NO. 54:**

      In addition to the General Objections, Ameren objects to Request No. 54 on the grounds that it seeks the production of documents that are neither relevant to the subject matter of this action nor reasonably calculated to lead to the production of admissible evidence. Ameren will meet and confer with Plaintiff in an attempt to narrow this Request in a reasonable fashion.

**REQUEST NO. 55:**

      The complete property additions and retirement unit listings pertaining to the Rush Island Plant (as required to be maintained in accordance with FERC Electric Plant Instruction 10), including all narrative and explanatory documents explaining terms and entries

within the property unit listing, and all changes and modifications thereto, from the year each generating unit was originally placed in service to the present.

**RESPONSE TO REQUEST NO. 55:**

Ameren objects to Request No. 55 on the grounds that it is cumulative and duplicative of Request No. 53.  Ameren incorporates its objections and response to Request No. 53 as and for its objections and response to Request No. 55.

**REQUEST NO. 56:**

All Documents relating to the document retention policies, procedures or practices of Defendant, including all documents that record, describe, or relate to Documents destroyed or otherwise disposed of pursuant to Defendant's document retention policies or practices or otherwise.

**RESPONSE TO REQUEST NO. 56:**

Ameren objects to Request No. 56 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation.  Ameren further objects to Request No. 56 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 56.

**REQUEST NO. 57:**

All Form EIA-767 data submitted to the U.S. Department of Energy ("DOE") from 1996 through the present, for all Electricity Generating Units in the Rush Island Plant.

**RESPONSE TO REQUEST NO. 57:**

Ameren objects to Request No. 57 on the grounds that the information sought is accessible in the public domain and thus the burden to obtain the requested information is the same for both parties.

**REQUEST NO. 58:**

All Documents relating to any communication, oral or written, between Defendant and persons acting on behalf of any firm or business entity that provided insurance to the Rush Island Plant at the time of the Rush Island Projects, including communications relating to any insurance inspections and approvals following the Rush Island Projects.

**RESPONSE TO REQUEST NO. 58:**

Ameren objects to Request No. 58 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and "any communication," and contains no time limitation. Ameren further objects to Request No. 58 on the grounds that the request may seek information that is subject to the attorney-client or attorney work-product privileges. Ameren further objects to Request No. 58 on the grounds that it seeks the production of documents that are not within Ameren's possession, custody or control.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 58.

**REQUEST NO. 59:**

All load duration curves used by Defendant in the evaluation of any Rush Island Project.

**RESPONSE TO REQUEST NO. 59:**

Ameren objects to Request No. 59 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll" load duration curves and contains no time limitation. Ameren further objects to Request No. 59 on the grounds that the phrase "load duration curves" is vague and ambiguous in this context.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 59.

**REQUEST NO. 60:**

All Documents, including but not limited to electronically stored information, referring or relating to daily unit commitment logs used in Defendant's dispatch control center to

establish the commitment order of all Ameren generating units and capacity purchases from January 1, 1996 to the date of this Request. This Request includes any logs developed on a month-ahead, week-ahead, and/or day-ahead basis and includes all work papers that were created in the development of the unit commitment logs. Electronic Documents responsive to this request should be produced in native format with all embedded formulas intact.

**RESPONSE TO REQUEST NO. 60:**

Ameren objects to Request No. 60 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation. Ameren objects to Request No. 60 on the grounds that it is unduly burdensome as to the volume of potentially responsive documents. Ameren will meet and confer with Plaintiff in an attempt to narrow this Request in a reasonable fashion.

**REQUEST NO. 61:**

All Documents, including but not limited to electronically stored information, referring or relating to any heat rate/efficiency curves and corresponding heat rate equations for each Rush Island Unit developed based on heat rate tests that were performed during the period five years before each Rush Island Project and five years after each Rush Island Project. If no heat rate tests for a Rush Island Unit were performed during the five years before each Rush Island Project and five years after each Rush Island Project, provide all Documents related to the most recent heat rate tests for each Rush Island Unit performed before the five year period prior to each Rush Island Project, and the most recent heat rate tests for a Rush Island Unit performed after the five year period following each Rush Island Project.

**RESPONSE TO REQUEST NO. 61:**

Ameren objects to Request No. 61 on the grounds that it is overly broad and unduly burdensome in that it seeks "[a]ll [d]ocuments" and contains no time limitation.

Subject to and without waiving these objections and the General Objections, Ameren will produce documents responsive to Request No. 61.

Dated: June 7, 2012

/s/ Matthew B. Mock

Ronald S. Safer
Patricia Brown Holmes
Renee Cipriano
Steven J. Bonebrake
Matthew B. Mock
SCHIFF HARDIN LLP
233 South Wacker Drive Suite 6600
Chicago, Illinois 60606
(312) 258-5500
Fax:  (312) 258-5600
(All admitted *pro hac vice*)

James J. Virtel
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard Suite 1800
St. Louis, Missouri 63105
(314) 621-5070
Fax: (314) 612-2298
jvirtel@armstrongteasdale.com

*Counsel for Defendant Ameren Missouri*

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2012, I caused a copy of the foregoing **Ameren Missouri's Responses and Objections to Plaintiff's Second Set of Requests for Production of Documents** to be transmitted via electronic mail to the following counsel of record:

> Justin A. Savage
> Andrew C. Hanson
> Bradford T. McLane
> U.S. Department of Justice
> Environment and Natural Resources Division
> P.O. Box 7611, Ben Franklin Station
> Washington, DC 20044-7611
> Telephone: (202) 514-5293
> justin.savage@usdoj.gov
> andrew.hanson2@usdoj.gov
> bradford.mclane@usdoj.gov
>
> Nigel B. Cooney
> U.S. Department of Justice
> Environmental Defense Section
> 601 D. Street, N.W., Suite 8000
> Washington, DC 20004
> Telephone: (202) 514-3145
> nigel.cooney@usdoj.gov

> /s/ Matthew B. Mock