**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 4:11-cv-00077-RWS |
| AMEREN MISSOURI, | ) |
| | ) |
| Defendant. | ) |

**UNITED STATES' BRIEF IN SUPPORT OF ITS**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

The United States respectfully submits this Memorandum in support of its Motion to Compel Production of Documents improperly withheld by Defendant Ameren Missouri ("Ameren"). Twenty-three of these documents were contained on Ameren's privilege log and are described in Exhibit A. Three of these documents were inadvertently produced and then clawed back by Ameren. These 3 documents are filed under seal for review by the Court *in camera*. Additionally, Ameren has not logged the vast majority of its privileged documents and has refused to even quantify the overall number of documents that it is withholding without inclusion on a privilege log.

Thus Plaintiff specifically challenges 26 documents. Further, to the extent that this Court grants this motion to compel any of these documents, the United States asks the Court to further order Ameren to produce the same types of withheld documents to the extent that they have not appeared on any privilege log. The 26 documents that the United States specifically challenges here fit into the following four categories.

First, Plaintiff challenges two documents that reflect the process through which Ameren evaluated and made the business decision to approve capital projects. (the "Engineering Documents")  Even if in-house counsel were somehow involved in these documents, Ameren cannot withhold communications involving attorneys that contain business (as opposed to legal) advice respecting the determination of whether to undertake the capital projects.  *See, e.g., United States v. Spencer*, 700 F.3d 317, 320 (8th Cir. 2012) (indicating that "when an attorney acts in other capacities, such as a conduit for a client's funds, as a scrivener, or as a business advisor, the privilege does not apply"); *U.S. Commodity Futures Trading Comm'n v. Arrington,* No. 8:11-cv-181; 2013 WL 353060 (D. Neb. Jan. 29, 2013) (ordering disclosure of communications that the court found to be business advice).

Second, the United States challenges 20 documents that are either air pollution emissions analyses or related documents.  (the "Emissions-Related Documents")  By all indication, these documents are factual in nature, and the attorney client privilege "does not protect facts communicated to an attorney."  *Sedco Intern., S. A. v. Cory*, 683 F.2d 1201, 1205 (8th Cir. 1982) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)).  Moreover, because Ameren had a legal obligation to perform emission analyses for purposes of complying with the New Source Review ("NSR") requirements, a substantial body of case law stands for the proposition that Ameren cannot improperly shield such emissions analyses behind an assertion of privilege or attorney work product.  *See, e.g., In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) ("*Torf*"); *In re Grand Jury Matter*, 147 F.R.D. 82 (E.D. Pa. 1992).

Third, earlier today Ameren made clear that it is asserting privilege claims over the entirety of three (3) e-mail communications between Ameren engineers.  (*See* Exhibit G, email communication respecting three documents.)  Ameren inadvertently produced the documents to

the United States and then asked that they be returned pursuant to the parties' claw-back agreement.  The United States asked Ameren to re-produce versions of these documents that redacted the one or two sentences in each of them that references a communication from in-house counsel; and also asked to meet and confer on this matter.  Ameren refused.  (*Id.*)  The United States attaches these documents under seal for review by the Court *in camera*.  (*See* Sealed Exhibits H, I and J.)  The United States moves the Court to issue a ruling that the documents are not privileged.  For the reasons set forth below with respect to the 23 documents on Ameren's privilege log, any advice of counsel contained in these emails constitutes environmental regulatory (not legal) advice and is not properly claimed as privileged.  Even if a portion of the emails are privileged, the factual content of the email aside from the reference to in-house counsel is clearly not privileged or work product.  Thus, in the alternative, the United States respectfully asks the Court to order Ameren to produce redacted versions of these documents.

Finally, the United States challenges one "NSR Letter" that was exchanged with other power companies that are part of the Utility Air Regulation Group ("UARG").  (*See* Exhibit A, Log Entry 667.)  The appearance of this document on Ameren's privilege log belies Ameren's attempt to assert that none of the documents reflecting exchanges with UARG are relevant to this action.  Based on email communication earlier today, Ameren's approach to Plaintiff's challenge to this UARG log entry is to *simply remove the privilege log entry* as "irrelevant" to this action.  (*See* Exhibit F, email communication respecting UARG document.)  Thus, Ameren has failed to offer *any* justification for its assertion of privilege over this document and other relevant (non-logged) exchanges with UARG.  The United States has raised the issues respecting Ameren's withholding of NSR-related UARG documents in a separate brief.  This brief will not further rehash the arguments made there but simply raises the specific challenge over this document.

3

In short, with respect to these 26 documents, the United States respectfully requests that this Court either: (1) issue an order compelling Ameren to produce the documents; or (2) conduct an *in camera* review of the documents and order production, in whole or in part, as appropriate.

## FACTUAL BACKGROUND

On April 28, 2014, Ameren informed the United States that, in response to the United States' Requests for Production, it "has identified approximately 28,900 documents that are subject to claims of privilege." (Exhibit B, 4/28 letter.)  Out of the 28,900 documents, Ameren proposed to "categorically log" the following documents and communications and provided their estimated quantities: (1) in-house counsel custodian documents (17,800 documents); (2) financial compliance documents (1,400 documents); (3) litigation holds and associated documents (75 documents); (4) documents prepared for regulatory proceedings (2,900 documents); and (5) documents prepared for regulatory compliance purposes (1,200 documents); (6) non-Rush Island Plant documents (200 documents); and (7) utility group communications (2,600 documents). (*See* Attachment A of Exhibit B.)  While the United States worked with Ameren to develop a set of categories of documents that Ameren would not need to include on its privilege log, the United States never reached agreement with Ameren that all of these categories were acceptable. In particular, the United States made clear that Ameren's attempt to withhold "utility group communications" as subject to a common interest privilege and on grounds that such documents are irrelevant was without merit.

While Ameren is apparently withholding roughly 28,000 documents, in June and July 2014, Ameren produced a privilege log (in installments) that contains only 698 entries. The privilege descriptions provided by Ameren are vague and generic recitations of legal elements of

4

the claimed privileges that do not allow Plaintiff to discern what the document is and whether it has been properly withheld. (*See* Exhibit C, Ameren Privilege Log.)

The United States initially challenged the majority of Ameren's logged documents in early August. On September 10, 2014, the parties discussed in detail the first 132 logged documents, after which Ameren modified the asserted privileges over a number of those documents and determined that five of them were not properly withheld at all. On September 15, the United States narrowed its questions regarding Ameren's privilege log to 89 entries, and sent Ameren a list of questions for each of these entries.[1] On Thursday, September 24, the parties met and conferred by phone with respect to these documents. Given the September 30, 2014 deadline by which the parties must raise any discovery-related disputes under the Court's Scheduling Order, the United States asked for Ameren to provide any additional information to support its privilege assertions on or before Friday, September 26. Ameren declined to do so.

The United States then narrowed its challenge further to 27 documents by e-mail on September 29, 2014. Ameren then responded earlier today withdrawing its claim of privilege over 4 documents (*see* Exhibit F). In a separate email, Ameren refused to produce redacted versions of the three emails filed under seal (*see* exhibit G, sealed exhibits H, I and J.) In short, the United States made good faith attempts to fully confer with respect to these 26 documents.

## STANDARD

The Federal Rules provide that a party withholding a document is required to:

> make the claim expressly and . . . describe the nature of the documents, communication, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

---

[1] While the log sent to Ameren with questions listed 92 entries, this log included duplicates, which reduced the total list of documents to 89.

Fed. R. Civ. P. 26(b)(5). The party seeking to assert a privilege bears the burden of demonstrating that its requirements have been met. *See United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

The elements of the attorney-client privilege are: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal advisor, (8) except the privilege may be waived." *Kobluk v. University of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998). The party withholding documents or information upon a claim of privilege bears the burden of establishing the privilege. *See, e.g.*, *Conoco Inc. v. United States Dept. of Justice*, 687 F.2d 724, 730 (3d Cir. 1982). Where an attorney provides business as opposed to legal advice, the attorney client privileged does not apply to the communication. *See United States v. Frederick*, 182 F.3d 496, 501 (7th Cir. 1999) (finding document prepared by accountant both for purposes of preparing tax returns and for use in litigation was not privileged).

The attorney work product doctrine was first articulated in *Hickman v. Taylor*, 329 U.S. 495, (1947), and later expressed in the Federal Rules as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered ... if ... the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. Rule Civ. P. 26(b)(3)(A). The party claiming protection has the burden to show that "the anticipated litigation was the driving force behind the preparation of each requested document." *Graff et al. v. Haverhill North Coke Co. et al*, No. 1:09-cv-670; 2012 WL 5495514, *4 (S.D. Ohio

Nov. 13, 2012) (citations and quotations omitted.)  There are two types of work product:  fact (or ordinary) work product and opinion work product.  *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002) (citations and quotations omitted).  The protection accorded fact work product can be overcome where a party "shows substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A); *see also*, *In re Grand Jury Proceedings, G.S., F.S.*, 609 F.3d 909, 912-13 (8th Cir. 2010).  Additionally, documents prepared by technical staff or consultants for business or environmental regulatory purposes may only be withheld under the attorney work product doctrine if they were prepared "because of" some specific articulable claim likely to lead to litigation.  *See In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900 (9th Cir. 2004) (hereinafter "*Torf*").

**ARGUMENT**

**I.   THIS COURT SHOULD COMPEL AMEREN TO PRODUCE THE TWO ENGINEERING DOCUMENTS.**

The relevant privilege log entries for the 2 Engineering documents are numbers 273 and 500 on the excerpt of Ameren's Privilege Log attached as Exhibit A.  Ameren claims these documents as both attorney client communications and as attorney work product.  The total volume of these two documents is only 32 pages.

The first document at issue, document 273, is two pages and is entitled "Rush 2 Boiler Contract Meeting Notes 1 15 2009.doc."  The face of the document suggests that it was merely a set of notes stemming from a technical discussion between engineers.  The next document (log entry 500) is entitled "Project Review Board Presentation – Rush Island FGD – Final.pdf".  The document's title suggests that it relates to consideration by Ameren's Board of Directors to install a Flue Gas Desulfurization system ("FGD" or "Scrubber"), which is precisely the pollution

7

control technology that the United States alleges that Ameren was required to install in advance of conducting the projects at issue in this case.

For the reasons set forth below, the United States respectfully requests that this Court order Ameren to produce these two documents to the United States. In the alternative, the United States respectfully requests that the two documents *in camera* and order the production of any improperly-withheld documents (or portions thereof).

### A. Even if Ameren Could Show that an Attorney was Involved in the Documents at issue, the Engineering Documents still do not qualify as Privileged Attorney-Client Communications.

The participation of attorneys does not automatically render a communication or other document privileged. *See Kobluk*, 574 N.W.2d 436, 441 ("an otherwise unprivileged, preexisting document does not become privileged upon delivery by the client to the attorney").[2] Ameren's assertion of privilege is based on some non-described role that in-house counsel played with respect to these documents. In such a case, where the privilege is invoked based on the involvement of in-house counsel, one court has noted that, "because in-house counsel may play a dual role of legal advisor and business advisor, the privilege will apply only if the communication's primary purpose is to gain or provide legal advice." *Cardenas v. Prudential Ins. Co. v. Am.*, Nos. Civ. 99-1421, 99-1422, 99-1736; 2004 WL 234404, at *2 (D. Minn. Jan. 30, 2004) (citing *Kramer v. Raymond Corp.*, 1992 WL 122856 (E.D.Pa.1992)).[3]

---

[2] *See also Bartholomew v. Avalon Capital Gp., Inc*., 278 F.R.D. 441, 448 (D. Minn. Apr. 28, 2011) ("a party cannot make a communication privileged simply by including an attorney in the communication"); *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir.1977) ("A communication is not privileged simply because it is made by or to a person who happens to be a lawyer."); *ADT Sec. Servs., Inc. v. Swenson*, 2010 WL 2954545, at *4 (D. Minn. Jul. 26, 2010) (stating that the mere fact that a party "copied counsel on the email does not render it a privileged communication."); *Simon v. G.D. Searle & Co*., 816 F.2d 397, 403 (8th Cir.1987) ("[j]ust as the minutes of business meetings attended by attorneys are not automatically privileged, business documents sent to corporate officers and employees, as well as the corporation's attorneys, do not become privileged automatically.")

[3] *See also Texaco P.R., Inc. v. Dep't. of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir.1995) (attorney-client privilege "attaches only when the attorney acts in that [legal] capacity"); *Johnson v. Board of Pensions of the*

In summary, Ameren's general assertion that in-house counsel were involved in these factual and business-related communications is insufficient.  Ameren has failed to carry its burden to show that the documents at issue are subject to the attorney client privilege.

### B. Ameren's Privilege Log Likewise Does Not Support the Withholding of the Six Engineering Documents on Attorney Work Product Doctrine Grounds.

Ameren's log entries for the two engineering documents also lack any information about whether the documents withheld by Ameren as work product were prepared in anticipation of this or any other litigation.  Communications between Ameren's engineers, technical contractors, and managers regarding major capital projects are the kind of document that typically would have been created in substantially similar form even if counsel had not been involved.  *See Torf*, 357 F.3d at 908.  Rule 26(b)(3) simply does not protect "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for any other nonlitigation purposes."  Fed. R. Civ. P. 26 advisory committee's note.

In short, nothing in Ameren's log explains what litigation was the driving force behind the generation of these documents, or provides any basis to support assertion of attorney client privilege or attorney work product over these documents.

## II. THIS COURT SHOULD COMPEL AMEREN TO PRODUCE THE TWENTY EMISSIONS-RELATED DOCUMENTS.

The relevant privilege log entries for the 20 Emissions-Related Documents are listed as entry numbers 195, 196, 202, 274 to 278, 280, 441, 464, 616 to 621, 664, and 647 in Exhibit A.

---

*Evangelical Luthern Church in America*, Civ. No. 11-23; 2012 WL 5985600 at *4 (D. Minn. Sept. 5, 2012) (after in camera review finding that emails on which in house counsel were copied were not privileged and that in house counsel was sought for business purposes); *Craig v. Rite Aid Corp.*, 2012 WL 426275, at *20 (M.D. Pa. Feb. 9, 2012) (internal communications regarding restructuring and changes to leadership structures were not protected work product or privileged under the attorney-client privilege even though legal considerations regarding collective bargaining agreements were also recognized and discussed; *In re Baycol Products Lit., 2003 WL 22023449*, at *3 (D. Minn. Mar. 21, 2003)("The attorney-client privilege does not protect client communications that relate only to business information, and a business document cannot be made privileged by simply providing a copy to counsel.").

Four of these documents (log entries 616 to 619) are only claimed as attorney work product and two (log entries 620 and 621) are only claimed as attorney client privileged. The remaining 14 documents are claimed as both attorney client privileged and attorney work product. Based on the parties' telephonic conference on September 25, we understand Ameren to assert that it is withholding the documents at issue because they were requested by in-house counsel and compiled after Ameren received a Clean Air Act information request from EPA dated March 11, 2008. Importantly, at this time Ameren had just completed the major boiler overhaul at issue in this case at Unit 1, and planned to perform the same overhaul of Unit 2. Ameren actually performed this major boiler overhaul at Unit 2 in 2010, which is the basis of this action.

The Emission-Related Documents appear to be precisely the kind of documents that the company was required to perform in order to determine whether or not it needed to obtain an NSR or other Clean Air Act permits and install pollution controls before conducting the Rush Island Unit 2 2010 boiler overhaul. The regulations required Ameren to conduct these analyses aside from any EPA investigation, and there is no indication that these analyses would have been any different if Ameren had not received an information request from EPA. In short, Ameren has failed to carry its burden to withhold these documents. The context establishes that these documents were compiled for an environmental regulatory purpose to assess future compliance issues that were distinct from any assessment of litigation risks associated with past conduct and the EPA investigation.

### A. Ameren Has Failed to Carry its Burden to Support its Assertion of the Attorney Client Privilege Over the Emissions-Related Documents.

This Court should reject Ameren's attempt to shield the very emissions analyses that it was required by law to undertake under a claim of attorney client privilege. At bottom, these documents represent a compilation of factual information that is not properly subject to the

attorney client privilege. Here it appears that the Emissions-Related Documents at issue were created by Ameren engineers and technical staff either wholly or in part for purposes of determining whether Ameren needed to obtain an NSR permit for the projects it performed at Rush Island Unit 2 in 2010.

Courts have often found that similar technical documents were not covered by the attorney-client privilege. *See In re Grand Jury Matter*, 147 F.R.D. 82, 87 (E.D. Pa. 1992) (finding, after *in camera* review, that consultant's analyses were prepared solely for environmental regulatory purpose and could not be withheld as privileged); *see also Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431 (W.D.N.Y. 1997); *U.S. Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994). In *In the Matter of Grand Jury Proceedings*, 220 F.3d 568 (7th Cir. 2000), the court found that, even where the client's attorneys hired accounting firms, many of the documents created by the accountants were not protected by attorney-client privilege. *Id.* at 570. The court explained that information "transmitted to an attorney or to the attorney's agent is privileged if it was not intended for subsequent appearance on a tax return and was given to the attorney for the *sole purpose* of seeking legal advice." *Id.* at 571 (emphasis added) (citing *United States v. Frederick*, 182 F.3d 496, 500-01 (7th Cir. 1999)). The court found that "documents used in both preparing tax returns and litigation are not privileged." *Id.* (citing *Frederick*, 182 F.3d at 501).[4]

---

[4]     Likewise, in *United States v. Brown*, 478 F.2d 1038 (7th Cir. 1973), the IRS began an investigation of a client of Arthur Andersen & Company ("Andersen") and demanded Andersen's records for that client. Andersen argued that some of the documents were protected by attorney-client privilege, including a memorandum prepared by an attorney who was part of the law firm representing the client. *Id.* at 1039. The court found that neither of the documents were protected by the attorney-client privilege because they were not made in confidence for the purpose of obtaining *legal advice* from the lawyer and the accounting firm was hired by the client and not the attorney. *Id.* at 1040. The court also found that the documents were not protected because the attorney-client privilege does not protect "memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings which reflect an attorney's mental impressions, conclusions, opinion or legal theories." *Id.* at 1040 (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947)).

11

In short, Ameren has not demonstrated that the Emission-Related Documents at issue were generated for the "sole"—or even primary—purpose of assisting attorneys to provide legal advice.  *See Grand Jury Proceedings,* 220 F.3d. 571.

### B. Ameren Has Failed to Carry its Burden to Support its Assertion of Attorney Work Product Over the Emissions-Related Documents.

There is simply "no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation." *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir.1987).  For a large source of air emissions like Ameren, Clean Air Act emissions calculations are (or should be) documents that are prepared in the ordinary course of business for environmental compliance purposes.  As such, the court in *United States v. Duke Energy*, 208 F.R.D. 553 (M.D.N.C. 2002), ordered Defendant to "disclose calculations, criteria, matters, and methods it has used to examine emissions prepared as part of its normal business practice, including those required in order to comply with federal law." *Id.* At 556 n.4.  This court should order Ameren to do the same here. The Ninth Circuit's analysis in *Torf*, 357 F.3d 900, also supports this result.  In *Torf* the court found that an environmental consultant's report was subject to protection as attorney work product where the consultant performed work for an attorney after EPA informed the company that it was under investigation for violations of federal hazardous waste laws.  *Id.* at 904-05. The court explained the "because of" standard applied to "dual purpose" documents as follows:

> The "because of" standard does not consider whether litigation was a primary or secondary motive behind the creation of a document.  Rather, it considers the totality of the circumstances and affords protection when it can fairly be said that the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]"

*Id.* at 908 (citing and quoting *United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)).  The court proceeded to explain that where "there is a true independent purpose for creating a

12

document, work-product protection is less likely, but when two purposes are profoundly interconnected, the analysis is more complicated." *Id.*

Here the *Torf* court's reasoning supports a finding that Ameren's Emissions-Related Documents are not subject to attorney work product protection. The Western District of Missouri has applied the same basic analysis. *See Travelers Prop. Cas. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburgh, PA,* 250 F.R.D. 421, 425 (W.D. Mo. 2008) (finding that a document will not be protected as work product "if it would have been prepared in substantially the same manner irrespective of the anticipation of litigation"). Ameren has not demonstrated that the documents were created for the independent purpose of assessing Ameren's litigation exposure after it received the EPA information requests. Ameren was obligated by law to conduct the same analyses regardless of whether or not Ameren had received an information request from EPA.

**C. Ameren Has Waived Attorney-Client Communication and Work Product Privileges for Withheld Documents Related to "Reasonable Possibility Analysis."**

Even if any privilege or work product protection applies to these analyses, Ameren has waived any such protection. During discovery, Ameren produced a number of "Reasonable Possibility" emission analyses for the major boiler overhaul at Rush Island Unit 2 in 2010. While the electronic versions of these spreadsheets bear the mark of "Privileged and Confidential," Ameren has confirmed that is not claiming that the documents are privileged. (*See* Exhibit D, Whitworth 30(b)(6) Deposition Excerpt; Exhibit E, "Rush Island Unit 2; Spring 2010 Outage; Reasonable Possibility Analysis Summary".)

However, Ameren continues to selectively withhold the 20 Emissions-Related Documents on its privilege log (as well as perhaps countless others that are not on Ameren's log). Ameren cannot release a portion of its emissions analyses, and rely on those analyses as part of its defenses in this case, at the same time that it continues to withhold related emissions documents

13

performed in the ordinary course of business under a claim of privilege. Yet that is precisely what Ameren attempts here. For example, the document listed at Log Entry 621 (Doc. 1000152057) is entitled "Reasonable Possibility Post Project Record.xlsx" dated June 27, 2011. By the title, this document appears to be the kind of post project report that is required by the applicable regulations after a source engages in a physical or operational change to the plant that it believes does not require an NSR permit. Yet Ameren attempts to withhold this document under the attorney client privilege (not as attorney work product). As of 2008 the revised Federal Rules of Evidence no longer permit such selective disclosures of privileged or work product documents. *See*, *e.g.*, *Mills v. Iowa*, 285 F.R.D. 411, 416 (S.D. Iowa, 2012) (discussing cases).

Ameren's selective disclosure of emissions analyses effects a waiver under Federal Rule of Evidence 502(a) because: (1) Ameren intentionally released its 2010 Reasonable Possibility Emissions Analyses and is relying on the analyses as part of its defense in this action; (2) the Emissions-Related Documents on Ameren's privilege log involve the same subject matter – air pollution emissions that Ameren expected after the 2010 Rush Island Unit 2 project;[5] and, (3) Ameren's withheld Emissions-Related Documents "ought in fairness to be considered together" with the 2010 Reasonably Possibility Emissions Analyses that it is relying on in support of its defense in this action. Fed. R. Evid. 502(a)(3); *see also Graff,* 2010 WL 5495514 at *17 (finding that "[d]efendant voluntarily disclosed the [final audit] and it would be unfair to permit defendants to withhold the documents underlying the audit—documents that would provide additional information and context to properly understand the [final audit].")

---

[5] S*ee* log entry 202, Excel spreadsheets entitled "Rush Island 2 Spring 2010 Emission Analysis" (AMPR1000403152); log entry 664, "rush 2 outage" (ADRE1000347159) (dated 1/29/2010); and log entry 464, "Rush Island Engr Projects" (AMPR1000402905).

D. **At Most, as to the Documents over Which Ameren Asserts a Claim of Attorney Work Product, these Documents Contain Fact Work Product, and the United States Has a Substantial Need for these Analyses.**

At bottom, Ameren's emissions-related defenses in this case boil down to an attempt to selectively withhold certain of its emissions analyses at the same time that Ameren attacks the calculations performed by the United States' experts. Ameren should not be permitted to withhold the raw factual analyses that are relevant to how emissions are to be calculated under NSR. EPA has a substantial need for these documents because it is Ameren's obligation to perform emission calculations under the regulations, and these analyses provide strong evidence of what the company actually expected. *See, e.g.*, *In In re. Chrysler Motors Corp. Overnight Evaluation Program Litigation*, 860 F.2d 844, 846-47 (8th Cir. 1988) (finding that the government met the substantial need exception to secure computer tape containing compendium of relevant evidence prepared by defense counsel).

## CONCLUSION

Ameren has failed to carry its burden to establish that the attorney client privilege or attorney work product protection applies to the 26 documents at issue in the instant motion. For the reasons set forth above, the United States respectfully requests that this Court order Ameren to produce to the United States the 26 documents at issue in this motion. In the alternative, with respect to the 23 documents contained on Ameren's privilege log, the United States respectfully asks the Court to order *in camera* review of the documents; and thereafter to order Ameren to produce the documents in whole or in part as appropriate.

15

Dated September 30, 2014

Respectfully submitted,

SAM HIRSCH
Acting Assistant Attorney General

/s/ Bradford T. McLane
Andrew C. Hanson
Bradford T. McLane
Nigel B. Cooney
Trial Attorneys
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Telephone:  (202) 305-0544
Facsimile:  (202) 616-6584
E-mail:  Bradford.mclane@usdoj.gov

Suzanne Moore
Andrew Lay
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Missouri
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone:  (314) 539-2547
Facsimile:  (314) 539-2309
E-mail: Suzanne.Moore@usdoj.gov

OF COUNSEL:

SEEMA KAKADE
SARA FROIKIN
Attorney-Advisors
U.S. EPA, Air Enforcement Division
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

ALEX CHEN
Senior Counsel
SARA HERTZ WU
Assistant Regional Counsel
Office of Regional Counsel
U.S. EPA, Region 7
901 North 5th Street
Kansas City, Kansas 66101

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

>Ronald S. Safer (pro hac vice)
>Patricia Brown Holmes (pro hac vice)
>Renee Cipriano (pro hac vice)
>Steven J. Bonebrake (pro hac vice)
>Matthew B. Mock (pro hac vice)
>Schiff Hardin LLP
>233 South Wacker Drive Suite 6600
>Chicago, Illinois 60606
>Phone: (312) 258-5500
>Fax: (312) 258-5600
>
>James J. Virtel
>Armstrong Teasdale LLP
>7700 Forsyth Boulevard Suite 1800
>St. Louis, Missouri 63105
>Phone: (314) 621-5070
>Fax: (314) 612-2298
>jvirtel@armstrongteasdale.com
>
>Attorneys for Ameren Missouri

>*/s/ Bradford T. McLane*
>Bradford T. McLane