UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:11-CV-00077-RWS |
| AMEREN MISSOURI, | ) Judge Rodney W. Sippel |
| Defendant. | ) |

**AMEREN MISSOURI'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL
PRODUCTION OF DOCUMENTS FROM EPA'S PRIVILEGE LOGS**

**I.   INTRODUCTION**

EPA's response to Ameren's Motion to Compel Production of Documents from EPA's Privilege Logs concedes that EPA has liberally withheld documents from discovery based on some claim of privilege. According to EPA, it has produced 200,000 documents, but withheld "approximately 70,000 – 80,000 documents subject to claims of privilege," 19,000 of which are reflected on EPA's privilege log and the remaining 51,000 – 61,000 of which have been categorically logged. (ECF #365 at 2-3; ECF #365-1 at 1.) Those numbers alone show an extraordinarily high privilege claim rate. EPA's response further concedes that its numerous privilege logs often lacked basic information, used generic descriptions, or reflected tenuous privilege claims, which (1) consumed significant amounts of Ameren's time reviewing and analyzing the logs, meeting and conferring, and challenging a large number of the privilege claims, and (2) resulted in EPA releasing almost 1,000 documents that were never privileged from the start. EPA cannot dispute these facts, so instead in its response EPA attempts to blame Ameren for this tortured, three-month process.

EPA's actions since Ameren filed its Motion to Compel have continued the pattern. Ameren filed its motion on September 4, and during the September 9 hearing, the Court directed the parties to confer on the issues raised by that motion and report back by September 30. After conferring on September 16, EPA waited until the evening of September 29 to respond on the privilege issues, releasing 204 more documents that were never privileged from the start, re-characterizing 135 documents as "non-responsive," and withholding the rest as privileged while providing additional information to support some of those privilege claims. (Ex. 1, Sept. 29, 2014 E-Mail from N. Cooney to J. Williams.)[1] Moreover, just two days ago, on October 1, EPA asserted new deliberative process privilege claims over four more documents. (Ex. 3, Oct. 1, 2014 E-Mail from N. Cooney to J. Williams.)

Although EPA's latest round of releasing documents and providing additional information has narrowed the issues raised by Ameren's Motion to Compel, certain disputes remain, as discussed below. Ameren, therefore, continues to request relief from the Court regarding the narrowed disputes described below.[2]

**II.    ARGUMENT**

For purposes of organization, Ameren will discuss the disputes that remain in each of the four categories presented in Ameren's Motion to Compel.

---

[1] Even after this latest round of information provided by EPA, given that EPA has withdrawn its privilege claims for over 1,000 documents, changed its privilege claims for others, and produced multiple privilege logs that assert inconsistent privilege bases over the same documents, Ameren is unable to properly identify which documents EPA continues to claim as privileged and the reasons for the privileges asserted. Therefore, Ameren has asked EPA to produce an updated privilege log reflecting EPA's numerous changes. (Ex. 2, Sept. 15, 2014 Letter from J. Williams to N. Cooney.)

[2] With respect to the remaining disputes, EPA has staked its claim of privilege, but if EPA changes its position to eliminate a dispute, Ameren will promptly notify the Court.

2

A.      **Category 1: Highly Relevant Documents**

Ameren moved to compel production of 45 documents listed on EPA's privilege logs, which appear to be highly relevant to the issues in this case and for which the claimed privilege had not been substantiated. On September 29, 2014, EPA wrote to Ameren:

> With respect to category 1, 16 documents are being or have been produced. Four of the documents are non-responsive, as indicated on the spreadsheet. The United States continues to assert privileges over the remaining 25 documents, and the attached spreadsheet provides additional information regarding the privileged nature of these documents.

(Ex. 1.)

The four "non-responsive" documents (e-mails) are listed below with the e-mail subject lines and dates and EPA's explanation for why they are "non-responsive."

| Bates Number | E-Mail Subject | Date | Non-Responsiveness Explanation |
|---|---|---|---|
| USPRIV_ AME0149590 | Re: Please use this version of Final NSR Update Handout | 12/1/2010 | Nonresponsive: Email re GHG issues; and condensible PM methods |
| USPRIV_ AME0154109 | Re: Fw: initial stab at the PSD timing interpretation letter we discussed in Friday's meeting | 12/21/2009 | Non-responsive--relates to GHG and not related to specific RFPs from Ameren. |
| USPRIV_ AME0162288 | Re: Follow-up on Briefing Document for Gina | 3/11/2010 | Nonresponsive--relates to GHG issues not part of Ameren's RFPs; also, email contains legal advice from Joe Goffman (GOC) regarding GHGS. |
| USPRIV_ AME0162290 | Re: Follow-up on Briefing Document for Gina | 3/11/2010 | Nonresponsive--related to GHG issues not subject to Ameren's RFPs; also contains request for legal advice from Joe Goffman (OGC) |

EPA concedes that the first two e-mails are not privileged. Ameren, therefore, seeks production of these non-privileged e-mails, which by their subject lines and dates appear to relate to New Source Review issues during the relevant time period.

3

Of "the remaining 25 documents" over which EPA claims privilege, many are e-mails that do not include any attorneys in the "To," "From," or "CC" fields. Ameren continues to seek production of seven such e-mails listed below with EPA's "Additional Privilege Information" included. EPA indicates that these e-mails "contain" privileged information. To the extent that is true, the privileged information can be redacted and the non-privileged information produced.

| Bates Number | E-Mail Description | Date | Additional Privilege Information |
|---|---|---|---|
| USPRIV_ AME0148334 | E-mail between two non-attorney EPA employees Re: Resending slide deck with slide numbers | 7/14/2010 | Email regarding briefing for Janet McCabe regarding DTE enforcement action; contains legal advice from OECA. |
| USPRIV_ AME0148337 | E-mail between two non-attorney EPA employees Re: Resending slide deck with slide numbers | 7/14/2010 | Email regarding briefing for Janet McCabe regarding DTE enforcement action; contains legal advice from OECA. |
| USPRIV_ AME0148340 | E-mail between two non-attorney EPA employees Re: Resending slide deck with slide numbers | 7/14/2010 | Email regarding briefing for Janet McCabe regarding DTE enforcement action; contains legal advice from OECA. |
| USPRIV_ AME0148344 | E-mail between two non-attorney EPA employees Re: Resending slide deck with slide numbers | 7/14/2010 | Email regarding briefing for Janet McCabe regarding DTE enforcement action; contains legal advice from OECA. |
| USPRIV_ AME0154175 | E-mail between two non-attorney EPA employees Re: Region 5 enforcement concerns | 11/9/2010 | Email reflects legal advice from EPA Region 5 re reasonable possibility rules. |
| USPRIV_ AME0166720 | E-mail between two non-attorney EPA employees Re: Resending slide deck with slide numbers | 7/14/2010 | Email containing legal advice from OECA regarding DTE case. |
| USPRIV_ AME0213847 | E-mail between two non-attorney EPA employees Fw: DGE for Georgia Pacific | 2/18/2010 | Email contains request for legal advice to Terri Dykes and Lorinda Shepard regarding response to Georgia Pacific regarding demand growth exclusion. |

In sum, for Category 1, nine documents remain in dispute.

### B. Category 2: Work Product Documents Pre-Dating Anticipation of Litigation

Category 2 addresses documents that EPA has withheld from discovery, which (1) are specific to Ameren and the issues in this case, (2) have been withheld based solely on a claim of work product protection, and (3) were created before February 18, 2010 when EPA first anticipated litigation in connection with this case. This issue was previously briefed last spring on Ameren's motion to compel a non-privileged document stating that EPA brought this litigation against Ameren Missouri to exert settlement pressure on Ameren Energy Resources, a former affiliate which owned merchant generation facilities in Illinois. (*See* ECF # 200 at 3-4; ECF # 207.) In that briefing, Ameren raised the fact that EPA's answer to Interrogatory No. 31 took the position that EPA anticipated litigation in this case on February 18, 2010. (*Id.*) EPA neither disputed that fact in the briefing, nor amended or clarified its interrogatory answer to state otherwise. But now, faced with Category 2 of Ameren's Motion to Compel, EPA makes a tightrope-walking argument that Ameren has misread EPA's interrogatory answer:

> [T]he interrogatory response does not say what Ameren says it says. It does not claim that EPA, for the first time, "anticipated litigation" in the Ameren matter on February 18, 2010 and not before. It merely states that this is the date a litigation hold notice was issued in EPA Region 7.

(ECF #365 at 8.)

Tellingly, EPA does not say when it actually anticipated litigation in this case, though establishing that basic fact is fundamental to claiming work product protection. Based on that failure alone, EPA should lose the argument over this category. EPA presumably intends for the Court and Ameren to infer from the argument above that EPA anticipated litigation in this case at some time earlier than February 18, 2010, but leaves the Court and Ameren to guess as to when that was (if it was not, in fact, February 18, 2010). EPA suggests that when it anticipated litigation depends on "a case-by-case determination" and that Ameren should have challenged

5

EPA's anticipation of litigation date "with respect to the particular documents it seeks." (*Id.*)  In other words, EPA appears to be arguing that the date it anticipated litigation in this case could vary from document to document and ascertaining that is Ameren's problem.  That argument does not pass the straight-face test.  If EPA anticipated litigation in this case on a date other than February 18, 2010, it should say so.  If EPA somehow anticipated litigation in this case on different dates for different documents, it should say so, and it should explain how and why that is the case.  Otherwise, EPA has no basis for withholding the 428 documents in Category 2.[3]

EPA's second argument — attempting to distinguish between the legal standards for work product protection and preservation obligations — reveals that EPA is concerned that it only first issued a narrow litigation hold to Region 7, "in anticipation of litigation against Ameren," on February 18, 2010, and only broadened its litigation hold to cover headquarters and other regions a year later.  This argument is overly defensive and academic.  Setting aside whether the applicable legal standards are actually distinguishable, as noted above, what matters here is when EPA anticipated litigation in this case for purposes of determining whether it may claim work product protection over the documents in Category 2.  If there is a discrepancy between EPA's anticipation of litigation date for purposes of work product protection and its litigation hold date, then that may raise entirely separate issues.  EPA's attempt to walk the

---

[3] EPA's response makes much of the fact that Ameren's September 16 correspondence identifies fewer documents for Categories 2 and 4 than Ameren's Motion.  As Ameren made clear when the parties' conferred on September 16 and in the subsequent correspondence, Ameren had relied on EPA's production correspondence to identify documents produced in response to Ameren's privilege challenges, but that correspondence failed to identify all of the documents EPA was releasing in response to those challenges.  Ameren subsequently cross-checked the documents from its Motion to Compel with EPA's actual production and removed from its September 16 correspondence any documents EPA had produced but failed to identify.  It is puzzling why EPA claims in its response that it "does not know how Ameren got from 1,154 documents to 1,072" for Category 4 and from 472 to 428 for Category 2 (ECF # 365 at 11 n.4), when these numbers were specifically explained to EPA in Ameren's September 16 correspondence.  (*See* Ex. 1.)

6

tightrope in its response ultimately has no bearing on the actual issue raised in Category 2 of Ameren's Motion to Compel.

      C.      **Category 3: Deliberative Process Documents**

As an initial matter, EPA incorrectly states that Ameren never brought the 41 documents from Category 3 to EPA's attention. As part of the parties' months-long meet-and-confer process over EPA's various logs, on August 12, Ameren raised its concerns regarding missing information on EPA's deliberative process logs. (Ex. 4, E-Mails between M. Ali and S. HertzWu and N. Cooney.) Then on August 13, Ameren specifically challenged all of EPA's deliberative process entries, including the 41 documents addressed in Ameren's Motion, which were missing required information, such as dates, and asked EPA to provide any additional information it had to support its deliberative process claim. EPA responded by stating that metadata for many of the entries "was inadvertently not copied over to the produced log." (*Id.*) EPA then produced updated deliberative process logs with "additional information" on August 15. (*Id.*) When EPA's additional information *still* failed to substantiate a deliberative process privilege claim, Ameren moved to compel production of the 41 documents in Category 3.

EPA has made clear, multiple times now, that it intends to stand on its deliberative process privilege claims. EPA attempts to justify those privilege claims based on self-serving declarations that fail to establish that the documents are both pre-decisional and deliberative. As reflected in the chart on pages 12 and 13 of Ameren's opening brief, the first 30 documents are communications relating to EPA's April 20, 2010 Northampton letter. (ECF #336 at 12-13.) These documents either post-date the Northampton decision or contain no date, but more importantly, all 30 of these documents appear to discuss the interpretation or application of the Northampton letter. Interpretations or applications of already existing regulations and requirements are not pre-decisional and, therefore, are not protected by the deliberative process

privilege.  *See, e.g.*, *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153-54 (1975); *Metro. St. Louis Sewer Dist. v. EPA*, No. 4:10-CV-2103 (CEJ), 2012 WL 685334, at *4 (E.D. Mo. Mar. 2, 2012) (citing *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010)).

Next, USPRIV_AME0214399 is an e-mail that EPA describes as discussing "applicability determination issues raised by Georgia Pacific letter."  (Ex. 5 at Category C(15).) This description shows that the e-mail post-dates EPA's March 18, 2010 Georgia Pacific letter — which is EPA's primary guidance on the "could have accommodated" or "demand growth exclusion" provision at issue in this case[4] — and therefore cannot be pre-decisional.  EPA further describes the category for this document as "Documents Regarding the *Interpretation* of Demand Growth."   (*Id*. at 4 (emphasis added).)   Accordingly, this document cannot be deliberative because it relates to the interpretation of an existing policy, not the formulation of a new policy. *Metro. St. Louis Sewer Dist.*, 2012 WL 685334, at *6.

For the same reasons, EPA has failed to meet its burden regarding its deliberative process claim over the final 10 documents listed in the chart on page 13 of Ameren's opening brief. (ECF #336 at 13.)  These 10 documents all relate to the interpretation and application of the "could have accommodated" or "demand growth exclusion" provision in general.  For example, EPA describes USPRIV_AME0214247 as an "Email from Lynn Hutchinson to Dan Deroeck containing staff level discussion and opinions on *apply* [sic] the demand growth exclusion." (Ex.

---

[4] The Georgia Pacific letter can be found in EPA's New Source Review guidance database at http://www.epa.gov/region7/air/nsr/nsrmemos/demandgrowth.pdf.  In that letter, "EPA acknowledges that Georgia Pacific's use of the 'demand growth exclusion' for calculating applicability of the Prevention of Significant Deterioration (PSD) [New Source Review] permitting requirements is adequate" and "that Georgia Pacific may use the highest demonstrated average monthly operating level during the baseline period as an approximation of the level of operation that units 'could have accommodated' during the baseline period."

8

6 at Category A(47) (emphasis added).)  EPA has failed to explain — in either its privilege log entries or the corresponding declarations — how these 10 documents are pre-decisional and deliberative, rather than what they appear to be:  applications of the "could have accommodated" or "demand growth exclusion" provision, which has been part of the regulations for years before these 10 documents came into existence.

EPA has failed to justify the deliberative process privilege for these 41 documents in Category 3 as both pre-decisional and deliberative.  *See Missouri ex rel. Shorr v. U.S. Army Corps of Eng'rs*, 147 F.3d 708, 710 (8th Cir. 1998).  Accordingly, EPA should be required to produce all 41 documents, or, at a minimum, EPA should submit these documents to the Court for an *in camera* review.

In addition, just two days ago, on October 1, EPA asserted new deliberative process claims over for more documents.  (*See* Ex. 3.)  These new claims are described below:

| Bates Number | Concerns with Privilege Claim |
| --- | --- |
| USPRIV_AME0160502 | Communications related to the Ameren Duck Creek draft PSD permit.  EPA fails to identify what policy EPA was purportedly developing through these communications.  EPA's own declaration describes these documents as "interpretations of PSD requirements" — existing regulations — rather than development of new regulations or policy.  Interpretations and applications of existing regulations are neither pre-decisional nor deliberative. |
| USPRIV_AME0161793 | |
| USPRIV_AME0161804 | |
| USPRIV_AME0161816 | |

(*Id.* at Attachment 1.)   Like the other 41 documents discussed above, EPA's four new deliberative process claims do not appear to withstand scrutiny either.  Accordingly, Ameren further challenges EPA's privilege claims with respect to these four documents.[5]

---

[5] EPA's privilege logs do not specifically identify any attorneys who were involved in these communications.  Thus, to the extent that EPA also asserts attorney-client privilege over these four documents, that assertion appears to be equally tenuous.

9

### D. Category 4: Other Documents for which a Privileged Is Unsubstantiated

After Ameren filed its Motion, on September 29 EPA informed Ameren that it would release 188 documents from Category 4, re-characterized 131 documents as "non-responsive," and provided additional information for 545 documents. (*See* Ex. 1.) Yet, EPA has still failed to substantiate its privilege or work product claims over numerous documents from Category 4, and Ameren continues to challenge 23 of those privilege claims.[6] These 23 documents are listed in Exhibit 7, which is an excerpt of the relevant rows from the spreadsheet that EPA sent to Ameren on September 29.[7] According to the updated information provided by EPA, each of these documents appears to relate to an important issue in this case, such as the routine maintenance, repair, and replacement (RMRR) exclusion, the Missouri State Implementation Plan (SIP), or emissions calculation methodologies, the only asserted privilege is attorney-client privilege (except for one claim of work product protection), and none of these documents appears to have involved an attorney. (*See* Ex. 7.) To the extent these documents contain any privileged information, the privileged information can be redacted and the non-privileged information produced. Because EPA has failed to meet its burden in establishing the attorney-client privilege

---

[6] EPA cites to the parties' correspondence regarding the logging of certain categories of documents. (ECF #365 at pp. 3-4). But the parties never agreed that EPA could leave privilege log data fields blank for documents lacking metadata. Contrary to EPA's contention, Ameren expressly conveyed an understanding "that the parties privilege logs will contain data from and organized in the following fields," including the date, filename, author, recipient, etc. (ECF #365-2 at p. 3.) And EPA specifically agreed to follow this protocol and provide this information on its privilege log. (Ex. 8, May 13, 2014 E-mail from A. Hanson to J. More.) But EPA has failed to adhere to the parties' agreement and omitted this required information from its privilege log.

[7] To the extent that EPA asserts that it is "willing to confer" on these 23 documents, or any other issues related to the remaining disputes set forth in this reply, Ameren will participate in good faith. EPA waited until Monday night, September 29, to provide a spreadsheet to Ameren reflecting EPA's revised privilege positions regarding over 1,000 documents. Ameren has analyzed that new information as quickly as possible to narrow the issues in dispute for purposes of filing this reply by today's (Friday) deadline. As noted above, if EPA changes it position with respect to any of the remaining disputes, Ameren will promptly notify the Court.

or work product protection, these documents should be produced. *See, e.g.*, *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977). At a minimum, EPA should submit these documents for *in camera* review.

## III. CONCLUSION

For the reasons discussed above, Ameren respectfully requests an order compelling EPA to produce, or at a minimum to provide for *in camera* review:

1. The nine documents identified above in Category 1;

2. The 428 documents discussed in Category 2, which have been withheld solely under the work product doctrine, relate specifically to the issues in this lawsuit against Ameren, and pre-date February 18, 2010;

3. The 41 documents identified above and in Ameren's opening brief in Category 3 plus the four documents subject to EPA's new deliberative process privilege claims asserted on October 1 (for a total of 45 documents in Category 3); and

4. The 23 documents identified in Exhibit 7 that fall in Category 4.

Dated:  October 3, 2014                              Respectfully submitted,

/s/ Matthew B. Mock

Ronald S. Safer (*pro hac vice*)
Patricia Brown Holmes (*pro hac vice*)
Renee Cipriano (*pro hac vice*)
Steven J. Bonebrake (*pro hac vice*)
Matthew B. Mock (*pro hac vice*)
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 6600
Chicago, Illinois 60606
(312) 258-5500
Fax:  (312) 258-5600

James J. Virtel
ARMSTRONG TEASDALE LLP
7700 Forsyth Boulevard Suite 1800
St. Louis, Missouri  63105
(314) 621-5070
Fax: (314) 612-2298

11

jvirtel@armstrongteasdale.com
*Counsel for Defendant Ameren Missouri*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

>Andrew C. Hanson
>Bradford T. McLane
>Nigel B. Cooney
>Environmental Enforcement Section
>Environment and Natural Resources Division
>U.S. Department of Justice
>P.O. Box 7611
>Washington, DC  20044-7611
>Telephone:  (202) 305-0544
>Facsimile:  (202) 616-6584
>andrew.hanson2@usdoj.gov
>bradford.mclane@usdoj.gov
>nigel.cooney@usdoj.gov

>Suzanne J. Moore
>Andrew J. Lay
>United States Attorney's Office
>Eastern District of Missouri
>Thomas Eagleton U.S. Courthouse
>111 South 10th Street, 20th Floor
>St. Louis, MO 63102
>Telephone:  (314) 539-2547
>Facsimile:  (314) 539-2309
>suzanne.moore@usdoj.gov
>andrew.lay@usdoj.gov

/s/ Matthew B. Mock