**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 4:11-cv-00077-RWS |
| AMEREN MISSOURI, | ) ) | Honorable Rodney W. Sippel |
| Defendant. | ) ) ) | |

**PLAINTIFF'S SURRESPONSE IN OPPOSITION TO AMEREN'S SURREPLY ADDRESSING ISSUES REGARDING UARG THAT WERE RAISED DURING DECEMBER 11 HEARING**

Ameren continues to withhold each and every communications between Utility Air Regulatory Group ("UARG") and Ameren within Ameren's possession, notwithstanding the fact that many such documents are not entitled to protection under the attorney-client privilege, the work product privilege, or the common interest doctrine. The withheld documents likely inform Ameren's fair notice defense and shed light on whether Ameren "had actual or constructive knowledge and/or understanding of the interpretation" of the NSR regulations that are at issue. *United States v. Duke Energy Corporation*, 214 F.R.D. 383, 385 (M.D.N.C. 2003). As explained herein, the United States respectfully requests that this Court order the production documents identified in Ameren's categories 2 & 3 or, in the alternative, conduct an *in camera* review of such documents.[1]

---

[1] The United States is not seeking documents in Ameren's first category to the extent that they provide legal advice concerning "rulemaking and relating litigation in which H&W represented UARG." Ameren's Surreply, ECF No. 468 at 7. We agree that such documents are likely

1

I. **Attorney-Client Privilege Does Not Shield All Communications from Disclosure**

   a. <u>An Attorney-Client Relationship Does Not Exist between Hunton & Williams and Ameren</u>

Ameren has not argued that an attorney-client relationship exists between Ameren and Hunton & Williams.[2]  Such a relationship is a fundamental element of the attorney-client privilege that must be present in order for the privilege to attach.  *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601-602 (8th Cir. 1977).  Absent an attorney-client relationship, the attorney-client privilege cannot apply.  *See Ryobi N.Am., Inc. v. Union Elec. Co., Inc.*, 7 F. Supp.2d 1019, 1020 (E.D. Mo. 1998).

Rather than addressing the required elements of the attorney-client privilege, Ameren instead attempts to hide behind UARG's amorphous structure.  As explained in the United States' briefs, the case law unambiguously states that communications between a trade association's attorney and that association's individual members is not automatically privileged.  *See* United States' Reply, ECF No. 424 at 10.  An independent attorney-client relationship must exist between the association's attorney and an individual member in order for communications to enjoy protection.  *Id*.  Ameren argues this case law does not apply here because, Ameren claims, UARG is an *unincorporated association*, rather than a *trade association*.  Ameren's argument presents a distinction without a difference.

---

privileged, and would not have sought them had Ameren provided the required privilege log in a timely manner.  However, documents in Ameren's categories 2 & 3, based on the descriptions Ameren has provided, are not privileged.  They do not include legal advice based on specific facts, but rather include general educational materials and updates on developments in the NSR enforcement initiative and the meaning of the NSR regulations.

[2] Hunton & Williams provides legal services to UARG, not Ameren, in support of UARG's mission to challenge NSR rulemaking.  The advice is not provided to Ameren in support of its defense of this, or any, case-specific litigation.  *See* Surreply at 7 ("UARG's counsel, Hunton & Williams provides nothing other than legal advice and services to the <u>Group</u>…provide legal advice <u>to UARG</u>…performs legal advice <u>for UARG</u>…") (emphasis added).

2

The definition of a trade association is "an association of tradesmen, business men, or manufacturers in a particular trade or industry for the protection and advancement of their common interests." *Merriam-Webster's Third New International Dictionary* 2422 (Philip Babcock Gove et al., eds. 2002); *see also* Black's Law Dictionary 49 (2nd Pocket Edition, 2001) ("Trade association [is an] association of business organizations having similar concerns and engaged in similar fields, formed for mutual protection, the interchange of ideas and statistics, and the establishment and maintenance of industry standards."). There can be no question that UARG's functions place it squarely within this broad definition of a trade association. Notwithstanding this fact, whether one refers to UARG as a "trade association" or an "unincorporated association" is inconsequential. The fact is, like other trade associations, UARG consists of a group of businesses that have come together to facilitate the advancement of their common interests. *See* Ameren's Surreply, ECF No. 468 at 5. Ameren has presented no compelling reason why UARG should be treated any differently than other similarly situated associations under the applicable law.

Indeed, the case law clarifies that there must be an independent attorney-client relationship between a trade association's attorney and each individual association member in order for an attorney-client privilege to attach. *See e.g., Robinson v. Tex. Auto Dealers Ass'n*, 214 F.R.D. 432, 451-54 (E.D. Tex. 2003); *United States v. Am. Soc. of Composers*, 129 F. Supp.2d 327, 337 (S.D.N.Y. 2001); *United States v. Duke Energy Corp.*, 2012 WL 1565228 *10-11 (M.D.N.C. April 30, 2012). Mere representation of a trade association does not automatically create an attorney-client relationship with individual members of that association. *United States v. Am. Soc. of Composers*, 129 F. Supp.2d at 337. Where an association's bylaws expressly

3

prohibit an attorney-client relationship absent an independent agreement, no such relationship exists. *Id.*

In *Robinson*, the district court ordered production of communications between a trade association's attorney and individual trade association members because, it determined, an attorney-client relationship did not exist between that attorney and each individual member. *Robinson,* 214 F.R.D. at 451-54. That court found that, although both the association's counsel and the association members believed an attorney-client relationship existed, the defendants had "failed to demonstrate that all [association] members were or sought to become [the association attorney's] clients at the time the[] communications were made." *Id.* at 452. Likewise, in *United States v. American Society of Composers*, 129 F. Supp.2d at 337, the district court determined that counsel for the American Society of Composers did not have an attorney-client relationship with an association member. That court based its determination on the fact that, like in the present case, the association's articles of incorporation included a provision stating that its counsel acts only on the association's behalf in all proceedings. *Id.* at 336.

The facts presented in *Robinson* and *American Society of Composers* are analogous to the facts at issue in the present dispute. Like in *Robinson*, there is no attorney-client relationship between the association's counsel, Hunton & Williams, and each individual UARG member. Moreover, like in *American Society of Composers*, UARG's bylaws expressly state that an attorney-client relationship does not exist between UARG and its individual members, absent a separate agreement establishing such a relationship. *See* April 4, 2003 Hearing Transcript, ECF No. 424-8, at 44-56. Under these plain facts, the attorney-client privilege cannot shield documents from disclosure once they have been distributed to those individual members.

4

> b. <u>Even if an Attorney-Client Relationship Exits, Documents That Address Ameren's Categories 2 & 3 Are Not Entitled To Blanket Protection</u>

UARG claims that its "primary purpose" is a narrow one – "to engage in EPA rulemaking under the Clean Air Act, and to participate in the resulting litigation." Ameren's Surreply, ECF No. 468 at 4.  According to Ameren, UARG is not a "group formed to promote the businesses of its members [or] to improve their services to clients." *Id.* at 2.  If Ameren's representations are accurate, how can it be that Ameren may withhold general educational information, distributed to its entire membership, that goes far beyond UARG's purported mission to challenge rulemaking and pursue related litigation?  It cannot.

Ameren now reports that it has withheld documents that provide updates to UARG members concerning "developments in the NSR enforcement initiative against electric utilities," and "the meaning, interpretation and application of the NSR regulations." Ameren Surreply, ECF No. 468 at 7.  Ameren has repeatedly emphasized that UARG does not serve a general educational purpose, does not distribute general memoranda or information material, and does not engage in trade association activities – presumably because all such communications would be non-privileged.  *See* Ameren Surreply, ECF No. 468 at 4; UARG Amicus, ECF No. 413 at 5. But that position is belied by the findings of the Middle District of North Carolina, and Ameren's own categorization of the withheld documents.  *See United States v. Duke Energy Corp.*, 214 F.R.D. 383, 391 (M.D.N.C. 2003). These category 2 and 3 documents, as Ameren has now labeled them, appear to contain general information, of the type the United States seeks through its Motion, and should not receive blanket protection from production.

Even crediting all of Ameren's assertions about UARG's role in challenging rulemakings, these non-rulemaking documents are not within the scope of the representation that UARG touts as providing to its members, and therefore cannot be withheld from production

5

under the attorney-client privilege.  *See Ayers Oil Co. v. Am. Bus. Brokers*, 2009 WL 4725297, *2-3 (E.D. Mo. 2009).  They do not pertain to specific rulemaking and rulemaking challenges, the primary purpose of UARG, according to Ameren.  Ameren's Surreply, ECF No. 468 at 4.  Instead, the documents generally address NSR enforcement and the meaning of NSR regulations.  Because these mailings are outside of the scope of Hunton & Williams' representation of UARG, it cannot be fairly said that individual UARG members have solicited legal advice on these matters.  *See Salem Fin. Inc. v. United States*, 102 Fed. Cl. 793,800 (2012) ("an unsolicited legal memorandum from an attorney to a member of a trade association may be a good example of purely legal advice not protected"); *State ex rel. Great Am. Ins. Co. v. Smith*, 574 S.W.2d 379 (Mo. 1978) ("matters other than those for which the attorney has been employed, the privilege does not apply").  If anything, the documents in Ameren's category 2 and 3 extend far beyond the limited scope of legal services Hunton & Williams apparently provides to UARG to matters about which Ameren could have never sought legal advice from UARG given UARG's limited purpose.

In fact, there has been no suggestion by Ameren that these communication disclose any confidential facts received from Ameren by UARG, as required in order for the attorney-client privilege to attach.  *See In re Beiter Co.*, 16 F.3d 929, 940-41 (8th Cir. 1994) citing *Upjohn v. United States*, 449 U.S. 383, 395-96 (U.S. 1981).  As Judge Eliason determined, UARG "does not appear to make actual applications to a client who has sought representation and has presented specific facts in regard to that palpable legal problem."  *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 391 (M.D.N.C. 2003); *Navigators Mgmt. Co. v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 465586, at *3 (E.D. Mo. Feb. 24, 2009) ("company cannot claim attorney-client privilege over facts conveyed to them by its attorneys which the attorneys learned from an

6

independent source."). If there is limited privileged information contained within these documents, such information could be redacted to maintain any privilege that may exist. *See generally Republic of Ecuador v. Hinchee*, 714 F.3d 1185 (11th Cir. 2013). These types of generic legal memoranda, devoid of specific facts provided by a client seeking legal advice, are not entitled to protection and should be produced. *See In Re Brand Name Prescription Drugs*, 1995 WL 663684, at *4 (N.D.Ill. Nov. 6, 1995) (for memoranda between a trade associations counsel and its members to be privileged, proponent must show that the documents reveal confidential information provided by client).

      c. <u>Any Privilege Was Waived Where Communication Where Circulated Beyond UARG Representatives to Ameren Employees</u>

Ameren claims that any privilege that may exist between Hunton & Williams and UARG is not destroyed when UARG's representatives convey the information received in their capacity as a UARG representative to their respective corporations. On the contrary where such communications are disseminated beyond UARG to Ameren employees, whether in writing or during oral discussions, a waiver of the privilege has occurred. During the December 11 hearing, the Court rightly noted that if UARG members seek counsel from Hunton & Williams by way of their interest solely as a member of UARG, such a communication may be protected. *See* Hearing Transcript, Dec. 11, 2014, at 23. However, in the present circumstance, no such scenario exists. *See* Whitworth Supplemental Decl., ECF 466-1 at 2 (explaining his "capacity as a representative of Ameren"). Mr. Whitworth does not "hold a position at UARG and seek counsel" regarding UARG's activities, rather he "attends [UARG] meetings…on behalf of Ameren and then distributes that information back at Ameren." Hearing Transcript, Dec. 11, 2014, at 23.

7

Additionally, Ameren claims that circulation of UARG materials to Ameren employees does not destroy any privilege because those documents were only circulated to "need-to-know" individuals. However, Ameren failed to carry its burden of applying the modified *Harper & Row* analysis, from which the "need to know" prong that Ameren cites is derived. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977). Specifically, Ameren must establish that:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, <u>because of the corporate structure</u>, need to know its contents.

*Id*. at 609 (emphasis). Ameren must carry its burden on all five factors of the test – most importantly, for our purposes, Ameren must establish that the material at issue was "not disseminated beyond those persons who, because of the corporate structure, need to know its contents." *Id*. For this category of documents, even assuming they are privileged (and they are not, as described in sections I.a and I.b, *infra*), Ameren has not carried its burden to show that the recipient of these communications, including plant managers at various Ameren plants, needed to know the contents of the communications because of Ameren's corporate structure.

## II. Common Interest Doctrine Does Not Apply To Shield All Documents from Production

Any privilege that may have attached to communications between Hunton & Williams and Ameren was waived when Hunton & Williams copied other UARG members on such communications. Ameren argues that no such waiver occurred because "Ameren had a common interest with other UARG members." Ameren's Surreply, ECF No. 468 at 11. However, Ameren relies on empty assertions about the broad nature of EPA's NSR investigations of the

8

utility industry, as a whole, and the notion that many UARG members have been subject to such investigations. The common interest doctrine is not so broad.

The purpose of the common interest doctrine is to "protect the free flow of information from client to attorney…whenever multiple clients share a common interest about a legal matter." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989). Specifically, the shared common interest in question should relate to a specific "litigated or non-litigated matter." *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir. 1997). The shared interest cannot be a generalized commercial or regulatory interest, as Ameren may share with other UARG members. *See Bowman v. Brush Wellman, Inc.*, 2001 WL 1098056, *3 (N.D. Ill. Sept. 13, 2001). Rather, the courts have indicated that specific litigation or dispute must be at issue for the doctrine to apply. *See Green Edge Enterprises, LLC v. Rubber Mulch*, LLC, 2006 WL 2623855, *1 (E.D. Mo. Sept. 12, 2006) (common interest doctrine may apply "where the third party shares a common interest in the outcome of <u>the litigation</u>…") (emphasis added); *Ayers Oil v. Am. Bus. Brokers*, 2009 WL 4725297, *2 (E.D. Mo. Dec. 2, 2009) ("two separate clients, who are represented by separate attorneys, who share an identical legal interest, and who agree to exchange information regarding <u>the matter</u>) (emphasis added); *John Morrell v. Local Union*, 913 F.2d 544 (8th Cir. 1990) (finding that a joint defense privilege existed where two parties shared a joint defense agreement and were aligned on the same side of two matters that arose out of the same set of facts). In rare instances where the third party is not a co-party, courts have found that it should play a significant role in the litigation at issue. *See e.g., Argenyi v. Creighton Univ.*, 2011 WL 3497489 at *2 (D. Neb. Aug. 10, 2011) (finding common interest doctrine to apply because third party "played a relatively significant role in this lawsuit").

9

Ameren cites *In Grand Jury Subpoena* in support of its position that any privilege that did exist was not waived. However, in that case, the Eighth Circuit applied a narrow construction of the common interest doctrine in its finding that the common-interest doctrine did not apply. *See* 112 F.3d at 922-23 (8th Cir. 1997). Like in *In Re Grand Jury Subpoena*, Ameren's interest in this litigation – to avoid NSR applicability – does not align with the general interests of UARG membership – which, according to Ameren, is to challenge EPA rulemaking and rulemaking related litigation. The common interest requirement cannot be satisfied by a general anticipation of enforcement-related litigation across the entire utility industry.

Even after Ameren's surreply, Ameren failed to demonstrate what common interest UARG or its members have in the outcome of this enforcement action against Ameren. Merely because some UARG members share the common experience of being subject to EPA investigation and enforcement does not mean that they meet the Eighth Circuit's narrowly construed common interest standard.[3]

### III. Work Product Privilege Does Not Apply To Shield All Communications Between UARG and Ameren from Disclosure.

Contrary to Ameren's contention, the work product privilege does not come into play merely because there's a remote prospect of future litigation. In order to benefit from that protection, Ameren must show that the communications in question were prepared "after a specific threat of litigation became palpable." *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, 2012 WL 1389708, at *4 (E.D. Mo. April 23, 2013). Ameren argues that "the vast majority

---

[3] Ameren has asserted that it shares a joint defense or common interest with UARG and its other members. However, Ameren has not claimed to share an agreement memorializing that relationship with UARG, despite the fact that, according to Ameren's own declaration, it does share such an agreement with at least one other similar industry trade association. *See* ECF No. 402-2, Decl. of Steven Whitworth at 6.

[of documents] were prepared in connection with ongoing or anticipated litigation" and "[b]ecause almost every EPA rulemaking under the Clean Air Act results in a judicial challenge, all of the communications regarding the rulemakings were made in anticipation of litigation." Ameren's Surreply, ECF No. 468 at 13; Ameren's Response, ECF No. 402, at 14.  While Ameren's argument may hold water with regard to its category 1 documents prepared in anticipation of rulemaking challenges, documents in Ameren's categories 2 and 3 cannot fairly be said to have been prepared in anticipation of any specific litigation.

Updates on pending litigation that may be of interest to a non-party is not protected work product.  *See generally In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 924 (8th Cir. 1997) ("we know of no authority allowing a client…to claim work product immunity for materials merely because they were prepared while some other person…was anticipating litigation.").  Law firms and trade associations write and distribute general summaries of litigation that may be of interest to their readers, but such documents are not prepared in preparation of a specific adversarial proceeding.  *Id.* at 924 (work product applies where "attorney was preparing for or anticipating some sort of adversarial proceeding involving his or her client").  That these types of documents may be prepared by an attorney does not cloak them with work product protection.  *See In re Advanced Pain Centers Poplar Bluff v. Ware*, 2014 WL 1315582 (E.D. Mo. Mar. 31, 2014).  Thus, Ameren cannot claim that fact-based documents that serve UARG's educational purpose to disseminate general information to its membership are privileged.

As is evident by Ameren's own description of categories 2 and 3, these documents are general fact-based documents that describe developments in the NSR enforcement initiative and the meaning of NSR rules.  *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 391 (M.D.N.C.

11

2003). Neither Hunton & Williams nor UARG represents UARG or its members, including Ameren, in specific NSR enforcement matters or in litigation concerning the meaning of NSR rules. These documents were not drafted with an eye towards any "agreed common shared litigation interest" because, in UARG's case, any shared interest UARG's members may have does not extend to case specific NSR enforcement litigation.

IV. Conclusion

For the foregoing reasons, the United States requests that this Court grant the United States' motion to compel production, with regard to Ameren's categories 2 and 3, or conduct an *in camera* review of such documents.

    Respectfully submitted,

    JOHN C. CRUDEN
    Assistant Attorney General
    Environment and Natural Resources Division

    <u>s/Claire H. Woods</u>
    Andrew C. Hanson
    Bradford T. McLane
    Elias Quinn
    Claire H. Woods
    Trial Attorneys
    Environmental Enforcement Section
    Environment and Natural Resources Division
    U.S. Department of Justice
    P.O. Box 7611
    Washington, DC 20044-7611
    Telephone: (202) 305-0402
    Facsimile: (202) 616-6584
    claire.woods@usdoj.gov

        Suzanne Moore
Andrew Lay
Assistant United States Attorneys
United States Attorney's Office
Eastern District of Missouri
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone: (314) 539-2547
Facsimile: (314) 539-2309
E-mail: Suzanne.Moore@usdoj.gov

OF COUNSEL:
SEEMA KAKADE
Attorney-Advisor
U.S. EPA, Air Enforcement Division
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

ALEX CHEN
Senior Counsel
Office of Regional Counsel
U.S. EPA, Region 7
11201 Renner Blvd.
Lenexa, KS 66219

## CERTIFICATE OF SERVICE

      I hereby certify that on January 23, 2015, I served the foregoing with the Clerk of Court using the CM/ECF system, which will cause an electronic copy to be served on counsel of record, who are listed below:

                                  Ronald S. Safer (pro hac vice)
                                  Patricia Brown Holmes (pro hac vice)
                                  Renee Cipriano (pro hac vice)
                                  Steven J. Bonebrake (pro hac vice)
                                  Matthew B. Mock (pro hac vice)
                                  Schiff Hardin LLP
                                  233 South Wacker Drive Suite 6600
                                  Chicago, Illinois 60606
                                  Phone: (312) 258-5500
                                  Fax: (312) 258-5600

                                  James J. Virtel
                                  Armstrong Teasdale LLP
                                  7700 Forsyth Boulevard Suite 1800
                                  St. Louis, Missouri  63105
                                  Phone: (314) 621-5070
                                  Fax: (314) 612-2298
                                  jvirtel@armstrongteasdale.com

                                  *Counsel for Defendant Ameren Missouri*

    s/Claire H. Woods
    Claire H. Woods