UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  4:11 CV 77 RWS |
| | ) | |
| AMEREN MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff the United States of America, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), filed this suit against defendant Ameren Missouri ("Ameren") on January 12, 2011.  EPA alleges that Ameren committed various violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, the Missouri State Implementation Plan, and Ameren's Rush Island Plant Title V Permit when it allegedly undertook major modifications at the Rush Island Plant in Festus, Missouri without obtaining the requisite permits.

This matter is before me on EPA's motion to strike the jury demand.  In addition to seeking equitable and injunctive relief, EPA also originally sought civil penalties from Ameren.  On November 30, 2015, EPA filed a notice waiving its demand for civil penalties against Ameren stating that "During the remedy phase and in all other phases of this action, Plaintiff United States will seek only equitable and injunctive relief from the Court to redress the foregoing Clean Air Act violations."  *See* ECF [#696].  EPA then filed the current motion to strike the jury demand, which Ameren opposes.  The issues are fully briefed and ready for review.  After careful consideration, I will grant EPA's motion to strike the jury demand.

**Legal Standard**

There is no statutory right to a trial by jury in the Clean Air Act. As a result, any right to a jury trial in this action must be found in the Seventh Amendment to the United States Constitution. Fed. R. Civ. P. 38(a). The Seventh Amendment provides "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . ." U.S. CONST. AMEND. VII. The United States Supreme Court has "construed this language to require a jury trial on the merits in those actions that are analogous to 'Suits at common law.'" *Tull v. United States*, 481 U.S. 412, 417, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987).

The Supreme Court has set out a two-part inquiry "to determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty." *Id.* First, courts "must compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* Second, courts must "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18, 107 S.Ct. 1831. The Supreme Court has stressed that the second part of the test is more important. *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).

Legal remedies, which do convey a right to a jury trial, include "[r]emedies intended to punish culpable individuals," which "were issued by courts of law, not courts of equity." *Tull*, 481 U.S. at 421. Actions for civil penalties, for example, are generally legal in nature. By contrast, equitable remedies include "those intended simply to extract compensation or restore the status quo." *Id.* Equitable remedies include, for example, restitution and most forms of injunctive relief. In the context of New Source Review actions, mitigation of the environmental

harm caused by the defendant's violations is commonly awarded as a form of equitable relief. *See United States v. Cinergy Corp.*, 582 F. Supp. 2d 1055, 1061 (S.D. Ind. 2008); *United States v. Westvaco*, slip opinion, No. 00-2602 (D. Md. Feb. 26, 2015). When relief "goes beyond remedying the damage caused to the harmed parties by the defendant's action," however, it is properly viewed as punitive and therefore legal in nature. *Johnson v. Securities and Exchange Commission*, 87 F.3d 484, 488 (D.C. Cir. 1996).

## Background

EPA alleges that Ameren violated the Clean Air Act and related regulations when it made "major modifications" to its Rush Island plant without first obtaining New Source Review ("NSR") Prevention of Significant Deterioration ("PSD") Permits. EPA further alleges that, had Ameren obtained PSD permits, it would have had to install state-of-the-art pollution controls ("BACT") at both Rush Island units at the time of modifications. These pollution controls, in turn, would have dramatically reduced Sulfur Dioxide (SO2) emissions from Rush Island. EPA contends that, should this case reach the remedy phase, it will show that "Ameren's illegal, excess emissions have resulted in a significant number of premature deaths and thousands of other health impacts each year." Accordingly, EPA's prayer for relief seeks an order requiring Ameren to install state-of-the-art scrubbers at Rush Island and to comply with other permitting requirements. Because this relief, however, would not redress the excess pollution Ameren allegedly already emitted in the years following the modifications, EPA also seeks relief that it claims will remediate and offset that harm by reducing pollution affecting the same area as Rush Island.

The remaining forms of relief sought by EPA in this action are:

1. Permanently enjoin the Defendant from operating the Rush Island Plant except in accordance with the Clean Air Act and any applicable regulatory requirements;

2.      Order the Defendant to apply for and comply with permits for the Rush Island Plant that are in conformity with the requirements of the PSD program, the Missouri SIP, and with the federal and Missouri Title V programs;

3.      Order the Defendant to remedy its past and ongoing violations by, among other things, requiring Defendant to install and operate BACT at the Rush Island Plant to control emissions of SO2;

4.      Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and report the results of these audits to the United States;

5.      Order Defendant to surrender emission allowances or credits to offset and mitigate its illegal emissions;

6.      Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above.

EPA's Third Amd. Compl., [#249] at 24-25.

## Discussion

Ameren argues that the relief sought in categories 4, 5, and 6 of the complaint are legal, not equitable, and therefore it still has a right to a jury trial.  EPA disagrees, and contends that these categories of relief are properly categorized as equitable relief.  Additionally, EPA argues that I can rely on its representation that it will only seek equitable relief to hold that no right to a jury trial remains.

After a careful review of the parties' arguments and the authorities, I conclude that the relief sought by EPA is equitable in nature.  As a result, there is no right to a jury trial and EPA's motion to strike the jury demand will be granted.

### A.  Category 5 Relief

Category 5 seeks an order requiring Ameren to surrender emissions allowances or credits in the event liability is found.  Emissions allowances are regulatory credits created by various

Clean Air Act regulatory programs.  Under the applicable regulatory scheme, sources are allocated allowances to use for compliance purposes.  Allowances are tradeable and give sources rights to emit a certain amount of pollution for a specified year.

Ameren argues that ordering allowance surrenders is legal, not equitable, relief because it does not preserve or restore the status quo; it does not mitigate or remedy the alleged harm; and it is not restitutionary.  Rather, Ameren argues that the relief is legal in nature because it requires Ameren to effect a property transfer to EPA and is too far removed from the specific harm that is alleged.  This argument is mostly based on the fact that the PSD program does not provide for emissions allowances, so EPA would be asking Ameren to surrender emissions allowances it obtained under other Clean Air Act programs, such as the Acid Rain program, for harm caused by alleged PSD violations.  Ameren argues that a surrender of allowances is not restitutionary because restitutionary relief is based on the recovery of an undue gain.  Here, Ameren claims that it did not "gain" the emissions allowances because of any issue in this case – they were received under separate regulatory schemes.

As EPA counters, however, the surrender of emissions allowances can and, in this case, should, qualify as mitigation, as well as possibly restitution.[1]  In the event liability is found, and depending on the evidence at the remedy phase, ordering Ameren to surrender certain of its allowances could restore the status quo by reducing the total amount of pollution in the affected area.  Such relief would mitigate the harm EPA alleges was caused by Ameren's failure to obtain PSD permits and install BACT on Rush Island Units 1 and 2 – an excess of pollution in the region.  That is equitable relief.  Indeed, the two other courts to address the propriety of ordering

---

[1] It is possible that allowance surrenders could be appropriate restitution if, for example, it was shown that Ameren received more allowances that it would have had it obtained the PSD permits, installed BACT, and potentially had lower emissions.

emissions allowance surrenders in the PSD context have found that such relief may be proper remediation.  *See Cinergy*, 618 F. Supp. 2d 942, 967 (S.D. Ind. 2009) (requiring defendant to surrender emissions allowances as a proper "remediation"); *see also Westvaco*, slip opinion, No. 00-2602 at 33 (D. Md. Feb. 26, 2015).[2]

Of course, it is important to stress that the question of whether such relief would be proper equitable relief is wholly speculative at this point, and resolution of that question would depend not only on a finding of liability but also the evidence and arguments made at the remedy phase.  EPA represents that it will not seek relief that crosses the line from injunctive or equitable relief to legal or punitive relief, and I can hold them to that.  *See* [#696] at 1; [#701] at 1; *see also Chevron Corp. v. Donziger*, No. 11 CIV. 0691 LAK, 2013 WL 5526287, at *2 (S.D.N.Y. Oct. 7, 2013) (a party's "unequivocal commitment" to only seek equitable relief "is the end of the matter").  As a result, Ameren's argument that the surrender of emissions credits could be properly characterized in as legal relief in certain contexts is irrelevant because such relief will not be awarded in this case.

B. Category 6 Relief

In Category 6, EPA asks me to order Ameren "to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the Clean Air Act alleged above."  EPA's Third Amd. Compl. at 25.  Ameren claims that counsel for EPA told Ameren over the phone that it will seek the implementation of "Supplemental Environmental Projects" ("SEPs") under this category.  SEPs are projects that defendants in past Clean Air Act settlements have agreed to undertake, such as the Installation of

---

[2] These holdings are also consistent with EPA's definition of mitigation as "injunctive relief . . . to remedy, reduce or offset . . . harm caused by the alleged violations."  November 14, 2012 EPA Memo at 2. Available at http://www.epa.gov/sites/production/files/2013-10/documents/2ndeditionsecuringmitigationmemo.pdf

Electric Vehicle Charging Infrastructure project. *See U.S. v. Duke Energy Corp.*, No. 1:00-cv-1262 (M.D.N.C. Oct. 20, 2015).

This argument is effectively moot because EPA represents that it never stated it will seek the implementation of SEPs, nor will it. The issue is also irrelevant. As EPA points out, SEPs are by definition projects agreed to in a settlement; they are not a remedy that courts would award in a contested case. Moreover, a simple reading of the language of the relief sought in Category 6 makes it clear that the relief EPA seeks is merely a catch-all for EPA to seek mitigation relief. As stated above, mitigation that remedies the past harm is relief that is equitable in nature. *See, e.g., U.S. Public Interest Research Group v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23, 31 (1st Cir. 2003) ("court may grant additional injunctive relief governing post-permit operations of the companies *insofar as the court is remedying the harm caused by their past violations*.") (emphasis in original); *see also supra* note 2, EPA's Mitigation Memo.

### C. Category 4 Relief

In Category 4, EPA seeks an order that Ameren "conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and report the results of these audits to the United States." EPA's Third Amd. Compl. at 25. Ameren briefly argues that this relief is legal in nature because EPA probably already knows what the audit will show, that therefore there is no regulatory basis for ordering such relief, and as a result the relief is punitive in nature. Ameren's conclusory and unsupported assertions are without merit. And ordering injunctive relief compelling Ameren to comply with the Clean Air Act, conduct audits to ensure such compliance, and report its compliance to EPA clearly fits within any historic or current notion of equitable relief. *See, e.g., Cinergy*, 582 F.Supp. 2d 1055, 1058 (discussing the equitable nature of relief that seeks to

"enforce compliance with the Act" and "give effect to its purposes") (quoting *Porter v. Warner Holding Co.*, 328 U.S. 395, 400 (1946).

## Conclusion

For the reasons stated above, I conclude that the relief EPA seeks is "intended simply to extract compensation or restore the status quo" and is therefore equitable in nature under the standards of *Tull v. United States*. 481 U.S. at 421.  Additionally, EPA has represented that it will only seek "equitable and injunctive relief."  In the event EPA establishes liability and this case proceeds to a remedy phase, I will be in a position to ensure that the only relief sought – and awarded – is equitable in nature.  As a result, there is no right to a jury trial and I will grant EPA's motion to strike the jury demand.  U.S. CONST. AMEND. VII; Fed. R. Civ. Pro. 38(a), 39.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Strike Jury Demand #[702] is **GRANTED**.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2016.