# Exhibit A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| and | )<br>)    Case No. 4:11 CV 77 RWS<br>) |
| **SIERRA CLUB,** | )    [PROPOSED] COMPLAINT IN<br>)    INTERVENTION |
| **Plaintiff-Intervenor** | )<br>) |
| v. | )<br>) |
| **AMEREN MISSOURI,** | )<br>) |
| **Defendant.** | )<br>) |

## INTRODUCTION

1.  Plaintiff-Intervenor Sierra Club brings this complaint against Union Electric Company d/b/a Ameren Missouri ("Defendant" or "Ameren") for violations of the Clean Air Act ("CAA" or "the Act"), 42 U.S.C. §§ 7401 *et seq.*, at the Rush Island Plant in Festus, Missouri. Pursuant to Sections 113 and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, Sierra Club seeks injunctive relief for violations of: (a) the New Source Review ("NSR"), Prevention of Significant Deterioration ("PSD") provisions of the CAA, 42 U.S.C. §§ 7470-92 and applicable implementing regulations; (b) the federally approved and enforceable Missouri State Implementation Plan ("Missouri SIP"); (c) Title V of the Act, 42 U.S.C. §§ 7661-7661f; (d) federal regulations implementing Title V of the Act at 40 C.F.R. Part 70; and (e) Missouri's federally approved Title V program, 10 C.S.R. 10-6.065.

1

2.     Ameren performed major modifications of the Rush Island Plant in violation of the CAA. Ameren failed to obtain the required permits for these multi-million dollar modifications. Nor did Ameren install and operate state-of-the-art air pollution controls, as the law requires, including the best available control technology ("BACT") to reduce emissions of sulfur dioxide ("$SO_2$").

3.     As a result of Ameren's operation of the Rush Island Plant following these unlawful modifications, significant amounts of $SO_2$ pollution have been, and continue to be, released into the air. The Rush Island Plant ranks among the largest sources of air pollution in Missouri and the nation, emitting tens of thousands of tons of $SO_2$ each year. These emissions harm public health and the environment, contributing to premature mortality, asthma attacks, acid rain and other adverse effects in downwind communities and natural areas.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this action pursuant to Sections 113(b) and 167 of the Act, 42 U.S.C. §§ 7413(b) and 7477, and pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1395(a). This Court has jurisdiction over Sierra Club's claims pursuant to 42 U.S.C. § 7604(b)(1)(B).

5.     Venue is proper in this District pursuant to Sections 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) because the violations which constitute the basis of this Third Amended Complaint occurred in this District and the Rush Island Plant is operated by Defendant in this District.

## NOTICES

6.     On May 27, 2011, the United States Environmental Protection Agency ("U.S. EPA") issued an amended Notice of Violation ("NOV") to Defendant pursuant to Section

113(a)(l) and (b)(l) of the Act, 42 U.S.C. §§ 7413(a)(l) and (b)(l), and provided a copy of the amended NOV to the State of Missouri. U.S. EPA previously issued the NOVs to Defendant on October 14, 2010 and January 26, 2010 and provided a copy of these NOVs to the State of Missouri.

7.  The 30-day period between issuance of the NOV and commencement of a civil action, required under CAA Section 113, 42 U.S.C. § 7413, has elapsed.

8.  The United States of America ("United States"), acting on behalf of the Administrator of the U.S. EPA, has provided notice of the commencement of this action to the State of Missouri, pursuant to Section l 13(b) of the Act, 42 U.S.C. § 7413(b).

## AUTHORITY

9.  Authority to bring this action is vested in the Attorney General of the United States by CAA Section 305, 42 U.S.C. § 7605, and pursuant to 28 U.S.C. §§ 516 and 519.

10.  Sierra Club brings this Complaint in Intervention pursuant to 42 U.S.C. § 7604(b)(1)(B), which provides Sierra Club an unconditional right of intervention when the U.S. EPA or a State has commenced an enforcement action for claims against any person who is alleged to have violated or be in violation of an "emissions standard or limitation" under the Clean Air Act. *See* 42 U.S.C. § 7604(a)(1). The claims asserted in the United States' Third Amended Complaint allege violations of emissions standards or limitations found in the Missouri SIP and Rush Island's Title V permit. 42 U.S.C. § 7604(f).

## DEFENDANT

11.  Defendant Ameren is a Missouri corporation. Defendant's incorporated name is Union Electric Company, but Defendant conducts business under the name Ameren Missouri.

12.     As a corporate entity, Ameren is a "person" within the meaning of CAA Section 302(e), 42 U.S.C. § 7602(e), and 10 C.S.R. 10-6.020(2).

13.     Ameren is the owner and/or operator of the Rush Island Plant in Festus, Jefferson County, Missouri.

14.     Ameren's Rush Island Plant consists, in part, of Units 1 and 2, which are coal-fired electric generating units. Coal-fired units include boilers that bum coal to generate heat that converts water into steam.  Hot gases from burning coal flow through duct work and pass across a series of major components in the unit, which heat water into steam and ultimately pass the high temperature, high-pressure steam through steel tubes in the components to turbines that spin a generator to produce electricity. Each of these major boiler components consists of a massive array of numerous large steel tubes or, in the case of components that help preheat air in the boiler, non-pressure part tube bundles or baskets with corrugated metal heat exchanging surface. These components can weigh many tons and cost millions of dollars to replace.  Major components of a coal-fired boiler include the superheater, economizer, reheater, lower slope tubes, and air preheater.  When a major component in a coal-fired electric generating unit breaks down, such as one of the components replaced by Ameren, it causes the unit to be taken out of service for repairs - events known as "forced outages."   A deteriorated major component can cause increasing numbers of forced outages, as well as maintenance and scheduled outages needed to maintain the worn-out equipment, preventing the unit from generating electricity when it is needed.  By replacing the worn-out component that is causing the outages, a utility can improve the unit's availability to operate more hours in a year.  At Rush Island Units 1 and 2, the newly available hours of operation enabled by the project would be expected to be used to generate electricity.  Rush Island Units 1 and 2 are both baseload coal-fired electric generating

4

units that operate nearly continuously when available to supply the electricity needed to meet minimum levels of customer demand. These additional hours of operation translate into increased amounts of coal burned in the unit, and more annual pollution emitted from the unit's smokestack into the atmosphere.

15. In addition to improving the availability of a coal-fired generating unit, replacing deteriorated components with new, improved components can also increase the capacity of the boiler to pass steam through the components to the turbines at greater volumes and/or at higher temperatures. This can result in an increase in the amount of coal burned, and pollution emitted, during each hour of the unit's operation. Even if a project does not increase the amount of coal burned per hour, an improved component can increase the capacity and/or efficiency of the unit, which for a coal-fired generating unit like Rush Island Units 1 and 2, can make the unit more cost-effective and thus more economical to operate than other units. This can lead the utility to operate that improved unit during more hours of operation and/or at higher levels of operation, which in turn can lead to increases in coal burned at the unit and $SO_2$ and other pollutants emitted from the unit's smokestack on an annual basis.

## GOVERNMENT PLAINTIFF

16. The government Plaintiff in this action is the United States of America, by authority of the Attorney General of the United States, acting at the request of the U.S. EPA Administrator.

## PLAINTIFF INTERVENOR SIERRA CLUB

17. Sierra Club, the citizen Plaintiff in this action, is an incorporated, not-for-profit organization. Its headquarters are at 2101 Webster Street, Suite 1300, Oakland, CA 94612 and its Missouri Chapter office is located at 2818 Sutton Boulevard, St. Louis, MO 63143. Sierra Club's

5

mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out these objectives. Sierra Club has been working to improve air quality in Missouri, and around the country, for several decades. Sierra Club has approximately 650,000 members, with over 9,500 members in Missouri, and several hundred members in the counties surrounding the Rush Island power plant.

18.     Sierra Club's members and supporters live, work, and recreate near and downwind the Rush Island power plant and, consequently, breathe, enjoy, and use the ambient air in those areas. Those members' enjoyment and use of the air, their property, and recreational areas is impaired by pollution in excess of what it would be if Rush Island had not violated—and does not continue to violate—the Clean Air Act. Rush Island emits $SO_2$ and other pollutants that exacerbate air pollution in the areas around and downwind of the plant. This pollution poses a public health risk, and it harms the aesthetic and recreational interests of Sierra Club's members.

19.     Sierra Club has a long history of working to protect and improve air quality in Missouri, and over the past several years has prioritized advocacy and enforcement of environmental laws against Ameren's coal-fired power fleet, including the Rush Island power plant. Because Rush Island is the second-largest source of sulfur dioxide pollution in the state of Missouri, Sierra Club has a strong interest in ensuring that modern pollution controls are installed at the plant.

## STATUTORY AND REGULATORY BACKGROUND

20. Sierra Club adopts and incorporates the statutory and regulatory background set forth in the United States' Third Amended Complaint, paragraphs 15 to 56, except for the reference to civil penalties in paragraph 54.

## GENERAL ALLEGATIONS

21. Sierra Club adopts and incorporates the general allegations set forth in the United States' Third Amended Complaint, paragraphs 57 to 64.

## FIRST CLAIM FOR RELIEF

(PSD Violations at Rush Island Unit 1 in 2007)

22. Paragraphs 1 through 21 are realleged and incorporated herein by reference.

23. From approximately February 2007 to May 2007, Defendant began actual construction and operation of one or more "major modifications," as defined in the CAA and Missouri SIP, on Rush Island Unit 1. These major modifications included one or more physical changes and/or changes in the method of operation at Rush Island Unit 1, including, but not limited to: a project to replace the economizer, reheater, lower slope tubes, and air preheater. These multi-million dollar modifications were described in the notices of violation dated January 26, 2010, October 14, 2010, and May 27, 2011. These physical changes and/or changes in the method of operation resulted in a significant net emissions increase of $SO_2$, as defined in the Missouri SIP, by increasing the availability and capacity of Rush Island Unit 1 to operate more hours and at higher loads than it did during the applicable period before the major modification, thus enabling and causing Rush Island Unit 1 to burn more coal and release greater amounts of SO2 into the atmosphere on an annual and hourly basis.

7

24.     Defendant did not comply with the PSD requirements in the Act and the Missouri SIP with respect to the major modifications and subsequent operations at Rush Island Unit 1. Among other things, Defendant: (i) undertook such major modifications without first obtaining a PSD permit for the construction and operation of the modified unit; (ii) undertook such major modifications without undergoing a BACT determination in connection with the major modifications; (iii) undertook such major modifications without installing BACT for control of $SO_2$ emissions; (iv) has failed to operate BACT for control of $SO_2$ emissions pursuant to a BACT determination; (v) has failed to operate in compliance with BACT emission limitations, including limitations that are no less stringent than applicable standards under Section 111 of the CAA; and (vi) operated the unit after undergoing an unpermitted major modification, despite the express prohibition in the Missouri SIP against operating an unlawfully modified source.

25.     Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a), and the PSD regulations contained in the federally enforceable Missouri SIP. Unless restrained by an order of this Court, these violations will continue.

26.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief.

### SECOND CLAIM FOR RELIEF

(PSD Violations at Rush Island Unit 2 in 2010)

27.     Paragraphs 1 through 26 are realleged and incorporated herein by reference.

28.     From approximately January 2010 to April 2010, Defendant began actual construction and operation of one or more "major modifications," as defined in the CAA and Missouri SIP, on Rush Island Unit 2. These major modifications included one or more physical changes and/or changes in the method of operation at Rush Island Unit 2, including, but not

8

limited to: a project to replace the economizer, reheater, and air preheater. These multi-million dollar modifications were described in the notices of violation dated October 14, 2010 and May 27, 2011. These physical changes and/or changes in the method of operation resulted in a significant net emissions increase of $SO_2$, as defined in the Missouri SIP, by increasing the availability and capacity of Rush Island Unit 2 to operate more hours and at higher loads than it did during the applicable period before the major modification, thus enabling and causing Rush Island Unit 2 to bum more coal and release greater amounts of $SO_2$ into the atmosphere on an annual and hourly basis.

29.     Defendant did not comply with the PSD requirements in the Act and the Missouri SIP with respect to the major modifications and subsequent operations at Rush Island Unit 2. Among other things, Defendant: (i) undertook such major modifications without first obtaining a PSD permit for the construction and operation of the modified unit; (ii) undertook such major modifications without undergoing a BACT determination in connection with the major modifications; (iii) undertook such major modifications without installing BACT for control of $SO_2$ emissions; (iv) has failed to operate BACT for control of $SO_2$ emissions pursuant to a BACT determination; (v) has failed to operate in compliance with BACT emission limitations, including limitations that are no less stringent than applicable standards under Section 111 of the CAA; and (vi) operated the unit after undergoing an unpermitted major modification, despite the express prohibition in the Missouri SIP against operating an unlawfully modified source.

30.     Defendant has violated and continues to violate Section 165(a) of the Act, 42 U.S.C. § 7475(a) and the PSD regulations contained in the federally enforceable Missouri SIP. Unless restrained by an order of this Court, these violations will continue.

31. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief.

### THIRD CLAIM FOR RELIEF

(Title V Violations at Rush Island Unit 1)

32. Paragraphs 1 through 32 are realleged and incorporated herein by reference.

33. As set forth above, Defendant commenced construction of major modifications at Rush Island Unit 1. As a result, these major modifications triggered the requirements to, inter alia, undergo a BACT determination, obtain a PSD permit establishing emissions limitations that meet BACT requirements pursuant to such a determination, and operate in compliance with such limitations. Defendant has failed to satisfy these requirements.

34. Subsequently, Defendant failed to submit an accurate and complete Title V permit application for Rush Island Unit 1 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance, including the requirement to meet BACT pursuant to a determination under PSD, and other specific information that may be necessary to implement and enforce the applicable requirements of the Act and/or Missouri's Title V regulations or determine the applicability of such requirements. Defendant also failed to supplement or correct the Title V permit applications containing such information for Rush Island Unit 1.

35. Defendant has failed to obtain a proper or adequate Title V operating permit for Rush Island Unit 1 that contains one or more emissions limitations for $SO_2$ that meet BACT. Defendant has thereafter operated Rush Island Unit 1 without meeting such limitations and without having an adequate operating permit that requires compliance with such limitations or

10

that contains a compliance plan for all applicable requirements for which the source is not in compliance.

36. Defendant has violated its Title V Operating Permit applicable to Rush Island Unit 1 during the times relevant to this Third Amended Complaint by failing to accurately certify compliance with all of the federally enforceable terms and conditions contained in the permit.

37. Defendant has violated its Title V Operating Permit applicable to Rush Island Unit 1 during the times relevant to this Third Amended Complaint by commencing one or more major modifications of Rush Island Unit 1 and by operating Rush Island Unit 1 after the major modification(s) without obtaining a permit from the permitting authority under 10 C.S.R. 10-6.060.

38. Defendant's conduct has violated and continues to violate Sections 502(a), 503(c) and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V implementing regulations including 40 C.F.R. §§ 70.5-70.6, and 10 C.S.R. 10-6.065.

39. Unless restrained by an order of this Court, these violations of the Act will continue.

40. As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief.

## **FOURTH CLAIM FOR RELIEF**

(Title V Violations at Rush Island Unit 2)

41. Paragraphs 1 through 41 are realleged and incorporated herein by reference.

42. As set forth above, Defendant commenced construction of major modifications at Rush Island Unit 2. As a result, these major modifications triggered the requirements to, inter alia, undergo a BACT determination, obtain a PSD permit establishing emissions limitations that

11

meet BACT requirements pursuant to such a determination, and operate in compliance with such limitations. Defendant has failed to satisfy these requirements.

43. Subsequently, Defendant failed to submit an accurate and complete Title V permit application for Rush Island Unit 2 that identifies all applicable requirements, accurately certifies compliance with such requirements, contains a compliance plan for all applicable requirements for which the source was not in compliance, including the requirement to meet BACT pursuant to a determination under PSD, and other specific information that may be necessary to implement and enforce the applicable requirements of the Act and/or Missouri's Title V regulations or determine the applicability of such requirements. Defendant also failed to supplement or correct the Title V permit applications containing such information for Rush Island Unit 2.

44. Defendant has failed to obtain a proper or adequate Title V operating permit for Rush Island Unit 2 that contains one or more emissions limitations for $SO_2$ that meet BACT. Defendant has thereafter operated Rush Island Unit 2 without meeting such limitations and without having an adequate operating permit that requires compliance with such limitations or that contains a compliance plan for all applicable requirements for which the source is not in compliance.

45. Defendant has violated its Title V Operating Permit applicable to Rush Island Unit 2 during the times relevant to this Third Amended Complaint by failing to accurately certify compliance with all of the federally enforceable terms and conditions contained in the permit.

46. Defendant has violated its Title V Operating Permit applicable to Rush Island Unit 2 during the times relevant to this Third Amended Complaint by commencing one or more major modifications at Rush Island Unit 2 and by operating Rush Island Unit 2 after the major

modification(s) without obtaining a permit from the permitting authority under 10 C.S.R. 10-6.060.

47.     Defendant's conduct has violated and continues to violate Sections 502(a), 503(c) and 504(a) of the Act, 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a), and the Title V implementing regulations including 40 C.F.R. §§ 70.5-70.6, and 10 C.S.R. 10-6.065.

48.     Unless restrained by an order of this Court, these violations of the Act will continue.

49.     As provided in Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Section 167 of the Act, 42 U.S.C. § 7477, the violations set forth above subject Defendant to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon all the allegations contained in Paragraphs 1 through 50 above, Sierra Club requests that this Court:

1.     Permanently enjoin the Defendant from operating the Rush Island Plant except in accordance with the CAA and any applicable regulatory requirements;

2.     Order the Defendant to apply for and comply with permits for the Rush Island Plant that are in conformity with the requirements of the PSD program, the Missouri SIP, and with the federal and Missouri Title V programs;

3.     Order the Defendant to remedy its past and ongoing violations by, among other things, requiring Defendant to install and operate BACT at the Rush Island Plant to control emissions of $SO_2$;

4.     Order Defendant to conduct audits of its operations to determine if any additional modifications have occurred which would require it to meet the requirements of PSD and report the results of these audits to the United States and Sierra Club;

    5.      Order Defendant to surrender emission allowances or credits to offset and mitigate its illegal emissions;

    6.      Order Defendant to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged above;

    7.      Order Defendant to pay Sierra Club's costs of litigation, including reasonable attorney and expert witness fees, pursuant to 42 U.S.C. § 7604(d); and,

    8.      Grant such other relief as the Court deems just and proper.

Date: February 15, 2017

Respectfully submitted,

/s/ Benjamin Blustein
Benjamin Blustein (*pro hac vice motion pending*)
MINER, BARNHILL & GALLAND, P.C.
325 N. LaSalle, Suite 350
Chicago, IL 60654
Tel: (312) 751-1170
Fax: (312) 751-0438
bblustein@lawmbg.com

David Baltmanis (*pro hac vice motion pending*)
MINER, BARNHILL & GALLAND, P.C.
325 N. LaSalle, Suite 350
Chicago, IL 60654
Tel: (312) 751-1170
Fax: (312) 751-0438
dbaltmanis@lawmbg.com

Sunil Bector (*pro hac vice motion pending*)
SIERRA CLUB
2101 Webster, Suite 1300
Oakland CA 94612
Tel: (415) 977-5759
Fax: (415) 977-5793
sunil.bector@sierraclub.org

*Attorneys for Plaintiff Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2017, I caused a copy of the foregoing [Proposed] Complaint in Intervention to be filed and served upon all counsel of record via CM/ECF.

*/s/ Sunil Bector*
Counsel for Sierra Club
