**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:11 CV 77 RWS |
| | ) |
| **AMEREN MISSOURI,** | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM IN SUPPORT OF**
**SIERRA CLUB'S MOTION TO INTERVENE**

## I. INTRODUCTION

Sierra Club respectfully seeks to intervene in this matter to ensure that its interests are protected during the remedial and any subsequent stages of the litigation.  Pursuant to Section 304(b)(1)(B) of the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B), Sierra Club has an unconditional right of intervention.  Moreover, Sierra Club meets all of the requirements for intervention of right under Rule 24(a)(1) of the Federal Rules of Civil Procedure.

Put simply, Sierra Club seeks intervention to ensure that appropriate remedies are pursued and implemented to address the Clean Air Act violations which this Court found in its Memorandum Opinion and Order of January 23, 2017 ("Order"), and to protect Sierra Club's interests during any appeals or settlement discussions.  Sierra Club acted promptly to intervene as soon as it became apparent that its interests may no longer be protected by the United States. Because the remedies phase has not yet begun, intervention will not cause any delay or other prejudice to the existing parties.

1

## II.     BACKGROUND

### A. Background on Sierra Club and its Members.

Sierra Club is an incorporated, not-for-profit environmental organization whose purpose includes reducing and eliminating pollution and protecting public health—including pollution resulting from the combustion of coal, among the largest contributors to air pollution in the United States. Pollution from coal-burning plants negatively affects Sierra Club's members. Sierra Club has over 650,000 members nationwide, including over 9,500 members in Missouri. Many of these members live, work, and recreate in and around Jefferson County, Missouri, as well as other areas near and downwind from the Rush Island power plant.

Sierra Club members are exposed to sulfur dioxide pollution from the Rush Island plant, and their health, welfare, and recreational interests are harmed by that pollution.  Exposure to $SO_2$ emitted by the Rush Island plant increases the risk that these members will suffer from respiratory, cardiac, and other diseases in the future.

Sierra Club has a long history of working to protect and improve air quality in Missouri. It has a particularly strong interest in ensuring that the Rush Island coal-burning power plant operates in compliance with the Clean Air Act ("Act" or "CAA") because the plant is Missouri's second-largest source of $SO_2$ pollution.  Those interests are especially pertinent to the proceedings that will follow this Court's recent Order finding that Ameren violated its operating permit and the Act by failing to obtain the requisite permits and installing best available pollution control technology when it made major modifications to Rush Island Unit 1 in 2007 and Rush Island Unit 2 in 2010. Sierra Club has a strong interest in ensuring that appropriate measures, including proper pollution controls, are pursued and implemented at Rush Island to remedy these CAA violations.

### B.  Sierra Club has Well-Founded Reasons to Seek Intervention at this Juncture.

Sierra Club has been aware of this litigation since it was filed.  Until recently, Sierra Club believed that its interests would be protected by the United States.  However, the new Administration which assumed control of this litigation on January 20, three days before the Court entered its Order, has made public comments indicating a significant likelihood that Sierra Club's interests will no longer be protected by the United States.

The Administration's public statements make apparent that it intends to curtail environmental enforcement by the EPA, on whose behalf this case was brought.  Speaking about the EPA as a candidate during a March 2016 presidential debate, President Trump promised "to get rid of it in almost every form."[1]  After the election, then-President-elect Trump stated, "Environmental protection, what they do is a disgrace."[2]  Myron Ebell, who led the Administration's EPA transition team, has recommended that its staff be reduced by two-thirds, from approximately 15,000 to 5,000 staffers.[3]

Scott Pruitt, the Administration's nominee to run the EPA, has repeatedly demonstrated an approach to environmental enforcement that is diametrically opposed to Sierra Club's interests.  As Attorney General of Oklahoma, Mr. Pruitt dismantled the environmental enforcement unit in his home state.[4]  He describes himself in his official state website biography

---

[1] Davenport, Coral. "E.P.A. Faces Bigger Tasks, Smaller Budgets and Louder Critics." *The New York Times* 18 Mar. 2016: www.nytimes.com.

[2] Davenport, Coral. "Scott Pruitt Is Seen Cutting the E.P.A. With a Scalpel, Not a Cleaver." *The New York Times* 05 Feb. 2017: www.nytimes.com.

[3] *Id*.

[4] Lipton, Eric and Davenport, Coral. "Scott Pruitt, Trump's E.P.A. Pick, Backed Industry Donors Over Regulators." *The New York Times* 14 Jan. 2017: www.nytimes.com.

as "a leading advocate against the EPA's activist agenda."[5] Attorney General Pruitt sued the EPA at least 10 times,[6] including lawsuits to overturn federal rules limiting $SO_2$ pollution from power plants such as the Cross-State Air Pollution Rule[7] and the Mercury and Air Toxics Standards,[8] as well as the Clean Power Plan[9] and EPA efforts to reduce ozone pollution.[10] "Regulation through litigation is wrong in my view," Mr. Pruitt told *The Oklahoman* newspaper in April 2015.[11]   Mr. Pruitt also testified before Congress that "the EPA was never intended to be our nation's foremost environmental litigator."[12]

Mr. Pruitt's alliances and coordination with energy lobbyists – such as his signing letters on Oklahoma state stationary which were actually drafted by energy company lawyers and which

---

[5] https://www.ok.gov/oag/Media/About_the_AG/.

[6] In his recent responses to Senate questions, Mr. Pruitt stated:  "As Attorney General of Oklahoma, I have participated personally and substantially in the following suits against the EPA: • EME Homer City Generation v. EPA, No. 12-1182 (U.S.S.C.) • Michigan v. EPA, No. 14-46 (U.S.S.C.) • Murray Energy Corp. v. EPA, Nos. 14-1112, 14-1151 (D.C. Cir.) • Murray Energy Corp. v. EPA, Nos. 15-1385, 15-1392, 15-1490, 15- 1491 & 15-1494 (D.C. Cir.) • Oklahoma v. EPA, Nos.12–9526, 12–9527 (10th Cir.) • Oklahoma ex rel. Pruitt v. EPA, No. 16-5038 (10th Cir.). • Oklahoma ex rel. Pruitt v. McCarthy, No. 15-cv-369 (N.D. Okla.). • Oklahoma v EPA, No, 13-cv-00726 (W.D. Okla.) • West Virginia v. EPA, No. 14-1146 (D.C. Cir.) • West Virginia v. EPA, No. 16-1264 (D.C. Cir.)."

[7] EME Homer City Generation v. EPA, No. 12-1182 (U.S.S.C.)

[8] White Stallion Energy Center v. EPA, No. 12-1100 (D.C. Cir.)

[9] Murray Energy Center v. EPA, Nos. 14-1112, 14-1151 (D.C. Cir.)

[10] Murray Energy Center v. EPA, Nos. 15-1385, et al. (D.C. Cir.)

[11] Green, Rick. "Oklahoma rivers are clearer despite no ruling in poultry case." *The Oklahoman* 13 Apr. 2015:  www.newsok.com.

[12] http://www.npr.org/2016/12/07/504723628/trump-selects-oklahoma-attorney-general-scott-pruitt-to-run-the-epa

4

criticized federal environmental rules – further demonstrate that Sierra Club's interests in the present litigation will no longer be adequately protected by the EPA.[13]

### III. DISCUSSION

Federal Rule of Civil Procedure 24(a) provides that, upon a timely motion, the Court "must permit anyone to intervene who…(1) is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). In this Circuit, "[w]e construe Rule 24 liberally and resolve any doubts in favor of the proposed intervenors." *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995) (internal citation omitted).

Sierra Club meets the Rule 24(a)(1) criteria here because it has an unconditional right to intervene pursuant to Section 304(b)(1)(B) under the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B), and it has acted in a timely manner in light of all the circumstances in the case. Sierra Club also meets the requirements of Article III standing.

### A. Sierra Club has an Unconditional Right to Intervene under the Clean Air Act.

Sierra Club has an unconditional right of intervention under the "citizen suit" provision of the Clean Air Act, 42 U.S.C. § 7604, which provides that, if the EPA Administrator is prosecuting an action to enforce compliance with an "emission standard or limitation," then "any person may intervene as a matter of right." *Id*., § 7604(b)(1)(B).

The term "person" includes a corporation or association, 42 U.S.C. § 7602(e), and thus includes a non-profit public benefit corporation such as Sierra Club.

"Emission standard or limitation" under the chapter is defined broadly to include

---

[13] Lipton, Eric. "Energy Firms in Secretive Alliance with Attorneys General." *The New York Times* 06 Dec. 2014: www.nytimes.com.

5

> (4) any other standard, limitation, or schedule established under any permit issued pursuant to subchapter V of this chapter or under any applicable State implementation plan approved by the Administrator, any permit term or condition, and any requirement to obtain a permit as a condition of operations.

*Id.*, § 7604(f)(4). Thus, "emission standard or limitation" includes any standard or limitation established under a Title V permit or a State Implementation Plan ("SIP"). Here, the Court has already found that Ameren violated the PSD, Title V, and its operating permit.

Thus, Sierra Club has an unconditional right to intervene pursuant to Section 304(b)(1)(B) of the Clean Air Act. *United States v. Duke Energy Corp.*, 171 F.Supp.2d 560 (M.D.N.C. 2001) (granting intervention of right under Fed.R.Civ.P. 24(a)(1) to environmental groups in PSD action brought by United States because Section 304(b)(1)(B) provides unconditional right to intervene).[14]

---

[14] Because the Clean Air Act grants an unconditional right to intervene, Rule 24(a)(1) applies and it is unnecessary for Sierra Club to satisfy the demonstration required by intervention of right under Rule 24(a)(2). *Duke Energy Corp.*, 171 F.Supp.2d at 565 n. 1. However, Sierra Club could make this showing as well if necessary. Under Rule 24(a)(2), "the court must permit anyone to intervene who …claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately protect the interest." For the reasons described in this memorandum, Sierra Club meets the requirements of 24(a)(2) because: (1) Sierra Club and its members who live, work, and recreate in the vicinity of the Rush Island plant have an interest in the plant's compliance with the Clean Air Act; (2) resolution of the underlying lawsuit may as a practical matter impair or impede Sierra Club's ability to protect that interest; and (3) there is a significant likelihood that Sierra Club's interests will no longer be protected by the United States. *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 100-01 (8th Cir. 1993) (counties and landowners permitted to intervene as of right under Rule 24(a)(2) because they met the required "minimal burden" of showing their local and individual interests were not adequately protected by the State of Minnesota); *Mausolf v. Babbitt*, 85 F.3d 1295, 1302 (8th Cir. 1996) (conservation groups seeking to preserve wilderness nature of national park had requisite interest in lawsuit seeking to undo snowmobiling restrictions).

**B. Sierra Club's Motion to Intervene is Timely.**

Moreover, Sierra Club moved promptly to intervene once it became apparent that its interests may not be adequately protected by the United States.

"Whether a motion to intervene is timely is determined by considering all the circumstances of the case. No ironclad rules govern this determination." *Mille Lacs Band of Chippewa Indians v. State of Minn.,* 989 F.2d 994, 998 (8th Cir. 1993) (internal citation omitted); *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 832 (8th Cir. 2010) ("Timeliness is to be determined from all the circumstances") (quoting *NAACP v. New York*, 413 U.S. 345, 365-66 (1973)).

Relevant considerations include: "how far the litigation had progressed at the time of the motion for intervention, the prospective intervenor's prior knowledge of the pending action, the reason for the delay in seeking intervention, and the likelihood of prejudice to the parties in the action." *Arrow v. Gambler's Supply, Inc.*, 55 F.3d 407, 409 (8th Cir. 1995). These factors must be analyzed on a case-by-case basis, based on the particular facts and circumstances.

1. Intervention is warranted by "all the circumstances" of the case.

The first three factors to be considered – the stage of the litigation, Sierra Club's knowledge of the action, and its reasons for intervening at the current juncture – are interrelated and are therefore addressed together.

The stage of the litigation "is not solely dispositive," *Ritchie*, 620 F.3d at 832 (quoting *NAACP v. New York*, 413 U.S. at 365-66). Indeed, intervention may be permitted even after a case has progressed for a very long time.

For example, in *Winbush v. State of Iowa*, 66 F.3d 1471,1479 (8th Cir. 1995), the district court properly permitted intervention by 21 individuals ten years after the complaint was filed,

7

and after a bench trial, because intervention occurred at a juncture in the litigation when defendants incurred minimal prejudice.  Likewise, the Supreme Court in *United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977), held that intervention five years after the litigation commenced was timely because, "as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representations, she promptly moved to intervene to protect those interests." *Id.* at 394.  As our Court of Appeals noted in *Kozak v. Wells*, "[t]here are even occasions where intervention is proper after judgment."  278 F.2d 104, 109 (8th Cir. 1960) (citing cases).

Sierra Club's decision to intervene now, rather than earlier, is reasonable under the circumstances.  Sierra Club was aware of the lawsuit and considered intervening when it was filed in 2011.  However, Sierra Club chose not to intervene at that time because it determined that its interests were being adequately protected by the United States.  In light of public statements and actions of the new Administration officials, Sierra Club is promptly seeking intervention to ensure that its interests are adequately protected.

The Supreme Court's holding in *United Airlines* indicates that the district court should consider not only the date on which a potential intervenor first learned of the litigation but also the date when "it became clear" that the intervenor's interests "would no longer be protected" and whether it then "promptly moved to intervene to protect those interests." 432 U.S. at 394. *See also WaterLegacy v. U.S. E.PA*., 300 F.R.D. 332, 343-344 (D. Minn. 2014) (in finding intervention timely, district court determined that intervenor was aware of litigation when it was

8

filed, but "did not have a reason to know that its interests were not being represented by the EPA" until one year later whereupon it filed a motion to intervene).[15]

Here, Sierra Club did not act out of neglect or a lack of diligence. Rather, Sierra Club made a reasoned decision to intervene, and acted promptly on it, once it became apparent that its interests were jeopardized. Nor is Sierra Club's decision to intervene based upon a routine change of Administrations. The President has vowed to dismantle the EPA, and his nominee to helm the EPA has sued that agency multiple times to prevent enforcement of federal environmental regulations.

Further, "all of the circumstances" to be considered by the Court should include the Court's recent finding of liability. Given the Court's determination that Ameren has violated the Clean Air Act, those Sierra Club members who live, work, and recreate near the Rush Island plant have a heightened interest in a prompt and fair remedy to address those violations – an interest that may not be pursued by the United States. This factor further supports a finding that Sierra Club's motion to intervene is timely, and filed at an appropriate time.

2. There is no "likelihood of prejudice" caused by the timing of Sierra Club's motion.

The timing of Sierra Club's motion to intervene causes no "likelihood of prejudice to the parties," *Arrow*, 55 F.3d at 409, and will not inconvenience the Court. In fact, with the liability phase completed, and the parties at the starting gate of the remedy phase, now is the appropriate time for intervention.

---

[15] The Fifth Circuit, observing that "[c]ourts should discourage premature intervention that wastes judicial resources," does not consider the date on which the potential intervenor became aware of the lawsuit and instead focuses on "the speed with which the would-be intervenor acted when it became aware that its interests would no longer be protected by the original parties." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (permitting industry groups to intervene in environmental action) (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264 (5th Cir. 1977).

9

Our Court of Appeals has explained that a district court should only consider whether any prejudice stems from the *delay* in seeking intervention, not from the intervenor's *presence* in the lawsuit.  "Prejudice that results from the mere fact that a proposed intervenor opposes one's position and may be unwilling to settle always exists when a party with an adverse position seeks intervention….Rule 24(a) protects precisely this ability to intervene in litigation to protect one's interests."  *Mille Lacs*, 989 F.2d at 999; *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995) ("The question for determining the timeliness of the motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change.")

Simply stated, Sierra Club's intervention would not delay the remedy phase since it has not yet begun.  All parties, including Sierra Club, would embark upon the remedy phase together.  Nor would Sierra Club's intervention delay any other proceedings in the case.  This case thus resembles *Winbush v. State of Iowa*, 66 F.3d at 1479, in which the district court properly permitted individuals to intervene in an employment discrimination suit ten years after the complaint was filed, and following a bench trial, because intervention occurred at a juncture in the litigation when defendants incurred minimal prejudice. Moreover, Sierra Club is not attempting to reopen or re-litigate any issue that has already been decided during the liability phase.  Sierra Club does not challenge the scope, terms, or appropriateness of this Court's January 23 Order, or any other ruling in the case.  Nor is Sierra Club adding any new claims beyond those asserted in the United States' most recent amended complaint.  As described in the accompanying Complaint in Intervention, submitted pursuant to Fed. R. Civ. P. 24(c), Sierra Club adopts in their entirety the United States' Claims for Relief set forth in the government's Third Amended Complaint.

Thus, no prejudice would result from granting Sierra Club's motion to intervene. Conversely, there *would be* prejudice to Sierra Club if it is not allowed to intervene, since the present case is the only available venue for Sierra Club to ensure that remedies are pursued for Ameren's Clean Air Act violations at Rush Island that further the interests of Sierra Club's members.

### C. Sierra Club Has Article III Standing.

In addition to the Fed. R. Civ. P. 24(a) requirements, prospective intervenors in our Circuit must establish Article III standing. *Nat'l Parks Conservation Ass'n v. U.S. EPA*, 759 F.3d 969, 974 (8th Cir. 2014). Sierra Club has standing because its members have suffered actual or threatened injury, these injuries are traceable to Ameren, and will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "[E]nvironmental plaintiffs adequately allege injury in fact [for standing purposes] when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (quoting *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972)).

Sierra Club members live, work, and recreate in and around Jefferson County, Missouri, including near and downwind from the Rush Island plant and, consequently, breathe, enjoy, and use the ambient air in those areas. Those members' use and enjoyment of the air, their property, and recreational areas is impaired by pollution in excess of what it would be if Rush Island had not violated the Clean Air Act. Moreover, because sulfur dioxide pollution poses a health risk, Sierra Club members are concerned that exposure to sulfur dioxide from the Rush Island plant may increase the risk that they will suffer from respiratory, cardiac, and other diseases. Sierra Club and its members have concrete interests that Ameren's Clean Air Act violations threaten

11

directly, notably the cleanup of air pollution in areas where Sierra Club members live, work, and recreate in and around the Rush Island plant. Sierra Club and its members also have an interest in public participation in the decision making process that Ameren circumvented by failing to apply for the required permits to modify the plant.

These injuries are directly traceable to Ameren. Moreover, an order of this Court enjoining Ameren from operating Rush Island except in accordance with the Clean Air Act will redress the injuries to Sierra Club's members because the result will be a reduction in sulfur dioxide pollution from Rush Island. Accordingly, Sierra Club meets its Article III standing burden, as its members have suffered an injury-in-fact that is fairly traceable to Rush Island's violations of the Act and redressable by this lawsuit.

## IV.   CONCLUSION

For the foregoing reasons, Sierra Club respectfully requests that its motion to intervene be granted.

Date:  February 15, 2017                     Respectfully submitted,

/s/ Benjamin Blustein
Benjamin Blustein (*pro hac vice motion pending*)
MINER, BARNHILL & GALLAND, P.C.
325 N. LaSalle, Suite 350
Chicago, IL  60654
Tel:  (312) 751-1170
Fax:  (312) 751-0438
bblustein@lawmbg.com

David Baltmanis (*pro hac vice motion pending*)
MINER, BARNHILL & GALLAND, P.C.
325 N. LaSalle, Suite 350
Chicago, IL  60654
Tel:  (312) 751-1170
Fax:  (312) 751-0438
dbaltmanis@lawmbg.com

Sunil Bector (*pro hac vice motion pending*)
SIERRA CLUB
2101 Webster, Suite 1300
Oakland CA 94612
Tel:  (415) 977-5759
Fax:  (415) 977-5793
sunil.bector@sierraclub.org

*Attorneys for Plaintiff Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2017, I caused a copy of the foregoing Memorandum in Support of Sierra Club's Motion to Intervene to be filed and served upon all counsel of record via CM/ECF.

*/s/ Sunil Bector*
Counsel for Sierra Club
