# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) )  ) |
| Plaintiff, | ) ) |
| v. | ) )   Case No. 4:11 CV 77 RWS |
| AMEREN MISSOURI, | ) ) ) |
| Defendant. | ) ) |

## SIERRA CLUB'S REPLY MEMORANDUM
## IN SUPPORT OF ITS MOTION TO INTERVENE

**I.    INTRODUCTION**

Sierra Club demonstrated in its Motion to Intervene and supporting memorandum (Doc. Nos. 858, 859) that:

(a) it has satisfied Fed.R.Civ.P. 24(a)(1) because it is given "an unconditional right to intervene" by the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B);
(b) it has acted in a timely manner in light of all the circumstances in the case; and
(c) there is no likelihood of prejudice caused by the timing of its motion to intervene.

In its Opposition (Doc. No. 866, "Opp."), Ameren concedes that "Sierra Club has a statutory right pursuant to 42 U.S.C. § 7604(b)(1)(B) to intervene under Rule 24(a)(1)."  (Opp. at 2).  But then Ameren spends nearly half of its brief arguing that Sierra Club has not established one of the requirements of Rule 24**(a)(2)**—*i.e.*, the requirement that the existing parties do not adequately protect its interests.  Because it is undisputed that Sierra Club has an unconditional right to intervene under Rule 24(a)(1), it is unnecessary for Sierra Club to meet the requirements

1

of Rule 24(a)(2), including proving that the United States does not adequately represent its interests, or rebutting any presumption under a *parens patriae* theory that the Government represents the interests of all citizens. Ameren's reliance on Rule 24(a)(2) jurisprudence is an exercise in misdirection and confusion and should be rejected.

Ameren's arguments regarding timeliness (and any prejudice caused by the motion's timing) fare no better. In considering these issues, each case must be decided on "its own peculiar facts and circumstances." *Liddell v. Caldwell*, 546 F.2d 768, 770 (8th Cir. 1976). The cases relied upon by Ameren involved different circumstances which are plainly distinguishable.

Moreover, Ameren has not shown any prejudice stemming from the *timing* of Sierra Club's motion. Instead, Ameren focuses on whether Sierra Club's *presence in the case* would harm Ameren's interests. However, our Court of Appeals has made clear that "[p]rejudice that results from the mere fact that a proposed intervenor opposes one's position…always exists when a party with an adverse position seeks intervention" and that "Rule 24(a) protects precisely this ability to intervene in litigation to protect one's interests." *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 999 (8th Cir. 1993). Thus, Ameren's assertion that Sierra Club's "activist" agenda will harm Ameren is extraneous to the Court's inquiry, since "whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change" is irrelevant. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1159 (8th Cir. 1995). Likewise, the timing of Sierra Club's motion will not result in any additional cost to Ameren than if Sierra Club had intervened at an earlier time.

Finally, Ameren presents no legitimate justification for imposing limits on Sierra Club's participation in discovery or other aspects of the remedy phase. Sierra Club has met the requirements of Rule 24(a)(1), and intervention is appropriate as shown further below.

2

## II.   DISCUSSION

**A. Because Sierra Club has an Unconditional Right to Intervene Under Rule 24(a)(1), it is Unnecessary to Prove that its Interests Are Not Adequately Represented Under Rule 24(a)(2).**

Ameren's Opposition is premised upon a fundamental misstatement of Rule 24(a)'s requirements, and it is therefore necessary to briefly re-state the applicable law.

> Rule 24(a) states: "Intervention of Right. On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Fed.R.Civ.P. 24(a).

Under Rule 24, there are two main requirements:  a right to intervene, and timeliness.  A right to intervene may be established either under Rule 24(a)(1) through an unconditional right given by a federal statute, or under Rule 24(a)(2) by showing that "(1) the proposed intervenor has an interest in the subject matter of the action; (2) the interest may be impaired; and (3) the interest is not adequately represented by an existing party to the action." *Sierra Club v. Robertson*, 960 F.2d 83, 85 (8th Cir. 1992).

Ameren concedes that Sierra Club has an unconditional statutory right pursuant to the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B), to intervene under Rule 24(a)(1). (Opp. at 2).  That is the end of the inquiry with regard to the first requirement under Rule 24.  There is no need for Sierra Club to satisfy the three-part demonstration required by Rule 24(a)(2). *See United States v. Duke Energy Corp.*, 171 F. Supp.2d 560, 565 n. 1 (M.D.N.C. 2001) ("Having found an unconditional statutory right to intervene under Rule 24(a)(1), the court need not address

3

Applicants' alternative arguments for intervention:  intervention of right under Rule 24(a)(2) and permissive intervention under Rule 24(b)(2).")

Nevertheless, Ameren's main argument is that Sierra Club has not satisfied the third prong of the Rule 24(a)(2) inquiry—the requirement that Sierra Club's interests are not adequately protected by an existing party.  Thus, Ameren argues at length that Sierra Club has not shown that the Government will not protect its interests (Opp. at 3-8); that Sierra Club has not rebutted the presumption under the *parens patriae* theory that the Government represents the interests of all citizens (*id*. at 4); and that Sierra Club has not shown that the Government has committed misfeasance, nonfeasance, or colluded with Ameren.  (*Id*. at 5-6).  Relatedly, Ameren argues that Sierra Club has not shown that its interests are currently jeopardized or inadequately represented, and that it alleges only "hypothetical future harm" based on speculation that the Government may no longer represent its interests in the future.  (*Id*. at 1, 3).

None of these demonstrations of "inadequate representation" apply in a case, such as here, where the proposed intervenor has an unconditional statutory right to intervene under Rule 24(a)(1).  Rule 24(a)(1) simply does not include the language found in Rule 24(a)(2) which requires, *inter alia*, an inquiry into whether "existing parties adequately represent [the movant's] interest."  Fed.R.Civ.P. 24(a)(2).  Therefore, the three-pronged test of Rule 24(a)(2) does not apply.  *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure*: Civil 3d § 1908 (2007) ("Rule 24(a)(2) creates a threefold test for intervention of right, save for those unusual situations in which there is an unconditional statutory right to intervene and Rule 24(a)(1) is the controlling provision.").  It is undisputed that the present case is one of those situations in which Rule 24(a)(1) controls.  (Opp. at 2).

4

Tellingly, all of the cases upon which Ameren relies that discuss the "inadequate representation" issue were decided under Rule 24(a)(2), and did not involve a statutory right to intervene under Rule 24(a)(1).[1]  Those courts' analyses of Rule 24(a)(2)'s three-pronged test – including the third-prong "adequacy of representation" requirement – are simply irrelevant to the present case.

Ameren also erroneously suggests that the obligation to demonstrate inadequate representation flows from Rule 24's "timeliness" requirement.  (Opp. at 3-4).  However, the four well-known factors considered in analyzing timeliness say nothing whatsoever about inadequate representation: "how far the litigation had progressed at the time of the motion for intervention, the prospective intervenor's prior knowledge of the pending action, the reason for the delay in seeking intervention, and the likelihood of prejudice to the parties in the action." *Arrow v. Gambler's Supply, Inc*., 55 F.3d 407, 409 (8th Cir. 1995).

To be sure, Sierra Club pointed to its concerns that the United States may no longer protect its interests in order to explain the reason for the timing of its motion to intervene, but that did not transform its motion to intervene into a Rule 24(a)(2) application, or otherwise create an obligation to satisfy the three-part requirements of Rule 24(a)(2).  Because Sierra Club has indisputably satisfied Rule 24(a)(1), it is not required to prove that its interests are not adequately

---

[1] The following cases relied upon by Ameren were all decided based on a Rule 24(a)(2) analysis:  *Chiglo v. City of Preston*, 104 F.3d 185 (8th Cir. 1987); *Mausolf v. Babbitt*, 85 F.3d 1295 (8th Cir. 1996); *National Parks Conservation Ass'n v. U.S. Environmental Protection Agency*, 759 F.3d 969 (8th Cir. 2014); *Stadin v. Union Elec. Co*., 309 F.2d 912 (8th Cir. 1962); *Solid Waste Agency of Northern Cook County v. U.S. Army of Engineers*, 101 F.3d 503 (8th Cir. 1996);  *Federal Trade Commission v. Johnson*, 800 F.3d 448 (8th Cir. 2015); *Little Rock School Dist. v. North Little Rock School Dist.*, 378 F.3d 774 (8th Cir. 2004); *United States v. Hooker Chemicals & Plastics Corp*., 749 F.2d 968 (8th Cir. 1984); *Bradley v. Milliken*, 828 F.2d 1186 (6th Cir. 1987).

5

represented by the United States, rebut the *parens patriae* presumption, show collusion between the United States and Ameren, or make any other purported Rule 24(a)(2) showing.[2]

By ignoring the distinction between Rule 24(a)(1) and Rule 24(a)(2), Ameren would essentially erase Rule 24(a)(1) from the Federal Rules of Civil Procedure. Moreover, imposing Rule 24(a)(2) requirements in this case would transform Sierra Club's *unconditional* right to intervene under 42 U.S.C. § 7604(b)(1)(B) into a *conditional* right, contingent on whether the Government is providing adequate representation. However, § 7604(b)(1)(B) explicitly states that, if the EPA Administrator is prosecuting an action to enforce compliance with an "emission standard or limitation," then "any person may intervene as a matter of right"—not that a person "may intervene if the Government is no longer protecting their interests."

Finally, Ameren argues that Sierra Club has shown "no actual or imminent harm—only hypothetical future harm" that would occur if the Government no longer faithfully litigates the case. (Opp. at 1, 3). However, this is simply a variation of its argument that Sierra Club has failed to show inadequate representation by the United States which, as shown above, is meritless. Because it is undisputed that Sierra Club has an unconditional right to intervene under Rule 24(a)(1), it is unnecessary to show that its interests are not adequately represented under Rule 24(a)(2).[3]

---

[2] Although it is unnecessary to reach this issue, it is worth noting that our Court of Appeals in *Sierra Club v. Robertson*, 960 F.2d at 86, found that Sierra Club and other organizations "represent the interests of their members and answer only to their members" whereas a State government has different interests because, *inter alia*, it is "obliged to represent the interests of all of its citizens." Here, Ameren has not explained how, if "the Government is presumed to represent the interests of all citizens" (Opp. at 4), that could include both Ameren and Sierra Club who, according to Ameren, have antithetical interests.

[3] Ameren's Opposition does not raise any argument that Sierra Club cannot establish Article III standing, or that it has not adequately alleged injury in fact. Therefore, we do not interpret Ameren's assertion that Sierra Club has not shown "actual or imminent harm" as an attack on standing. In any event, Sierra Club's motion to intervene demonstrates that it has Article III standing (Doc. No. 859 at 11-12). Ameren simply fails to address this demonstration, much less show that Sierra Club lacks standing.

**B. Sierra Club's Motion is Timely.**

Ameren next argues that Sierra Club's motion is untimely, and cites to various cases in which intervention was inappropriate given the particular circumstances presented in those cases. (Opp. at 8-10). However, courts in numerous other cases have found intervention timely even after many years of litigation and when the case was at an advanced stage, including stages more advanced than that of the present litigation. *See, e.g.*, *Liddell*, 546 F.2d at 771 (intervention into remedy stage should have been permitted as timely even though judgment had been entered); *Winbush v. State of Iowa*, 66 F.3d 1471, 1479 (8th Cir. 1995) (intervention proper 10 years after complaint filed, following bench trial); *Kozak v. Wells*, 278 F.2d 104, 109 (8th Cir. 1960) (intervention may be proper after judgment); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390-96 (1977) (intervention proper five years after litigation commenced).

The guiding principal, as our Court of Appeals has instructed, is that "each case must rise and fall on its own peculiar facts and circumstances." *Liddell*, 546 F.2d at 770.[4] Moreover, the Court has consistently held that we "construe Rule 24 liberally and resolve any doubts in favor of the proposed intervenors." *United States v. Ritchie Special Credit Investments, Ltd.*, 620 F.3d 824, 831 (8th Cir. 2010) (quoting *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assoc., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995)). "'[A]bsolute measures of timeliness should be ignored,' [internal citation omitted], and 'nothing in Rule 24(a) precludes postjudgment or even post-appeal intervention.'" *WaterLegacy v. United States Environmental Protection Agency*, 300 F.R.D. 332, 343 (D. Minn. 2014) (quoting *Tweedle v. State Farm Fire & Cas. Co.*, 527 F.3d 664, 671 (8th Cir. 2008)).

---

[4] This principle is demonstrated by contrasting the holdings in *Liddell* and *Winbush*, *supra*, where intervention was found to be timely even after the litigation had progressed for many years, with the holding in *Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.*, 772 F.2d 401 (8th Cir. 1985), where intervention was not timely even though it was sought 12 days after the complaint was filed.

7

Turning to the particular circumstances of the present case, the timing of intervention is appropriate given the closure of the liability phase and the commencement of the remedy phase. All parties, including Sierra Club, are similarly situated at the very beginning of the remedy phase. All parties—in accordance with the Court's February 16, 2017 Order (Doc. No. 863)—will submit Rule 26 disclosures on April 5, and a joint proposed scheduling plan by April 13, 2017. Moreover, Sierra Club will not attempt to re-litigate any issue that has already been decided during the liability phase.

In stark contrast, in the cases relied upon by Ameren (Opp. at 10), the timing of intervention posed complications and thorny issues given the particular circumstances—none of which are present in our case. For example:

- In *Liddell v. Bd. of Educ. of City of St. Louis*, 98 F.R.D. 548, 551 (E.D. Mo. 1983), intervention by a teacher's union relating to the remedy contained in a settlement agreement negotiated by the existing parties would have posed problems given that "[i]n this phase of the case alone the parties have completed wide-ranging and extensive discovery, have prepared for trial on interdistrict liability, have conducted sensitive negotiations in an effort to settle this phase of the case, and have taken on the responsibilities of implementing the agreement if approved or, as to some parties, proceeding to trial if the agreement is not approved." No such complications exist in the present case.

- In *Am. Civil Liberties Union of Minnesota v. Tarek Ibn Ziyad Academy*, 643 F.3d 1088, 1094 (8th Cir. 2011), the district court appropriately denied intervention where "the delay would prejudice the existing parties because they had already engaged in extensive motion practice, commenced written discovery, and begun taking depositions." The procedural posture of our case is different, and will not lead to such problems since remedy phase discovery has not yet begun.

- In *Arrow v. Gambler's Supply, Inc.*, 55 F.3d at 409, denial of intervention was proper where the proposed intervenor "moved to join the litigation when the parties reached a settlement agreement one month before the trial date." Again, the posture of our case is very different, as there is no settlement agreement and this case is very far from a trial on remedies.

- In unique, expedited litigation in *Arkansas Elec. Energy Consumers v. Middle South Energy, Inc.*, 772 F.2d 401, 402-03 (8th Cir. 1985), the district court properly denied intervention after an evidentiary hearing had been held and a temporary restraining order had been issued within two weeks of the case's commencement, and where the court found that "in all probability" the injunction would be made permanent. Clearly, this ruling was tailored to unique circumstances which are unlike anything in the present case.

- In *United States v. Associated Milk Producers*, 534 F.2d 113, 114-116 (8th Cir. 1976), a motion to intervene filed after the district court had already considered, heard objections to, and approved a consent decree in an antitrust suit was properly denied. The present case is obviously in a different procedural posture.

- In *Clarke v. Baptist Memorial Healthcare Corp.*, 264 F.R.D. 375, 381 (W.D. Tenn. 2009), the court did not allow intervention of a new class representative *after* class certification had been denied because it would allow plaintiffs to "effectively …relitigate the issue of class certification with the benefit of hindsight" and would require beginning class certification discovery "from scratch." No such circumstances exist in the present case.

Thus, the cases relied upon by Ameren are neither helpful nor persuasive. In the particular circumstances of the present case, intervention is timely.

### C. There is No "likelihood of prejudice" Caused by the Timing of Sierra Club's Motion.

In determining whether a motion to intervention is "timely," a court should consider whether the movant's delay created a "likelihood of prejudice" to the existing parties. *Arrow*, 55 F.3d at 409. As our Court of Appeals has explained, the relevant inquiry is whether any prejudice stems from the *timing of the intervenor's motion*, not from the intervenor's "presence in the suit" or the fact that the intervenor may espouse positions adverse to an existing party. *Mille Lacs*, 989 F.2d at 999. That is because "Rule 24 protects precisely this ability to intervene in litigation to protect one's interests." *Id*. Thus, "[t]he question for determining the timeliness of a motion to intervene is whether existing parties may be prejudiced by the delay in moving to intervene, not whether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change." *Union Elec. Co.*, 64 F.3d at 1159 (citing *Mille Lacs*, 989 F.2d at 998-999).

Ameren simply ignores this legal standard and presents a red herring, focusing on whether Sierra Club's presence in the lawsuit will harm Ameren's interests.  Thus, Ameren objects to being "forced to fight with an activist public interest group" whose positions are often adverse to Ameren's interests.  (Opp. at 11).  Ameren also complains that Sierra Club will "force its views upon the parties." (*Id*. at 12).  However, Sierra Club's ability to intervene and present its views is precisely what is bestowed by the unconditional statutory right set forth in the Clean Air Act, 42 U.S.C. § 7604(b)(1)(B).  As the Second Circuit has noted, "[i]n enacting [the CAA's citizen suit provision], Congress made clear that citizen groups are not to be treated as nuisances or troublemakers but rather as welcomed participants in the vindication of environmental interests."  *Friends of the Earth v. Carey*, 535 F.2d 165, 172 (2d Cir. 1976).[5]

For similar reasons, the Court should reject Ameren's argument that Sierra Club's intervention would result in increased costs to Ameren. (Opp. at 10-12).  Any additional discovery costs would derive from Sierra Club's "presence in the suit" rather than from the timing of Sierra Club's motion to intervene, and are therefore irrelevant under *Mille Lacs* and *Union Electric Co.*  Put another way, Ameren cannot show that it will incur additional costs that it would not have incurred if Sierra Club had intervened at an earlier date.  Ameren cites no authority suggesting that intervention may be denied because a movant's participation in the lawsuit will increase discovery costs, and indeed *Mille Lacs* and *Union Electric Co.* indicate otherwise.  "[W]hether the intervention itself will cause the nature, duration, or disposition of the lawsuit to change" is not germane.  *Union Electric Co.*, 64 F.3d at 1159 (citing *Mille Lacs*, 989 F.2d at 998-999).

---

[5] Ameren's accusations that "Sierra Club is a serial litigant" (Opp. at 12, n. 7), or that Sierra Club will argue "for whatever remedy it believes would harm Ameren the most" (*id*. at 11), are baseless and not worthy of further response.

10

Even if such considerations were relevant, Ameren greatly exaggerates by arguing that intervention will result in "potentially exorbitant financial costs to Ameren" and "increased time burdens on everyone." (Opp. at 12). For example, Ameren claims that Sierra Club will engage in "redundant discovery" (*id*. at 1, 12) and will take "duplicative full fact and expert written discovery of Ameren" (*id*. at 2) so that Ameren's discovery burdens will be "double[d]." (*Id*. at 2, 11). It will not. Moreover, Ameren fails to explain why Sierra Club (or any intervenor for that matter) would want to bear the cost of taking full, duplicative, redundant discovery. Likewise, Ameren speculates that Sierra Club's intervention will "delay final judgment" (*id*. at 12) but fails to explain how. These failures speak volumes. Ameren ignores that it is commonplace and ordinary for a third-party intervenor to participate in discovery and trial without significantly adding to the discovery costs of the existing parties or delaying the proceedings.

**D. Sierra Club's Participation Should Not Be Limited.**

Ameren next contends that, although Sierra Club has an unconditional statutory right to participate in this case, Sierra Club's participation in discovery and perhaps other aspects of the remedy phase should be limited. (Opp. at 12-13). However, no such limitations are appropriate or necessary here, and Ameren's argument should be rejected.

When an intervenor satisfies the requirements of Rule 24(a) and Article III standing, the intervenor "become[s] a 'suitor' and asks the court to 'decide the merits of the dispute.'" *Mausolf v. Babbitt*, 85 F.3d 1295, 1300-01 (8th Cir. 1996) (quoting *Building and Const. Trades Dept., AFL-CIO v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994)). The intervenor therefore "'participates on an equal footing with the original parties to [the] suit.'" *Id*.

Here, however, Ameren seeks second-class status for Sierra Club. To justify its proposed limitations, Ameren again invokes a strawman, arguing that Sierra Club will engage in duplicative discovery. (Opp. at 12-13). In actuality, Sierra Club has a keen interest in avoiding duplication and minimizing costs. Ameren's assertion that Sierra Club "has no shortage of funds to throw into the case" (*id*. at 11) is, unfortunately, untrue. Sierra Club has already reached out to the Department of Justice's litigation counsel to begin discussions about ways to avoid duplication and minimize costs. Wherever possible, Sierra Club will coordinate discovery to streamline the process and reduce costs for all parties.

However, Sierra Club objects to the artificial "limitations" proposed by Ameren. For example, Ameren seeks to block Sierra Club's access to any of the parties' discovery from the liability phase. (Opp. at 13). Although Sierra Club will not re-litigate any liability issues, there is no basis whatsoever for restricting access to liability-phase discovery that in all likelihood will be relied upon by the parties to some extent during the remedy phase. Ameren offers no justification for allowing the existing parties, but not Sierra Club, access to liability-phase discovery. In fact, such a restriction might lead to precisely the type of duplication of effort that Ameren wishes to avoid.

Ameren's reliance on *Duke Energy Corp*., 171 F.Supp.2d at 565-66, to justify such a sweeping limitation is misplaced. The *Duke Energy* court only noted that "the magistrate judge *may* impose limitations on [the movants'] participation in the *currently ongoing discovery*" and their "ability to initiate unilateral independent discovery without leave of the court." *Id*. (emphasis added). However, there is no "currently ongoing discovery" that would warrant such limitations in our case.

12

In any event, Sierra Club will attempt to coordinate to the full extent possible with the Department of Justice to streamline discovery and minimize costs and burdens.

## III. CONCLUSION

For the foregoing reasons, Sierra Club respectfully requests that its motion to intervene be granted.

Date:  March 10, 2017

Respectfully submitted,

/s/ Benjamin Blustein
Benjamin Blustein (*pro hac vice*)
David Baltmanis (*pro hac vice*)
MINER, BARNHILL & GALLAND, P.C.
325 N. LaSalle, Suite 350
Chicago, IL  60654
Tel:  (312) 751-1170
Fax:  (312) 751-0438
bblustein@lawmbg.com

Sunil Bector (*pro hac vice*)
SIERRA CLUB
2101 Webster, Suite 1300
Oakland CA 94612
Tel:  (415) 977-5759
Fax:  (510) 208-3140
sunil.bector@sierraclub.org

*Attorneys for Plaintiff-Intervenor Sierra Club*

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2017, I caused a copy of the foregoing Reply Memorandum in Support of Sierra Club's Motion to Intervene to be filed and served upon all counsel of record via CM/ECF.

*/s/ Benjamin Blustein*
Attorney for Sierra Club