# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SIERRA CLUB, | ) | No. 4:11 CV 77 RWS |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| AMEREN MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM & ORDER</u>

Parties move for summary judgment during the remedies phase of this Clean Air Act case. Ameren Missouri (Ameren) argues that I do not have authority to order injunctive relief for past violations of the Clean Air Act, that I cannot determine what constitutes Best Available Control Technology (BACT), and that I cannot order emissions reductions at a non-offending plant. The Environmental Protection Agency (EPA) argues that there is no material dispute that flue gas desulfurization constitutes best available control technology.

Neither the plain language of the Clean Air Act nor the case law cited by Ameren supports its claim that no injunctive relief is available to remedy Ameren's

past violations of the Clean Air Act. As a result, I will deny Ameren's motions for summary judgment.

I will also deny the EPA's motion for summary judgment, because I cannot, as a matter of law, find that flue gas desulfurization constitutes the best available control technology.

## BACKGROUND

On January 23, 2017, after a bench trial, I found that Ameren violated the Clean Air Act, 42 U.S.C. § 7401 et seq., by failing to obtain a permit before making major modifications to its Rush Island Plant. (ECF No. 852). Ameren replaced the economizer, reheater, lower slopes, and air preheaters at Rush Island Unit 1 in 2007, and the economizer, reheater, and air preheaters at Rush Island Unit 2 in 2010. (Id. at 17). These major elements of Rush Island's 230-feet-tall boilers had experienced operational problems including boiler tube leaks, slagging, fouling, and plugging that were consistent with them reaching the end of their 35-year expected lifespan. (Id. at 15-19). By replacing these components, Ameren extended the natural life of Rush Island. These changes also increased $SO_2$ emissions by decreasing forced outages and load limitations. (Id. at 59-60).

The liability and remedies phases of this case were severed in order to more orderly conduct discovery and presentation of arguments in dispositive motions and at trial. After trial, I granted the Sierra Club's motion to intervene. [No. 863].

Parties engaged in additional discovery concerning how Ameren should remedy the excess emissions released as a result of its Clean Air Act violations.

Ameren now moves for summary judgment on three separate grounds. First, Ameren argues that the Clean Air Act only authorizes courts to order injunctive relief for ongoing violations. In the liability phase of this case, the EPA withdrew its claim for civil penalties to "simplify and streamline the trial in this case." (ECF No. 701). Ameren now argues that EPA cannot obtain injunctive relief sought at trial despite prevailing in the liability phase, because EPA is limited to the monetary penalties previously abandoned by the EPA. Second, Ameren argues that I cannot determine what constitutes BACT in this case, because that would take away permitting authority from the Missouri Department of Natural Recourses (MDNR) and violate the federalism inherent to the Clean Air Act. Third, Ameren argues that I cannot order emissions reductions at Ameren's Labadie Energy Center, because I have not concluded that Ameren operated that power plant in violation of the Clean Air Act.

The EPA filed a cross motion for summary judgment, arguing that as a matter of law, I should issue an injunction requiring Rush Island to acquire a PSD permit and install BACT. The EPA also argues that there is no dispute of material fact that flue gas desulfurization (FGD) constitutes BACT for Rush Island.

According to EPA, Ameren determined that FGD was a feasible and effective process for reducing sulfur dioxide emissions at its Rush Island plant.

## LEGAL STANDARD

## ANALYSIS

## I.      Ameren Motion for Summary Judgment No. 1: Injunctive Relief

In its first motion for summary judgment, Ameren argues that the Clean Air Act does not authorize injunctions as a remedy for past violations. The Clean Air Act gives United States district courts "jurisdiction to restrain [a Clean Air Act] violation, to require compliance, to assess such civil penalty, to collect any fees owed the United States under this chapter . . . , and *to award any other appropriate relief*." 42 U.S.C. § 7413(b) (emphasis added). Ameren argues that this provision grants jurisdiction only to restrain ongoing violations and to assess penalties for past violations. Under Ameren's interpretation, the Clean Air Act does not authorize me to grant any injunctive relief when a defendant has been found liable for a past violation.

"When determining the meaning of a statute, [my] starting point must be the plain language of the statute" itself. Watson v. Ray, 192 F.3d 1153, 1155 (8th Cir. 1999). The plain language of § 7413(b) gives the EPA authority to "commence a civil action" for injunctive relief or civil penalties, "or both," whenever a person "has violated or is in violation of any requirement or prohibition of" EPA air

quality control programs. (emphasis added). This statutory language places no restriction on injunctive relief for past violations. On the contrary, the statute authorizes the EPA to seek injunctive relief whenever a person *has violated* the Clean Air Act. The plain language in § 7413(b) places no limitation on a district court's jurisdiction to grant an injunction concerning a past violation. Instead, it provides jurisdiction "to restrain [a Clean Air Act] violation, to require compliance," to assess civil penalties, collect fees, or "to award *any other appropriate relief*." Id. (emphasis added).

Ameren argues that this grant of authority is circumscribed by § 7477 which reads in part, "[t]he Administrator shall, and a State may, take such measures, including issuance of an order, or seeking injunctive relief, as necessary to prevent the construction or modification of a major emitting facility which does not conform to the requirements of this part . . ." 42 U.S.C. § 7477. The plain language of this section does not circumscribe or even refer to the grant of jurisdiction in § 7413(b). Ameren's interpretation of the rule, however, concludes that this section makes injunctive relief available only when necessary to prevent construction or modification. Ameren argues that, as a result, an injunction can only issue before construction or modification occurs. Under this reading, § 7477 would allow Ameren and other parties to entirely evade the permitting requirements of the Clean Air Act. Ameren's argument would permit Ameren to construct or modify a

power plant without obtaining the required permit. And, if the construction were completed before EPA sued, then—under Ameren's interpretation—a district court could not order Ameren to obtain a permit.

To support this interpretation, Ameren cites cases where equitable claims were dismissed pursuant to the statute of limitations. In Sierra Club v. Otter Trail Power Co, for example, the Eighth Circuit affirmed the district court's dismissal of Sierra Club's legal and equitable claims. 615 F.3d 1008, 1018-19 (8th Cir. 2010). The Eighth Circuit held that operating a power plant without a permit does not constitute an ongoing violation that tolls the statute of limitations. 615 F.3d 1008, 1013 (8th Cir. 2010). Instead, the concurrent remedy doctrine directs that, if a Clean Air Act plaintiff's legal remedies were time barred, its injunctive remedy was time barred as well. Id. at 1015. The Eighth Circuit did not hold and provided no dicta in Otter Tail that district courts lack jurisdiction to grant injunctive relief in timely filed Clean Air Act cases.

Similarly, in United States v. EME Homer City Generation L.P., the Third Circuit did not limit the EPA's ability to obtain injunctive relief for past violations. 727 F.3d 274, 289 (3d Cir. 2013). Instead, it noted that the EPA "can still obtain an injunction requiring" compliance even five years after the "completion of a facility's modification." Id. "But when more than five years have passed since the end of construction and the facility has been taken over by new owners and

operators, the Clean Air Act protects their reasonable investment expectations." Id. In this case, Ameren does not allege that the statute of limitations has run, nor that "the facility has been taken over by new owners and operators." The holding in Homer City does not apply to the facts here.

Finally, the one district court case that adopts Ameren's interpretation of the statute has been reversed by the Fifth Circuit. United States v. Luminant Generation Co., LLC, No. 3:13-CV-3236-K, 2015 WL 5009378, at *1 (N.D. Tex. Aug. 21, 2015), rev'd in part and remanded sub nom., 905 F.3d 874 (5th Cir. 2018). In Luminant Generation, the Fifth Circuit noted it had "been referred to no authority that § 7477 is meant to displace the enforcement authority provided under § 7413." 905 F.3d at 888. Citing the broad grant of jurisdiction in § 7413(b), the Fifth Circuit rejected "the district court's broad holding that it simply lacks jurisdiction to consider . . . injunctive relief" requested for a past violation of the Clean Air Act. Id.

As a result, Ameren's argument concerning injunctive relief is unfounded, and I will deny its Motion for Summary Judgment No. 1.

## II.     Ameren Motion for Summary Judgment No. 2: BACT

In its second motion for summary judgment, Ameren argues that I should refrain from determining what constitutes BACT in this case. Ameren requests that I let the state permitting authority determine BACT without intervention or

limitation. In support of its argument, Ameren (1) cites the Clean Air Act provisions that establish MDNR as the permitting authority, (2) emphasizes that permitting is an administrative process best-suited for the relevant agency, and (3) invokes the principles of federalism which underlie the EPA's state-level permitting and enforcement scheme.

All of these arguments presume a far more reaching determination than plaintiffs have requested. The plaintiffs have not asked me to write and issue a permit. Such a request would violate the principles invoked by Ameren, superseding the administrative process and notice and comment requirements of the state agency. Instead, the plaintiffs seek an order requiring any permit issued for Rush Island to install flue gas desulfurization (FGD) as BACT.

Few district courts have considered whether a court may enjoin a defendant to install a particular technology as BACT. The parties have identified two cases on this issue, and I have not found any others. In United States v. Cinergy Corp., the district court determined that "[c]ompliance with NSR today would require installation of BACT" at three coal-fired power plant boiler units. 618 F. Supp. 2d 942, 955 (S.D. Ind. 2009), rev'd on other grounds, 623 F.3d 455 (7th Cir. 2010). The utility defendant in Cinergy planned to shut down its plants rather than install new controls. Id. As a result, the court ordered an earlier shutdown of the offending

units and a loss of certain emissions allowances, rather than issuing a mandatory injunction. Id. at 964-65.

In the other relevant case, United States v. Westvaco Corp., the district court found that "the 2005 sale of the paper mill . . . to an innocent operator, . . . made it impracticable to issue a mandatory injunction." No. CV MJG-00-2602, 2015 WL 10323214, at *1 (D. Md. Feb. 26, 2015). However, the district court expressed a willingness to enjoin the defendant to install pollution control equipment: if Westvaco was the current owner and operator of the paper mill "[t]he Court would be able to order [it] to install equipment that would meet the standard and Westvaco would obtain the equipment, design the installation, and meet the requirement."[1] Id. at *11.

As a result, neither Westvaco nor Cinergy support Ameren's argument that I cannot determine what technology constitutes BACT or order Ameren to install equipment that meets the BACT standard.

Finally, the MDNR-issued permit demonstrates that MDNR anticipates implementing court-ordered injunctive relief through the permit process. MDNR has clarified that Ameren must amend its current Title V permit, pending any injunctive relief I order in this case:

---

[1] In Westvaco, "[t]he parties appear[ed] to agree that current BACT would be based on a type of dry lime scrubber . . . but disagree[d] on the proper measure for the scrubber's removal efficiency." 2015 WL 10323214, at *11.

Until the remedy decision is issued it is impossible to state whether the requirements within the remedy decision will or will not become effective during the permit term; therefore, the Air Pollution Control Program has revised [page] SB-10 [of Ameren's permit] to state:

> The installation is required to modify this permit to include any applicable requirements established by the remedy decision for the violations of the PSD and Title V provisions of the Clean Air Act according to the schedule/deadline established by the remedy decision unless said decision is overturned.

(ECF No. 972-9, 126)

MDNR provided this language to protect against the possibility that Ameren would attempt to use its most recent Title V permit as a "shield" against liability for its past violations. Id. ("[T]he permit shield does not protect the installation from past and/or ongoing violations."). The EPA cited this permit to demonstrate that MDNR is prepared, able, and willing to incorporate injunctive relief into its permitting process. In contrast, Ameren has not provided any sworn testimony from MDNR, or any other evidence, suggesting that a BACT determination would interfere with MDNR's permitting process.

For these reasons, Ameren does not demonstrate that, as a matter of law, federal courts do not have authority to make a BACT determination. I will deny Ameren's Motion for Summary Judgment No. 2.

### III.    Ameren Motion for Summary Judgment No. 3: Pollution Offsets

In its third motion for summary judgment, Ameren argues that I cannot order injunctive relief that includes emissions reductions or control technology at the Labadie Energy Center (Labadie) coal-fired power plant. I was not asked to make any findings of fact or conclusions of law concerning Clean Air Act violations at Labadie because no allegations were made or evidence presented on that matter. Ameren argues that ordering injunctive relief at such a non-offending[2] plant (1) "undermines the Clean Air Act's [s]tatutory [d]esign and . . . [e]nforcement [p]rogram," (2) is not based on any legal authority, (3) is a penalty, and therefore a legal remedy that has been waived, and (4) violates EPA's own guidance on this matter.

The EPA and Sierra Club seek two kinds of injunctive relief, 1) an order requiring Ameren to obtain a permit under the Prevent Significant Deterioration (PSD) program and install BACT at Rush Island, and 2) an order requiring emissions reductions at Labadie to offset the excess emissions that Rush Island emitted when it operated without a permit. (ECF No. 988 at 3, filed under seal). In the EPA's words, it seeks to reduce "future pollution affecting the same region, in an amount commensurate with Rush Island's excess emissions." (Id. at 8). Ameren

---

[2] I use the term "non-offending" to indicate that I have not made any conclusions of law regarding CAA violations at Labadie. My use of this modifier does not represent any finding of fact or conclusion of law regarding Labadie's potential liabilities concerning any law.

seeks to characterize this second request as an "end run" around the statutory process for treating PSD program violations. Ameren assumes that the EPA and the Sierra Club want to require Labadie to comply with the PSD program without 1) investigating the plant, 2) issuing a notice of violation, 3) filing a suit concerning Labadie, and 4) proving that Labadie violated the PSD program.

Ameren's characterization misconstrues the kind of relief that the EPA is requesting. As explained in the EPA's response:

> Plaintiffs have not argued that Labadie should comply with PSD, let alone meet BACT or obtain a PSD permit. Rather, because belated PSD compliance at Rush Island will not provide a complete remedy for the harm from Rush Island's excess emissions, Plaintiffs seek future reductions at neighboring Labadie to offset the SO2 illegally emitted.

(Id. at 3). If I grant Ameren's requested relief concerning Labadie, such relief would be granted independent and separate from EPA's PSD program. Such relief would not have to meet the BACT standard, as acknowledged by the EPA. (Id. at 8). As a result, Ameren's argument that this relief would undermine the structure of the Clean Air Act and EPA's enforcement program is unpersuasive.

Second, Ameren argues that no legal authority supports EPA's request for an injunction requiring Ameren to decrease emissions reductions at Labadie. In support of this argument, Ameren cites two district court cases from other circuits: Cinergy, (S.D. Ind. 2009), and Westvaco, (D. Md. Feb. 26, 2015). Ameren interprets Cinergy and Westvaco to stand for the proposition that injunctive relief at non-offending plants is disfavored or disallowed. Neither of these cases explicitly makes a statement to that effect. Further the facts of these cases undermine Ameren's reading. In Cinergy, the plaintiffs had asked specifically for a BACT installation at two non-offending units to compensate for the excess emissions at three offending units. 618 F. Supp. 2d 942, 967. However, the non-offending units had "combined emissions. . . twice that" of the offending units. Id. For that reason, the court determined that installing BACT on those units "would far exceed" the irreparable harm produced by past emissions. Id. Accordingly, the "[p]laintiffs' mitigation proposal [did] not bear an equitable relationship to the degree and kind of harm it is intended to remedy." In Westvaco, the District of Maryland declined to order emissions reductions at a "totally 'innocent' boiler" for the same reasons it declined to order BACT at the offending boiler: the previous owner had violated the PSD requirements of the Clean Air Act by failing to obtain a permit, but the current owner had not

participated in that decision, and more than five years had passed. 2015 WL 10323214, at *12.

As a result, <u>Cinergy</u> and <u>Westvaco</u> are distinguishable from the case at hand. In contrast to <u>Cinergy</u>, the EPA in this case has not requested that Ameren install a particular technology at Labadie. Instead the EPA seeks emissions reductions commensurate with the excess emissions from Rush Island. In contrast to <u>Westvaco</u>, Ameren owned and operated the power plants at Rush Island and Labadie during the relevant Clean Air Act violations and to the present day.

In any circumstance, I must evaluate requested injunctions using the criteria outlined by the Supreme Court:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

<u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

Ameren does not apply these criteria in its argument, and I find no reason to conclude that, as a matter of law, the EPA's proposed remedy of emissions reductions at Labadie cannot meet this test.

Third, Ameren argues that emissions reductions at Labadie would represent a penalty, and therefore a legal remedy that Ameren has waived. As I noted in my memorandum and order granting the EPA's motion to strike jury demand,

> [i]n the context of New Source Review actions, mitigation of the environmental harm caused by the defendant's violations is commonly awarded as a form of equitable relief. See United States v. Cinergy Corp., 582 F. Supp. 2d 1055, 1061 (S.D. Ind. 2008); United States v. Westvaco, slip opinion, No. 00-2602 (D. Md. Feb. 26, 2015). When relief "goes beyond remedying the damage caused to the harmed parties by the defendant's action," however, it is properly viewed as punitive and therefore legal in nature. Johnson v. Securities and Exchange Commission, 87 F.3d 484, 488 (D.C. Cir. 1996).

United States v. Ameren Missouri, No. 4:11 CV 77 RWS, 2016 WL 468557, at *1 (E.D. Mo. Feb. 8, 2016). In this case, the EPA only seeks emissions reductions equal to the excess emissions and sufficient enough to remedy to damage caused by those excess emissions. As a result, I cannot say that as a matter of law the EPA's requested relief is a penalty that has been waived.

Finally, Ameren argues that EPA's guidance on the PSD program prevents it from seeking emissions reductions from Labadie. Ameren cites to EPA's 1998 "Guidance on the Appropriate Injunctive Relief for Violations of Major New Source Review Requirements." (Nov. 17, 1998),

https://www.epa.gov/sites/production/files/2015-07/documents/nsrguida.pdf.
None of the cited portions from that guidance prohibit emissions reductions
at a non-offending plant when necessary to account for excess emissions.
Instead the guidance repeats principles of injunctive relief that Ameren cites
to in its other three arguments on this point. For example, Ameren cites
portions of the guidance stating that mitigation actions must "redress the
specific harm caused by the violations" and should not be "out of proportion
to the harm." (Id. at 4-5, 7). Accordingly, I cannot conclude that as a matter
of law, the EPA's requested relief will violate these principles. As a result, I
will deny Ameren's Motion for Summary Judgment No. 3.

IV.    **The EPA's Motion for Summary Judgment**

In its motion for summary judgment, the EPA argues that I should order
Ameren to obtain a BACT-incorporating PSD permit for Rush Island. EPA further
argues that there is no dispute of material fact that FGD is BACT in this situation.
In opposition, Ameren argues that I must apply the four-factor eBay test for
determining whether an injunction is an appropriate remedy. 547 U.S. 388, 391.
According to Ameren, the eBay test is a fact-intensive inquiry and any BACT
determination is site specific, therefore precluding summary judgment. Ameren
argues that alternatives to FGD could and should apply, including dry sorbent

injection (DSI) or a minor permit. Ameren also argues that it did not have fair notice of the requirement to obtain a PSD permit for its Rush Island Plant.

## A. Equitable Discretion Under <u>Weinberger v. Romero-Barcelo</u>

As an initial matter, I must determine whether the four-factor <u>eBay</u> test applies in this instance or whether Congress has already balanced the equities, or otherwise limited my discretion when ordering equitable remedies. <u>See</u> <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 313 (1982).

I generally have discretion to weigh traditional equitable considerations when ordering remedies. However, "Congress may intervene and guide or control the exercise of the [my] discretion." <u>Id.</u> If Congress has prohibited certain behavior, I do not have discretion to determine "whether enforcement is preferable to no enforcement at all." <u>United States v. Oakland Cannabis Buyers' Coop.</u>, 532 U.S. 483, 497 (2001). In these circumstances, my discretion is limited to evaluating how equitable considerations "are affected by the selection of an injunction over other enforcement mechanisms." <u>Id</u>.

In certain circumstances, Congress may limit my equitable discretion further, whether "explicitly in [a] statute's text or implicitly in its scheme." <u>Burlington N. R. Co. v. Bair</u>, 957 F.2d 599, 602 (8th Cir. 1992). For example, in <u>Bair</u>, the Eighth Circuit held that § 306 of the Railroad Revitalization and Regulatory Reform Act precludes district courts from balancing equities when

choosing a remedy. Id. Instead, district courts must grant a preliminary injunction "where a plaintiff has shown reasonable cause for the court to believe that a violation of [§ 306] has or is about to occur." Id. Similarly, in Tennessee Valley Auth. v. Hill, the Supreme Court held that the Endangered Species Act (ESA) requires district courts to enjoin violations without balancing the equities. 437 U.S. 153, 194 (1978). According to the Court, the ESA's absolute ban on the destruction of critical habitat demonstrated that Congress had already balanced the equities. Id. In contrast, in Romero-Barcelo, the Supreme Court held that Congress has not limited equitable discretion under the Federal Water Pollution Control Act (FWPCA). 456 U.S. 305, 314-15, 318. The Court reasoned that the FWPCA provides for a variety of remedies when an illegal discharge is made, and that the defendant's conduct had not violated the underlying purpose of the FWPCA. Id. at 314-15.

In the case before me, the EPA does not argue that Congress has "foreclosed the exercise of equitable discretion," id. at 320, with respect to the "selection of an injunction over other enforcement mechanisms." Oakland Cannabis Buyers' Coop, 532 U.S. at 497. Further, the remedies outlined in the Clean Air Act would argue against such a reading. 42 U.S.C. § 7413 (authorizing courts to restrain violations, require compliance, assess civil penalties, collect fees, and "award any other

appropriate relief."). As a result, I must evaluate the eBay factors before ordering injunctive relief in this case.

## B. eBay Factors

The EPA argues that, there is no dispute that Ameren must come into compliance with the PSD program BACT requirements, even when evaluated under the eBay factors. As discussed above, a plaintiff seeking injunctive relief must show

> (1) that it has suffered irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

> eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The EPA offers arguments and evidence concerning each of these factors.

Regarding the first two factors, the EPA notes that environmental harm, "by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable." Amoco Prod. Co. v. Gambell, 480 U.S. 531, 545 (1987). The EPA further evidences environmental harm based on (1) excess sulfur dioxide emitted by Rush Island, (2) sulfur dioxide's interaction with other pollutants to form fine particulate matter ($PM_{2.5}$), and (3) the "scientific consensus" adopted by another district court that "there is no

known threshold below which PM$_{2.5}$ is not harmful to human health." <u>Westvaco</u>, 2015 WL 10323214, *8-9.

Ameren does not offer evidence in its brief to counter these first two factors: that the Plaintiffs have suffered irreparable injury and that remedies available at law are inadequate.

However, Ameren does offer evidence concerning "the balance of hardships" and "public interest." (ECF No. 1001 at 12-13, filed under seal). Specifically, Ameren argues that there are disputes of material fact concerning "the direct costs of installing wet FGD" and "other costs and economic impacts" such as potential "cessation of operations" and whether "more cost-effective control options exist." <u>Id.</u> at 12. Ameren also questions "the actual nature and scope of the benefits of reducing SO$_2$ emissions." <u>Id.</u> at 12-13. Ameren may present these disputes of fact at trial to argue that the balance of hardships and public interests favor a remedy other than the one sought by EPA. For that reason, I cannot grant EPA's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Ameren's motions for summary judgment, [Nos. 944, 946, 955] are **DENIED**.

**IT IS FURTHER ORDERED** that the EPA's motion for summary

judgment, [No. 954], is **DENIED**.


                                        _____
                                        RODNEY W. SIPPEL
                                        UNITED STATES DISTRICT JUDGE
Dated this 27th day of February, 2019.