UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| SIERRA CLUB, ) | No. 4:11 CV 77 RWS |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| vs. ) | |
| ) | |
| AMEREN MISSOURI, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM & ORDER**

Plaintiff-Intervenor Sierra Club moves for partial summary judgment, seeking a declaration that it has organizational standing in this matter. There is no dispute of material fact that (1) some of Sierra Club member's aesthetic and recreational interests have been lessened by Rush Island's excess emissions, and (2) that injury in fact is traceable to Ameren's actions and (3) redressable by the requested relief. The Sierra Club meets the other requirements for organizational standing. As a result, the Sierra Club has standing to seek injunctive relief at the Rush Island coal-fired power plant, and I will grant the Sierra Club's motion for partial summary judgment.

# BACKGROUND

Plaintiffs in this Clean Air Act case seek injunctive relief requiring Ameren to install the best available control technology (BACT) at Ameren's Rush Island coal-fired power plant. Plaintiffs also seek emissions reductions from another Ameren plant, Labadie Energy Center ("Labadie"), to account for excess emissions from Rush Island. On January 23, 2017, after a bench trial, I found that Ameren violated the Clean Air Act, 42 U.S.C. § 7401 et seq., by failing to obtain a permit before making major modifications to its Rush Island Plant. (ECF No. 852).

After trial, I granted the Sierra Club's motion to intervene. [No. 863]. The Sierra Club now moves for partial summary judgment on the issue of standing. The Sierra Club argues that it has organizational standing to seek relief based on the declarations made by four of its members who live or recreate near or downwind of Rush Island. As summarized by the Sierra Club, those declarations state that:

- Douglas Melville lives in the St. Louis area and leads a weekly hiking group on outings throughout the region, including the parks and trails near the Rush Island plant. He is concerned about the health effects of Rush Island's excess emissions on himself and the hikers on his outings, and he has stopped leading hikes in a river bluff area near Rush Island called Fults Hill. (SMF, ¶¶ 22-25).

- Gregg Aubuchon lives in Festus approximately 10 miles from Rush Island, and his concerns about the plant's excess emissions are heightened by the breathing difficulties he experiences when working outside in his yard. He does not experience these breathing issues at his country home 75 miles south of Festus, and so he has been spending increasingly more time at his country home. (SMF, ¶¶ 26-28).

- Gary Kappler also lives in Festus approximately 10 miles from the Rush Island plant, and he frequently goes wade fishing and hunting for archeological artifacts at his family farm located 13 miles from Rush Island. His enjoyment of these activities is diminished by his concerns that the plant's excess emissions increase his risk of health harms. (SMF, ¶¶ 29-31).

- Dale Wojtkowski lives in central Illinois, 39 miles northeast of Rush Island, and he spends considerable time outdoors on his four-acre property. He is concerned about exposure to Rush Island's excess emissions from the westerly winds, and the potential health effects on himself, his wife, and his neighbors. (SMF, ¶¶ 32-34).

(Sierra Club's Memorandum in Support, ECF No. 942 at 4).

Ameren argues that there are disputes of material fact concerning these four members' Article III standing in this matter. Ameren argues that (1) these individuals have experienced no injury in fact, (2) any injury they have experienced is not traceable specifically to excess emissions from Rush Island, and (3) their own deposition testimony suggests that their alleged injuries are not redressable by the relief sought. Finally, Ameren argues that even if the Sierra Club has established standing with respect to the relief sought at Rush Island, it has not established standing with respect to the relief sought at Labadie.

## **LEGAL STANDARD**

For an individual to establish Article III standing, she must show that she

(1) has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action

3

of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, (2000) (hereinafter Laidlaw).

To bring suit on behalf of its members, the Sierra Club, must also show that (1) its members "would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. at 181.

At this summary judgment phase, the Sierra Club must demonstrate that, viewed in the light most favorable to Ameren, there is no genuine issue as to any material fact and the Sierra Club is entitled to judgment as a matter of law. Lynn v. Deaconess Med. Ctr., 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The Sierra Club bears the initial responsibility of identifying the basis of its motion and those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file which it believes demonstrates the absence of a genuine issue of material fact. Celotext Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the Sierra Club meets that burden, Ameren must produce sufficient evidence to demonstrate that there is a dispute of material fact. Id. at 324.

# DISCUSSION

## I.  Individual Standing

To establish standing for its members, the Sierra Club presents affidavits from four of its members, Douglas Melville, Gregg Aubuchon, Gary Kappler, and Dale Wojtkowski. According to Mellville's affidavit, he lives about 30 miles from Rush Island and leads Sierra Club hikes within about 20 miles of Rush Island. (ECF No. 943-11 at ¶ 12).  His affidavit states that he is "concerned about the health effects of the excess emissions from Rush Island." (Id. at ¶¶ 11-12). These concerns allegedly decrease his enjoyment of the hikes he leads near the power plant, (Id. at ¶ 15), and caused him to stop leading hikes at Fults Hill, a natural area across the Mississippi River and about one mile from Rush island. (Id. at ¶ 16). "Once the issue is resolved," he plans to "resume leading hikes at Fults Hill." (Id.).

The other Sierra Club members' affidavits are similar. (See ECF No. 943-12 at ¶¶ 12-14, 18 ("My concerns would be alleviated if Ameren were required to . . . install the appropriate pollution control equipment . . . ."); ECF No. 943-13 at ¶¶ 9, 12-17 ("Because of my breathing difficulties, and my concerns . . . I haven't been going fishing or searching for artifacts as often . . ., and I have decreased enjoyment of these activities when I do them."); ECF No. 943-14 at ¶¶ 7, 11-15 ("[I]f Ameren installed appropriate pollution control equipment I would worry less and enjoy my outdoor activities even more.").

These affidavits need not demonstrate an economic or easily quantifiable injury. Instead, "reasonable concerns about the effects of" pollution can constitute an injury in fact, when the pollution "directly affected those affiants' recreational, aesthetic, and economic interests." Laidlaw, 528 U.S. 167, 183. The alleged injury "need not be large[;] an identifiable trifle will suffice." Sierra Club v. U.S. Army Corps of Engineers, 645 F.3d 978, 988 (8th Cir. 2011) (quoting Sierra Club v. Franklin Cnty. Power of Ill., 546 F.3d at 925 (7th Cir. 2008)). Further, the "fairly traceable standard is not equivalent to a requirement of tort causation." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 161 (4th Cir. 2000) (internal quotations removed). "Rather than pinpointing the origins of particular molecules," the Sierra Club "must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 204 F.3d 149, 161 (4th Cir. 2000). (internal quotations omitted). Finally, "[a] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." Larson v. Valente, 456 U.S. 228, 243 (1982).

The Sierra Club's affidavits provide some evidence in support of these standards. They state the four members' reasonable concerns about Rush Island's

excess emissions. Specifically, Melville has stopped leading hikes at Fult's Hill, and alleges that the pollution decreases his enjoyment of other hikes. (ECF No. 943-11 at ¶ 16). Aubuchon states that he experiences breathing difficulties "such as shortness of breath and a sensation of gagging" at a property about 10 miles from Rush Island and that he is concerned about developing respiratory illness due to Rush Island's excess emissions. (ECF No. 943-12 at ¶¶ 12-16). Kappler states that he hasn't been going fishing or searching for artifacts as often because of his breathing difficulties and concerns that Rush Island's excess emissions will cause respiratory illness. (ECF No. 943-13 at ¶ 15).[1] Each of these individuals ties their concerns with their knowledge of Rush Island's excess emissions. (ECF Nos. 943-11 at ¶ 15; 943-12 at ¶ 12-13; 943-13 at ¶ 15-16).They also state that their concerns would be alleviated if Ameren installed pollution control equipment at Rush Island. (ECF Nos. 943-11 at ¶ 16-17; 943-12 at ¶ 18; 943-13 at ¶ 15-17).

Ameren seeks to create a dispute of material fact concerning all three aspects of Article III standing. I will address these arguments in the order in which Ameren presented them.

---

[1] The final declaration, from Wojtkowski, is less individualized and particular in its description of the alleged injury in fact. Wojtkowski does not explicitly state that he enjoys his outdoor activities less or is concerned about immediate health impacts of Rush Island's excess emissions. (ECF No. 943-14 at ¶ 11-14) ("The excess emissions from Rush Island weigh on my mind and dishearten me."). However, Wojtkowski does state that "if Ameren installed appropriate pollution control equipment [he] would worry less and enjoy [his] outdoor activities more. (ECF No. 943-14 at ¶ 14).

## A. Traceability

First, Ameren challenges the traceability of these persons' injuries to Rush Island's excess emissions. Ameren argues (1) the members' concerns are not tied to excess emissions at Rush Island; (2) the members' concerns derive from other nearby emissions sources; (3) the members' concerns are not reasonable because they live too far away or upwind from the plant; and (4) the members concerns are not reasonable because the relationship between fine particulate matter and health impacts is uncertain. The latter two arguments concern the "injury in fact" criteria as much as they do traceability. I have carefully reviewed these arguments and the evidence Ameren presents in support of them and make the following conclusions.

Ameren raises a dispute of material fact with respect to Sierra Club member Wojtokowski and his alleged injuries. In his deposition testimony, Wojtokowski admitted that excess emissions from Rush Island do not diminish his enjoyment of outdoor activities. (ECF No. 1003-28 at 50:4-11). He also admitted that he has not curtailed or altered his lifestyle as a result of knowing about the excess emission rom Rush Island. (ECF No. 1003-28 at 50:13-18).

Ameren does not raise a dispute of material fact with respect to the traceability of Kappler, Aubuchon, or Melville's alleged injuries. Although Kappler and Melville acknowledged in their deposition testimony that they are concerned about pollution sources beyond Rush Island, that acknowledgment does

not contradict their specific concerns about Rush Island. Additionally, the modest distance between the members' homes and recreational areas does not make their alleged injuries untraceable to Rush Island. Plaintiffs have presented evidence that excess sulfur dioxide emissions from Rush Island impacts air quality across a wide and varying region that includes areas to the North and Northwest of Rush Island. (Expert Report of Lyle Chinkin, filed under seal at ECF No. 988-8 at 10-17). Ameren does not present evidence that contradicts these facts.

Finally, Ameren's argument about the scientific certainty about the link between fine particulate matter and health does not make the members' alleged injuries untraceable to Rush Island. Kappler, Aubuchon, and Melville allege injury to aesthetic and recreational interests. An identifiable trifle harming these interests is enough to establish standing. Sierra Club v. U.S. Army Corps of Engineers, 645 F.3d 978, 988 (8th Cir. 2011). As a result, Ameren does not raise a dispute of material fact on the issue of traceability.

**B. Redressability**

Second, Ameren challenges the redressability of members' alleged injuries. Ameren argues that the members testified that their injuries will not be redressed by the requested relief. For example, Aubuchon testified in his deposition testimony that there is nothing Ameren could do that would entirely eliminate his concern about Rush Island's emissions. (ECF No. 1003-24 at 47:24-48:25). At the

beginning and end of this excerpt, however, Aubuchon clarifies that Ameren could diminish his concerns by installing pollution control technology. Id. Similarly, Kappler states that his concerns would be "somewhat relieved" but not "totally relieved" by Ameren's installation of scrubbers at Rush Island. (ECF No. 1003-26 at 51:24-54:3). Finally, Ameren cites Melville's testimony that he does not know the best way to reduce pollution from Rush Island. (ECF No. 1003-22 at 54:15-55:6). This testimony does not contradict Melville's declaration that his concerns would be alleviated if Ameren was required to install pollution control technology at Rush Island. As a result, Ameren does not present a dispute of material fact concerning redressability of these members' alleged injuries.

### C. Injury in Fact

Third, Ameren argues that the members' alleged injuries are not particularized, individual, or personal, to them. To satisfy Article III standing requirements, an injury must be "particularized, [meaning] the injury must affect the plaintiff in a personal and individual way." Lujan v. Defs. of Wildlife, 504 U.S. 555, 561, n. 1 (1992). In this case, Kappler and Melville declared that they had changed their recreational activities, and that their recreational enjoyment decreased, because of excess emissions at Rush Island. (ECF No. 943-11 at ¶ 16; ECF No. 943-13 at ¶ 15). Ameren does not present evidence contradicting these declarations. Additionally, Aubuchon declared that he started experiencing

breathing difficulties when he first moved to Festus, Missouri, from a home that was farther away from Rush Island. (ECF No. 943-12 at ¶¶ 8, 12, 14). He also stated that his breathing difficulties make it difficult for him to enjoy being outdoors at that property in Festus. These concerns are particularized to these members. Ameren does not present a dispute of material fact with respect to Kappler, Melville, or Aubuchon's injury in fact.

## II. Organizational Standing

In addition to establishing individual standing for its members, the Sierra Club must also show that "(2) the interests at stake in this litigation are germane to [its] purpose," and (3) neither its claim nor requested relief "requires the participation of individual members in the lawsuit." Laidlaw, 528 U.S. 167, 180-81. The Sierra Club's organizational purpose is to "preserve, protect, and enhance the natural environment." Sierra Club v. U.S. Army Corps of Engineers, 645 F.3d 978, 983 (8th Cir. 2011). This purpose is closely related to the interests at stake in Clean Air Act litigation. Further, the Sierra Club routinely brings similar suits on behalf of its members without the need for the members themselves to participate. See, e.g., Club v. Union Elec. Co., No. 4:14-CV-00408-AGF, 2014 WL 5783032, at *7 (E.D. Mo. Nov. 6, 2014). Ameren does not argue against these two criteria. As a result, there is no dispute of material fact. The Sierra Club has standing with respect to the requested relief at Rush Island.

### III. Standing for Relief at Labadie Energy Center

Lastly, Ameren argues that the Sierra Club must establish standing independently for the requested relief sought at Rush Island and Labadie, respectively. "[S]tanding is not dispensed in gross." Lewis v. Casey, 518 U.S. 343, 358 (1996). "[A] plaintiff must demonstrate standing separately for *each form* of relief sought." Laidlaw, 528 U.S. at 185 (emphasis added). Ameren argues that injunctive relief at Labadie and Rush Island constitute different forms of relief. The Sierra Club does not contradict this argument. Instead, the Sierra Club argues a different issue that I have already settled: that I have authority to order emissions reductions at a non-offending plant. The Sierra Club has not presented evidence demonstrating that its members would have standing to seek injunctive relief at Labadie. As a result, I cannot grant summary judgment for the Sierra Club on this point.

Accordingly,

**IT IS HEREBY ORDERED** that Sierra Club's Motion for Summary Judgment on Standing, [No. 941], is **GRANTED** in part. The Sierra Club has standing with respect to the requested relief at Rush Island.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2019.