UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| SIERRA CLUB, ) | No. 4:11 CV 77 RWS |
| ) | |
| Plaintiff-Intervenor, ) | |
| ) | |
| vs. ) | |
| ) | |
| AMEREN MISSOURI, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Defendant Ameren Missouri moves to exclude the opinion of Plaintiff Environmental Protection Agency's (EPA) expert Dr. James Staudt. Dr. Staudt's opinions are relevant to determining the balance of equities under an eBay analysis, he is well-qualified to opine on the significance of best available control technology, and his methods are reliable. As a result, I must deny Ameren's Daubert motion to exclude Dr. Staudt's opinions.

## BACKGROUND

On January 23, 2017, after a bench trial, I found that Ameren violated the Clean Air Act, 42 U.S.C. § 7401 et seq., by failing to obtain a permit before

making major modifications to its Rush Island Plant. (ECF No. 852). The liability and remedies phases of this case were severed.

At the remedy phase trial, the EPA seeks to call Dr. James Staudt as an expert witness. Dr. Staudt is a mechanical engineer who consults for industry clients, environmental organizations, and regulatory agencies concerning pollution control technology. (Brief in opposition, filed under seal at ECF No. 984 at 4). He has a PhD from M.I.T. and decades of experience in the field. (Id.) The EPA seeks to call Dr. Staudt at trial to testify about two opinions: 1) that flue gas desulfurization (FGD) constitutes the Best Available Control Technology (BACT) for Rush island, and 2) that Ameren's failure to install FGD at Rush Island led to 160,000 tons of excess sulfur dioxide emissions. (Id. at 4-5). Dr. Staudt's opinion is based in part Ameren's feasibility studies evaluating FGD installation at Rush Island, an EPA clearinghouse of 22 BACT determinations at other coal-fired power plants, his control technology experience, and the calculations contained within his expert report.

Ameren makes three arguments in favor of excluding Dr. Staudt's testimony: 1) Dr. Staudt's opinion is irrelevant, because I do not have authority to make a BACT determination when determining an appropriate remedy; 2) Dr. Staudt is unqualified to opine on BACT, because he has never prepared nor reviewed a BACT-related permit submitted to the Missouri Department of Natural

2

Resources (MDNR); and 3) Dr. Staudt's methods are unreliable because 21 of the 22 EPA Clearinghouse BACT determinations that he refers to involve power plants subject to a pollution standard that does not apply to Rush Island.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Evidence 702 and Daubert, I must "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589, (1993). Expert testimony must be excluded if its reasoning or methodology is either unreliable or unreliably applied to the facts of the case. Id. 592-93. The burden is on the party offering the expert testimony to prove that it is reliable. Wagner v. Hesston Corp., 450 F.3d 756, 758 (8th Cir. 2006). A designated expert can be qualified by knowledge, skill, experience, training, or education. FED. R. EVID. 702. If an expert is qualified by experience, that experience must "bear a close relationship to the expert's opinion." Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009). The objective of these requirements are to make sure that experts "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). Even so, "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. . . .The rule clearly is one of admissibility rather

3

than exclusion." Lauzon v. Senco Prod., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (internal citations and quotations removed).

## ANALYSIS

### I.  Relevance

Ameren first argues that Dr. Staudt's opinion is irrelevant, because I do not have authority to make a BACT determination as a remedy in this case. Ameren makes the same arguments on this point as it made in its Motion for Summary Judgment No. 1, (ECF No. 944) and Motion for Summary Judgment No. 2 (ECF No. 946). I rejected those arguments and denied Ameren's motions for summary judgment. (ECF No. 1045). I have authority to issue injunctive relief in this case, and I may make a BACT determination without upsetting the principles of federalism inherent to the Clean Air Act. (Id.). As a result, Dr. Staudt's opinion is relevant to my consideration of remedies in this case, including any BACT determination.

### II.  Qualification as an Expert

Ameren argues that Dr. Staudt is not qualified to opine on BACT because he has never prepared or reviewed a permit or BACT determination submitted to the MDNR. The MDNR is the Clean Air Act permitting authority in Missouri who administers the state's Prevent Significant Deterioration (PSD) program. Ameren argues that the MDNR's permitting process is specific to Missouri, and that Dr.

4

Staudt does not have experience evaluating the type of factors that may be dispositive in MDNR's analysis. Ameren specifically objects that Dr. Staudt did not consider potential job losses or rate increases when determining that FGD would constitute BACT at Rush Island. (ECF No. 1014 at 8). Ameren does not argue that Dr. Staudt is unqualified to testify about pollution control technology.

Dr. Staudt is qualified by knowledge, experience, and training. He has more than twenty-five years of experience providing consulting advice on the performance and cost of pollution control technology, according to his expert report. (filed under seal at ECF No. 984-2 at 6). He has testified in another recent Clean Air Act case that he has experience reviewing several dozen BACT analyses for states and for EPA. (United States v. Westvaco, No. MGJ-00-2602 Trial Transcript, ECF No., 985-4 at 8:19-9:23). In Westvaco, he offered an opinion on what constitutes BACT for a coal fired power plant's boiler. (Id. at 19). He has a PhD in mechanical engineering from M.I.T. and additional experience designing pollution control technology. (Expert Report, filed under seal at 984-2 at 6). For these reasons, Dr. Staudt is qualified to provide expert opinions on what constitutes BACT for Rush Island and how much excess emissions Rush Island has released.

### III. Methodology

Ameren argues that Dr. Staudt's methodology is unreliable because 1) he fails to consider every factor that MDNR would consider when setting BACT, and

5

2) all but one of the power plants to which he compares Rush Island were subject to a New Source Performance Standard (NSPS) that does not apply to Rush Island.

Dr. Staudt's expert report does not purport to determine BACT precisely as MDNR would determine BACT. Similarly, in selecting a remedy in this case, my job is not to precisely mimic the permitting authority. For example, when a permitting authority fails to determine BACT "based on a reasoned analysis," the EPA or a court may "step in to ensure the statutory requirements are honored." Alaska Dep't of Envtl. Conservation v. E.P.A., 540 U.S. 461, 491 (2004). Further, the precise issue before me is to determine an appropriate remedy, not to recreate a BACT determination precisely as MDNR would have conducted it, should MDNR's method deviate from the general BACT framework. Ameren has not demonstrated that MDNR's method is different from the general five-step approach outlined in the EPA's draft New Source Review Manual. (See Memorandum and Order denying motion to exclude expert testimony of Colin Campbell at 7.). Further, even if Dr. Staudt had considered different facts than MDNR, such an argument is "more appropriately directed to the weight of the testimony, not its admissibility." Minnesota Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006).

Dr. Staudt's comparison with the other power plants similarly represents an issue concerning underlying facts rather than methods. (Id.) Ameren argues that

any comparison EPA Clearinghouse data is unreliable, because 21 of the 22 BACT determinations in the Clearinghouse involve power plants subject to the New Source Performance Standards (NSPS). For those power plants "the application of 'best available control technology' [must not] result in emissions of any pollutants which will exceed" the NSPS limitations. 42 U.S.C. § 7479(3). Ameren argues that NSPS is dispositive, in that it precludes less stringent technologies, such as dry sorbent injection (DSI). According to Ameren, the EPA Clearinghouse data is therefore incomparable to the situation at Rush Island.

Ameren's argument is unconvincing. Although 21 of the 22 listed BACT determinations were subject to NSPS, such a "floor" on emissions does not fundamentally change the BACT process of determining the "best" available technology. See In the Matter of: Columbia Gulf Transmission Company ID No. 105-0640-0021, 2 E.A.D. 824, 1989 WL 266361, at *4 (June 21, 1989) (explaining that NSPS's utility in a BACT determination is limited, because BACT decisions are made on a contemporary, case-by-case basis, while NSPS is made on a one-time, industry-wide basis). Further, the EPA Clearinghouse data is just one set of facts that Dr. Staudt uses in support of his opinions. Dr. Staudt also bases his opinions on his knowledge of the BACT process and control technology performance, documents specific to Rush Island including Ameren's feasibility studies evaluating FGD, and the calculations contained within his expert report.

The EPA represents that Dr. Staudt also "reviewed thousands of pages of documents produced by MDNR, including BACT determinations and other relevant MDNR documents, as well as deposition and hearing testimony by MDNR engineers." (ECF No. 984 at n. 4). As a result, the EPA meets its burden to demonstrate that Dr. Staudt's methods are reliable and reliably applied to the facts of the case.

Accordingly,

**IT IS HEREBY ORDERED** that Ameren Missouri's motion to exclude Dr. James Staudt's expert opinion, [No. 960], is **DENIED**.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 27th day of March, 2019.