## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

SIERRA CLUB,

     Plaintiff-Intervenor,

       v.

AMEREN MISSOURI,

     Defendant.

Civil Action No. 4:11-cv-00077-RWS

### AMEREN MISSOURI'S REPLY
### REGARDING THE NOVEMBER 5, 2021 SUPPLEMENTAL STATUS REPORT

On November 12, 2021, the United States filed a Response to Ameren Missouri's ("Ameren") November 5, 2021 Status Report (the "Response"). (ECF No. 1181.) Ameren respectfully submits the following Reply to correct inaccuracies in the Response.

The Response discusses Ameren's Integrated Resource Plan ("IRP"), which Ameren is required to file with the Missouri Public Service Commission ("PSC") every three years. The Response notes that in Ameren's 2020 IRP submission, Ameren modeled multiple scenarios pertaining to the retirement of Rush Island. The United States then argues—without support—that the IRP shows that as early as September 2020, Ameren was "considering retirement of Rush Island rather than installing the pollution controls required by this Court." (Response at 3.) That is inaccurate. Ameren's modeling of the retirement of Rush Island in the 2020 IRP was done because the Missouri PSC directed Ameren to conduct such modeling.

Contains Highly Confidential
Information subject to Protective Order

The Response quotes at length from the IRP section headed "Retirements and Modifications," in Chapter 9 of the IRP.   In a footnote omitted from the Response's quotation, that same section of the IRP cites to an order issued by the Commission and available on its public docket.   The Order, No. EO-2020-0047, is titled "Order Establishing Special Contemporary Resource Planning Issues," and states in relevant part that:

> **THE COMMISSION ORDERS THAT:**  1. Union Electric Company d/b/a Ameren Missouri shall analyze and document the following special contemporary issues in its 2020 triennial IRP filing:
>
> D.  Model scenarios related to environmental upgrades to the Rush Island and Labadie coal-fired plants as mandated by the federal courts.
>
> O. Analyze and document on a unit-by-unit basis the net present value revenue requirement of the relative economics of continuing to operate each Ameren Missouri coal-fired generating unit <u>versus retiring and replacing each such unit</u> in light of all of the environmental, capital, fuel, and O&M expenses needed to keep each such unit operating as compared to the cost of other demand-side and supply side resources.

Order of the Missouri Public Service Commission, No. EO-2020-0047 (Oct. 30, 2019) at Sections 1.D and 1.O (Exhibit A hereto) (emphasis added).

In compliance with the PSC's Order, Ameren analyzed "scenarios relating to environmental upgrades" at Rush Island and Labadie, and analyzed scenarios regarding the effect of retiring nearly all of its fossil plants.  In addition to the Rush Island retirement scenarios, Ameren's IRP stated that it evaluated two scenarios for retiring Ameren's Sioux Energy Center (which has never been part of this case), nearly all of its gas-fired combustion turbine generators, and the Labadie Energy Center.  For the Court's convenience, we attach the relevant portions of Chapter 9 of the public version of the 2020 IRP as Exhibit B hereto.

Ameren did not conduct the modeling, or present the related retirement scenarios to the PSC, as part of any plan to retire Rush Island rather than installing pollution controls, as the

Response implies.  Indeed, while numerous scenarios were modelled, Ameren's preferred plan in the 2020 IRP designates a 2039 retirement date for Rush Island.

From its faulty premise, the United States then argues that Ameren delayed its efforts to work toward compliance with the Court's orders—because, the United States incorrectly argues, while Ameren had been "considering" retirement since 2020, it did not ██████████████████ ███████████████████████████████████████████ until after the Eighth Circuit's recent ruling.   This argument is invalid on several levels.

First, as Ameren explained in detail in its November 5, 2021 Status Report, it has done all that it can to comply with the Court's Remedy Order and Stay Order.  Those Orders, in sum, directed Ameren to apply to MDNR for a PSD permit, and to take preliminary engineering steps so that Ameren would be prepared to proceed with compliance after the case returned from the Eighth Circuit.  Ameren has applied for a PSD permit and is working with the Missouri Department of Natural Resources (MDNR) to ensure that it provides all information requested by MDNR in connection with that permitting process.  Ameren has completed all of the engineering work for an FGD that it can complete without incurring the significant expenses the Court has stayed. Ameren has retained a modeling consultant and is working through new modeling guidance.  As Ameren explained in its November 5, 2021 supplemental status report, modeling must be adjusted based on detailed engineering work and design specifications—the more extensive and costly work that was stayed.  In addition, Ameren has worked with MDNR in support of its efforts to finalize re-designation of the Jefferson County area's NAAQS attainment status, which affects PSD permitting because MDNR cannot issue PSD permits regarding SO2 for sources in Jefferson County until EPA completes final action on the re-designation of that area as being in attainment

Contains Highly Confidential
Information subject to Protective Order          3

with the NAAQS for SO2.  The United States' Response does not take issue with any of these points.

Second, Ameren had no obligation to take any steps towards assessing retirement of Rush Island.  Neither the remedy trial, nor the Plaintiffs' proposed post-trial submissions, included any request for such relief or any evidence to support such a request.  Accordingly, the Court's Remedy Orders did not direct Ameren to take any actions to assess retirement of the Rush Island plant, either internally or with any other stakeholder, like MISO, the PSC, or MDNR.  Ameren has fully complied with the Court's Orders.

Third, Ameren's recent ███████████████████████████ does not constitute delay, as the United States argues.  As explained above, the United States' argument to that effect is based on the incorrect premise that Ameren has been considering retiring the plant since 2020; it has not.  Upon receipt of the Eighth Circuit's ruling, and even though that ruling is subject to requests for rehearing, Ameren acted expeditiously to ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████. As discussed in St. Louis Post-Dispatch articles cited in the Court's November 9 Order and Ameren's brief responding to that Order (ECF No. 1185) observers and commentators including environmental groups very recently have advocated

for the retirement of Rush Island in lieu of FGD installation because of Missouri's new securitization legislation.  These circumstances have changed in the over two years since the April 2019 remedy trial and the Court's September 2019 Remedy Order—in fact, important changes have occurred very recently that materially bear on the issue.

Fourth, the ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Ameren, of course, could not know when the Eighth Circuit would rule, or what its decision would be.



| ████████████████████ | | ███████ | |
|---|---|---|---|
| ████████████████ | | ███████ | |
| ██████████████ | | ███████ | |
| ██████████████ | | ███████ | |
| ████████████ | | ███████ | |
| ██████ | | ███████ | |
| ████████ | | ███████ | |

████████████████████████████████████████████████

██████████████████████████████████

Finally, the Response only serves to confirm that, throughout the IRP process and now,

Ameren has consistently taken precautions to keep confidential the specific information regarding

any ████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████.

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████.

The Court should grant Ameren's Motion to Seal, because this more specific information is entitled to protection.

Dated:  November 15, 2021                    Respectfully submitted,

                                             /s/  Matthew B. Mock

                                             Matthew B. Mock (admitted *pro hac vice*)
                                             SCHIFF HARDIN LLP
                                             4 Embarcadero Center, Suite 1350
                                             San Francisco, California 94111
                                             Tel:  (415) 901-8700
                                             Fax:  (415) 901-8701
                                             mmock@schiffhardin.com

                                             David C. Scott
                                             Mir Y. Ali
                                             Molly L. Wiltshire
                                             (All admitted *pro hac vice*)
                                             SCHIFF HARDIN LLP
                                             233 South Wacker Drive, Suite 7100
                                             Chicago, Illinois 60606
                                             Tel:  (312) 258-5500
                                             Fax:  (312) 258-5600

                                             Ronald S. Safer (admitted *pro hac vice*)
                                             RILEY SAFER HOLMES & CANCILA LLP
                                             70 W. Madison, Suite 2900
                                             Chicago, Illinois 60602
                                             Tel:  (312) 471-8700
                                             Fax:  (312) 471-8701

                                             John F. Cowling
                                             ARMSTRONG TEASDALE LLP
                                             7700 Forsyth Boulevard, Suite 1800
                                             St. Louis, Missouri  63105
                                             Tel:  (314) 621-5070
                                             Fax:  (314) 621-5065

                                             *Counsel for Defendant Ameren Missouri*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2021 I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system, and caused an electronic copy of the sealed document as filed to be served on all counsel of record via e-mail.

/s/  *Matthew B. Mock*
Matthew B. Mock

Contains Highly Confidential
Information subject to Protective Order