**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>SIERRA CLUB,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>AMEREN MISSOURI,<br><br>Defendant. | Civil Action No. 4:11-cv-00077-RWS |

## MOTION TO ENTER PROPOSED STIPULATED ORDER

Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency (EPA), moves this Court to enter the proposed Stipulated Order between Plaintiffs and Defendant Ameren Missouri (Ameren) at ECF 1343-1. The Parties jointly lodged the proposed Stipulated Order on November 6, 2024. *Id.* Under 28 C.F.R. § 50.7, the United States published notice of the lodging of the proposed Stipulated Order in the Federal Register on November 13, 2024. 89 Fed. Reg. 89,657. The 30-day comment period has elapsed. The United States received one public comment, but the commenter does not take issue with the substance of the proposed settlement. Ameren and the Sierra Club consent to the entry of the Stipulated Order.

1

ECF 1343 at 2. For the foregoing reasons, the Court should approve the proposed Stipulated Order and enter it as a final judgment.

## **BACKGROUND AND SUMMARY OF THE PROPOSED STIPULATED ORDER**

A brief history of this Clean Air Act (CAA) litigation is set forth in this Court's June 14, 2024, Memorandum and Order, in which the Court recounts the two trials and appellate proceedings confirming this Court's authority to fashion an equitable remedy to redress harm from Ameren's unlawful air pollution. *See* ECF 1315 at 1-7. This Court's "previous rulings, the Eighth Circuit's decision, and the Supreme Court's acknowledgement of a court's broad equitable powers all support [this Court's] ability to impose an equitable remedy in this matter to offset Ameren's 14 years of impermissible pollution." *Id.* at 12. While the retirement of Rush Island in October 2024 provides certain pollution reduction benefits, some of which will serve to mitigate the established harms from CAA violations, retirement alone "fails to 'remedy, mitigate and offset harms to the public and the environment caused' by 14 years of impermissible pollution." *Id.* at 16. Therefore, this Court should order further mitigation relief that balances "what is necessary, what is fair, and what is workable." *Class v. Norton*, 376 F. Supp. 496, 501 (D. Conn. 1974) *aff'd in part and rev'd in part on other grounds*, 505 F.2d 123 (2d Cir. 1974) (*quoting Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973)). The proposed Stipulated Order does just that.

The Stipulated Order requires Ameren to implement two primary mitigation projects:

(1) A project to support the distribution of stand-alone HEPA purifier devices to residential customers within Ameren's service territory located predominantly in Eastern Missouri, prioritizing distribution to low-income households, and

(2) A project to promote the transition to electric school buses for schools in the St. Louis metropolitan and surrounding areas with the charging stations necessary to support these vehicles.

In the event certain benchmarks are not met when implementing the HEPA purifier and electric school bus programs, Ameren will complete a third mitigation project—administering funds for the

2

purpose of implementing weatherization and energy efficiency upgrades that will reduce energy consumption by residential and community buildings in Ameren's service area. Examples of such projects include installation of floor, wall, and attic insulation; sealing of windows and doors; duct sealing; and passive solar retrofits. ECF 1343-1.

## ARGUMENT

### I.  Standard of Review

When presented with a negotiated resolution, courts evaluate whether the settlement would be fair, reasonable, and consistent with the statute. *See United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir. 1997) (citing *United States v. Metro. St. Louis Sewer Dist.,* 952 F.2d 1040, 1044 (8th Cir. 1992)); *United States v. BP Amoco Oil PLC*, 277 F.3d 1012, 1018-1019 (8th Cir. 2002) (citing *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990)); *United States v. Doe Run Resources Corp.*, 2020 WL 3972001, at *1 (E.D. Mo. Jul. 14, 2020). A strong public policy favors agreements, and courts should approach them with a presumption in their favor. *Little Rock Sch. Dist. v. Pulaski Cty. Special Sch. Dist. No. 1*, 921 F.2d 1371, 1388 (8th Cir. 1990)). As settlements conserve the resources of the courts, the litigants, and the taxpayers, they should "be upheld whenever equitable and policy considerations so permit." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976).

In settlements involving environmental matters, courts exercise "restraint on review" and consider the EPA's experience and expertise. *BP Amoco Oil*, 277 F.3d at 1019; *see also United States v. Union Elec. Co.*, 132 F.3d 422, 430 (8th Cir. 1997) (citing *Cannons Eng'g Corp.*, 899 F.2d at 84). Exercising restraint on review requires neither "mechanistically rubberstamp[ing]" a proposed settlement nor approaching its merits de novo. *Cannons Eng'g Corp.*, 899 F.2d at 84. As the Eighth Circuit has noted, "where [an] agency's specialized knowledge is involved and Congress has vested the agency with discretion in a technical area, the court should grant broader deference and uphold the agency's conclusion if the conclusion is rationally based." *Lile v. Univ. of Iowa Hosps. and Clinics*,

3

886 F.2d 157, 160 (8th Cir. 1989) (citations omitted). To be suitable for entry, an agreement does not have to be the best settlement possible—rather, it need only be fair, adequate and reasonable. *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991).

**II.     The Proposed Stipulated Order is Fair, Adequate, and Reasonable, and Serves the Goals of the Clean Air Act**

This Court already held that Ameren must redress the harm caused by its Clean Air Act violations and resulting excess pollution. The remaining question before the Court, which had been set for an evidentiary hearing to begin November 21, 2024, is *how* Ameren should so do. The proposed Stipulated Order avoids the need for that hearing and represents a procedurally and substantively fair compromise with reasonable terms. Procedurally: the agreement arises from good-faith, arms-length bargaining by experienced counsel on behalf of sophisticated parties, including negotiations facilitated by a professional mediator as ordered by this Court. *See BP Amoco Oil*, 277 F.3d at 1020 (citing *Cannons Eng'g Corp.*, 899 F.2d at 84). Substantively: the agreement holds Ameren responsible for remedying the harm done by its violations, thereby promoting corrective justice and accountability. *See BP Amoco Oil*, 277 F.3d at 1021 (citing *Cannons Eng'g Corp.*, 899 F.2d at 84).

The proposed Stipulated Order also contains reasonable terms: Ameren has the necessary tools to implement the mitigation projects; and those projects will be effective at remedying the harm done by Ameren's violations at the Rush Island plant. The excess sulfur dioxide ($SO_2$) pollution Ameren emitted from its Rush Island coal-fired power plant transformed in the atmosphere into fine particulate matter ($PM_{2.5}$), the exposure to which increases a person's risks of heart disease, lung disease, and premature death. *See* Remedy Order (ECF 1122) ¶¶ 251–65. Evidence accepted by the Court during the remedy trial established that the impacts of Ameren's violations were concentrated in the St. Louis metropolitan area:



*United States et al. v. Ameren Missouri*, 421 F.Supp.3d 729, 784 ¶ 323 (E.D. Mo. 2019) (describing geographic range and annual average $PM_{2.5}$ concentration contributions from Rush Island's excess emissions). Following the Eighth Circuit's remand, further examination revealed that, across that area, Ameren's excess pollution contributes to a stark and ongoing environmental injustice. Overlaying publicly available air quality data with population information and regional disease rates reveals glaring disparities in the harms visited on St. Louis communities from $PM_{2.5}$ pollution. *See* ECF 1298-1 ¶¶ 22-25. In the St. Louis metropolitan area, low-income and disadvantaged communities shoulder more of the pollution burden, facing greater $PM_{2.5}$ concentrations and bearing greater risks of premature death than their neighbors. *Id.* ¶ 2. Throughout the St. Louis area, low-income generally corresponds with high-risk. *Id.*



***Figure*** (*derived from ECF 1298-1 ¶ 24*): *Differences relative to regional median $PM_{2.5}$-attributable mortality in disadvantaged, lowest-income, and lowest educational-achievement communities in the St. Louis Metropolitan Statistical Area.*

In light of the evidence of disparity and the need to redress ongoing public health harms, the proposed Stipulated Order directs its injunctive relief toward to measures that would reduce downwind $PM_{2.5}$ exposures in low-income and disadvantaged communities. In so doing, the mitigation secured in this agreement will serve to redress the harms of Ameren's violations in the very communities most impacted its Clean Air Act violations. *See Cannons Eng'g Corp.*, 899 F.2d at 89-90; ECF 1298-1 ¶¶ 22-25, 37, 46, 48.

Finally, the proposed Stipulated Order satisfies the goals of the CAA in that it protects human health and the environment. Consistent with its purpose to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," 42 U.S.C. § 7401(b)(1), the CAA regulates criteria pollutants, such as $SO_2$, by requiring new and modified major stationary sources like coal-fired power plants to install pollution control technology to prevent the significant deterioration of air quality. 42 U.S.C. §§ 7470-92. To further protect the public, "the CAA authorizes a court to impose an equitable

6

remedy to offset a facility's emissions after making major modifications without seeking or obtaining a permit in violation" of the law. ECF 1315 at 9-10.

Through mitigation projects, the proposed Stipulated Order will bring improved health outcomes to those communities most impacted by the excess pollution stemming from Ameren's violations at the Rush Island plant. Air purifiers and electric buses will serve to redress the same health and welfare risks imposed by Ameren's excess $SO_2$ pollution established at trial. Further, in avoiding further complex and expensive litigation, the proposed Stipulated Order ensures prompt, effective relief for the communities harmed by Ameren's CAA violations, while also lessening burdens on litigants and the Court.

### III. Public Comment on the Proposed Stipulated Order

The United States received one comment regarding the proposed resolution during the 30-day public comment period. That comment provides, in its entirety:

> Comment of Midwest Energy Consumers Group:
>
> On Nov. 6, 2024, the Department of Justice lodged a proposed Stipulated Order with the United States District Court for the Eastern District Court of Missouri in the lawsuit entitled United States, et al. v. Ameren Missouri, Civil Action No. 4:11-cv-00077-RWS (E.D. Missouri). The proposed Stipulated Order addresses and resolves litigation related Clean Air Act violations at the utility's Rush Island generating facility in Festus, Missouri. The proposed Stipulated Order outlines two mitigation projects related to the violation and dictates certain levels of funding to be provided by Ameren Missouri for those purposes. Together these amount to upwards of $61,000,000.
>
> Subsequently, on Nov. 13, 2024, the Justice Department published a notice for a period of public comment on the Stipulated Order. These comments are filed to note that the Missouri Public Service Commission is the entity statutorily tasked with establishing retail rates paid by Ameren Missouri's customers and evaluating what costs can be included in the formulation of those rates. To the extent that Ameren Missouri may seek to include these costs related to the settlement of its violations in future Missouri rate cases it should not be permitted to do so. Ultimately, if Ameren seeks to recover these settlement costs from ratepayers in a future case, the decision will be up to the Public Service Commission, but these comments are provided for the Court's information.

7

This comment does not address the substance of the proposed resolution in this case, nor does it provide facts that might suggest the stipulated order is not fair, reasonable, or in the public interest. The United States concurs with the commenter that whether Ameren is allowed to recover the costs associated with the projects provided in the proposed Stipulated Order from its rate base is a "decision that will be up to the [Missouri] Public Service Commission."

**IV.     Conclusion**

For these reasons, the United States respectfully requests that this Court enter the Stipulated Order by signing ECF 1343-1 at page 9.

Dated: December 16, 2024

Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Elias L. Quinn*
Elias L. Quinn
Mae Bowen
Environmental Enforcement Section
U.S. DEPARTMENT OF JUSTICE
P.O. Box 7611
Washington, DC 20044-7611
Telephone: (202) 598-9560
E-mail: Elias.Quinn@usdoj.gov

OF COUNSEL
SARA HERTZ WU
Senior Counsel
Office of Regional Counsel
U.S. EPA, Region 7
11201 Renner Boulevard
Lenexa, Kansas 66219

ALEX CHEN
Air Enforcement Division
Office of Civil Enforcement

SUZANNE MOORE
Assistant United States Attorney
United States Attorney's Office
Eastern District of Missouri
Thomas Eagleton U.S. Courthouse
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
Telephone: (314) 539-2200
Facsimile: (314) 539-2309
E-mail: Suzanne.Moore@usdoj.gov

*Attorneys for Plaintiff United States*

## CERTIFICATE OF SERVICE

  I hereby certify that on December 16, 2024, I filed the foregoing and all associated attachments with the Clerk of Court using the CM/ECF system, and served an electronic copy on counsel for Ameren and Sierra Club via e-mail.

             */s/ Elias L. Quinn*
             ELIAS L. QUINN